[Submitting counsel listed below]

June 6, 2024

*VIA ECF*

Hon. Alex G. Tse
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

   **Re:**   ***Brand Little v. Pacific Seafood Procurement, LLC, et al., No. 23-cv-01098-AGT***

Dear Judge Tse:

  Pursuant to the Court's Order dated May 21, 2024 (the "Order," Dkt. 59), Plaintiff and Defendants write to provide the Court with their positions on Plaintiff's proposed targeted discovery for the purpose of amending his complaint. Following receipt of the Order, Plaintiff provided Defendants with proposed requests for production to Defendants and a proposal to subpoena certain records from state agencies. As reflected in the attached **Exhibits A and B**, the parties have substantially narrowed their differences, but certain differences (below) remain. Following the Court's resolution of these differences, the parties will submit a proposed order that contains both the Court's resolutions and the agreed upon elements.

## I.   <u>Temporal scope of ex vessel records to be subpoenaed from state agencies.</u>

###   A.   <u>Plaintiff's Position</u>

  The departments of fish and wildlife of California, Oregon, and Washington maintain databases containing the records of every commercial ex vessel sale going back to at least 1980; and they publish this data, omitting certain types of data, including the identity of the sellers and purchasers. If one sends a public records request, the agency will only provide the published data but, in response to a subpoena, will provide all available data. Plaintiff seeks to subpoena complete ex vessel sales records from the 1999/2000 season through the 2023/24 season. While Defendants do not oppose Plaintiff's effort to get ex vessel records on relevance grounds (as they are clearly relevant), they suggest that Plaintiff only be allowed to subpoena records from the past eight seasons,[1] because Plaintiff's proposal would impose "burdensome analysis and review of irrelevant data outside the limitations period." *See* Ex. A, p. 4. This objection is without merit.

  First, Defendants would not be burdened by a need to review the data. Plaintiff will receive the data and make amended allegations based thereon. Defendants will have the opportunity to respond to the sufficiency of those allegations, and if the allegations survive a motion to dismiss, Defendants will have their opportunity to review and challenge the facts underlying the amended complaint, including these data. However, no such factual challenge would be appropriate as part of a motion to dismiss, so there is no need for Defendants to review the data before the motion to dismiss is resolved. And if the motion to dismiss is resolved in

---

[1] Based on this position, Plaintiff dropped his request that Defendants produce their ex vessel records for the last four season, as this information should be included in the agency data. Ex. A, p. 5.

Plaintiff's favor, there is no question that Plaintiff would be entitled to subpoena this data, as it is clearly relevant to Plaintiff's claims.[2]

Specifically, Plaintiff understands that, in the mid to late 1990s, new live buyers entered the ex vessel Dungeness crab market, leading to increased ex vessel price competition and increased price variability. Plaintiff further understands that in the mid to late 2010s, ex vessel prices started to drop and price variability diminished, a trend which has continued to this day, that Plaintiff alleges is a result of the unlawful anticompetitive conduct alleged in the complaint. Data that shows ex vessel price trends is, thus, highly relevant to Plaintiff's allegations; and Plaintiff's proposed temporal range will permit a more meaningful presentation of these trends in that market to the Court in the amended complaint. As requesting data for that temporal range, rather than for Defendants' abbreviated range, would not increase Defendants' or anyone else's burden, there is no principled basis to impose Defendants' proposed limitation.

### B.     Defendants' Position

While Defendants do not object to Plaintiff seeking targeted crab commercial landings data from the State Agencies, 24 years is not "targeted discovery" by any measure, it is far outside the temporal scope of the Complaint and decades outside the statute of limitations for Plaintiff's causes of action.  Defendants disagree that they will not need to review this data to the extent Plaintiff relies upon in for an amended complaint, and submits that review and analysis of 24 years of transactions in three states would be burdensome.  Plaintiff has not met his burden of establishing the relevancy of data reaching into the last century. Defendants are willing to agree to eight years.

