1  CHARLES H. SAMEL (SBN 182019)
   charles.samel@stoel.com
2  EDWARD C. DUCKERS (SBN 242113)
   ed.duckers@stoel.com
3  STOEL RIVES LLP
   1 Montgomery Street, Suite 3230
4  San Francisco, CA 94104
   Telephone: 415.617.8900
5
6  MATTHEW D. SEGAL (SBN 190938)
   matthew.segal@stoel.com
   MICHELLE J. ROSALES (SBN 343519)
7  michelle.rosales@stoel.com
   STOEL RIVES LLP
8  500 Capitol Mall, Suite 1600
   Sacramento, CA 95814
9  Telephone: 916.447.0700

10 TIMOTHY W. SNIDER (OSBN 034577, Admitted *Pro Hac Vice*)
   timothy.snider@stoel.com
11 STOEL RIVES LLP
   760 SW Ninth Avenue, Suite 3000
12 Portland, OR 97205
   Telephone: 503.224.3380
13
   *Attorneys for Defendants*
14

15           UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19 BRAND LITTLE and ROBIN BURNS,            Case No. 3:23-cv-01098-AGT
   Individually and on Behalf of All Others
20 Similarly Situated,                      **DEFENDANTS' NOTICE OF MOTION
                                            AND OMNIBUS MOTION TO DISMISS
21              Plaintiff,                   AND MEMORANDUM IN SUPPORT**

22         v.
                                            Date:      January 24, 2025
23 PACIFIC SEAFOOD PROCUREMENT, LLC;        Time:      10:00 a.m.
   PACIFIC SEAFOOD PROCESSING, LLC;         Courtroom: A, 15th Floor
24 PACIFIC SEAFOOD FLEET, LLC; PACIFIC      Judge:     The Honorable Alex G. Tse
   SEAFOOD DISTRIBUTION, LLC; PACIFIC
25 SEAFOOD USA, LLC; DULCICH, INC.;
   PACIFIC SEAFOOD – EUREKA, LLC;
26 PACIFIC SEAFOOD – CHARLESTON, LLC;
   PACIFIC SEAFOOD – WARRENTON, LLC;
27 PACIFIC SEAFOOD – NEWPORT, LLC;
   PACIFIC SEAFOOD – BROOKINGS, LLC,
28 PACIFIC SEAFOOD – WESTPORT, LLC;

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

3:23-CV-01098-AGT

1     PACIFIC SURIMI – NEWPORT, LLC; BLUE
RIVER SEAFOOD, INC.; SAFE COAST
2     SEAFOODS, LLC; SAFE COAST
SEAFOODS WASHINGTON, LLC; OCEAN
3     GOLD SEAFOODS, INC.; NOR-CAL
SEAFOOD, INC.; KEVIN LEE; AMERICAN
4     SEAFOOD EXP, INC.; CALIFORNIA
SHELLFISH COMPANY, INC.; ROBERT
5     BUGATTO ENTERPRISES, INC.; ALASKA
ICE SEAFOODS, INC.; LONG FISHERIES,
6     INC.; CAITO FISHERIES, INC.; CATIO
FISHERIES, LLC; SOUTHWIND FOODS,
7     LLC; FISHERMEN'S CATCH, INC.;
GLOBAL QUALITY FOODS, INC.;
8     GLOBAL QUALITY SEAFOOD LLC;
OCEAN KING FISH, INC.; SOUTH BEND
9     PRODUCTS LLC; SWANES SEAFOOD
HOLDING COMPANY LLC; BORNSTEIN
10     SEAFOODS, INC.; ASTORIA PACIFIC
SEAFOODS, LLC; and DOES 29-60,

11

12                  Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

3:23-CV-01098-AGT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 24, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom A, 15th Floor, before the Honorable Alex G. Tse, Defendants[1] will, and hereby do, move the Court for an order dismissing the Amended Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the Notice of Motion and Motion, the Proposed Order, the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and upon such other matters presented to the Court at the time of hearing.

## RELIEF SOUGHT

Defendants seek dismissal with prejudice of each claim asserted in the Amended Complaint (Dkt. No. 81), pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] This motion is filed on behalf of all undersigned Defendants.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

3:23-CV-01098-AGT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I. INTRODUCTION ................................................................................................................ 2

II. BACKGROUND ................................................................................................................. 5

    A.    Procedural Background .................................................................................... 5

    B.    Summary of Allegations in the Amended Complaint ............................................. 6

        1.    Dungeness Crab Is a Derby-Style Fishery Where Commercial Crabbers Control the Supply Through Vessel-Specific Licenses ............... 6

        2.    Crabbers and Buyers Negotiate Ex Vessel Prices at the Beginning of the Season, in Some Cases Under Supervision of State Regulators ............................................................................................. 7

            a.    The 2015/16, 2016/17, 2017/18, and 2018/19 Seasons ................. 8

            b.    The 2019/20 Season ...................................................................... 8

            c.    The 2020/21 Season ...................................................................... 8

            d.    The 2021/22 Season ...................................................................... 9

            e.    The 2022/23 Season ...................................................................... 9

            f.    The 2023/24 Season ...................................................................... 9

            g.    A Few Defendants at Different Times Complained to CI #1 About His Ex Vessel Prices and Refused to Buy from CI #1 Because the Prices He Paid to Crabbers Were Too High ............. 11

        3.    Ex Vessel Price Negotiations Continue After the Season Begins............. 12

        4.    Defendants Pay Different Ex Vessel Prices to Different Crabbers, and Adjust Quoted Prices, Through Bonuses, Retroactive Payments, and Bait................................................................................. 13

        5.    Plaintiffs Themselves Allege No Sales to Any Defendant or Any Sales at Alleged Cartel Prices During the Four Years Preceding this Lawsuit .................................................................................................. 13

III. LEGAL STANDARDS..................................................................................................... 14

IV. ARGUMENT...................................................................................................................... 14

    A.    Plaintiffs Fail to Plausibly Allege a Coastwide *Per Se* Unlawful Price-Fixing Conspiracy Among 34 Named Defendants and Unnamed Co-Conspirators .................................................................................................... 14

        1.    The Court Should Disregard Improper Group-Pleading Allegations in Evaluating the Sufficiency of the Section 1 Claim ............................... 16

        2.    The Court Should Dismiss Certain Defendants Because the Amended Complaint Alleges Purely Unilateral Conduct ...................... 17

        3.    The Amended Complaint Fails to Plead Direct Evidence of a Horizontal Price-Fixing Conspiracy ....................................................... 20

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
       -i-       3:23-CV-01098-AGT

1

**TABLE OF CONTENTS**
(continued)

2                                                                                                                           **Page**

3        4.    The Amended Complaint Fails to Plead Circumstantial Evidence of
               a Horizontal Price-Fixing Conspiracy ........................................................ 23

4              a.    The Amended Complaint Fails to Plead Parallel Conduct ........... 24

5              b.    The Amended Complaint Fails to Plead "Plus Factors" .............. 26

6  B.    The Statute of Limitations Bars Claims Predating March 13, 2019 ................... 32

7  C.    Plaintiffs Lack Standing to Assert Antitrust Claims Against Defendants ........... 34

8  D.    Plaintiff's State Law and Declaratory Judgment Claims Should Be
         Dismissed ............................................................................................................ 36

9        1.    The Cartwright Act and Unfair Competition Law Claims Fail for
               the Same Reasons as the Section 1 Claim .................................................. 36

10       2.    A Declaratory Judgment Claim Does Not State a Separate Cause of
               Action ......................................................................................................... 38

11 E.    The Amended Complaint Should Be Dismissed With Prejudice ........................ 39

12 V. CONCLUSION ................................................................................................................. 40

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*In re Am. Express Anti-Steering Rules Antitrust Litig.,*
   19 F.4th 127 (2d Cir. 2021) ................................................................... 34

5

*Am. Needle, Inc. v. NFL,*
   560 U.S. 183 (2010) ............................................................................... 15

6

7

*In re Animation Workers Antitrust Litig.,*
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) .................................... 32, 33, 34

8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... 14, 27

9

10

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
   459 U.S. 519 (1983) ............................................................................... 34

11

12

*In re ATM Fee Antitrust Litig.,*
   686 F.3d 741 (9th Cir. 2012) ................................................................. 35

13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................... passim

14

15

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
   691 F. App'x 389 (9th Cir. 2017) ......................................................... 26

16

17

*Brantley v. NBC Universal, Inc.,*
   675 F.3d 1192 (9th Cir. 2012) ............................................................... 34

18

*Brennan v. Concord EFS, Inc.,*
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ............................................... 17

19

20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977) ............................................................................... 34

21

22

*Burtch v. Milberg Factors, Inc.,*
   662 F.3d 212 (3d Cir. 2011) .................................................................. 20

23

*In re Cal. Bail Bond Antitrust Litig.,*
   511 F. Supp. 3d 1031 (N.D. Cal. 2021) .......................................... 16, 17

24

25

*Cal. CNG, Inc. v. S. Cal. Gas Co.,*
   96 F.3d 1193 (9th Cir. 1996) ................................................................. 22

26

27

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,*
   445 U.S. 97 (1980) ........................................................................... 21, 22

28

Stoel Rives LLP
Attorneys at Law
San Francisco

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-iii-

3:23-CV-01098-AGT

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ............................................................... 37

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999)............................................................. 20

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
    499 U.S. 365 (1991)............................................................................. 21

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ............................................................... 38

*City of Vernon v. S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992)............................................................. 15

*Club One Casino, Inc. v. Perry*,
    837 F. App'x 459 (9th Cir. 2020) ........................................................ 39

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
    858 F.2d 499 (9th Cir. 1988)............................................................... 32

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) .......................................................... passim

*Eastman v. Quest Diagnostics Inc.*,
    724 F. App'x 556 (9th Cir. 2018) ........................................................ 37

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ............................................................... 38

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
    No. 19-cv-00078-EJD, 2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) ........................... 16, 24

*Frost v. LG Elecs., Inc.*,
    801 F. App'x 496 (9th Cir. 2020) ........................................................ 20

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ........................................... 33, 34

*Gibson v. MGM Resorts Int'l*,
    No. 23-cv-00140-MMD-JDA, 2023 WL 7025996 (D. Nev. Oct. 24, 2023) ................... 25, 26

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................... 23

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 425 (3d Cir. 1993).................................................................. 36

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Hogan v. Pilgrim's Pride Corp.*,
No. 16-cv-02611-RBJ, 2018 WL 1316979 (D. Colo. Mar. 14, 2018) ................................... 24

*Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
No. 16-CV-04865-BLF, 2019 WL 3804667 (N.D. Cal. Aug. 13, 2019) .............................. 37

*Honey Bum, LLC v. Fashion Nova, Inc.*,
63 F.4th 813 (9th Cir. 2023) ...................................................................................... 20

*Hyland v. HomeServices of Am., Inc.*,
771 F.3d 310 (6th Cir. 2014) ..................................................................................... 20

*Jacob Blinder & Sons, Inc. v. Gerber Prods. Co. (In re Baby Food Antitrust Litig.)*,
166 F.3d 112 (3d Cir. 1999) ....................................................................................... 26

*Janda v. T-Mobile USA, Inc.*,
378 F. App'x 705 (9th Cir. 2010) .............................................................................. 39

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) ...................................................................... 28

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......................................................................... passim

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) ..................................................................................... 38

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
No. C07-01057 MJJ, 2007 WL 2318906 (N.D. Cal. Aug. 13, 2007) .......................... 36

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020) ..................................................................................... 38

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ..................................................................................... 40

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
729 F. App'x 528 (9th Cir. 2018) .............................................................................. 37

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................................................... 34

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013) ...................................................................................... 20

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ..................................................................................... 38

*Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*,
   No. 6:21-CV-06507 EAW, 2022 WL 4017895 (W.D.N.Y. Sept. 2, 2022) ........................... 24

*In re Musical Instruments*,
   798 F.3d 1186 (9th Cir. 2015) ......................................................................................... passim

*N. Am. Wellness Ctr. Holdings, LLC v. Temecula Valley Real Est., Inc.*,
   771 F. App'x 793 (9th Cir. 2019) ................................................................................................ 39

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
   795 F.3d 1124 (9th Cir. 2015) ...................................................................................... 27, 31, 37

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ................................................................................................. 35

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*,
   998 F.2d 1224 (3d Cir. 1993) ................................................................................................. 26

*In re Pork Antitrust Litig.*,
   No. 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019) ................................................. 24

*Real Est. Exch., Inc. v. Zillow, Inc.*,
   No. C21-0312 TSZ, 2023 WL 5278115 (W.D. Wash. Aug. 16, 2023) ................................ 20

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ................................................................................................. 39

*SmileDirectClub, LLC v. Tippins*,
   31 F.4th 1110 (9th Cir. 2022) ............................................................................................... 16

*Snake River Valley Elec. Ass'n v. PacifiCorp*,
   357 F.3d 1042 (9th Cir. 2004) .............................................................................................. 21

*Stewart v. Gogo, Inc.*,
   No. C-12-5164 EMC, 2013 WL 1501484 (N.D. Cal. Apr. 10, 2013) ................................. 37

*In re Tesla Motors, Inc. Sec. Litig.*,
   75 F. Supp. 3d 1034 (N.D. Cal. 2014) .................................................................................. 40

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ................................................................................................. 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................................... 16

*United Brotherhood of Carpenters & Joiners of America v. Building &*
   *Construction Trade Department, AFL-CIO*,
   770 F.3d 834 (9th Cir. 2014) ................................................................................................. 17

*United National Maintenance, Inc. v. San Diego Convention Center, Inc.*,
   766 F.3d 1002 (9th Cir. 2014) ............................................................................. 21

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ................................................................... 36

*Williams v. California*,
   764 F.3d 1002 (9th Cir. 2014) ............................................................................. 39

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. 2016) ................................................................... 40

**Statutes**

15 U.S.C. § 15b ............................................................................................................. 32

Cal. Bus. & Prof. Code § 16750.1 ............................................................................... 32

Cal. Bus. & Prof. Code § 17208 .................................................................................. 32

Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.* .................................... passim

Clayton Act, 15 U.S.C. § 4 .......................................................................................... 35

Declaratory Judgment Act, 28 U.S.C. § 2201 ...................................................... 6, 38

Or. Rev. Stat. 646.739 ....................................................................................... 10, 22, 23

Or. Rev. Stat. 646.739(2)(a) .................................................................................. 10, 22

Or. Rev. Stat. 646.739(2)(e) .................................................................................. 11, 22

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-
   1968 ........................................................................................................................ 36

Sherman Act, 15 U.S.C. § 1 ................................................................................. passim

Sherman Act, 15 U.S.C. § 2 ......................................................................... 5, 14, 38

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ................................ passim

Unfair Practice Act, Cal. Bus. & Prof. Code § 17000 ................................................. 5

**Rules**

Fed. R. Civ. Proc. 9(b) ................................................................................................. 32

Fed. R. Civ. Proc. 12(b)(6) .................................................................................. passim

Or. Admin. Rule 603-076-0052 ................................................................................... 23

Or. Admin. Rule 603-076-0052(1)(a) ................................................................. 11

Or. Admin. Rule 603-076-0052(3) ..................................................................... 22

**Other Authorities**

*An Analysis of Antitrust Principles and Their Application* ¶ 2031 (4th ed. 2024) ...................... 26

David P. Byrne, Leslie A. Martin, & Jia Sheen Nah, "Price Discrimination by
   Negotiation: A Field Experiment in Retail Electricity," *The Quarterly Journal
   of Economics*, Vol. 137, Issue 4 (Nov. 2002) ........................................................ 30

Marvin B. Lieberman & David B. Montgomery, "First-Mover Advantages,"
   *Strategic Management Journal*, Vol. 9 (1988) ...................................................... 29

Raymond Deneckere & Dan Kovenock, "Price Leadership," *Discussion Paper,
   No. 773, Northwestern University, Kellogg School of Management,* (March
   1988) ............................................................................................................. 29

Richard A. Posner, *Antitrust Law: An Economic Perspective* (9th ed. 2014) ...................... 20, 26

Robert S. Pindyck & Daniel L. Rubinfeld, *Microeconomics* (8th ed. 2013) ........................... 28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### STATEMENT OF ISSUES TO BE DECIDED

3      1.      Whether Plaintiffs fail to plausibly allege a *per se* unlawful horizontal price-fixing

4  agreement for the ex vessel price of Dungeness crab spanning California, Oregon and

5  Washington between and among the 34 Defendants and other unnamed co-conspirators from

6  January 1, 2016 to present, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section

7  1") (First Cause of Action).