## II.     Defendants' sales data for unprocessed (i.e., live) and processed crab.

### A.     Plaintiff's Position

Defendants assert that data about their sales of unprocessed and processed crab is not relevant and, therefore, *any* burden incurred in its production would be unreasonably burdensome. However, when asked whether Defendants' counsel had investigated the actual extent of the burden of producing such data, they admitted no such investigation had been done; and as Defendants are sophisticated corporate entities, worth billions of dollars, it strains credibility that they do not have this data readily available. Thus, Defendants' objection is really just one of relevance; and the data is very relevant.

Plaintiff alleges Defendants and their co-conspirators have artificially depressed the ex vessel price for crab and delayed when the crab seasons opened based on the pretext of a lack of demand and low prices that they could get for such crab, when, in fact, demand and such prices are high. Dkt. 1, ¶¶ 3, 11, 82-83, 106-110, 139. Defendants' sales data should corroborate this and thus corroborate his allegations that Defendants' and their co-conspirators' actions are not based on legitimate business reasons, but rather were taken with illegal anticompetitive purpose

---

[2] With regards to the state agencies, themselves, the temporal scope of data sought has no effect on their burden. Whatever the temporal scope, the report will be created using the same process, only with a slightly different query parameter.

and effect. Additionally, records of Defendants' live sales are directly relevant to Plaintiff's allegations that, as part of Defendants' and their co-conspirators' conspiracy, buyers purchase live crab from other buyers who control a given port, negating the need to compete—and drive prices higher—at the docks. *See* Dkt. 1, ¶ 190. Defendants' invocation of *Illinois Brick* standing is an inapposite red herring. Plaintiff seeks the data to support his claims that Defendants have monopsonized the ex vessel market and have conspired with other buyers to artificially depress prices in the ex vessel market. Plaintiff is a direct participant in the ex vessel market; thus, *Illinois Brick* has no application to his claims in support of which he seeks this data.

### B.      Defendants' Position

Defendants object to these requests as overbroad, unduly burdensome, and irrelevant, and by no means "targeted discovery." Plaintiff seeks to maintain monopsony and attempted monopsony claims based on purchases of live crab from other ex vessel buyers, and alleged a "conspiracy" between Defendants and other ex vessel buyers.  There is no truth to this allegation, and Defendants have agreed to provide Plaintiff with data relating to its live crab purchases from other processors and ex vessel buyers.  Defendants' downstream sales of live crab and processed crab, however, are entirely irrelevant and outside the scope of permissible discovery.

Additionally, Plaintiff lacks standing to pursue a monopsony claim focused on the downstream sales and processing market because Plaintiff sells to direct purchasers—other ex vessel buyers. *Cf. Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019) ("The bright-line rule of *Illinois Brick* . . . means that indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue."); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."). (*See also* Order at 5).  There is no basis in any allegations or theories advanced by Plaintiff to obtain discovery on downstream sales of live or processed crab.

## III.      Data regarding Defendants' shipping and processing costs for processed crab.

### A.      Plaintiff's Position

Plaintiff alleges that Defendants enforce the price-fixing conspiracy by, among other tactics, punishing non-compliant buyers by dumping below-cost crab into that buyer's territory. Dkt. 1, ¶¶ 15-16, 115-116. The Court held that Plaintiff must specify Defendants' costs of production to adequately plead an Unfair Practices Act claim of below-cost sales. Dkt. 59 at 8-9. Plaintiff seeks precisely this—Defendants' costs of shipping and processing Dungeness crab for the last four seasons. Thus, there is no dispute as to the information's relevancy, but Defendants object on burden.