8      2.      Whether the statute of limitations bars claims predating March 13, 2019.

9      3.      Whether Plaintiffs fail to plausibly allege antitrust standing.

10      4.      Whether Plaintiffs fail to plead California state law and declaratory judgment

11  claims (Second, Third, and Fourth Causes of Action) because, among other things, their Sherman

12  Act claim fails.

13      5.      Whether the Court should dismiss the Amended Complaint with prejudice.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

3:23-CV-01098-AGT

## I.  INTRODUCTION

This Court dismissed the original Complaint, including the Section 1 price-fixing claim, because it pled "that all, or substantially all, direct purchasers of fresh crab on the West Coast are part of a price-fixing conspiracy," but alleged "only a couple instances of coercion, impacting only some geographic areas."  (Dkt. No. 59, Order on Motion to Dismiss ("Order") at 4.)  It was "a big jump to conclude that hundreds of direct purchasers" were part of a price-fixing conspiracy because the allegations were not "specific enough to support a plausible 'multi-hundred-member buyer's cartel.'"  (*Id.* at 4-5.)  The Court gave leave to amend to address this "pleading problem," but instructed that any new complaint "needs to offer more detail" before the Court will allow a claim "that could involve hundreds of non-parties in discovery" to proceed.  (*Id.*  at 5.)

The Amended Complaint does nothing to remedy these defects.  Plaintiffs attempt to create the appearance of heft by adding 29 new Defendants (mostly corporate affiliates of other Defendants), and increasing the length of their pleading to 449 paragraphs over a sprawling 77 pages.  But Plaintiffs ignored this Court's admonition that the new complaint "needs to offer more detail" with allegations "specific enough" to plausibly allege a massive cartel.  (Order at 5.)  Instead, the Amended Complaint includes more of the same, reciting scattered "instances" and "occurrences" in "only some geographic areas" (*id.* at 4), but nothing that remotely suggests any agreement by any Defendant.

Plaintiffs allege one-off text messages between some Defendants, a handful of disconnected phone calls and meetings, and lengthy and random anecdotes of a newly discovered "Confidential Buyer Informant #1."  These new allegations, which describe lawful, unilateral conduct typically found in a competitive marketplace, come nowhere close to plausibly alleging a nine-year, *coastwide* price-fixing conspiracy involving the participation of the 34 Defendants and potentially hundreds of other ex vessel buyers.  Plaintiffs' "pleading problem" remains—their allegations "aren't specific enough to support a plausible" buyer's cartel and then make "a big jump" to a coastwide price-fixing conspiracy.  (*Id.* at 4-5.)  The Amended Complaint should be dismissed again.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-2-

3:23-CV-01098-AGT

***No Price-Fixing Conspiracy.***  In the Amended Complaint, Plaintiffs now contend that leading up to the opening of the 2015/16 season, all 35 Defendants (and innumerable others) collectively agreed to suppress the ex vessel price for Dungeness crab by refusing "to pay any higher amount than the price dictated by Pacific Seafood."  (Am. Compl. ¶¶ 170, 175.)  Unable to plead evidentiary facts to show, directly or circumstantially, each Defendant's conscious commitment to a price-fixing scheme, Plaintiffs resort to improper generic group pleading and conclusory allegations to summarily declare that "Defendants agreed."  The specific allegations to show how each Defendant participated in the formation or operation of the alleged conspiracy, which this Court warned were necessary to proceed further in the litigation, are entirely absent.

The only reference in the Amended Complaint to some of the Defendants collectively discussing ex vessel pricing is a meeting in December 2023 where representatives of certain Defendants "expressed a uniform position" on price.  (*Id.* ¶¶ 227-228.)  But that meeting was attended by *both crabbers and buyers* and was convened by a *state agency* as part of Oregon's regulatory program authorizing the agency to oversee annual seafood pricing negotiations.  Agency information about this meeting—of which this Court may take judicial notice—confirms that the meeting was actively supervised by state officials, and both crabbers and buyers who participated in the negotiations are granted immunity from antitrust liability by statute.  Whether considered individually or as a whole, Plaintiffs' allegations fall far short of plausibly alleging a vast, nearly decade-long, multi-state and multi-port price-fixing conspiracy, which is necessary before allowing "'a potentially massive factual controversy to proceed.'"  (Order at 4-5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).)  This Court should dismiss the Section 1 claim again—this time with prejudice.

***Time-Barred Claims.***  The Amended Complaint also alleges a "conspiracy period" going back to January 1, 2016, which is well outside the four-year statute of limitations applicable to Section 1 claims and Plaintiffs' related California state law claims.  (Am. Compl. ¶ 12.)  Plaintiffs likely feel compelled to find some way to extend the limitations period because the original Plaintiff, Brand Little, did not sell any Dungeness crab ex vessel to *any named Defendant* within four years of the filing of this lawsuit in March 2023.  The Amended Complaint, however, fails to

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                                        -3-                                        3:23-CV-01098-AGT

plausibly allege any basis for fraudulent concealment as required to toll the statute of limitations. Plaintiffs only may assert claims, if any somehow survive this motion to dismiss, which accrued on or after March 13, 2019.

*No Antitrust Standing.*  Plaintiffs also lack antitrust standing because neither pleads any injury caused by the alleged antitrust conspiracy. There are no factual allegations in the Amended Complaint to show that either Plaintiff sold Dungeness crab ex vessel to any Defendant within the limitations period.  Plaintiff Little attempts to get around this pleading problem by alleging sales to Unnamed Co-conspirators #1 and #2 (Am. Compl. ¶ 12) but pleads no factual allegations— none—connecting either buyer to the alleged price-fixing conspiracy, which is necessary to show he suffered an injury caused by it.  Plaintiff Robin Burns is even further removed from the alleged conspiracy.  She claims that she "stands in the place of her late husband," and alleges that he sold crab ex vessel to three Defendants.  But Plaintiff Burns pleads no express assignment or other legal basis that affords her standing to litigate claims that may have belonged to him.

*No California State Law Claims.*  Plaintiffs' parallel state law claims under the Cartwright Act and Unfair Competition Law ("UCL") rely upon the same alleged conduct as their Section 1 claim and fail for the same reasons.  Plaintiffs' declaratory judgment claim also fails because the law does not provide a standalone cause of action, and declaratory relief is otherwise unavailable when a pleading fails to state any claim for relief.

In sum, the Amended Complaint does nothing to cure the deficiencies in the original Complaint.  Instead, Plaintiffs allege precisely the kind of implausible antitrust conspiracy case, unsupported by specific factual allegations, that the Supreme Court and the Ninth Circuit have determined should be dismissed at the pleading stage before defendants are improperly subjected to the expense of massive discovery.  This Court has provided Plaintiffs with two opportunities— and discovery—to attempt to plead a plausible antitrust claim.  It is evident they have not and cannot, and this Court should now dismiss the Amended Complaint with prejudice.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-4-

3:23-CV-01098-AGT

## II. BACKGROUND

**A.    Procedural Background**

Plaintiff Brand Little filed this lawsuit on March 13, 2023 against six Pacific Seafood entities only.  (Dkt. No. 1.)  In the original Complaint, Little claimed that Pacific Seafood unlawfully maintained monopsony power in an alleged "wholesale-input" market, in violation of Sherman Act, 15 U.S.C. § 2 ("Section 2").  (*See* Order at 5-7.)  Little also asserted a Section 1 claim that was largely derivative of his Section 2 theory.  He alleged that hundreds of other ex vessel buyers waited to offer prices to crabbers until after Pacific Seafood set its price, they then followed Pacific Seafood's pricing, and most felt coerced to do so because Pacific Seafood could use its power in the processing market to retaliate against noncompliant buyers.  (*See id.* at 3-4.)  The original Complaint also included state law claims, and a count for declaratory relief, all based on the same conduct alleged to support the federal antitrust claims.  (*See id.* at 7-9.)

After staying discovery, this Court granted Pacific Seafood's motion to dismiss the original Complaint in its entirety.  The Court dismissed the Section 1 claim for failing to plead a plausible price-fixing conspiracy because "purchasers have an economic rationale for tracking Pacific Seafood's pricing" and "sensibly will consider the price they will obtain from Pacific Seafood" since they sell "the excess that they cannot sell to restaurants and similar retailers" to Pacific Seafood.  (Order at 2-3.)  The Court also rejected Plaintiffs' conclusory allegation that "all, or substantially all" of the hundreds of direct purchasers are part of a coerced price-fixing conspiracy.  The Complaint included only "a couple instances of coercion" that did not support "a big jump" to a coastwide conspiracy.  (*Id.* at 4.)  This Court instructed that Plaintiff "needs to offer more detail" to plausibly allege a Section 1 conspiracy.  (*Id.* at 5.)

This Court also dismissed Plaintiff's Section 2 claim because Plaintiff's "wholesale-input market" was one of "Little's invention"—a "gerrymandered market."  (*Id.* at 6.)  Plaintiff's Cartwright Act and UCL claims failed for the same reasons as the Section 1 and Section 2 claims. (*Id.* at 7, 9-10.)  Plaintiff's separate Unfair Practice Act ("UPA") claim for below-cost sales also was dismissed because the Complaint failed to allege Pacific Seafood's costs of doing business.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-5-

3:23-CV-01098-AGT

(*Id.* at 8.)  And Plaintiff's declaratory relief was dismissed because the Complaint failed to otherwise plead a viable claim.  (*Id.* at 10.)

The Court then granted Plaintiff leave to amend and to request "targeted discovery" if he believed it would "improve his pleading."  (*Id.*)  Plaintiff did seek discovery, which the Court allowed in part (Dkt. No. 61), and on August 20, 2024, filed the Amended Complaint.  The Amended Complaint added Plaintiff Robin Burns—the wife of a commercial crabber who died in 2021—and named an additional 29 Defendants on the theory that these Defendants, the original Pacific Seafood defendants, other "Unnamed Co-Conspirators," and innumerable unnamed Doe-defendants all agreed to fix ex vessel prices for Dungeness crab.  Expanding on the original allegations, Plaintiffs now allege that the price-fixing conspiracy targeted all of the ports in Central and Northern California, Oregon, and Washington (except for ports in the Puget Sound) from January 1, 2016, to present in violation of Section 1, the Cartwright Act and the UCL, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**B.**     **Summary of Allegations in the Amended Complaint**

      **1.**     **Dungeness Crab Is a Derby-Style Fishery Where Commercial Crabbers Control the Supply Through Vessel-Specific Licenses**

Dungeness crab is a species of shellfish that is found off the coast of Northern California, Oregon, and Washington (which, excluding crab caught in Puget Sound, the Amended Complaint calls the "Pacific NW Area"), and both consumed domestically and exported to Asia.  (Am. Compl. ¶¶ 143-144.)  Commercial Dungeness crab fishing requires state-specific permits tied to specific vessels, so the fishermen control the supply.  (*Id.* ¶ 145.)  The fishery is a "derby" fishery and once the season opens there is no limit on how much crab may be caught and sold with most of the catch brought in when the season opens.  (*Id.*)

Ex vessel buyers of Dungeness crab also must have state-specific licenses.  (*Id.* ¶ 149.)  Buyers resell live or fresh cooked crab for immediate consumption, but due to the high volume of crab landed early in the season, the larger buyers also freeze and can crab for later sale.  (*Id.* ¶¶ 150, 155.)  Some buyers also resell crab purchased ex vessel to other buyers.  (*Id.* ¶ 153.)  There

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

126719944.1 0052902-00054

1    are many licensed ex vessel buyers, with 239 licensed buyers purchasing Dungeness crab during

2    the 2023/24 season alone.  (*Id.* ¶ 151.)

3         The commercial crabbing season is set by state regulators and typically starts on

4    December 1, except for Central California, which starts November 15.  (*Id.* ¶ 146.)  Regulators

5    may delay the season due to a variety of factors, such as domoic acid, whale entanglements, or

6    low meat content.  (*Id.* ¶¶ 180, 186, 208; *see also* Declaration of Timothy Snider in Support of

7    Defendants' Request for Judicial Notice ("Snider Decl.") ¶¶ 3–5, Exs. 1–3.[2])  At the beginning of

8    the season when the amount of crab landed outpaces demand from smaller live buyers, larger

9    commercial crabbers sell to larger buyers, including "Defendants." (Am. Compl. ¶ 155.)

10   Depending on the season, Defendants may buy more crab than they are able to sell by the

11   beginning of the following season.  If the season opening is delayed, these buyers are able to sell

12   frozen crab at higher prices when consumers "are clamoring for holiday crab."  (*Id.* ¶ 157.)