During meet and confer, Defendants initially claimed that the type of cost information sought by Plaintiff was not available and would be burdensome to gather, though, again, Defendants' counsel did not claim to have conducted any investigation to determine whether their belief in this regard was correct. It is difficult to accept that companies of Defendants' size and value would not have data about the costs of production for their products in the form requested. Nevertheless, in an effort to find common ground, Plaintiff asked Defendants what sort of cost information was reasonably accessible, such as facility-specific reports. Ex. A, p. 5.

Defendants refused, in response, to say what cost data they actually have, but rather simply maintained their objection, reasserting that they do not maintain detailed cost data in the form requested, before pivoting to argue the requested data is not relevant or targeted. Ex. A, p. 4. The data, again, is clearly relevant, and Defendants' unsupported claims of burden are an inadequate basis to refuse its production. Furthermore, while Plaintiff has what he believes are sufficient facts to support his allegations in this regard, the Order specifically allows Plaintiff the ability to conduct targeted discovery to support those allegations; and any claimed overbreadth concerning this request could likely have been resolved if Defendants had engaged in a meaningful meet and confer regarding them.

### B.    Defendants' Position

Defendants object to these requests as overbroad, unduly burdensome, and irrelevant. These requests are not targeted and seek years of data despite the fact the Complaint only alleges below cost crab sales in six truck loads during the 2022-2023 season, and is not "targeted discovery." Dkt. 1, ¶¶ 15-16, 115-116. Plaintiff's characterization that Defendants did not engage in meaningful meet and confer on these requests is simply not true. Defendants do not maintain cost data in the form requested by Plaintiff and it would be unduly burdensome to try to create responsive material given that Plaintiff has failed to even pled a viable cause of action. Consistent with Plaintiff's obligations to the Court, Plaintiff must have had a factual basis for alleging that Defendants made sales below costs before it made that allegation. Fed. R. Civ. P. 11. Plaintiff should use the information on which the allegations are based to amend his Complaint, and this Court should not permit Plaintiff to make an allegation and then seek discovery in an effort to try to support it.

### IV.    Communications between certain buyers regarding ex vessel prices, season opening dates, and purchases from buyers that control certain ports.

### A.    Plaintiff's Position

Plaintiff originally proposed that Defendants produce communications with five other ex vessel buyers concerning ex vessel prices, season opening dates, and purchases from buyers that control certain ports, during the last four seasons. Ex. A, p. 9. Defendants, in response, did not deny the relevance of such communications or that such communications are in their possession, but rather proposed that Plaintiff, instead, subpoena those third-party buyers. Ex. A, p. 6. Plaintiffs agreed to this, with certain conditions, including (1) that the subpoenas would seek communications between all buyers (not just between Defendants and the subpoena recipient) concerning the identified topics (ex vessel pricing, opening date of crab fisheries, and certain inter-buyer purchases of live crab), (2) that Defendants would not object to a request by Plaintiff for a reasonable extension of the deadline for amending the complaint if needed to deal with issues related to third party discovery, and (3) that Defendants would agree to produce responsive communications with the subpoena recipient in the event that it objects to doing so based on the ground that it was unduly burdensome for the Plaintiff to request from a third party documents in possession of a party. Ex. A, p. 6. Defendants agreed to the first two conditions described above, (in the case of the second, on the condition that Defendants will have 60 days to

respond to the amended complaint, which is agreeable), but refused the third, taking the position that any such dispute can be addressed before this Court, if and when it arises. Ex. A, pp. 2, 4.[3]

Plaintiff is making a concession to Defendants by agreeing to seek these communications only from third parties, thereby placing all burden on those parties and not Defendants, and by completely dropping one of the categories of communications previously sought (i.e., communications between Defendants and state officials concerning season opening dates) . However, Plaintiff is not willing to shoulder the risk that, in doing so, he ends up with no responsive communications between Defendants and some or all of the third parties, should they refuse to produce communications that Plaintiff could get directly from Defendants. *See Soto v. Castlerock Farming & Transp., Inc.,* 282 F.R.D. 492, 505 (E.D. Cal. 2012). Thus, Plaintiff respectfully requests that if the Court is not inclined to require Defendants to agree to produce responsive communications with a third party who refuses to produce them on this ground, that Plaintiff be allowed to serve the requests on Defendants for communications with five other ex vessel buyers concerning ex vessel prices, season opening dates, and purchases from buyers that control certain ports, during the last four seasons, as originally proposed.