13        **2.    Crabbers and Buyers Negotiate Ex Vessel Prices at the Beginning of the
                   Season, in Some Cases Under Supervision of State Regulators**
14

15        According to the Amended Complaint, commercial crabbers "being who they are and

16   dock talk being what it is" learn from each other what buyers are paying for crab and then

17   demand "a similar price from the same or different buyers."  (*Id.* ¶ 168.)  In response to this

18   collective action by crabbers and in advance of the 2015/16 season, Plaintiffs allege "it was

19   agreed among Defendants that they would limit the amount they paid for Dungeness crab" in

20   order to "suppress the ex vessel price."  (*Id.* ¶ 170.)  Plaintiffs claim that all 35 Defendants (and

21   other unnamed buyers) agreed "to allow Pacific Seafood to set the opening ex vessel price for

22   Dungeness crab" and "refuse to state a price until Pacific Seafood has stated what the price is."

23   (*Id.* ¶ 175.)  The Amended Complaint, however, includes no factual allegations supporting how

24   such an agreement was formed among any Defendants for any season—let alone *all* Defendants

25   for *every* season from January 1, 2016 to present.

26

27   [2] This Court may take judicial notice of information made publicly available by government
     agencies, including on their official websites.  (*See* Defendants' Request for Judicial Notice
28   ("RJN"), filed herewith.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -7-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

### a. The 2015/16, 2016/17, 2017/18, and 2018/19 Seasons

The Amended Complaint contains *no allegations* of price negotiations, pricing decisions, or any concerted action during the first four seasons of the alleged "conspiracy period."

### b. The 2019/20 Season

During the 2019/20 season, Plaintiffs allege that a representative of "Fathom," defined as Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc. (Am. Compl. ¶¶ 80-87), sent a text message to a representative of "Bornstein," defined as Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC (*id.* ¶¶ 120-125), asking "What's the price doing?" and indicating he heard "Pacific is raising to $3.25." (*Id.* ¶ 180.) The Bornstein representative responded that the price was "$3 still and will be Monday." (*Id.* ¶ 181.) Relying on this single text exchange, Plaintiffs allege that none of the Defendants "paid more than $3" at the season opening, except "Nor-Cal" who did not "comply." (*Id.* ¶¶ 185, 195.) The Amended Complaint, however, includes no allegations describing any communications or meetings (or anything) relating to any of the other alleged 11 Defendant groups (comprising 31 separate defendants), the basis for their pricing decisions for the 2019/20 season in any port, or any agreement among any of the Defendants.

### c. The 2020/21 Season

During the 2020/21 season and at the height of the pandemic, the Amended Complaint alleges that the season was delayed, and then crabbers collectively decided to "remain[] tied up in port" refusing to fish at Pacific Seafood's offered price of $3 per pound.[3] (*Id.* ¶ 186.) According to Plaintiffs, in January 2021, representatives of Ocean King Fish, Inc. and Bornstein exchanged text messages discussing the price crabbers were demanding ($2.75 or $3), and the price Pacific Seafood was offering ($2.50 or $2.75). (*Id.* ¶¶ 187-191.) The Bornstein representative then confirmed Bornstein was offering $2.75, like Pacific Seafood. (*Id.*) Plaintiffs allege no facts to

---

[3] The season was delayed in Washington and part of Oregon until February 16, 2021, due to elevated levels of domoic acid. (*See* Snider Decl. ¶ 3, Ex. 1 (February 2021 Washington Department of Fish and Wildlife Industry Notice); *id.* ¶ 4, Ex. 2 (February 2021 Oregon Department of Fish and Wildlife News Release); *id.* ¶ 9, Ex. 7 (Washington Department of Fish and Wildlife Domoic Acid informational webpage).) Crabbing south of Cape Falcon, Oregon was delayed until December 16 due to low crab meat yield, but most crabbers did not begin fishing until January 9, 2021, to allow price negotiations to occur. (*Id.* ¶ 5, Ex. 3 (December 2021 Oregon Department of Fish and Wildlife Dungeness Crab Fishery Newsletter).) The court may take judicial notice of these government documents. (*See* RJN.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-8-

3:23-CV-01098-AGT

1    show that Bornstein's decision was the result of an agreement, as opposed to unilateral conduct,

2    and Plaintiffs allege nothing about any of the other 11 Defendant groups (comprising 32 separate

3    defendants) relating to the 2020/21 Season—no communications, no pricing, no agreements.

4                    **d.      The 2021/22 Season**

5            According to the Amended Complaint, at the start of the 2021/22 season "Nor-Cal, like

6    the other Defendants, got in line with Pacific Seafood on the opening price." (*Id.* ¶ 196.)  The

7    only communication alleged for that entire season, however, is between a representative of Nor-

8    Cal and an unidentified crabber, in which Nor-Cal indicates it will be matching Pacific Seafood's

9    $4.75 price, but Plaintiffs do not allege which "Pacific Seafood" entity offered that price, in

10   which port, or where Nor-Cal intended to match. (*Id.* ¶¶ 197-199.)  Plaintiffs also allege nothing

11   about any agreement between or among any of the other Defendant groups, or any statements by

12   any of the 31 other separate company Defendants.  Nor does the Amended Complaint allege a

13   price offered by any Defendant other than Pacific Seafood and Nor-Cal.

14                   **e.      The 2022/23 Season**

15           Plaintiffs allege that the 2022/23 season was delayed until December 31, 2022, and that

16   Defendants did not offer a price in advance of the opening date, resulting in some crabbers in

17   California deciding not to wait any longer and to begin fishing "open ticket." (*Id.* ¶¶ 208-210.)

18   Once these crabbers were on the water, Defendant Nor-Cal initially paid $5 per pound before

19   later withdrawing that price, while Pacific Seafood stated its price was $2.25, which drew no

20   takers. (*Id.* ¶¶ 213-215.)  Pacific Seafood eventually increased its price offer to $3 per pound for

21   the first 400,000 pounds, and $2.25 thereafter. (*Id.*)  Plaintiffs allege nothing about any

22   agreement between or among any of the Defendants, or even any conduct or statements by any of

23   the 21 other separate company Defendants.  Nor does the Amended Complaint allege a price

24   offered by any Defendant other than Pacific Seafood and Nor-Cal.

25                   **f.      The 2023/24 Season**

26           Plaintiffs allege that in advance of the 2023/24 season—which opened after the original

27   Complaint was filed—representatives of "Safe Coast," "Caito" and Pacific Seafood all

28   communicated different opening price expectations to "Confidential Buyer Informant #1" ("CI

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -9-                    3:23-CV-01098-AGT

#1"), an alleged new buyer who had entered the market.  Safe Coast's representative told CI #1 that "1.85-2.00 is the number" and later that "PAC will make the decision" and "could be as high as 2.25."  (*Id.* ¶ 223-225.)  Caito's representative told CI #1 that it would not offer a price until Pacific Seafood did.  (*Id.* ¶ 226.)  And a Pacific Seafood employee told CI #1 that it would offer a price "less than $2/lb."  (*Id.* ¶ 227.)  Plaintiffs do not allege the actual opening price or whether any Defendants (let alone all) offered the same price.

The Amended Complaint next alleges a meeting in mid-December 2023 attended by CI #1, and representatives of Pacific Seafood, Bornstein, Fathom, Hallmark, and Safe Coast, in which those Defendants "expressed a uniform position" on price.  (*Id.* ¶¶ 227-228.)  The Amended Complaint, however, omits that this meeting was part of *state-supervised negotiations* between crabbers and buyers overseen by the Oregon Department of Agriculture ("ODA") pursuant to a regulatory program created by the Oregon Legislature that grants participants immunity from liability under state and federal antitrust laws.  (*See* Snider Decl. ¶ 6, Ex. 4 (2023 ODA Dungeness Crab Price Negotiations meeting minutes); *id.* ¶ 7, Ex. 5 (executed signature pages of the Oregon Department of Agriculture's pre-negotiation agreement).[4])  Oregon's "regulatory program is intended to grant immunity from federal and state antitrust laws to Oregon seafood harvesters and dealers for the limited purpose of allowing the harvesters and the dealers to bargain collectively and to arrive at a negotiated season starting price," and the activities of any participant "may not be considered to be in restraint of trade, a conspiracy or combination" in violation of Oregon state or federal antitrust laws.  Or. Rev. Stat. 646.739(2)(a).

Such state-supervised pricing negotiations are intended "to displace competition … for the limited purpose of allowing the harvesters and the dealers to bargain collectively and to arrive at a negotiated season starting price."  *Id.*  The statute authorizes the director of ODA "to supervise the negotiations between the parties, review the season starting prices established by the negotiations and approve the season starting prices proposed by the parties before the season starting prices take effect."  Or. Rev. Stat. 646.739(2)(e).  "The director must approve the

---

[4] The Court may take judicial notice that this meeting was sponsored by ODA under Or. Rev. Stat. 646.739 because that information is reflected in ODA's publicly available official meeting minutes.  (*See* Snider Decl. ¶ 6, Ex. 4; *see also* RJN.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -10-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

proposed season starting prices and any adjustments to previously approved season starting prices before the season starting prices may be implemented." *Id.*

Before the opening of each season, the ODA director may convene "representatives of the seafood harvesters and seafood dealers, at a predetermined location, date and time to enter into price negotiations with the objective of reaching agreement on a negotiated season starting price for review and approval by the Department." Or. Admin. Rule 603-076-0052(1)(a).  Participants must sign a "Pre-Negotiation Agreement for Supervised Crab Price Negotiations," which contains safeguards to ensure that the ODA can adequately supervise the negotiations and that the conduct of the parties will *qualify for immunity from state and federal antitrust liability*.  (Snider Decl. ¶ 6, Ex. 4, at 18 (Pre-Negotiation Agreement for Supervised Crab Price Negotiations – 2023); *id.* ¶ 7, Ex. 5 (executed signature pages).)  The agenda, attendees, and minutes of the annual Dungeness Crab Price Negotiations are made publicly available by the ODA following the negotiations, and all of these steps were undertaken as part of the December 2023 meeting alleged in the Amended Complaint.  (*Id.* ¶ 5.)

Other than the December 2023 meeting subject to immunity from state and federal antitrust liability, Plaintiffs allege no other communications between or among any of the 35 Defendants relating to ex vessel prices during the 2023/24 season.[5]

> ### g.    A Few Defendants at Different Times Complained to CI #1 About His Ex Vessel Prices and Refused to Buy from CI #1 Because the Prices He Paid to Crabbers Were Too High

The Amended Complaint also sets out—over nearly 120 separate paragraphs—CI #1's alleged interactions with some Defendants during the 2022/23 and 2023/24 seasons.  (Am. Compl. ¶¶ 283-402.)  For example, Plaintiffs allege that representatives of Pacific Seafood and Nor-Cal offered to buy crab from CI #1 at $3 per pound if he agreed to pay crabbers $2.25 per pound.  (*Id.* ¶ 285.)  Representatives of Nor-Cal, Safe Coast, Bornstein, Pacific Seafood, Caito and Fathom separately contacted CI #1 telling him he was paying too much for crab or asking him to lower his price to permit them to buy CI #1's excess crab.  (*Id.* ¶¶ 289-300, 304-306, 307-

---

[5] State-supervised price negotiations occurred in other seasons too, including the 2018/19 season. (*See* Snider Decl. ¶ 8, Ex. 6 (2018 ODA Dungeness Crab Price Negotiations Meeting Minutes).)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-11-

3:23-CV-01098-AGT

310.)  Bornstein also offered to buy albacore and black cod from CI #1, but only if he lowered his offering price for crab.  (*Id.* ¶ 301.)

When CI #1 refused to lower his input costs, Plaintiffs allege some Defendants "retaliated" against CI #1.  Caito "reneged" on a deal with CI #1 and purchased crab from Hallmark and Ocean Gold, and Global Quality, Fisherman's Catch and Safe Coast also refused to pay CI #1 amounts he claims are owed.  (*Id.* ¶¶ 313, 319, 334-341.)  A representative of Fathom somehow interfered with CI #1's use of a public hoist with the assistance of an Oregon harbormaster and the Oregon state police.  (*Id.* ¶¶ 320-333.)  And Pacific Seafood and Ocean Gold offered to buy other unidentified buyers' excess crab so long as those buyers did not deal with CI #1.  (*Id.* ¶ 342.)  The Amended Complaint includes no allegations, however, linking these unconnected and unilateral interactions with CI #1—a crab buyer—to an alleged conspiracy targeting crabbers, or any of the Defendants' pricing decisions for ex vessel crab in any season.

### 3.    Ex Vessel Price Negotiations Continue After the Season Begins

Plaintiffs next make the conclusory allegation that Defendants "coordinate their price offers" as the season progresses too, but the Amended Complaint offers only two text exchanges from the 2021/22 season involving two Defendants in support.  (*Id.* ¶¶ 232-242.)  In the first text exchange, representatives of Ocean King and Bornstein discuss whether the price of crab in San Francisco will be $3 per pound, and then the next day indicate that prices apparently increased to $4 per pound.  (*Id.* ¶ 236-240.)  Notably, while the allegations reference a discussion of San Francisco prices, Bornstein is only alleged to have made purchases in Oregon and Washington. (*Id.* ¶ 124-125.)  In the second text exchange, Nor-Cal refused to buy from one crabber at $7 per pound claiming $6 was "the dock price."  (*Id.* ¶ 242.)  The Amended Complaint includes no non-conclusory allegations of price coordination or matching prices by any Defendants after the start of any season, or any allegations at all about any of the other 30 Defendants' purchasing following the season opening—let alone an agreement to price the same.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-12-

3:23-CV-01098-AGT

**4.    Defendants Pay Different Ex Vessel Prices to Different Crabbers, and Adjust Quoted Prices, Through Bonuses, Retroactive Payments, and Bait**

Despite alleging that Defendants agreed to the same ex vessel price, Plaintiffs also allege that Defendants compete with each other by paying *different* amounts to crabbers and conceal those prices from each other.  (*Id.* ¶¶ 353-378.)  During the 2020/21 season, for example, Plaintiffs allege that Nor-Cal paid $5 per pound plus a $1 bonus so other buyers did not know it was paying $6 per pound.  (*Id.* ¶ 361.)  Plaintiffs allege a text exchange during the 2019/20 season, in which Fathom and Bornstein express concern that Pacific Seafood may retroactively increase their ex vessel price from $3 to $3.25 per pound.  (*Id.* ¶¶ 369-371.)  Plaintiffs also claim that certain Defendants do not charge crabbers for bait, which provides economic value to crabbers without increasing the ex vessel price paid.  (*Id.* ¶ 372.)  Plaintiffs claim that Defendants engage in this conduct to "cheat" on the alleged cartel (*id.* ¶ 357), but the allegations show that Defendants compete with each other and other buyers and that prices lack uniformity and vary from transaction to transaction.