## B.    Defendants' Position

Defendants object to these requests as overbroad, unduly burdensome, not "targeted discovery," and unlikely to discover relevant evidence of direct purchaser actions resulting from coercion. The foregoing notwithstanding, Defendants agreed to permit Plaintiffs to seek limited document discovery from the third parties listed in this request on the subject of alleged coercion. Defendants do not agree to respond to the categories requested in the third-party subpoenas in the event that a subpoenaed party objects on the grounds that Defendants possess the documents. This is an issue that can and should be addressed if, and when, it arises.

---

[3] As the meet and confer email makes clear, Defendants agreed that Plaintiff could subpoena communications from the third parties concerning each of the topics listed in requests 8-10 of Plaintiff's original email on May 23 (i.e., ex vessel pricing, opening date of crab fisheries, and a certain category of inter-buyer purchases of live crab). *See* Ex. A at pp. 9 (original email with requests 8-10), 5 (Plaintiff's email memorializing Defendants' proposal re requests 8-10), and 4 (Defendants expressing agreement with memorialization with two caveats). Defendants' apparent assertion now that the agreement only covered communications concerning "coercion" is refuted by this written back and forth between the parties; and any such limitation would be both unjustified, as Plaintiff alleges both coerced and non-coerced conspiratorial conduct by other buyers, *see* Dkt. 1, ¶¶ 10-11, 81, 108, 132, 133, 215-19 and would actually increase the burden on the responding parties, who would have to make the difficult analytical determination whether a communication related to coercion, as opposed to the far easier determination whether it related to ex vessel pricing, opening date of crab fisheries, and/or a certain category of inter-buyer purchases of live crab.

Dated: June 6, 2024

Respectfully submitted,

<table>
<tr>
<td>

_/s/Stuart G. Gross_

Stuart G. Gross (State Bar No. 251019)
sgross@grosskleinlaw.com
Travis H.A. Smith (State Bar No. 331305)
tsmith@grosskleinlaw.com
Ross A. Middlemiss (State Bar No. 323737)
rmiddlemiss@grosskleinlaw.com
GROSS KLEIN PC
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688


Steven N. Williams (State Bar No. 175489)
swilliams@stevenwilliamslaw.com
STEVEN WILLIAMS LAW, P.C.
201 Spear Street, 1100
San Francisco CA 94105
t (415) 260-7909


Matthew W. Ruan (State Bar No. 264409)
mruan@fklmlaw.com
FREED KANNER LONDON & MILLEN
LLC
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
t (224) 632-4500
f (224) 632-4521


_Attorneys for Plaintiffs_

</td>
<td>

_/s/Michelle J. Rosales_[4]

Charles H. Samel (SBN 182019)
charles.samel@stoel.com
Edward C. Duckers (SBN 242113)
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900


Matthew D. Segal (SBN 190938)
matthew.segal@stoel.com
Michelle J. Rosales (SBN 343519)
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700


Timothy W. Snider (OSBN 034577,
appearing pro hac vice)
timothy.snider@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380


_Attorneys for Defendants_

</td>
</tr>
</table>

---

[4] Per authorization with regards to Defendants' sections. Defendants demanded, at 10:05 pm on June 6 (without previous meet and confer), that footnote 3 be deleted from _Plaintiff's_ Section IV.A. and that Exhibit B be omitted as an exhibit. These demands were rejected by Plaintiff and, after providing Defendants notice of his intent to do so and an opportunity to object (which was not taken), Plaintiff filed the instant brief with his footnote 3 and Exhibit B.