**5.    Plaintiffs Themselves Allege No Sales to Any Defendant or Any Sales at Alleged Cartel Prices During the Four Years Preceding this Lawsuit**

Plaintiff Brand Little has been a commercial fisherman since 2004 but does not allege any sales of crab to any named Defendants after March 13, 2019.  (Am. Compl. ¶ 12.)  Instead, Little claims to have sold crab to "Unnamed Co-conspirator #1, in four of the last five seasons," and "Unnamed Co-conspirator #2, in the 2023/24 season."  (*Id.*)  The Amended Complaint includes no factual allegations linking either Unnamed Co-conspirator, however, to the alleged "pricing cartel" among the named Defendants.

Plaintiff Robin Burns is not and has never been a commercial fisherman, and never sold crab to anyone, ever.  She alleges she was married to Kenneth Burns, who sold Dungeness crab to a subset of the Defendants in California and Oregon (but not Washington), and "stands in the place of her late husband and asserts the claims contained herein on his behalf."  (*Id.* ¶ 13.)  Burns, however, does not allege that she obtained an express assignment of claims that may have

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-13-

3:23-CV-01098-AGT

1  belonged to her late husband, or any other legal basis for her standing to assert antitrust or other

2  claims that may have belonged to him.[6]

3  ### III.  LEGAL STANDARDS

4  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual

5  matter" to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

6  678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plaintiffs must include more than an

7  "unadorned, the-defendant-unlawfully-harmed-me accusation," to state a claim; a complaint "that

8  offers 'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action

9  will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

10  In *Twombly*, which itself involved an alleged antitrust conspiracy, the Supreme Court held

11  that Section 1 prohibits only *agreements* to restrain trade; it does not reach unilateral conduct or

12  independent decision-making (even consciously parallel copycat decisions), regardless of any

13  anticompetitive effect.  *See Twombly*, 550 U.S. at 554.  Consequently, "[t]he 'crucial question'

14  prompting Section 1 liability is 'whether the challenged anticompetitive conduct "stems from

15  [lawful] independent decision or from an agreement.'""" *In re Dynamic Random Access Memory*

16  *(DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (quoting *Twombly*,

17  550 U.S. at 556).  "Allegations … that could just as easily suggest rational, legal business

18  behavior by the defendants … are insufficient to plead a violation of the antitrust laws."  *Kendall*

19  *v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47, 1049 (9th Cir. 2008).

20  ### IV.  ARGUMENT

21  **A.     Plaintiffs Fail to Plausibly Allege a Coastwide *Per Se* Unlawful Price-Fixing
22  Conspiracy Among 35 Named Defendants and Unnamed Co-Conspirators**

23  Plaintiffs' alleged coastwide *per se* unlawful price-fixing claim fails for the same reasons

24  that the Court dismissed the original Section 1 claim:  there are no factual allegations to plausibly

25  show that the 35 named Defendants, unnamed co-conspirators, and potentially hundreds more ex

26  ----

27  [6] The Amended Complaint also includes allegations about acquisitions and industry consolidation (*id.* ¶¶ 243-282), and alleged unilateral conduct by Pacific Seafood, Hallmark and Ocean Gold

28  relating to crabbers they purchase from (*id.* ¶¶ 388-398), which appear left over from the original Section 2 claim and are not relevant to claims asserted in the Amended Complaint.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS        -14-        3:23-CV-01098-AGT
126719944.1 0052902-00054

1   vessel buyers entered into a horizontal agreement to fix ex vessel Dungeness crab prices

2   coastwide for the past nine years.

3       Section 1 of the Sherman Act provides: "Every contract, combination in the form of [a]

4   trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or

5   with foreign nations, is declared … illegal."  15 U.S.C. § 1.  It prohibits only *concerted action*.

6   *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 190 (2010).  Plaintiffs "must plead not just ultimate facts

7   (such as a conspiracy), but evidentiary facts" that, if true, would prove an unlawful agreement.

8   *Kendall*, 518 F.3d at 1047.  Such evidentiary facts must include allegations sufficient to "answer

9   the basic questions" about each defendant's participation in the alleged price-fixing conspiracy,

10  including "who, did what, to whom (or with whom), where, and when?"  *Id.* at 1048.  The legal

11  standard is the same when an antitrust conspiracy is alleged to have resulted from coercion:

12  factual allegations to show a "meeting of the minds" are required.  *See City of Vernon v. S. Cal.*

13  *Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (reasoning that "it would be most difficult to

14  draw a reasonable inference of conspiracy where there was no meeting of the minds").

15      In dismissing the original Section 1 claim, this Court found that other ex vessel buyers had

16  "an economic rationale for tracking Pacific Seafood's pricing decisions" and that the Complaint

17  included "only a couple instances of coercion" that did not support the "big jump to conclude"

18  there was a coastwide, price-fixing conspiracy.  (Order at 4.)  These basic pleading deficiencies

19  persist.  Rather than offer "more detail" as instructed by the Court (*id.* at 5), Plaintiffs improperly

20  rely upon group pleading and conclusory allegations, fail to plead direct evidence of a price-

21  fixing agreement, and allege no facts showing parallel conduct or plus factors, such as actions

22  against independent self-interest, from which an agreement plausibly could be inferred.  The

23  resulting mishmash of disjointed and unconnected anecdotal allegations come nowhere close to

24  plausibly alleging a sprawling nine-year, coastwide *per se* unlawful ex vessel price-fixing

25  agreement between 35 named Defendants and hundreds of other unnamed Dungeness crab buyers

26  across California, Oregon, and Washington.  This Court should again dismiss Plaintiffs' Section 1

27  claim, and do so with prejudice.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -15-                    3:23-CV-01098-AGT

1 **1.    The Court Should Disregard Improper Group-Pleading Allegations in Evaluating the Sufficiency of the Section 1 Claim**

To state a claim for violation of Section 1, there must be factual allegations to demonstrate that *each of the 34 Defendants* "'actively participated in an individual capacity in the scheme.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) (citation omitted).  In other words, the complaint must "include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy." *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (citation and internal quotation marks omitted); *see also Twombly*, 550 U.S. at 565 n.10 (dismissal warranted when complaint "furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (plaintiffs "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it" (citation and internal quotation marks omitted)); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 19-cv-00078-EJD, 2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) ("Plaintiff must allege that *each individual defendant* joined the conspiracy and played some role in it." (emphasis in original)).

The Amended Complaint, however, includes no allegations describing individual conduct that connects each Defendant to the alleged price-fixing arrangement.  Instead, Plaintiffs resort to generic, boilerplate group pleading, lumping all Defendants together in an attempt to plead the critical element of their Section 1 claim—the alleged "agreement."  For example, Plaintiffs allege—without more—that "in advance of the 2015/16 season *it was agreed among Defendants* that they would limit the amount they paid . . . ex vessel and work together to suppress the ex vessel price for Dungeness crab."  (Am. Compl. ¶ 170 (emphasis added).)  Similarly, Plaintiffs allege that "*Defendants'* conspiracy" includes "*their agreement*, during the conspiracy to allow Pacific Seafood to set the opening ex vessel price," and that "*Defendants* not only refuse to pay any higher amount" but will also "refuse to state a price until Pacific Seafood has stated what the price is."  (*Id.* ¶ 175 (emphasis added).)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-16-

3:23-CV-01098-AGT

1    Such allegations fail as a matter of law.  Generic allegations that "Defendants" "agreed"

2    or "refuse to state a price" are classic group pleading that should be disregarded under Rule

3    12(b)(6).  The Ninth Circuit rejected group pleading in *United Brotherhood of Carpenters &*

4    *Joiners of America v. Building & Construction Trade Department, AFL-CIO*, holding that "[a]

5    complaint must 'answer the basic questions: who, did what, to whom (or with whom), where, and

6    when?'" and that "[b]are assertions of 'agreement' or identifications of particular persons as 'co-

7    conspirators' will not suffice."  770 F.3d 834, 842 (9th Cir. 2014) (quoting *Kendall*, 518 F.3d at

8    1048, 1050).  The Ninth Circuit thus affirmed dismissal where the complaint simply "recite[d]

9    several 'actions' 'undertaken ... as part of, and in furtherance of, the unlawful conspiracy,'" and

10   "identifie[d] the actors, if at all, merely as 'Defendants' agents.'"  *Id.*

11       The court in *In re California Bail Bond* similarly rejected such generic allegations,

12   holding that allegations that "Defendants host[ed] meetings that provide[d] opportunities for

13   sureties and bail agents to collude," and "identifie[d] the dates of a few conferences," failed to

14   sufficiently allege "each surety Defendant's role in the alleged conspiracy."  511 F. Supp. 3d at

15   1049 (internal quotation marks and citation omitted).  This Court should disregard all group-

16   pleading allegations in the Amended Complaint in evaluating its sufficiency.  (*E.g.,* Am. Compl.

17   ¶¶ 170, 175, 177-179, 185-186, 203, 207-209, 222, 233, 241, 270-271, 283-284, 346, 356-359,

18   374, 379, 381-382, 399, 403-407, 412, 419, 421-424, 427-435, 437-441, 443-447, 449.)[7]

19       **2.    The Court Should Dismiss Certain Defendants Because the Amended**
            **Complaint Alleges Purely Unilateral Conduct**
20

21       For several Defendants, apart from impermissible group pleading, Plaintiffs allege *nothing*

22   about any alleged participation in the formation and operation of a Section 1 conspiracy.  The

23   only allegations that mention these Defendants all refer to, recite, or merely describe unilateral

24   actions.  There is nothing in the Amended Complaint connecting any of them to any alleged

25   conspiracy.

26   ──────────────────
     [7] Factual allegations against individual defendants that are corporate affiliates also cannot be
27   lumped together in a group "collectively," as Plaintiffs do here (*see* Am. Compl. ¶¶ 28, 44, 61,
     74, 83, 92, 104, 116, 122), because the conduct of one affiliate cannot be attributed to another
28   absent plausible factual allegations to support alter ego treatment.  *See, e.g., Brennan v. Concord
     EFS, Inc.*, 369 F. Supp. 2d 1127, 1135-36 (N.D. Cal. 2005).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -17-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

- **South Bend Defendants.** The only allegations mentioning "South Bend" (South Bend Products LLC and Swanes Seafood Holding Company LLC) are that it is the City of Eureka's "Designated Public Seafood Unloader," which "lands significant amounts of crab in Eureka" that it resells to a few other Defendants. (Am. Compl. ¶¶ 272-273.)

- **Ocean King.** The only allegations referring to Ocean King Fish, Inc. are that one of its employees (George Lay) told one crabber during the 2015/16 season he was paid "too much" the prior season (*id.* ¶ 171), and then sent a series of text messages in January 2021 to a representative of "Bornstein" about prices demanded by crabbers and how different buyers might respond at different ports (*id.* ¶¶ 187-191, 236-240).

- **Ocean Gold.** The only references to Ocean Gold Seafoods, Inc. ("Ocean Gold") are that one of its employees (Gerald Schlaupitz) told a crabber during the 2015/16 season that he would never see the prices from the prior season again (*id.* ¶ 172); that it has rights to use three hoists in Trinidad and Eureka (*id.* ¶¶ 261-264, 269); and that it refused to buy crab in Charleston during the 2023/24 season after it was unable to convince crabbers there to sell to Ocean Gold at prices cheaper than those offered by CI #1 (*id.* ¶ 397-398).

- **Caito.** As to "Caito," defined as Caito Fisheries, Inc., Caito Fisheries, LLC and Southwind Foods LLC (*id.* ¶¶ 89-92), the only allegations are that John Caito told CI #1 in November 2023 that Caito would not set an opening ex vessel price before Pacific Seafood (*id.* ¶ 226); that in April/May 2023 John Caito called CI #1 and told him to lower his ex vessel price because it was "screwing things up for everyone" (*id.* ¶ 296); and, that Caito "reneged" on a deal to purchase crab from CI #1 in December 2023/January 2024 and bought instead from "Hallmark" (*id.* ¶ 313) or maybe "Ocean Gold" (*id.* ¶ 319).

- **ASE.** The only mentions of America Seafood Exp, Inc. ("ASE") are that one of its employees (Kevin Zhang) told one crabber during the 2015/16 season he was paid "too much" the last season (*id.* ¶ 171), and that since 2020 ASE has purchased crab in Eureka from South Bend (*id.* ¶ 273).

- **Fishermen's Catch.** For Fishermen's Catch, Inc., Plaintiffs allege that it bought all the crab purchased ex vessel by Unnamed Co-conspirator #1 in the 2023/24 season (*id.* ¶¶

153, 277-278), that an unnamed representative of Fishermen's Catch told CI #1 Pacific Seafood was asking them not to do business with him (*id.* ¶ 312), and that Peter Nguyen of Fishermen's Catch "met" on January 20, 2024 at Pier 45 with a few other Defendants (no further details are alleged) and owes CI #1 $100,000 but is not responding to CI #1's collection efforts (*id.* ¶¶ 334, 339).

- **Global Quality.** The allegations as to "Global Quality" are nearly identical as those for Fishermen's Catch. An unnamed representative of Global Quality told CI #1 Pacific Seafood was asking them not to do business with him (*id.* ¶ 312), and "Tony" of Global Quality "met" on January 20, 2024 at Pier 45 and afterwards "reneged" on a "deal" with CI #1 (*id.* ¶¶ 337-338). Global Quality also told CI #1 that it was offering $2.25 ex vessel in Crescent City in February 2023, and that CI #1 should "stay away." (*Id.* ¶ 281.)

- **Nor-Cal.** Finally, with respect to Nor-Cal, the Amended Complaint only alleges a handful of text messages and calls by Nor-Cal representative Kevin Lee between 2021 and 2023, including a text to a crabber at the beginning of 2021/22 season that Nor-Cal would match Pacific Seafood's offering price (*id.* ¶¶ 196-199); a text that Mr. Lee refused in February 2022 to negotiate with a crabber seeking $7/lb. when the dock price was $6/lb. (*id.* ¶ 242); Nor-Cal's "secret" temporary offer at the beginning of the 2022/23 season, which was later withdrawn, to buy for $5/lb. (*id.* ¶¶ 213-217); and Mr. Lee's requests that CI #1 lower his ex vessel price to allow Nor-Cal to buy CI #1's excess crab (*id.* ¶¶ 285-286, 289, 294, 307-310).

These allegations describe commonplace, lawful communications in a competitive market. None of these allegations plausibly allege concerted action, let alone participation in any price-fixing agreement as required to plead a Section 1 claim. For this reason alone, this Court should dismiss Defendants South Bend, Ocean King, Ocean Gold, Caito, ASE, Fishermen's Catch, Global Quality, and Nor-Cal.[8]

---

[8] Plaintiffs alleged that Defendants together comprised just over 61% of ex vessel purchases during the 2023/24 season. (Am. Compl. ¶ 152.) Without the active participation of Defendants South Bend, Ocean King, Ocean Gold, Caito, ASE, Fishermen's Catch, Global Quality and Nor-Cal buyers, which according to Plaintiffs account for more than 23% of landings during the 2023/24 season (*id.* ¶ 152), an already implausible conspiracy theory becomes even more

Stoel Rives LLP
ATTORNEYS AT LAW
San Francisco

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -19-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    **3.    The Amended Complaint Fails to Plead Direct Evidence of a Horizontal Price-Fixing Conspiracy**

2

3    "Direct evidence is smoking-gun evidence that 'establishes, without requiring any

4    inferences' the existence of a conspiracy."  *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813,

5    822 (9th Cir. 2023) (quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999)); *see*

6    *also Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) ("[D]irect evidence

7    is 'tantamount to an acknowledgment of guilt'"; it must be "'explicit and require[] no inferences

8    to establish the proposition or conclusion being asserted.'" (citations omitted)).  Direct evidence

9    "usually take[s] the form of an admission by an employee of one of the conspirators, that officials

10    of the defendants had met and agreed explicitly on the terms of a conspiracy."  *In re Text*

11    *Messaging Antitrust Litig.*, 630 F.3d 622, 628-29 (7th Cir. 2010); *Mayor & City Council of Balt.,*

12    *Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) ("Such evidence would consist, for

13    example, of a recorded phone call in which two competitors agreed to fix prices[.]").[9]

14    The Amended Complaint contains no smoking-gun evidence of any agreement between

15    any—let alone *all*—Defendants.  As noted above, generic allegations that it was "agreed among

16    Defendants" (Am. Compl. ¶ 170), or "their agreement, during the conspiracy period" (*id.* ¶ 175),

17    or "their illegal agreement" (*id.* ¶ 178), or "Defendants were playing the same agreed-upon

18    hardball" (*id.* ¶ 185), are due no credit as a matter of law.  These are legal conclusions—not

19    "evidentiary facts" establishing the existence of a conspiracy.  *Kendall*, 518 F.3d at 1047.  Such

20    conclusory allegations also do not "answer the basic questions" about each defendant's

21

22    implausible.  The significant portion of the market outside the conspiracy here makes Plaintiffs'
     alleged conspiracy implausible.  *See* Richard A. Posner, *Antitrust Law: An Economic Perspective*
23    at 436 (9th ed. 2014) ("any part of the market that is outside of the colluding circle" limits the
     possibility of effective price-fixing).

24    [9] *See also Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 497-98 (9th Cir. 2020) (holding "various
25    statements made by defendants' employees" were not "direct evidence" of a conspiracy because
     they "require[d] inferences … to support the existence of a conspiracy"); *Burtch v. Milberg*
26    *Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (rejecting proposed "direct evidence" because
     allegations did not include a "specif[ic] time or place that any actual agreement … occurred" nor
27    "indicate that any particular individuals … made such an agreement"); *Real Est. Exch., Inc. v.*
     *Zillow, Inc.*, No. C21-0312 TSZ, 2023 WL 5278115, at *6 (W.D. Wash. Aug. 16, 2023)
28    ("'[Direct evidence] may consist of written documents, audio or video recordings, or eyewitness
     testimony about what was said.'" (citation omitted)).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS            -20-            3:23-CV-01098-AGT
126719944.1 0052902-00054

1    participation in the formation of the alleged price-fixing conspiracy, including "who, did what, to

2    whom (or with whom), where, and when?"  *Id.* at 1048.  They must be disregarded.

3        The Amended Complaint does include allegations about one meeting in mid-December

4    2023 (seven years after the start of the alleged conspiracy period), in which representatives of

5    Pacific Seafood, Bornstein, Fathom, Hallmark, and Safe Coast "expressed a uniform position" on

6    price.  (Am. Compl. ¶¶ 227-228.)  But as noted above, this meeting cannot be considered

7    evidence of an alleged conspiracy because it was part of state-sanctioned and supervised pricing

8    negotiations between ex vessel buyers and crabbers convened by a state agency and expressly

9    authorized by Oregon law.  The negotiations were overseen by state officials who were required

10   to approve any season starting price before it could be implemented, and participating ex vessel

11   buyers and crabbers are immunized from federal and state antitrust liability for their participation

12   in the pricing negotiations.  (*See* Snider Decl. ¶ 6, Ex. 4 (2023 ODA Dungeness Crab Price

13   Negotiations meeting minutes); *id.* ¶ 7, Ex. 5 (executed signature pages of the Oregon

14   Department of Agriculture's pre-negotiation agreement).)  These allegations cannot form the

15   basis for antitrust liability, and this Court should disregard them when deciding this motion.

16       In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105

17   (1980), the Supreme Court explained that nonstate actors like Defendants may be entitled to

18   antitrust immunity if the "challenged restraint" is "'clearly articulated and affirmatively expressed

19   as state policy,'" and "'actively supervised' by the State itself.'"  (Citation omitted.)  The "clear-

20   articulation" prong of *Midcal* is satisfied if the "displacement of competition … is the

21   'foreseeable result' of what the statute authorizes," *City of Columbia v. Omni Outdoor

22   Advertising, Inc.*, 499 U.S. 365, 372-73 (1991), and there is some indication that the state has

23   "'affirmatively contemplated the displacement of competition,'" *United National Maintenance,

24   Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1010 (9th Cir. 2014) (citation omitted).

25   The "active supervision" element is established if "the state has power to exercise control over the

26   private anticompetitive conduct" and "the state in fact exercises its power."  *Snake River Valley

27   Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042, 1049 (9th Cir. 2004) (cleaned up).  Each element is

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -21-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

satisfied here.  *See Cal. CNG, Inc. v. S. Cal. Gas Co.*, 96 F.3d 1193, 1200 (9th Cir. 1996) (affirming order granting motion to dismiss where *Midcal* test satisfied).

The first prong is met by the express terms of Or. Rev. Stat. 646.739, titled, "Exemption for negotiations governing season starting price for sale of Oregon seafood."  Section 646.739(2)(a) confirms that the Oregon statute is intended "to displace competition with a regulatory program in the Oregon seafood harvesting industry to a limited degree" and "intended to grant immunity from federal and state antitrust laws to Oregon seafood harvesters and dealers for the limited purpose of allowing the harvesters and the dealers to bargain collectively and to arrive at a negotiated season starting price."  Such activities in compliance with this section "may not be considered to be in restraint of trade, a conspiracy or combination or any other unlawful activity in violation of … federal antitrust laws."  *Id.*

The second prong of *Midcal* also is satisfied as a matter of law.  Or. Rev. Stat. 646.739(2)(e) provides that the "Director of Agriculture" is "authorized to supervise the negotiations between the parties, review the season starting prices established by the negotiations and approve the season starting prices proposed by the parties before the season starting prices take effect."  Facts of which the Court may take judicial notice show that ODA did, in fact, actively supervise the December 2023 meeting alleged in the Amended Complaint.  ODA hosted the 2023 Dungeness crab price negotiations in Newport, Oregon, on December 10 and 11, 2023, and in accordance with Or. Admin. Rule 603-076-0052(3), ODA took minutes of that meeting.  (*See* Snider Decl. ¶ 6, Ex. 4 (2023 ODA Dungeness Crab Price Negotiations meeting minutes).  The minutes list three ODA "Facilitators" who were actively involved in supervising the negotiations between crabbers and processors.  (*Id.* at 1.)[10]  For example, prior to beginning price negotiations, ODA facilitators "reviewed the price-negotiation agreement … with the

---

[10] The minutes reflect that the meeting was attended by representatives of the following entities: Brookings Fishermen's Marketing Association, Coos-Umpqua Crab Association, Newport Crab Marketing Association, Pacific Northwest Crab Marketing Association, Bornstein Seafoods, Da Yang Seafoods, Fathom Seafood, Hallmark Fisheries, Living Pacific Seafood LLC, Pacific Seafood, Safe Coast Seafood, Seawater Seafood Company, and Triple G Seafood.  (*Id.*)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -22-                    3:23-CV-01098-AGT

group" which describes in detail the "purpose" and "terms" of the parties' negotiations to ensure compliance with Or. Rev. Stat. 646.739 and Or. Admin. Rule 603-076-0052.  (*Id.* at 18.)

The solitary "meeting" in the Amended Complaint in which Plaintiffs alleged that some Defendants communicated a "uniform position" on ex vessel prices for Dungeness crab was part of state-sanctioned price negotiations also attended by crabbers who also collectively bargained. It was convened and supervised by the ODA, and its participants are immunized from antitrust liability.  The Amended Complaint fails to plead direct evidence of a price-fixing agreement.[11]

### 4.    The Amended Complaint Fails to Plead Circumstantial Evidence of a Horizontal Price-Fixing Conspiracy

To state a plausible Section 1 conspiracy claim using circumstantial evidence, Plaintiffs must plead factual allegations to show "parallel conduct" that is further "placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Twombly*, 550 U.S. at 557; *see also DRAM*, 28 F.4th at 47; *In re Musical Instruments*, 798 F.3d 1186, 1193-94 (9th Cir. 2015).  Such context may be demonstrated through allegations of "plus factors," which serve as the "something more than conduct merely consistent with agreement" and place the alleged "parallel conduct 'in a context that raises a suggestion of a preceding agreement.'"  *DRAM*, 28 F.4th at 47 (quoting *Twombly*, 550 U.S. at 557).  Plaintiffs relying on circumstantial evidence of a conspiracy also "face an additional burden when defending against Rule 12(b)(6) motions."  *Id.* at 46.  Generally, in cases that do not involve antitrust claims, a complaint will survive a motion to dismiss when it alleges "facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible."

---

[11] The only other "meeting" referred to in the Amended Complaint is alleged to have taken place at Pier 45 on January 20, 2024, among a small group of Defendants.  It is limited to a single instance, at a single point in time, and does nothing to further the plausibility of the alleged multi-year, multi-port, conspiracy among hundreds of buyers.  Plaintiffs' description of the meeting also lacks any factual specifics and includes no allegations about the substance of the meeting, other than a report from one of the attendees that they were upset at CI #1 for "broadcasting to crabbers a higher opening price."  (Am. Compl. ¶¶ 334-335.)  These allegations do not support a price-fixing agreement—or any agreement on any subject at all.  *See, e.g., In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2007) (dismissing complaint that made the "conclusory" allegation that "defendants attended a certain meeting which gave them an 'opportunity' to meet secretly," but failed to plead "any specific allegation that defendants' representatives actually met to fix prices").

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                          -23-                          3:23-CV-01098-AGT
126719944.1 0052902-00054

1    *Id.* at 47.  Not so in antitrust cases.  "This higher standard is warranted by practical considerations

2    in antitrust cases, where proceeding to discovery 'frequently causes substantial expenditures and

3    gives the plaintiff the opportunity to extort large settlements even where he does not have much

4    of a case.'"  *Id.* (quoting *Kendall*, 518 F.3d at 1047).

5                    **a.        The Amended Complaint Fails to Plead Parallel Conduct**

6            The Amended Complaint first fails to plead facts showing parallel pricing, which at a

7    minimum would include allegations to show the specific opening season price offered by Pacific

8    Seafood in each season at each port, and that each Defendant offered that same price.  This

9    omission alone requires dismissal.  *In re Musical Instruments*, 798 F.3d at 1193.  To state a price-

10   fixing claim, a complaint must contain factual allegations to show how the prices paid by each

11   defendant compare with one another over time and demonstrate a pattern of uniform pricing from

12   which (with plus factors) it is plausible to infer that the Defendants entered into an unlawful

13   price-fixing conspiracy.  *See Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*, No. 6:21-CV-06507

14   EAW, 2022 WL 4017895, at *6 (W.D.N.Y. Sept. 2, 2022) (finding policies that were "different in

15   their particulars, their timing, and their outcomes" were not parallel); *Hogan v. Pilgrim's Pride

16   Corp.*, No. 16-cv-02611-RBJ, 2018 WL 1316979, at *7 (D. Colo. Mar. 14, 2018) (dismissing for

17   failure to allege "how [a defendant's] actions compared with those of its co-conspirators");

18   *Flextronics*, 2020 WL 5106851, at *15 (no "parallel conduct" where complaint "fails to allege

19   information that Defendants actually charged higher prices and that they did so in parallel").

20           Allegations based on average prices are insufficient to plausibly establish that each

21   individual defendant's prices moved in parallel.  *See In re Musical Instruments*, 798 F.3d at 1197

22   n.12 (rejecting analysis showing increase in "average retail price" of all goods sold, instead of

23   increase in price of goods "manufactured by defendants" because "[a]s far as we can tell … retail

24   prices of defendants' products actually might have fallen during the class period"); *see also In re

25   Pork Antitrust Litig.,* No. 18-1776, 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) ("Without

26   specific information regarding each Defendant, the Court has no basis to analyze which, how

27   many, or when any of the individual Defendants may have affirmatively acted to reduce the

28   supply of pork.  And that type of information is vital to pleading parallel conduct."); *Gibson v.*

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -24-                    3:23-CV-01098-AGT

1 | *MGM Resorts Int'l*, No. 23-cv-00140-MMD-JDA, 2023 WL 7025996, at *4 (D. Nev. Oct. 24,

2 | 2023) (no parallel conduct alleged because no allegations of similar pricing policies adopted by

3 | specific defendants at the same time).

4 |   The Amended Complaint includes no allegations—literally none—concerning any

5 | Defendant's pricing decisions during the first four seasons of the alleged conspiracy period. For

6 | the 2019/20 season, Plaintiffs include the nonspecific, conclusory allegation that no Defendant

7 | "paid more than $3 at the opening" of the season, but that is a far cry from an allegation that each

8 | Defendant paid *the same ex vessel prices*. (Am. Compl. ¶ 185.) For the 2020/21 and 2021/22

9 | seasons, the Amended Complaint alleges that "Defendants toed Pacific Seafood's line" (*id.* ¶

10 | 186), and "got in line with Pacific Seafood on opening price" (*id.* ¶ 196), but at no point do

11 | Plaintiffs allege what Pacific Seafood's opening price was or that each of the 22 non-Pacific

12 | Seafood Defendants named in the Amended Complaint priced the same. For the 2022/23 season,

13 | Plaintiffs allege only Pacific Seafood's opening price of "$3.00/lb. for the first 400,000 lbs. with

14 | the price then dropping to $2.25," but nothing as to any of the other Defendants. (*Id.* ¶ 220.) And

15 | for the 2023/24 season, Plaintiffs do not allege Pacific Seafood's opening price, or the prices of

16 | any other Defendant. The Amended Complaint comes nowhere close to alleging parallel pricing

17 | conduct by all Defendants in each port and in every year of the alleged nine-year conspiracy

18 | period.

19 |   Moreover, the Amended Complaint concedes that Defendants do not, in fact, pay the same

20 | prices because the effective prices paid diverge from quoted ex vessel prices due to discounts and

21 | bonuses, which shows there was no parallel pricing. Plaintiffs allege that Nor-Cal "commonly"

22 | pays more than the amount on landing tickets. (*Id.* ¶ 359-363.) ASE "for many years" has issued

23 | one check at landing, and a second check for an additional amount. (*Id.* ¶ 364.) Pacific Seafood

24 | and Hallmark are alleged to pay crabbers a "bonus" or "retro" in addition to the amount paid on

25 | delivery. (*Id.* ¶¶ 367-371.) And Plaintiffs claim unnamed Defendants give bait to crabbers

26 | instead of paying more per pound ex vessel. (*Id.* ¶¶ 373-374.)

27 |   Plaintiffs attempt to spin this differentiated pricing as "cheating" on the "cartel." (*Id.*)

28 | But Plaintiffs' allegation that the effective ex vessel price paid by buyers frequently differs from

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-25-

3:23-CV-01098-AGT

1    their quoted prices means that there is no mechanism for the alleged cartel members to monitor

2    one another's prices and punish noncompliance, making Plaintiffs' alleged conspiracy

3    implausible.  *See Jacob Blinder & Sons, Inc. v. Gerber Prods. Co. (In re Baby Food Antitrust*

4    *Litig.),* 166 F.3d 112, 137 (3d Cir. 1999) ("There is no evidence that in such a diffuse and frenetic

5    discount market there was any mechanism in place to detect conspirator cheating. Without such a

6    mechanism, no conspiracy, if it existed, could long endure."); *Petruzzi's IGA Supermarkets, Inc.*

7    *v. Darling-Del. Co.*, 998 F.2d 1224, 1233 (3d Cir. 1993) ("[A] cartel cannot survive absent some

8    enforcement mechanism because otherwise the incentives to cheat are too great." (citations

9    omitted)); 20 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust*

10   *Principles and Their Application* ¶ 2031 (4th ed. 2024) ("In order to collude successfully, the

11   participants in a cartel must be able to reduce their output and raise their price, and also prevent

12   'cheating' by cartel members.").

13              **b.      The Amended Complaint Fails to Plead "Plus Factors"**

14              Courts distinguish permissible parallel conduct from impermissible conspiracy by

15   examining "plus factors."  *In re Musical Instruments*, 798 F.3d at 1194; *DRAM*, 28 F.4th at 47.

16   In this case, it is unnecessary for the Court to determine whether the Plaintiffs adequately allege

17   plus factors because the Amended Complaint fails to sufficiently plead parallel conduct.  *See*

18   *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017) ("'Plus

19   factors' are relevant only if the complaint adequately alleges parallel conduct among the

20   defendants.") (citing *In re Musical Instruments*, 798 F.3d at 1193-94); *Gibson*, 2023 WL

21   7025996, at *4 (same).  But even if the Amended Complaint did plead specific parallel pricing

22   conduct by each Defendant—and it does not—Plaintiffs also fail to allege plus factors.

23              Plus factors are factual allegations that suggest that the parallel conduct "would probably

24   not result from chance, coincidence, independent responses to common stimuli, or mere

25   interdependence unaided by an advance understanding among the parties," but rather suggest "the

26   sort of restricted freedom of action and sense of obligation that one generally associates with

27   agreement." *Twombly*, 550 U.S. at 556 n.4 (citations omitted).  Accordingly, "[p]lus factors are

28   often 'economic actions and outcomes that are largely inconsistent with unilateral conduct but

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -26-                    3:23-CV-01098-AGT

largely consistent with explicitly coordinated action,'" which may "elevate allegations of parallel conduct to plausibly suggest the existence of a conspiracy." *DRAM*, 28 F.4th at 47 (citation omitted).

For example, actions against economic self-interest are a plus factor only when the action would be "so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement." *Id.* at 49, 50 (cleaned up) ("Plaintiffs have not established that Defendants' supply cuts were the 'extreme action against self-interest' contemplated by this circuit as a plus factor." (citation omitted)).  That standard is necessary so that courts may better guard against mistaking lawful unilateral conduct for alleged collusion because "two firms may arrive at identical decisions independently, as they are cognizant of—and reacting to—similar market pressures." *In re Musical Instruments*, 798 F.3d at 1193. "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient" to be credited as plus factors. *Kendall*, 518 F.3d at 1049.  Determining plausibility thus is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and the court must consider "obvious alternative explanations for a defendant's behavior when analyzing plausibility." *name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015) (citation omitted).

Here, Plaintiffs make no attempt to delineate plus factors as such in the Amended Complaint.  To the contrary, the facts alleged are "in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 554.

***Price Leadership Is Econ 101.***  The central allegation in the Amended Complaint is that the other Defendants wait for Pacific Seafood to offer a season-opening price and then match it. Such conduct, however, is more consistent with independent decisions in each buyer's self-interest than with coordinated activity.  Plaintiffs conceive a "but-for" world in which buyers are eager to compete to offer opening prices with each vying to be the first to announce a price, and failing to be first, to then aggressively bid a higher price for the next sale (Am. Compl. ¶ 175)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                -27-                3:23-CV-01098-AGT

1    continually increasing ex vessel prices (*id.* ¶ 381).  But no economic theory supports these

2    allegations.  Instead, buyers "are likely to monitor and mimic the behavior of competitors

3    carefully *because* pricing provides the chief competitive leverage."  *Jones v. Micron Tech. Inc.*,

4    400 F. Supp. 3d 897, 917 (N.D. Cal. 2019).

5         As this Court observed, in this industry there is an "economic rationale for tracking

6    Pacific Seafood's pricing decisions."  (Order at 2.)  When "direct purchasers (other than Pacific

7    Seafood) are about to set the prices they will pay crabbers for freshly caught crab, they sensibly

8    consider the price they will obtain from Pacific Seafood for the excess crab they can't sell to

9    restaurants and similar retailers."  (*Id.* at 2-3.)  If other buyers "pay too high a price to crabbers,

10   they may be forced to sell their excess crab to Pacific Seafood for a loss," and thus "it is no

11   surprise, then, that other direct purchasers wait for Pacific Seafood to set its prices before they set

12   theirs, and that their prices converge."  (*Id.* at 3.)

13        In addition, there are other good reasons why buyers might decide, independently and in

14   each's own economic self-interest, to wait for Pacific Seafood to set an opening price and then

15   match it.  Plaintiffs allege that during the 2023/24 season, for example, Pacific Seafood purchased

16   about 20% of the total crab landed in the "Pacific NW Area" by volume, which is more than

17   twice as much as the second largest buyer (Ocean Gold) and approximately three times as much

18   as the third largest buyer (Bornstein).  (Am. Compl. ¶ 152.)  Basic economics teaches that it is

19   reasonable to expect that Pacific Seafood would be implicitly recognized as the price "leader,"

20   with other buyers acting as price followers.  *See, e.g.,* Robert S. Pindyck & Daniel L. Rubinfeld,

21   *Microeconomics* at 474 (8th ed. 2013) ("Pindyck & Rubinfeld").  The leader will set a price to

22   maximize its own profits, and the other firms, which individually could have little influence over

23   price, "would then act as perfect competitors:  They take the price set by the leader as given and

24   produce accordingly."  (*Id.* at 476.)  Follow-the-leader pricing is consistent with independent self-

25   interest—not concerted action.

26        Buyers also prefer to follow, not lead, when offering an opening price to avoid the risk of

27   getting the price wrong.  First movers, and particularly smaller firms, stand to lose more if they

28   pay too high a price and are then "undercut" by subsequent buyers who pay less.  *See* Raymond

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-28-

3:23-CV-01098-AGT

Deneckere & Dan Kovenock, "Price Leadership," Discussion Paper, No. 773, Northwestern University, Kellogg School of Management, at 3-5 (March 1988).  By waiting, later buyers "may be able to take advantage of the first-mover's mistakes," and "wait for resolution of uncertainty, e.g., with respect to customer needs."  Marvin B. Lieberman & David B. Montgomery, "First-Mover Advantages," *Strategic Management Journal*, Vol. 9 at 47 (1988).  Later buyers consequently will have more time to line up customers, at better margins, once they know the opening ex vessel price.  Thus, "it is reasonable to expect that the small firm would be willing to outwait the large firm in announcing price."  *Id*. at 7.  Follow-the-leader pricing is rational, self-interested economic conduct.

  ***Opening Price Is Based on Supply.***  Similarly, and contrary to Plaintiffs' allegations, "basic economic logic" does not "predict that, in an unmanipulated market, Defendants would compete with each other by offering crabbers higher ex vessel prices" whenever it is still profitable.  (Am. Compl. ¶ 177; *see id*. ¶ 175 ("Defendants … refuse to pay any amount higher than the price dictated by Pacific Seafood"); *id.* ¶¶ 192-193 (alleging it "made no economic sense" for other buyers not to pay more than Pacific Seafood's opening ex vessel price).)  Plaintiffs acknowledge that Dungeness crab is a derby fishery with excess supply at the season opening.  (*Id.* ¶¶ 145, 155.)  It would be economically *irrational* to offer ever higher prices when supply is abundant.  In a competitive market, buyers will not compete to outbid one another when higher prices are unnecessary to obtain sufficient supply.  Instead, consistent with each's own self-interest, buyers will attempt to pay the *lowest* price possible—what price that is depends on market conditions at the time of purchase.

  ***No Clear Benefit to Advertised Pricing.***  While much of the Amended Complaint contends that Defendants' awareness of each other's pricing supports their price-fixing cartel claim, Plaintiffs also claim that Defendants' concealment of pricing from each other supports their allegations of a price-fixing cartel.  By doing so, of course, Plaintiffs acknowledge that contrary to their theory, ex vessel prices are not uniform, and Defendants did not price in parallel.

  The Amended Complaint alleges that Defendants "actively hide when they pay crabbers ex vessel prices that are higher than the price fixed by the cartel."  (*See, e.g.*, Am. Compl. ¶ 353.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-29-

3:23-CV-01098-AGT

Plaintiffs suggest this strategy "does not make basic economic sense" in a market free from collusion (*id.* ¶ 357), because "economic logic would dictate" that if a buyer is "justified in offering a higher price, he or she would widely publicize his or her offer to pay a higher price to crabber to lure more crabbers to sell to him or her." (*Id.* ¶ 353.) Plaintiffs speculate that "the increased sell-side demand created by such publication of his or her offer to pay more would, in turn, allow the buyer to ultimately lower his or her offered price, increasing his or her profits." (*Id.*) To begin with, there is no rational economic benefit to the strategy. Plaintiffs suggest that the excess demand generated by publicizing prices "would, in turn, allow the buyer to ultimately lower his or her offered price, increasing his or her profits." (Am. Compl. ¶ 353.) But what Plaintiffs describe is a classic "bait-and-switch," with many crabbers inevitably being turned away from receiving the advertised high price, and being offered a lower price instead, obviously resulting in diminished customer goodwill.[12]

What Plaintiffs are actually observing is marketplace *competition*, not collusion. Independent self-interest is an obvious and reasonable alternative explanation for why Defendants would not publicize transactions at higher ex vessel prices. "In many markets, firms post one set of prices publicly and negotiate discounts with customers privately." (David P. Byrne, Leslie A. Martin, & Jia Sheen Nah, "Price Discrimination by Negotiation: A Field Experiment in Retail Electricity," *The Quarterly Journal of Economic*, 137 Q.J. Econ. at 2500 (2022).) Plaintiffs' observations that buyers "cheat" on an alleged cartel, and that ex vessel prices "commonly" (Am. Compl. ¶¶ 358, 359-360) and "frequently" (*id.* ¶¶ 368, 374) diverge from an alleged collusive price, do not show an agreement on a uniform price and actually evidence the active price negotiations between crabbers and buyers one would expect in a competitive market.

Plaintiffs also complain that buyers compete with one another by paying some fisherman bonuses or providing bait. (*Id.* ¶¶ 359-378.) But those practices also show divergent pricing and

---

[12] This ploy may work for a buyer like CI #1 who apparently purchases relatively small volumes that he quickly flips to local retail purchasers of live crab, but it is not a viable option for processors who purchase in large volumes and need to develop mutually beneficial long-term relationships with the most reliable captains in each fleet. (Am. Compl. ¶¶ 151-152 (alleging Defendants purchase majority of Dungeness crab, with 218 buyers accounting for remaining 12%).)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -30-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    are not more consistent with collusion than competition.  Here too, the obvious alternative

2    explanation is that buyers are competing with each other in their independent self-interest to build

3    goodwill with the fishermen who can reliably deliver the crab needed by those buyers.

4         ***Unilaterally Choosing Trade Partners, and Rewarding Loyalty, Is Lawful.***  Plaintiffs

5    allege that to discourage "price cheating by their fellow cartel members and to prevent non-cartel

6    members from disrupting their agreement to fix ex vessel prices," Defendants refuse to purchase

7    crab and other fish from "disloyal" crabbers who sell at ex vessel prices above the cartel fixed

8    price.  (Am. Compl. ¶ 379.)  Plaintiffs allege that "in a competitive market," Defendants would

9    need to continually increase ex vessel prices because otherwise they would be unable to find

10   sufficient supply.  (*Id.* ¶ 381.)  But Plaintiffs have not alleged a scarcity of Dungeness crab that

11   would lead to a "race to the top."  (*Id.* ¶¶ 381-382.)  To the contrary, Plaintiffs allege an ex vessel

12   market with hundreds of buyers and sellers and an excess supply of crab.  (*Id.* ¶¶ 151, 155.)

13   Especially in such circumstances, there is nothing unlawful about buyers making unilateral

14   decisions to reward certain suppliers, for example, by agreeing to buy other species of fish from

15   them (*id.* ¶ 383), or by choosing not to do business with others (*id.* ¶¶ 384-385, 387-398), for

16   whatever reason or no reason at all.

17        In sum, none of the conduct alleged in the Amended Complaint is inherently against

18   economic self-interest, not to mention "'so perilous'" that "'no reasonable firm would make the

19   challenged move without'" an anticompetitive agreement.  *DRAM*, 28 F.4th at 49 (quoting *In re

20   Musical Instruments*, 798 F.3d at 1195).  Quite the opposite: in each case there are "obvious

21   alternative explanations," *name.space*, 795 F.3d at 1130, that "could just as easily suggest

22   rational, legal business behavior" as opposed to "illegal conspiracy."  *Kendall*, 518 F.3d at 1049.

23   Plaintiffs fail to plead parallel conduct by each Defendant, and even if they had, the Amended

24   Complaint fails to allege plus factors to show actions and outcomes that are inconsistent with

25   economically rational, independent conduct.  This Court should dismiss the Section 1 claim

26   again, but this time with prejudice.

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-31-

3:23-CV-01098-AGT

1

**B.    The Statute of Limitations Bars Claims Predating March 13, 2019**

2      The Amended Complaint alleges a "Class Period" that seeks to recover damages from

3   January 1, 2016, to present, for each of Plaintiffs' causes of action.  (Am. Compl. ¶¶ 12, 408.)

4   Private actions for violations of the Sherman Act, Cartwright Act, or California Unfair

5   Competition Law, however, are subject to a four-year statute of limitations.  *See* 15 U.S.C. § 15b;

6   Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208.  Each of Plaintiffs' claims

7   accrued at the time they were paid an ex vessel price they claim was artificially suppressed as the

8   result of a conspiracy of the Defendants.  Accordingly, Plaintiffs' claims based on sales prior to

9   March 13, 2019—four years before the date the original Complaint was filed—are time-barred.

10      Plaintiffs attempt to avoid dismissal of their untimely claims by including "fraudulent

11   concealment" allegations.  (Am. Compl. ¶¶ 419-425.)  Fraudulent concealment is subject to the

12   heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See* Fed. R. Civ. P.

13   9(b); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1214-17 (N.D. Cal. 2015).

14   Specifically, in order to toll the limitations period Plaintiffs "must plead facts showing that

15   [Defendants] affirmatively misled [Plaintiffs], and that [Plaintiffs] had neither actual nor

16   constructive knowledge of the facts giving rise to its claim despite its diligence in trying to

17   uncover those facts." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988)

18   (citation omitted).  Plaintiffs must "plead with particularity the circumstances of the concealment

19   and the facts supporting its due diligence." *Id.*

20      The Amended Complaint fails to meet this burden.  Plaintiffs do not offer any factual

21   allegations to support fraudulent concealment.  Instead, the Amended Complaint parrots the legal

22   elements with conclusory allegations, including that Defendants "affirmatively and fraudulently

23   concealed their unlawful conduct" (Am. Compl. ¶ 419), Plaintiffs and other Class Members "did

24   not discover, and could not have discovered through the exercise of reasonable diligence" the

25   alleged unlawful conduct (*id.* ¶ 420), Defendants "secretly engaged in their wrongdoing,

26   concealing the nature of their unlawful conduct" (*id.* ¶ 421), and Plaintiffs and other Class

27   Members "could not have discovered the unlawful conduct at an earlier date through the exercise

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

3:23-CV-01098-AGT

1    of reasonable diligence" (*id.* ¶ 424).  None of these legal conclusions suffice.  *Conmar*, 858 F.2d

2    at 502 ("Conclusory statements are not enough.").

3         Plaintiffs' other attempts to plead fraudulent concealment also are insufficient.  Plaintiffs'

4    allegation that Defendants "affirmatively sought to mislead Plaintiffs and other Class Members

5    into believing that there was price competition among them" (Am. Compl. ¶ 423) is lacking

6    because the Amended Complaint does not "specify the identity of the parties who allegedly made

7    false representations" or "specify the time, date, or place of the allegedly misleading

8    conversations."  *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1075 (N.D. Cal. 2016)

9    (complaint must allege the "who, what, where, when, and how" of how defendants took

10    affirmative steps to conceal unlawful conduct).

11         Plaintiffs next assert that Defendants "memorialized their agreements concerning pricing

12    orally and via text messages sent and received on the personal devices" of their employees,

13    discussed their agreements "in private," and "aggressively resisted" discovery of "records of these

14    discussions" in this litigation.  But "[i]n this circuit, 'affirmative acts' consist of more than mere

15    passive concealment."  *Id.* at 1075-76 (citation omitted).  Plaintiffs' allegations of "efforts at

16    secrecy," even if they were more specific, do not plead fraudulent concealment.  *Id.* at 1076.  To

17    toll the limitations period, "plaintiffs must plead more than acts that 'by nature are self-

18    concealing.'"  *Id.* (citation omitted).  Consequently, "the mere 'failure to own up to illegal

19    conduct' … is not sufficient for fraudulent concealment, and to find otherwise 'would effectively

20    nullify the statute of limitations in [antitrust] cases.'"  *Id.* (citation omitted).  Finally, even if they

21    were not subject to the litigation privilege, objections to discovery in this litigation *filed in 2023*,

22    cannot constitute acts of concealment of Plaintiffs' antitrust conspiracy claims that accrued prior

23    to *March 13, 2019*.

24         The decision in *In re Animation Workers Antitrust Litigation*, 87 F. Supp. 3d 1195, is on

25    point.  In that case, plaintiffs alleged that defendants engaged in a conspiracy to fix and suppress

26    employee compensation.  In an attempt to toll the limitations period, plaintiffs there alleged the

27    same three categories of conduct identified here in the Amended Complaint and contended they

28    constituted "affirmative acts" of concealment: "(1) Defendants' secret meetings; (2) Defendants'

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -33-                    3:23-CV-01098-AGT

efforts to 'minimize any written record of the conspiracy'; and (3) Defendants' efforts to mislead the public…." *Id.* at 1215 (citation omitted).  The *Animation Workers* court found that those "allegations fail to show affirmatively misleading conduct 'above and beyond' the alleged conspiracy itself" and were therefore insufficient to plead fraudulent concealment. *Id.* (citations omitted). *Animation Workers* applies equally here and supports dismissal of each of Plaintiffs' claims for conduct that took place prior to March 13, 2019.[13]

## C.    Plaintiffs Lack Standing to Assert Antitrust Claims Against Defendants

Plaintiffs seek to represent more than 1,400 independent commercial crabbers who fish Dungeness crab and sell it ex vessel in ports spanning California, Oregon, and Washington (except for the Puget Sound).  The Amended Complaint, however, lacks factual allegations that Plaintiffs themselves suffered any antitrust injury that flows from allegations of unlawful price-fixing. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Plaintiff Little does not plausibly allege he sold crab to any Defendants alleged to be in the conspiracy within the four years preceding the filing of this lawsuit.  Instead, he claims to have sold crab to "Unnamed Co-Conspirator #1" and "Unnamed Co-Conspirator #2" (Am. Compl. ¶ 12), but includes no allegations plausibly linking either buyer to the alleged conspiracy necessary to show Little sold at allegedly suppressed prices.  Plaintiff Robin Burns has never sold crab at all, and purports to bring claims "in the place of her late husband," but alleges no facts supporting her standing to assert his claims.  (*Id.* ¶ 13.)  Neither plaintiff has antitrust standing.

"Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983) (internal quotation marks and citation omitted).  Recovery is limited to those with *antitrust standing*—"plaintiffs whose injuries were proximately caused by a defendant's antitrust violations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).  A complaint that fails to plead facts supporting antitrust standing must be

---

[13] The discovery rule also does not apply to claims under the UCL, when as here, they are based on alleged anticompetitive conduct. *Garrison*, 159 F. Supp. 3d at 1082-83 (citations omitted).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -34-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    dismissed under Rule 12(b)(6). *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir.

2    2012) (describing antitrust standing as a pleading requirement); *see also In re Am. Express Anti-*

3    *Steering Rules Antitrust Litig.*, 19 F.4th 127, 138 (2d Cir. 2021) (antitrust standing is a "threshold,

4    pleading-stage inquiry" and "when a complaint by its terms fails to establish this requirement we

5    must dismiss it as a matter of law" (internal quotation marks and citation omitted)); *NicSand, Inc.*

6    *v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) ("[A]ntitrust standing is a threshold, pleading-stage

7    inquiry and when a complaint by its terms fails to establish this requirement [the court] must

8    dismiss it as a matter of law—lest the antitrust laws become a treble-damages sword rather than

9    the shield against competition-destroying conduct that Congress meant them to be.").

10        Courts recognize that a plaintiff who purchases directly from a defendant or alleged co-

11    conspirator (or, in this case, sells directly) may have antitrust standing under the Sherman Act to

12    sue for damages proximately caused by the conspiracy in restraint of trade. *In re ATM Fee*

13    *Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012) (noting the "bright line rule" that "only direct

14    purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations"

15    (internal quotation marks and citation omitted)). Plaintiff Little, however, does not allege that he

16    ever sold crab ex vessel to any named Defendants on or after March 13, 2019. (Am. Compl. ¶

17    12.) Instead, during the period of March 13, 2019, to present, Plaintiff Little alleges only that he

18    sold to non-party Pezzolo Seafood, "Unnamed Co-conspirator #1" and "Unnamed Co-conspirator

19    #2." (*Id.*) But the Amended Complaint includes no fact allegations that link any of these three

20    buyers to the alleged price-fixing conspiracy.

21        The only allegations as to Pezzolo Seafood are that Pacific Seafood purchased it in 2022.

22    (*Id.* ¶¶ 12, 254.) And the only allegations concerning the two "Unnamed Co-conspirators" are

23    that Plaintiff Little sold crab to Unnamed Co-conspirator #1 who resold crab to "Defendant

24    Fishermen's Catch," that both were present at Pier 45 on January 20, 2024 with a few other

25    Defendant representatives, and that Unnamed Co-conspirator #2 responded "bring them over"

26    when Plaintiff Little asked what price he would pay for crab during the 2023/24 season. (*Id.* ¶¶

27    12, 153, 277, 344, 376-378.) These allegations do not plausibly allege that Plaintiff Little

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -35-                    3:23-CV-01098-AGT

1    suffered antitrust injury by selling crab at noncompetitive prices because they do not plausibly

2    allege any of Plaintiff Little's buyers were part of the alleged cartel.

3         Plaintiff Burns also has no antitrust standing.  She is not a direct seller of ex vessel crab,

4    which is necessary to bring a damages claim under Section 1.  *In re ATM Fee*, 686 F.3d at 748.

5    Instead, she is the widow of a deceased crabber and alleges her late husband sold crab to

6    Defendants Pacific Seafood – Eureka LLC and Nor-Cal in the 2019/20 season, and Defendant

7    American Seafood Express Inc. in the 2020/21 season before he passed in September 2021.  (Am.

8    Compl. ¶ 13.)  Plaintiff Burns claims she "stands in the place of her late husband and asserts

9    claims contained herein on his behalf."  (*Id.*)  The Amended Complaint, however, does not allege

10   that Plaintiff Burns obtained an express assignment of antitrust and other claims her husband may

11   have had while alive, or any other basis upon which she "stands in his place."

12        It is well established that for a non-market participant to assert antitrust claims that

13   belonged to a market participant, there must be an express assignment of those claims.

14   *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993)

15   ("any assignment of antitrust claims, as a matter of federal common law, must be an express

16   assignment"); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d

17   880, 898 (C.D. Cal. 2012) ("Because the [complaint] does not allege that the . . . Plaintiffs

18   obtained 'express' assignments to pursue antitrust and RICO claims on behalf of their patients,

19   the [Plaintiffs] lack standing to assert these claims via assignment[.]"); *Korea Kumho*

20   *Petrochemical v. Flexsys Am. LP*, No. C07-01057 MJJ, 2007 WL 2318906, at *3 n.2 (N.D. Cal.

21   Aug. 13, 2007) ("An express assignment, which Plaintiff has not alleged, is required for the

22   transfer of U.S. antitrust claims.") (citing *Gulfstream III*).  The Amended Complaint includes no

23   allegations of express assignment, and thus fails to show antitrust standing for Plaintiff Burns.

24   **D.    Plaintiff's State Law and Declaratory Judgment Claims Should Be Dismissed**

25        **1.    The Cartwright Act and Unfair Competition Law Claims Fail for the Same
            Reasons as the Section 1 Claim**

26

27        Plaintiffs' Cartwright Act claim (Second Claim for Relief) fails for the same reasons that

28   their Sherman Act claim fails.  In dismissing the same claim in the original Complaint, this Court

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -36-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    reasoned that "Little hasn't articulated why, in light of the Court's analysis of his Sherman Act

2    claim, his Cartwright Act claim should fare differently." (Order at 4.) The Amended Complaint

3    sheds no further light, and Plaintiffs' Cartwright Act claim should be dismissed again.

4        When a plaintiff's "claim under the Cartwright Act is predicated on the same conduct

5    underlying the Sherman Act claims. . . . the legal analysis of [the] Cartwright Act claim … should

6    mirror the analysis under the Sherman Act claims." *Stewart v. Gogo, Inc.*, No. C-12-5164 EMC,

7    2013 WL 1501484, at *5 (N.D. Cal. Apr. 10, 2013); *Home Depot, U.S.A., Inc. v. E.I. DuPont de

8    Nemours & Co.*, No. 16-CV-04865-BLF, 2019 WL 3804667, at *5 (N.D. Cal. Aug. 13, 2019)

9    ("[W]hile the Court's analysis focuses on Home Depot's claims under § 1 of the Sherman Act,

10   the analysis applies equally to its claims under the Cartwright Act."); *Eastman v. Quest

11   Diagnostics Inc.*, 724 F. App'x 556, 559 n.2 (9th Cir. 2018) (holding that because "[t]he

12   California Cartwright Act mirrors the Sherman Act," plaintiff's Cartwright Act claims must fail

13   because plaintiff's Sherman Act claims failed). That is the case here, and Plaintiffs' Cartwright

14   Act claim again fails.

15       Plaintiffs' claim under the UCL (Third Claim for Relief) also fails as a matter of law. The

16   UCL prohibits "unlawful" and "unfair" business practices. Cal. Bus. & Prof. Code § 17200. Like

17   the original Complaint, Plaintiffs' UCL claim in the Amended Complaint is nothing more than a

18   recasting of their Sherman Act and Cartwright Act claims (Am. Compl. ¶¶ 442-447) and should

19   again be dismissed. *See, e.g., Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x

20   528, 531 (9th Cir. 2018) ("Where a complaint alleges the same conduct as both a violation of the

21   Sherman Act and a violation of California's Cartwright Act and UCL, the determination that the

22   alleged conduct is not an unreasonable restraint of trade under the Sherman Act necessarily

23   implies that the conduct is not unlawful under the Cartwright Act or the 'unlawful' prong of the

24   UCL." (citing *name.space*, 795 F.3d at 1131 n.5)). Plaintiffs cannot satisfy the "unlawful" prong

25   because they fail to allege a Section 1 violation. (Order at 9 ("Little hasn't plausibly alleged an

26   'unlawful' business act or practice, for the reasons identified above.").)

27       Plaintiffs also do not plead facts sufficient to allege a UCL claim under the "unfair"

28   prong. As this Court recognized, "[c]onduct may be unfair under the UCL without violating the

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -37-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    Sherman Act," (Order at 5 (citation omitted)), but when "the plaintiff grounds his Sherman Act

2    and UCL claims on the same conduct, and when that conduct isn't well pled, the claims fall

3    together." (*Id.* at 9 (citing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).)  There

4    are no factual allegations to show that Plaintiffs' UCL claims are based on conduct by each

5    Defendant that is different from the conduct Plaintiffs allege violates the Sherman and Cartwright

6    Acts, and, as a result, the Amended Complaint fails to state a claim for violation of "unfair" prong

7    of the UCL.  And even if there were allegations of different conduct, Plaintiffs fail to plead that

8    such conduct threatens to harm competition.  *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946,

9    1000-01 (9th Cir. 2023).

10            Finally, Plaintiffs lack standing to assert their state law claims because neither plausibly

11    alleges an injury that could form the basis for recovery of damages under either the Cartwright

12    Act or UCL.  As noted above, Plaintiff Little fails to plausibly allege any connection between the

13    two Unnamed Co-conspirators to whom he sold crab, and the alleged price-fixing conspiracy.

14    Nor does Plaintiff Burns.  She has never sold crab at all and pleads no legal right to assert claims

15    that may have belonged to her deceased husband.  *See, e.g., Knevelbaard Dairies v. Kraft Foods,*

16    *Inc.*, 232 F.3d 979, 987-89 (9th Cir. 2000) (Cartwright Act requires "antitrust injury," including

17    that the injured party "be a participant in the same market as the alleged malefactors" (internal

18    quotation marks and citations omitted)).  For this reason too, Plaintiffs' Cartwright Act and UCL

19    claims should be dismissed.

20            **2.      A Declaratory Judgment Claim Does Not State a Separate Cause of Action**

21            Plaintiffs' Fourth Claim for Relief seeks a declaration under the Declaratory Judgment

22    Act, 28 U.S.C. § 2201, that Defendants violated Section 1 of the Sherman Act and the Cartwright

23    Act.  (Am. Compl. ¶ 449.)  As this Court previously held, the Declaratory Judgment Act "does

24    not provide an affirmative cause of action where none otherwise exists."  (Order at 5 (quoting

25    *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).)  Because Plaintiffs' Sherman Act

26    and Cartwright Act claims fail, this claim must be dismissed as well.

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -38-                    3:23-CV-01098-AGT

1    **E.    The Amended Complaint Should Be Dismissed With Prejudice**

2         This Court should dismiss the Amended Complaint with prejudice and should not grant

3    Plaintiffs further leave to amend.  "In assessing whether leave to amend is proper, courts consider

4    'the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure

5    deficiencies by previous amendments, undue prejudice to the opposing party and futility of the

6    proposed amendment.'"  *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814-15 (9th Cir. 2020)

7    (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)).  When a

8    court grants a party leave to amend to remedy deficiencies in an initial complaint, but the party

9    fails to do so in a subsequent attempt, the Court has discretion to dismiss the operative complaint

10    without further leave to amend.  *Williams v. California*, 764 F.3d 1002, 1018 (9th Cir. 2014).

11         In this case, this Court issued a detailed Order dismissing the original Complaint, and

12    carefully noted the deficiencies in the alleged price-fixing claims.  The Court then permitted

13    Plaintiffs to seek discovery to attempt to support their deficient claims.  Yet, despite this clear

14    guidance from the Court and early discovery, the Amended Complaint fails again to plausibly

15    allege a price-fixing cartel—let alone a nine-year, 35 Defendant, coastwide conspiracy.  Rather

16    than curing the deficiencies the Court found in the original Complaint, Plaintiffs offer more of the

17    same:  a "couple instances" of one-off text messages and telephone calls by a handful of

18    representatives "in only some geographic areas along the West Coast" followed by a "big jump"

19    to a coastwide "price-fixing conspiracy."  (Order at 4.)

20         Plaintiffs' failure to remedy the pleading deficiencies—now *after limited discovery*—

21    demonstrates that further leave to amend will be futile.  As the Ninth Circuit explained in

22    *Kendall*, another case involving attempts by the plaintiffs to allege an antitrust conspiracy,

23    dismissal with prejudice is appropriate when the amended pleading remains defective, even after

24    the plaintiffs had the benefit of limited discovery:

25              [Plaintiffs] were already granted leave to amend once and were
              given an opportunity to conduct discovery to discover the facts
26              needed to plead their causes of action, yet their First Amended
              Complaint contained [some of] the same defects as their original
27              Complaint. [Plaintiffs] fail to state what additional facts they would
              plead if given leave to amend, or what additional discovery they
28              would conduct to discover such facts.  Accordingly, amendment

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -39-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1    would be futile.

2    *Kendall*, 518 F.3d at 1051-52; *see, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729,

3    738 (9th Cir. 1987) (affirming dismissal of antitrust claims without leave to amend plaintiff failed

4    to remedy defects identified by district court); *N. Am. Wellness Ctr. Holdings, LLC v. Temecula*

5    *Valley Real Est., Inc.*, 771 F. App'x 793, 794 (9th Cir. 2019) (same); *Janda v. T-Mobile USA,*

6    *Inc.*, 378 F. App'x 705, 709 (9th Cir. 2010) (same); *see also Club One Casino, Inc. v. Perry*, 837

7    F. App'x 459, 461 (9th Cir. 2020) (affirming dismissal of antitrust claims without leave to amend

8    when the plaintiff failed to identify facts that it could allege to remedy pleading defects);

9    *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (acknowledging that

10   leave to amend may be denied for "failure to cure deficiencies by amendments previously

11   allowed"); *In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1048 (N.D. Cal. 2014)

12   (denying leave to amend after a subsequent complaint failed to address pleading deficiencies

13   previously identified by the court); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 982 (N.D. Cal.

14   2016) (same).

15                                    **V.  CONCLUSION**

16           For all of these reasons, the Court should dismiss the Complaint with prejudice for failure

17   to state a claim pursuant to Rule 12(b)(6).

18

19   Dated: November 1, 2024

20                                                   /s/ Charles H. Samel
                                                     Edward C. Duckers (SBN 242113)
21                                                   ed.duckers@stoel.com
                                                     Charles H. Samel (SBN 182019)
22                                                   charles.samel@stoel.com
                                                     **STOEL RIVES LLP**
23                                                   1 Montgomery Street, Suite 3230
                                                     San Francisco, CA 94104
24                                                   Telephone: 415.617.8900

25                                                   Matthew D. Segal (SBN 190938)
                                                     matthew.segal@stoel.com
26                                                   Michelle J. Rosales (SBN 343519)
                                                     michelle.rosales@stoel.com
27                                                   **STOEL RIVES LLP**
                                                     500 Capitol Mall, Suite 1600
28                                                   Sacramento, CA 95814
                                                     Telephone: 916.447.0700

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054                    -40-                    3:23-CV-01098-AGT

1

2    Timothy W. Snider (appearing *Pro Hac Vice*)
     timothy.snider@stoel.com

3    **STOEL RIVES LLP**
     760 SW Ninth Avenue, Suite 3000
     Portland, OR 97205

4    Telephone: 503.224.3380

5    *Attorneys for Pacific Seafood Defendants*

6

7    Dated: November 1, 2024    /s/ Christopher J. Kayser
                                Christopher J. Kayser

8                              **LARKINS VACURA KAYSER**
                                121 SW Morrison St. Suite 700

9                               Portland, OR
                                Telephone: (503) 222-4424

10                              cjkayser@lvklaw.com

11                              Brian A. E. Smith
                                Joseph J. Fraresso

12                              **BARTKO LLP**
                                1100 Sansome Street

13                              San Francisco, CA 94111
                                Telephone: (415) 956-1900

14                              bsmith@bartkolaw.com
                                jfraresso@bartkolaw.com

15
                                *Attorneys for Defendant Ocean Gold Seafoods, Inc.*
16

17   Dated: November 1, 2024    /s/ Bao Quan P. Pham
                                Bao-Quan P. Pham

18                              **Law Office of Bao-Quan P. Pham**
                                345 N. 18th Street

19                              San Jose, CA 95112
                                408-275-6701

20                              baopham408@sbcglobal.net

21                              *Attorneys for Defendant Global Quality Seafood*
                                *LLC*

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                -41-                3:23-CV-01098-AGT
126719944.1 0052902-00054

1    Dated: November 1, 2024                    /s/ Jonathan W. Thames
2                                               Jonathan W. Thames
                                                **KENNEDYS LAW LLP**
3                                               455 Market Street, Suite 1900
                                                San Francisco, CA  94105
4                                               Telephone: (415) 323 4464
                                                Jonathan.Thames@kennedyslaw.com
5
                                                *Attorneys for Defendant American Seafood EXP,*
6                                               *Inc.*

7    Dated: November 1, 2024                    /s/ Scott Cameron
8                                               Scott Cameron
                                                Josiah Prendergast
9                                               **WEINTRAUB TOBIN CHEDIAK COLEMAN
                                                GRODIN**
10                                              400 Capitol Mall, 11th Floor
                                                Sacramento, California 95814
11                                              Telephone: (916) 558-6000
                                                scameron@weintraub.com
12                                              Jprendergast@weintraub.com

13                                              *Attorneys for Defendant California Shellfish
                                                Company, Inc. and Robert Bugatto Enterprises, Inc.*
14
15   Dated: November 1, 2024                    /s/ Colin W. Morrow
                                                Colin W. Morrow
16                                              **VANNUCCI MOMSEN MORROW**
                                                45060 Ukiah St., Ste. A
17                                              P.O. Box 1214
                                                Mendocino, CA 95460
18                                              Telephone: 707-380-1070
                                                cmorrow@vmm-law.com
19
                                                *Attorneys for Defendant Caito Fisheries, Inc.*
20
21   Dated: November 1, 2024                    /s/ Steven J. Goon
                                                Steven J. Goon
22                                              Sarah Van Buiten
                                                **RUTAN & TUCKER, LLP**
23                                              18575 Jamboree Road, 9th Floor
                                                Irvine, CA 92612
24                                              Telephone: 714-641-5100
                                                sgoon@rutan.com
25                                              Svanbuiten@rutan.com

26                                              *Attorneys for Defendant Caito Fisheries, LLC and
                                                Southwind Foods, LLC*
27
28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -42-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1  Dated: November 1, 2024

2  /s/ David Ebel
   David Ebel (appearing *Pro Hac Vice*)
3  Stephanie P. Berntsen
   Davis Leigh (appearing *Pro Hac Vice*)
   **SCHWABE, WILLIAMSON & WYATT**
4  1420 Fifth Ave.
   Seattle, WA 98101
5  Telephone: (206) 622-1711
   debel@schwabe.com
6  sberntsen@schwabe.com
   DBLeigh@schwabe.com
7
   Steven G. Sullivan
8  **SCHWABE, WILLIAMSON & WYATT**
   800 West El Camino Real
9  Mountain View, CA 94040
   Telephone: (650) 396-1403
10 ssullivan@schwabe.com

11 *Attorneys for Defendant South Bend Products LLC*
   *and Swanes Seafood Holding Company LLC*
12

13

14 Dated: November 1, 2024

   /s/ Christopher M. Wyant
15 Christopher M. Wyant (appearing *Pro Hac Vice*)
   Trudy D. Tessaro
16 **K&L Gates LLP**
   925 Fourth Avenue, Suite 2900
17 Seattle, WA 98104-1158
   Telephone: (206) 370-7893
18 christopher.wyant@klgates.com
   trudy.tessaro@klgates.com
19
   Michael J. Stortz
20 **K&L Gates LLP**
   4 Embarcadero Center, Suite 1200
21 San Francisco, California 94111
   Telephone: (415) 882-8011
22 Michael.Stortz@klgates.com

23 *Attorneys for Defendant Bornstein Seafoods, Inc.*
   *and Astoria Pacific Seafoods, LLC*

24 Dated: November 1, 2024

   /s/ Sean Gates
25 Sean Gates
   **ILLOVSKY GATES & CALIA LLP**
26 155 N. Lake Avenue, Suite 800
   Pasadena, California 91101
27 Telephone: (626) 508-1715
   sean@illovskygates.com

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -43-                    3:23-CV-01098-AGT
126719944.1 0052902-00054

1

2

*Attorneys for Defendant Safe Coast Seafoods, LLC, Safe Coast Seafoods Washington, LLC, and Blue River Seafood, Inc.*

3   Dated: November 1, 2024

*/s/ Ann A. P. Nguyen*

4   Ann A.P. Nguyen
    **MESSNER REEVES LLP**
5   160 W Santa Clara Street, Suite 1000
    San Jose, CA 95113
6   Telephone: (408) 298-7120
    anguyen@messner.com
7

*Attorneys for Defendant Global Quality Foods, Inc.*

8   Dated: November 1, 2024

*/s/ Duncan MacFarlane*

9   Duncan Macfarlane
    **MACFARLANE LAW**
10  710 Ericksen Ave. NE, Suite 201
    Bainbridge Is, WA 98110
11  Telephone: (206) 451-4058
    Duncan@Macfarlane-Law.com
12

Nick Gunn, Esq. (appearing *Pro Hac Vice*)
13  **INTERNATIONAL MARITIME GROUP, PLLC**
14  701 Fifth Avenue, Suite 4200
    Seattle, WA 98104
15  Telephone: (206) 707-8338
    Gunn@Maritime.Law
16

*Attorneys for Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc.*
17

18  Dated: November 1, 2024

*/s/ Philip J. Wang*

19  Philip J. Wang
    **PUTTERMAN YU WANG LLP**
    345 California St. Suite 1160
20  San Francisco, CA 94104
    pwang@plylaw.com
21

*Attorneys for Defendant Ocean King Fish Inc.*
22

    Dated: November 1, 2024

*/s/ Steven McLellan*

23  Steven McLellan
    **MCLELLAN LAW GROUP LLP**
24  900 E. Hamilton Ave. Suite 100
    Campbell, CA 95008
25  Mclellanlawgroup.com

26  *Attorneys for Defendant Fisherman's Catch Inc.*

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS                    -44-                    3:23-CV-01098-AGT

126719944.1 0052902-00054

1

## **ATTESTATION UNDER L.R. 5-1(i)(3)**

2          Pursuant to Civil Local Rule 5-1(i)(3), I attest under the penalty of perjury that the above

3     signatories authorized the use of an electronic signature and concurred in the filing of this

4     document.

5                                                          */s/ Charles H. Samel*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS
MOTION TO DISMISS
126719944.1 0052902-00054

-45-

3:23-CV-01098-AGT