1    CHARLES H. SAMEL (SBN 182019)
     charles.samel@stoel.com
2    EDWARD C. DUCKERS (SBN 242113)
     ed.duckers@stoel.com
3    STOEL RIVES LLP
     1 Montgomery Street, Suite 3230
4    San Francisco, CA  94104
     Telephone: 415.617.8900
5

6    MATTHEW D. SEGAL (SBN 190938)
     matthew.segal@stoel.com
     MICHELLE J. ROSALES (SBN 343519)
7    michelle.rosales@stoel.com
     STOEL RIVES LLP
8    500 Capitol Mall, Suite 1600
     Sacramento, CA 95814
9    Telephone: 916.447.0700

10   TIMOTHY W. SNIDER (Admitted *Pro Hac Vice*)
     timothy.snider@stoel.com
11   STOEL RIVES LLP
     760 SW Ninth Avenue, Suite 3000
12   Portland, OR  97205
     Telephone: 503.224.3380
13

*Attorneys for Pacific Seafood Defendants*
14

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                   SAN FRANCISCO DIVISION

18

| | |
|---|---|
| 19   BRAND LITTLE and ROBIN BURNS, individually and on behalf of All Others Similarly Situated, | Case No. 3:23-cv-01098-AGT |
| 20 | **DEFENDANTS' OMNIBUS REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** |
| 21            Plaintiffs, | |
| 22        v. | Date:       January 24, 2025 |
| 23   PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; | Time:      10:00 a.m. |
| 24   PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC | Courtroom: A, 15th  Floor<br>Judge:    The Honorable Alex G. Tse |
| 25   SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; | |
| 26   PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; | |
| 27   PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC, | |
| 28   PACIFIC SEAFOOD – WESTPORT, LLC; | |

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

127155834.12 0052902-00054

3:23-CV-01098-AGT

PACIFIC SURIMI – NEWPORT, LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY, INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES, INC.; CAITO FISHERIES, INC.; CATIO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING FISH, INC.; SOUTH BEND PRODUCTS LLC; SWANES SEAFOOD HOLDING COMPANY LLC; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; and DOES 29-60,

Defendants.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS
127155834.12 0052902-00054

3:23-CV-01098-AGT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

I. INTRODUCTION ................................................................................................................. 1

II. REPLY ARGUMENT ......................................................................................................... 2

    A.    Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Plausible Coastwide *Per Se* Unlawful Price-Fixing Conspiracy ............... 2

        1.    Plaintiffs' Opposition Misunderstands the Requirements to Plead Direct Evidence of Conspiracy and Why the Amended Complaint Fails to Do So ............................................................................................ 3

        2.    Plaintiffs Fail to Plead Circumstantial Evidence of a Conspiracy ............ 8

            a.    Plaintiffs Cannot Justify Their Failure to Plead Facts Showing Parallel Pricing ..................................................................... 8

            b.    Plaintiffs Have No Answer for Their Failure to Plead Plus Factors Showing Defendants' Actions Are Inconsistent with Unilateral Conduct ...................................................................... 10

    B.    Plaintiffs' Arguments Cannot Transform Defective Group Pleading Allegations into Defendant-Specific Allegations of Fact Required to State a Plausible Claim ...................................................................................................... 14

    C.    Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead State Law and Declaratory Judgment Claims ............................................. 16

    D.    Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Basis for Tolling the Statute of Limitations ............................................. 17

    E.    Plaintiffs' Arguments and "New Facts" Do Not Cure the Amended Complaint's Failure to Plead Standing to Assert Antitrust Claims Against Defendants .............................................................................................................. 18

    F.    Plaintiffs Have Not Refuted Defendants' Showing That Further Amendment Would Be Futile and the Amended Complaint Should Be Dismissed with Prejudice ...................................................................................... 19

III. CONCLUSION ................................................................................................................. 20

Stoel Rives LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS

-i-

3:23-CV-01098-AGT

**Cases**

*Aguilar v. Atl. Richfield Co.*,
    25 Cal.4th 826 (2001) ................................................................................................ 16

*In re Automobile Antitrust Cases I & II*,
    1 Cal. App. 5th 127 (2016) ........................................................................................ 6

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999)............................................................................ 3, 13, 14

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... passim

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
    203 F.3d 1028 (8th Cir. 2000).................................................................................... 3

*In re Cal. Bail Bond Antitrust Litig.*,
    511 F. Supp. 3d 1031 (N.D. Cal. 2021) ........................................................... 3, 4, 13

*Cal. Crane Sch., Inc. v. Google LLC*,
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) .................................................................. 17

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999).......................................................................... 3, 12, 13, 14

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962) ...................................................................................... 2, 3, 16

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) ............................................................................ 11, 16

*Eatoni Ergonomics, Inc. v. Rsch. In Motion Corp.*,
    826 F. Supp. 2d 705 (S.D.N.Y. 2011)...................................................................... 3

*Evanston Police Pension Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) .................................................................... 11

*Flannery Associates LLC v. Barnes Family Ranch Associates, LLC*,
    727 F. Supp. 3d 895 (E.D. Cal. 2024)...................................................................... 7

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
    No. 19-cv-00078-EJD, 2020 WL 51016851 (N.D. Cal. Aug. 31, 2020) .................... 8

*Flextronics International USA, Inc. v. Panasonic Holdings Corp.*,
    No. 22-15231, 2023 WL 4677017 (9th Cir. July 21, 2023).................................... 10

Stoel Rives LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS
-ii-
3:23-CV-01098-AGT

127155834.12 0052902-00054

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ........................................................................ 17

*In re German Auto. Mfrs. Antitrust Litig.*,
    612 F. Supp. 3d 967 (N.D. Cal. 2020) ......................................................................... 11

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ............................................................................ 8, 9

*Hightower v. Celestron Acquisition, LLC*,
    No. 20-CV-03639-EJD, 2021 WL 2224148 (N.D. Cal. June 2, 2021) .................................. 17

*Hogan v. Cleveland Ave Restaurant Inc.*,
    No. 2:15-CV-2883, 2018 WL 1475398 (S.D. Ohio Mar. 26, 2018) ...................................... 6

*Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
    No. 16cv04865-BLF, 2019 WL 3804667 (N.D. Cal. Aug. 13, 2019) ................................... 12

*Howes v. Yankton Medical Clinic, P.C.*,
    No. 15-CV-04177-KES, 2016 WL 4385898 (D.S.D. Aug. 17, 2016) ................................... 19

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ......................................................................... 12

*Jung v. Ass'n of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004) .............................................................................. 3

*Kjessler v. Zaappaaz, Inc.*,
    No. CV 4:18-0430, 2019 WL 3017132 (S.D. Tex. Apr. 24, 2019) ................................... 6, 7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................. 10

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ..................................................................... 12, 13

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) .................................. 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ........................................................................ 11, 13, 14

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015) ................................................................................. 10

*In re Packaged Seafood Prods. Antitrust Litig.*,
    No. 15-MD-2670 DMS, 2023 WL 3046073 (Apr. 21, 2023) .............................................. 11

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. 2022) ..................................................................... 5, 8

Stoel Rives LLP
ATTORNEYS AT LAW
San Francisco

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS

-iii-

3:23-CV-01098-AGT

127155834.12 0052902-00054

*Plymouth Dealers' Association of Northern California v. United States*,
    279 F.2d 128 (9th Cir. 1960) .............................................................................. 9

*In re Processed Egg Prods. Antitrust Litig.*,
    962 F.3d 719 (3d Cir. 2020) ............................................................................... 16

*Quality Auto Painting Ctr. v. State Farm Ins. Co.*,
    917 F.3d 1249 (11th Cir. 2019) ......................................................................... 12

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ............................................................................. 19

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ........................................................................... 18

*Smith v. City of Pelham*,
    No.: 2:17-CV-1320-VEH, 2018 WL 1182605 (N.D. Ala. Mar. 7, 2018) ................ 5

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
    No. CV F 09-0560 LJO SMS, 2011 WL 2678879 (E.D. Cal. July 7, 2011) ............ 7

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ............................................................................. 16

*Williams v. California*,
    764 F.3d 1002 (9th Cir. 2014) ........................................................................... 19

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................... 20

Fed. R. Civ. Proc. 9(b) ............................................................................................... 17

Stoel Rives LLP
Attorneys at Law
San Francisco

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS
-iv-
3:23-CV-01098-AGT

127155834.12 0052902-00054

# I. INTRODUCTION

This Court detailed the pleading defects in the original complaint and provided Plaintiffs a roadmap to cure them, but the Opposition hardly refers to the Court's order and fails to explain how, if at all, Plaintiffs corrected those deficiencies after discovering their monopolization case was "indeed a cartel action." (Opp. at 50 n.31.) Plaintiffs' new allegations, even apart from the use of improper group pleading and failure to allege facts specific to each Defendant, do nothing to address the fact that "it's a big jump to conclude that hundreds of direct purchasers up and down the West Coast were coerced into joining a price-fixing conspiracy." (Dkt. 59 at 4.) In their Opposition, Plaintiffs string cite hundreds of paragraphs from the Amended Complaint with little or no discussion of the facts purportedly contained in those allegations. That is because the lion's share of those allegations are conclusory, and those that contain some facts fail to support the propositions for which they are cited, or merely recount the idiosyncratic experiences of alleged buyer CI #1. None individually, or considered as a whole, supports Plaintiffs' claim that Defendants engaged in a nine-year, coastwide conspiracy involving themselves and untold numbers of other buyers.

Remarkably, Plaintiffs insist that the Amended Complaint pleads *direct* evidence of conspiracy. But even with discovery, leave to amend, and a new 450-paragraph pleading, Plaintiffs have not alleged any facts that would establish, *without requiring any inferences*, the existence of an agreement to coordinate ex vessel pricing among some 34 Defendants and other buyers throughout the ports of the Pacific Northwest since 2016.

Plaintiffs fare no better in their attempt to plead conspiracy circumstantially. The Amended Complaint does not allege any specific ex vessel prices paid by individual Defendants over time or that those prices were allegedly lowered in unison with other Defendants. This failure is telling as Plaintiffs obtained transactional data for every individual ex vessel sale stretching back to 2000. If the data supported Plaintiffs' claims, they would have included it. The Amended Complaint's silence on this basic element of a price-fixing theory is deafening.

Failure to plead either direct evidence of a price-fixing conspiracy or parallel pricing ends the analysis and requires the Court to dismiss each of Plaintiffs' claims, including Plaintiffs' state

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY
ISO MOTION TO DISMISS

127155834.12 0052902-00054

3:23-CV-01098-AGT

law claims that, as pled, also require factual allegations to show conspiracy.  But even if this Court considered the Amended Complaint's alleged "plus factors," those also miss the mark because they point to allegations (in many cases wholly conclusory) consistent with unilateral—not collective—conduct, including: industry follow-the-leader pricing; the opportunity or motive to conspire; gathering marketplace price information; and other conduct for which there is an obvious alternative explanation inconsistent with collusion.

In addition, Plaintiffs cannot explain away their failure to allege facts supporting their efforts to stretch the statute of limitations back to 2016.  Nor does the Amended Complaint cure the absence of factual allegations establishing that Plaintiffs have standing to pursue these antitrust claims.  Plaintiffs concede that Little never sold crab to a Defendant during the four-year statute of limitations period, and the Amended Complaint fails to plausibly link his "unnamed" buyers to the alleged conspiracy.  Plaintiff Burns is not a crabber, and never participated in the ex vessel market.  There are no factual allegations that she was expressly assigned the right to bring antitrust claims that belonged to her deceased husband.  Finally, the Opposition offers no justification for the Court to again grant leave to amend.

For these reasons, the Court should dismiss this action with prejudice.

## II.  REPLY ARGUMENT

### A.  Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Plausible Coastwide *Per Se* Unlawful Price-Fixing Conspiracy

Plaintiffs bear the burden of pleading more than "a conclusory allegation of agreement at some unidentified point."  *Bell Atl. v. Twombly*, 550 U.S. 544, 557 (2007).  Plaintiffs have not met that burden or addressed the same deficiencies the Court found in the original complaint.

Plaintiffs wrongly claim that the Motion improperly "dismember[s]" the Amended Complaint rather than viewing it as a whole.  (Opp. at 15.)  Calling out Plaintiffs' failure to plead essential facts is not an improper dissection of the Amended Complaint—it demonstrates Plaintiffs' failure to state a claim.  *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962), relied on by Plaintiffs, does not "relieve[] plaintiffs of the burden of adequately alleging that a conspiracy to restrain trade existed in the first instance and that each defendant

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-2-

3:23-CV-01098-AGT

knowingly joined or agreed to participate in the conspiracy." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004). "If plaintiffs fail to do so," *Continental Ore* does not "shield plaintiffs' claims from dismissal." *Id.* (citation omitted). After all, "the sum of zero and zero is zero." *See Eatoni Ergonomics, Inc. v. Rsch. In Motion Corp.*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011). Despite its length, the Amended Complaint lacks factual allegations, as opposed to conclusions, to show each Defendant's role in the alleged conspiracy and thus provides no basis to infer one. Missing from the Amended Complaint is what is required by *Twombly*: factual allegations plausibly showing Defendants acted in concert to coordinate ex vessel prices.

### 1. Plaintiffs' Opposition Misunderstands the Requirements to Plead Direct Evidence of Conspiracy and Why the Amended Complaint Fails to Do So

"'Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)). Plaintiffs are correct that an unlawful agreement can be tacit and shown by a "knowing wink." (Opp. at 22.) But Plaintiffs "must still allege a 'wink' or its equivalent[.]" *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1042 n.3 (N.D. Cal. 2021) (citation omitted). Here, the Amended Complaint improperly "assumes a conspiracy first, and then sets out to 'prove' it." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000). None of the allegations cited by Plaintiffs (Opp. 17–20) contains facts to establish—without any inferences—the existence of an agreement, express or tacit, to fix prices by any Defendant.

***Alleged statements by Defendants about prices are not direct evidence of conspiracy.*** As Plaintiffs readily acknowledge: "Crabbers being who they are and dock talk being what it is, what a crabber paid for a load of crab was soon widely known" among both "members of the fleet" and "the same or different buyers." (Am. Compl. ¶ 168). Similarly, the unsurprising discussions among ex vessel buyers about prices being offered in the marketplace (Opp. at 17–18; Am. Compl. ¶¶ 180–84, 186–91, 236–40), including statements about prices at which one buyer

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-3-

3:23-CV-01098-AGT

might be a "hard pass" (¶ 183), what other buyers might be "willing to pay" (¶ 190), or what "crabbers were demanding" (¶ 190), are not direct evidence of an agreement to fix prices. As the court explained in *Bail Bond*, alleging "various statements" made by Defendants is insufficient when, as here, "nowhere does the [complaint] allege that [either defendant] actually *agreed* to the conspiracy in the first place." 511 F. Supp. 3d at 1042.

Thus, allegations of commonplace bilateral negotiations between ex vessel buyers and crabbers (Am. Compl. ¶¶ 197–99, 215–19), in which the buyer tells the crabber it will refuse to go higher than another buyer, and instead only will be "matching" (*id.* ¶¶ 198, 219), also are not direct evidence of conspiracy. Nor are allegations relied on by Plaintiffs (*id.* ¶¶ 213–14, 220) that do not contain any communications between competitors, or between buyers and sellers, but instead recite Plaintiffs' editorial narrative.

Moreover, many of the "direct evidence" allegations cited by Plaintiffs describe unilateral conduct, not a conspiracy to fix prices. For example, one Defendant's statement that Pacific Seafood will "make the decision" (Am. Compl. ¶¶ 223–27) about the season opening price is not direct evidence of any agreement among competitors to pay that price or any price. Similarly, allegations that certain Defendants incentivized CI #1 to pay crabbers lower prices (*id.* ¶ 285), that CI #1 was told he could not offer crabbers higher prices because the port was "locked down" (*id.* ¶ 291), or that Pacific Seafood sent an email to some buyers "instructing" them to pay no more than $3 per pound (*id.* ¶ 349), are not direct evidence of any price-fixing conspiracy. None of those communications mentions any agreement among competitors.[1]

***Allegations of "recruiting" are not direct evidence of conspiracy.*** Other allegations relied on by Plaintiffs fail to advance plausibility because they also assume the existence of a price-fixing cartel. (*See* Opp. at 18; Am. Compl. ¶¶ 283–85, 289–96, 307–11.) Communications that Plaintiffs characterize as efforts to "recruit" CI #1 to join the conspiracy (*id.* ¶¶ 283–84) do not show any agreement to fix prices. They are merely CI #1's recycled complaints, including that Pacific Seafood and others complained and offered incentives (*id.* ¶¶ 285, 309) when he tried

---

[1] Paragraph 281 refers to an "agreed price," but in context it relates to the price agreed between buyers and crabbers—not between buyers competing with one another.

Stoel Rives LLP
ATTORNEYS AT LAW
San Francisco

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
-4-
3:23-CV-01098-AGT

127155834.12 0052902-00054

to offer crabbers higher prices because it would disadvantage other buyers (*id.* ¶¶ 289, 292–96, 307–11), or told him he would not be able to offer the higher prices in certain ports because it was "locked down" (*id.* ¶¶ 290–91). These communications are typical marketplace chatter, are lawful, and do not show direct evidence of any conspiracy. *See, e.g.*, *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1144 (S.D. Cal. 2022) (finding "trader communications expressing their preference for low-supply/high-price conditions and the backdrop of general collaboration among Defendants" did not demonstrate a conspiracy).[2]

### *Allegations of "policing" other crab buyers are not direct evidence of conspiracy.*

Allegations that Defendants "enforce" the claimed price-fixing agreement (Opp. at 19) again assume the existence of a conspiracy in the first place. Instead of providing any direct evidence of an agreement to fix prices by Defendants, Plaintiffs again focus on CI #1 and extensively catalogue an alleged campaign to drive him "out of business" (Am. Compl. at 55:13–14). Even if true (they are not) these allegations are not direct evidence of conspiracy.

For example, Plaintiffs allege that when CI #1 refused incentives from Nor-Cal to lower the price he paid crabbers, Nor-Cal undercut his price and caused retailers to cancel agreements (*id.* ¶¶ 285–88). Plaintiffs assert that Pacific Seafood interfered with CI #1's efforts to lease a waterfront property to hinder his ability to pay crabbers higher prices (*id.* ¶¶ 297–99), spread rumors about CI #1 (*id.* ¶ 300), and instructed other Defendants not to do business with CI #1 (*id.* ¶¶ 312–13). Plaintiffs allege that a couple Defendants canceled orders to purchase crab from CI #1 when he offered higher prices to crabbers (*id.* ¶¶ 312–19). The Amended Complaint speculates that Fathom caused a harbormaster to deny CI #1 use of a public hoist for 48 hours, resulting in CI #1 losing ex vessel purchases (*id.* ¶¶ 320–22). And Plaintiffs allege that after a

---

[2] Contrary to Plaintiffs' argument (Opp. at 22 n.20, 29, 30–31), it is entirely appropriate to rely on summary judgment decisions to aid the court in an "understanding of what constitutes a legally actionable" antitrust conspiracy, and then "applying this legal definition to the pleaded facts." *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *78 (S.D.N.Y. Aug. 4, 2015). Cases cited in support of a motion to dismiss "don't have to be just at the 12(b)(6) stage," because "often times cases at summary judgment may explain that area of the law the best. Sometimes the procedural posture of the case is crucial; however, there is nothing wrong with citing to a case in a different procedural posture to show a cause of action's elements." *Smith v. City of Pelham*, No.: 2:17-CV-1320-VEH, 2018 WL 1182605, at *5 (N.D. Ala. Mar. 7, 2018).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-5-

3:23-CV-01098-AGT

127155834.12 0052902-00054

meeting among a subset of Defendants, another buyer told CI #1 that those buyers were upset with CI #1 for "broadcasting" a higher opening price than they wanted and that there would be "repercussions," after which some "reneged" on agreements to buy crab from CI #1 and stopped paying CI #1 for crab that had already been delivered to them. (*See* Am. Compl. ¶¶ 334–43.) None of these allegations are direct evidence of a conspiracy among Defendants *to fix prices* requiring no inferences—they presume one that is not pled.[3]

**Allegations of "punishing" crabbers by "blacklisting" are not direct evidence of conspiracy.** Plaintiffs wrongly argue that "blacklisting" crabbers alone is "also direct evidence" of a price-fixing agreement (Opp. at 19–20). The cases cited by Plaintiffs, however, do not support that proposition. They involved factual allegations of a preceding unlawful agreement that was later enforced through boycotts. For example, in *Hogan v. Cleveland Ave Restaurant Inc.*, No. 2:15-CV-2883, 2018 WL 1475398, at *4 (S.D. Ohio Mar. 26, 2018), the plaintiff "alleged a direct, explicit 'industry agreement' to employ a price-fixing contract (a copy of which is already in the record)[.]" Similarly, in *In re Automobile Antitrust Cases I & II*, 1 Cal. App. 5th 127, 167 (2016), there was testimony "that one of the key alleged co-conspirators thought that there was a 'consensus' among all of the meeting participants to work together to keep Canadian vehicles from crossing the border[.]" No such antecedent agreement is plausibly alleged here.

**The Amended Complaint does not plead the types of facts that other courts in cases relied on by Plaintiffs found sufficient to allege direct evidence of conspiracy.** None of the allegations cited by Plaintiffs contain *direct evidence* of any conspiracy, and the cases relied upon by Plaintiffs (Opp. at 16–18, 22) are distinguishable because they included well-pled factual allegations providing details of the alleged unlawful agreements.

For example, in *Kjessler v. Zaappaaz, Inc.*, No. CV 4:18-0430, 2019 WL 3017132, at *11 (S.D. Tex. Apr. 24, 2019) (cleaned up), the complaint alleged "specific, recorded meetings between [defendants] discussing [customized promotional products'] pricing and coordinating future meetings to discuss pricing." In screenshots of messages, defendants "admitted the so-

---

[3] Plaintiffs also claim that Pacific Seafood "reneged" on an agreement to purchase crab from Nor-Cal because it failed to match Pacific Seafood's season opening price (*id.* ¶ 195). This too is not direct evidence of a conspiracy to fix prices.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-6-

3:23-CV-01098-AGT

127155834.12 0052902-00054

called cartel exists, attempted to recruit the competitor to the group, and implicated the other Defendants." *Id.* at *3. One such message read: "'I'm talking to the rest of the wristband companies about matching your prices. Did you want to come up to our prices or do you want us to come down? We stopped under cutting each other last year as it only benefits [G]oogle.'" *Id.* at *4 (citation omitted). The complaint also alleged a conversation "where [defendant] tells [a competitor], 'that Custom Wristbands was fixing prices as part of the conspiracy.'" *Id.* at *11 n.13 (citation omitted). Similarly, in *Flannery Associates LLC v. Barnes Family Ranch Associates, LLC*, 727 F. Supp. 3d 895, 910–11 (E.D. Cal. 2024), the complaint contained text messages between defendants referring to their unlawful agreement and shared information about price negotiations with the plaintiff showing that they colluded about how much they should accept to sell their land: "the remaining property owners should be in agreement on what we would want to sell [our] properties … [and] we should have a meeting in the next two weeks to talk about [Plaintiff]." And in *Stanislaus Food Products Co. v. USS-POSCO Industries*, No. CV F 09-0560 LJO SMS, 2011 WL 2678879, at *6 (E.D. Cal. July 7, 2011), the complaint alleged the "location and dates of meetings where the Market Allocation agreement was negotiated and finalized." Nothing in the Amended Complaint comes close to such direct evidence allegations.

***Plaintiffs misconstrue the significance of the Oregon statute authorizing pricing discussions.*** Finally, the Opposition misunderstands the application of the state action doctrine and the reason Defendants have raised it. (Opp. at 23–25.) Defendants are not seeking a finding of nonliability on an affirmative defense through this Motion. Instead, the Motion addresses the alleged December 2023 meeting and explains it in the context of the state action doctrine to show that it is unreasonable to infer that the solitary instance alleged in the Amended Complaint where some Defendants "expressed a uniform position" on price can form a basis for antitrust liability. (Mot. at 21–23; Am. Compl. ¶¶ 227–28; Opp. at 18.) The Oregon regulatory program provides a common-sense explanation for a lawful meeting of competitors to discuss the season opening price and renders Plaintiffs' alleged price-fixing conspiracy all the more implausible. Notably, Plaintiffs now contend (Opp. at 25 n.23) that even at the December meeting, there was no

Stoel Rives LLP
Attorneys At Law
San Francisco

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-7-

3:23-CV-01098-AGT

127155834.12 0052902-00054

1   agreement reached by some Defendants to set an opening price, which further confirms that the

2   Amended Complaint fails to plead direct evidence of a conspiracy.

3          **2.      Plaintiffs Fail to Plead Circumstantial Evidence of a Conspiracy**

4                **a.      Plaintiffs Cannot Escape Their Failure to Plead Facts Showing
                       Parallel Pricing**

5

6          Plaintiffs' theory of the case is that Defendants engaged in a "pricing cartel that has

7   artificially fixed, depressed, and controlled the ex vessel price paid to crabbers in the Pacific NW

8   Area" since 2016.  (Am. Compl. ¶ 8; Opp. at 26–27.)  A pricing cartel, by definition, requires that

9   "Defendants actually charged higher prices and that they did so in parallel." *Flextronics Int'l*

10  *USA, Inc. v. Murata Mfg. Co.*, No. 19-cv-00078-EJD, 2020 WL 51016851, at *15 (N.D. Cal.

11  Aug. 31, 2020).  Plaintiffs fail to allege facts showing such parallel pricing.  It is true that parallel

12  pricing "need not be exactly simultaneous and identical" (Opp. at 28), but Plaintiffs offer no

13  factual allegations to show, let alone compare, ex vessel prices paid by Defendants or other

14  buyers over any period of time.  To the contrary, Plaintiffs admit the Amended Complaint alleges

15  Defendants used a variety of means to price *differently*.[4]  (Opp. at 10-11.)

16         It is no answer for Plaintiffs to point to their graph of coastwide ex vessel prices since

17  2016 relative to prices in the Puget Sound market either.  (Opp. at 26.)  Comparing *average* prices

18  in one market to another market says nothing about the *individual* prices Defendants paid to

19  crabbers and whether those prices moved in unison.  (Mot. at 24–25.)  "If data points are lumped

20  together and averaged before the analysis, the averaging compromises the ability to tease

21  meaningful relationships out of the data." *In re Graphics Processing Units Antitrust Litig.*, 253

22

23  _____
    [4] To the extent Plaintiffs argue that Defendants engaged in similar nonprice conduct (Opp. at 27),
    there are no factual allegations to demonstrate how, for example, prices were suppressed by
24  Defendants supplying one another in ports where they lack a presence, nor could there be as total
    supply remained unchanged (Opp. at 3).  There also are no allegations of any antecedent
25  agreement to do so and to prevent "white van buyers" from purportedly driving up ex vessel
    prices.  Contrary to Plaintiffs' argument, it is entirely lawful for competitors to supply products to
26  one another.  Such "'exchange agreements have long been recognized as procompetitive in
    purpose and effect, enabling or facilitating companies to compete in product and/or geographical
27  and/or temporal markets in which they otherwise could not or would not compete as efficiently or
    at all.'" *Persian Gulf*, 632 F. Supp. 3d at 1138–39 (dismissing claim on summary judgment for
28  alleged price-fixing conspiracy (citation omitted)).

Stoel Rives LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO                    -8-                         3:23-CV-01098-AGT
MOTION TO DISMISS
127155834.12 0052902-00054

F.R.D. 478, 493 (N.D. Cal. 2008). As a result, "[a]veraging" prices to demonstrate alleged price-fixing "masks the differences and by definition glides over what may be important differences" in actual prices paid by antitrust defendants. *Id.* at 494.

This failure to even attempt to plead parallel pricing is inexcusable. Before filing the Amended Complaint, Plaintiffs obtained transaction-level data (indicating the price, buyer, and port) for each ex vessel sale of Dungeness crab in California, Oregon, and Washington going back to 2000. (Dkts. 60, 217.) Presumably, an analysis of the data would have been included if it showed Defendants paid the same ex vessel prices at the season opening or at any other time. That the Amended Complaint relies instead on irrelevant average pricing is telling.

Acknowledging that prices were not the same, Plaintiffs argue (Opp. at 29–30) that even "frequent" price deviation is immaterial because the theory of their case is an alleged coastwide conspiracy to set a uniform season starting price in each port. Plaintiffs point to cases that stand for the proposition that an agreement among competitors to fix a starting point for price negotiations, such as a manufacturer's list price, violates Section 1 even though actual prices paid may differ from the starting point and vary from transaction to transaction. However, the Amended Complaint fails to plead an antecedent unlawful agreement to set the starting point. For that reason, and others, the authorities relied upon by Plaintiffs are distinguishable.

For instance, in *Plymouth Dealers' Association of Northern California v. United States*, 279 F.2d 128 (9th Cir. 1960), which arguably concerned direct (not circumstantial) evidence of conspiracy, an automobile dealers' association was convicted of criminal violations of the Sherman Act for publishing a price list and circulating it to its members. The evidence showed that the dealers in most instances used the list prices only as a starting point and then competed with each other by negotiating different (lower) prices with consumers who purchased the automobiles. *Id.* at 132. As the court observed in that case, "common sense tells us that there is no need for competitors to meet, agree upon content, print and circularize 'list prices' that are never to be looked at." *Id.* at 133. Here, in stark contrast, there are no factual allegations, or even arguments in the Opposition, that Defendants (and possibly numerous other buyers) met, agreed

Stoel Rives LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-9-

3:23-CV-01098-AGT

127155834.12 0052902-00054

upon ex vessel prices they would pay to fishermen, printed a list of those prices, and circulated the list.

The conclusory allegations of the Amended Complaint also contrast sharply with factual allegations that the Ninth Circuit found sufficient to permit an inference of parallel pricing in *Flextronics International USA, Inc. v. Panasonic Holdings Corp.*, No. 22-15231, 2023 WL 4677017, at *1 (9th Cir. July 21, 2023), cited by Plaintiffs (Opp. at 26 n.25). In that case, the operative complaint included a statistical analysis that used plaintiff's own purchase data to demonstrate that the prices charged by defendants "always moved in parallel, and prices remained stubbornly stable" throughout the alleged conspiracy period. 2023 WL 4677017, at *1. The statistical analysis showed that prices "exhibited similar trend lines over time and were nearly identical" after the beginning of the conspiracy and included specific examples of price comparisons in which multiple defendants had substantially similar prices during a particular month. *Id*. Here, the Amended Complaint lacks any factual allegations to show that the Defendants paid the same ex vessel price over time, or at any given point in time. This failure alone precludes Plaintiffs from stating a claim for violation of Section 1 based on circumstantial evidence. (Mot. at 24.)

        **b.**    **Plaintiffs Have No Answer for Their Failure to Plead Plus Factors Showing Defendants' Actions Are Inconsistent with Unilateral Conduct**

Even if Plaintiffs had plausibly alleged that Defendants engaged in parallel pricing, the Amended Complaint fails to allege factually-supported plus factors as required to plead a conspiracy using circumstantial evidence. (Mot. at 26–31.) Plaintiffs' claims that Defendants "improperly argue the facts" (Opp. at 21) and their request that the Court adopt "their preferred inference" (*id*. at 29) or "alternative theories" (*id*. at 36) misunderstand the Ninth Circuit's admonition that district courts must consider "obvious alternative explanations for a defendant's behavior when analyzing plausibility" of an alleged anticompetitive agreement. *name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015) (citation omitted); *see also Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (affirming order granting

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-10-

3:23-CV-01098-AGT

127155834.12 0052902-00054

motion to dismiss that relied on material not alleged in the complaint, including webpages).

Here, each alleged plus factor is consistent with self-interested, unilateral conduct.

### *Alleged "price leadership" does not show conduct against economic self-interest.*

Plaintiffs maintain that Defendants acted against economic self-interest because they should have "broken ranks" to pay higher ex vessel prices to try to capture a greater share of supply (Opp. at 33, 35–36), and argue that the Court should ignore the well-established principle that "follow-the-leader" pricing routinely occurs in the absence of an unlawful agreement (Mot. at 27-29).

Plaintiffs' theory, however, was rejected in *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 596 (N.D. Cal. 2019). In that case, the plaintiff argued that it would be "economically irrational" not to undercut a competitor's price "in a genuinely competitive market, because it foregoes an opportunity to increase market share by offering better prices" and "[e]rgo, [defendant's] pricing evidences collusion." *Id*. But as the court there explained: "*Musical Instruments* rejects this syllogism for 'fail[ing] to account for conscious parallelism and the pressures of an interdependent market.'" *Id.* (citation omitted). Instead, as in the present case, "'so long as prices can be easily readjusted without persistent negative consequences,'" then "'one firm can risk being the first to raise prices, confident that if its price is followed, all firms will benefit.'" *Id*. (citation omitted). Thus, "'[f]ollow the leader' pricing" can be economically rational "without any unlawful agreement." *Id*.

The conduct alleged by Plaintiffs here is fully consistent with lawful "follow-the-leader" pricing and does not suffice to plead facts from which it is permissible to infer conspiracy. *See id.* (citing *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015)). The Ninth Circuit, and numerous other courts, have recognized that follow-the-leader competition is "more consistent with conscious parallelism than with the plus factor recognized by the *Twombly* court." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 48 (9th Cir. 2022); *see also In re German Auto. Mfrs. Antitrust Litig.*, 612 F. Supp. 3d 967, 986 (N.D. Cal. 2020) (granting motion to dismiss and observing that "'follow the leader' pricing … is a well-recognized form of lawful conscious parallelism"); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 DMS, 2023 WL 3046073, at *8 (Apr.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-11-

3:23-CV-01098-AGT

127155834.12 0052902-00054

21, 2023) ("'a § 1 violation cannot be inferred from parallel pricing alone, or from an industry's follow-the-leader pricing strategy'") (quoting *Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, No. 16cv04865-BLF, 2019 WL 3804667, at *4 (N.D. Cal. Aug. 13, 2019)); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) (granting motion to dismiss and observing that "'[a] section 1 violation cannot ... be inferred from ... an industry's follow-the-leader pricing strategy'") (quoting *In re Citric Acid Litig.*, 191 F.3d at 1102), *aff'd*, 741 F.3d 1022 (9th Cir. 2014)). "Following the example set by a competitor, without agreeing to do so in advance, is textbook 'price leadership'—a practice [many courts] have repeatedly stated is insufficient to establish the existence of an agreement" in violation of Section 1. *Quality Auto Painting Ctr. v. State Farm Ins. Co.*, 917 F.3d 1249, 1264 (11th Cir. 2019) (affirming order granting motion to dismiss).[5]

**Market "concentration" is a neutral factor.** Plaintiffs next argue that alleged characteristics of the Pacific Northwest area market make it "highly susceptible to" a conspiracy to fix prices because of a "high concentration of buying power in Defendants." (Opp. at 34.) That argument ignores the alleged marketplace realities undermining this claim, including that there are 1,400 crabbers (Am. Compl. ¶ 1) and hundreds of ex vessel direct purchasers (*id.* ¶ 151). The alleged combined market share of the 34 Defendants also cannot tip the scales in favor of plausibility. As one court observed, "the relevant market in *Twombly*—where defendants were alleged to possess a 90% share—was more highly concentrated, and the Supreme Court nevertheless concluded that the complaint there failed to state a claim under section 1." *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964. Often, as here, "allegations concerning market characteristics are … just as likely to be consistent with innocent as unlawful behavior" and as a result "the features of the market and its structure are therefore neutral facts." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 917 (N.D. Cal. 2019) (citations omitted).

---

[5] Plaintiffs' argument that Defendants should have "broken ranks" and increased offering prices also is inconsistent with their allegations that at the start of the crab season there is a massive oversupply of crab. (Am. Compl. ¶ 155; Opp. at 2-3.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-12-

127155834.12 0052902-00054

3:23-CV-01098-AGT

*"Opportunities to conspire" do not permit inference of agreement.* Plaintiffs argue that allegations that Defendants had opportunities to collude and fix prices, including through trade associations, is a plus factor. (Opp. at 2 n.5, 34.) "The Supreme Court rejected similar allegations in *Twombly* … and other courts have consistently refused to infer the existence of a conspiracy from these kinds of averments." *In re Late Fee and Over-Limit Fee Litig.,* 528 F. Supp. 2d at 963–64; *see also In re Citric Acid Litig.*, 191 F.3d at 1098 ("Gathering information about pricing and competition in the industry is standard fare for trade associations."). Similarly, "communications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *In re Baby Food Antitrust Litig.*, 166 F.3d at 126 (citation omitted). As for alleged opportunities to collude (Opp. at 2 n.5), the Amended Complaint "does not allege that any [] Defendant learned of or agreed to join the conspiracy at any of these meetings, or any details of who attended them or what was discussed." *Bail Bond*, 511 F. Supp. 3d at 1049. Thus, Plaintiffs' allegations that Defendants had opportunities to conspire by meeting and communicating with one another are insufficient to constitute a plus factor from which it is permissible to infer a Section 1 conspiracy.

*"Motive to conspire" is not enough.* Plaintiffs argue (Opp. at 18) that Defendants have a motive to conspire to suppress ex vessel prices, which the Court should credit as a plus factor. But well-established law teaches that a motive to conspire does not suggest conspiracy. *See In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964 (allegations of motive are "'never enough'" (citation omitted)). "[I]f 'a motive to achieve higher prices' were sufficient, every company in every industry could be accused of conspiracy because they all 'would have such a motive.'" *Id.* (citations omitted). Stated differently, "common motive does not suggest an agreement" because "[a]ny firm that believes that it could increase profits by raising prices has a motive to reach an advance agreement with its competitors." *Musical Instruments*, 798 F.3d at 1194. Thus, in *Musical Instruments* the Ninth Circuit concluded that "alleging 'common motive to conspire' simply restates that a market is interdependent (*i.e.*, that the profitability of a firm's decisions regarding pricing depends on a competitor's reactions)." *Id.* at 1195. "And allegations

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

3:23-CV-01098-AGT

of parallel conduct—though recast as common motive—is insufficient to plead a § 1 violation."
*Id.* (citing *Twombly*, 550 U.S. at 556–57).

      ***"Gathering competitors' price information" is lawful and procompetitive.*** Finally, Plaintiffs are incorrect that allegations that some Defendants gathered information about other Defendants' ex vessel prices support an inference of conspiracy. (Opp. at 34–35.) Possessing information about a competitor's prices is not circumstantial evidence of conspiracy, and absent an agreement among competitors to exchange price information, is not unlawful. *See In re Baby Food Antitrust Litig.*, 166 F.3d at 126 ("Gathering competitors' price information can be consistent with independent competitor behavior."). In *Citric Acid*, for example, the Ninth Circuit held that evidence that the defendant's "files contained copies of competitors' price lists" did not permit an inference of conspiracy. 191 F.3d at 1103. The court observed that plaintiff failed to make any "showing … that there was an *agreement* to exchange pricing information" and that "[t]here are many legal ways in which [the defendant] could have obtained pricing information on competitors." *Id.* (citation omitted). Here, too, there are no factual allegations in the Amended Complaint to show any agreement to exchange pricing information and therefore no basis from which to infer a conspiracy to fix ex vessel prices.

## B. Plaintiffs' Arguments Cannot Transform Defective Group Pleading Allegations into Defendant-Specific Allegations of Fact Required to State a Plausible Claim

      Plaintiffs do not dispute that they must plausibly allege that *each* Defendant "joined the conspiracy and played some role in it." (Opp. at 37.) Despite that, Plaintiffs insist that the alleged nonspecific, scattershot, and random communications between certain representatives of a handful of Defendants satisfy their burden of pleading a plausible nine-year, coastwide, price-fixing conspiracy involving all Defendants. (*Id.* at 20–21.) They do not.

      Plaintiffs contend that the Amended Complaint includes allegations stretching back to 2015–2019, but the paragraphs Plaintiffs cite do not support that conclusion. (*Id.* at 20.) Paragraphs 7–8 simply state the conclusion that "Defendants … created a pricing cartel … since the beginning of the 2015/16 season." Paragraph 54 refers to an irrelevant settlement in another lawsuit in 2017. Paragraphs 170 to 174 allege statements by three individuals that one crabber

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-14-

3:23-CV-01098-AGT

would not see prices as high as the 2015/16 season—the highest prices ever paid. Paragraphs 250 to 252 allege that Pacific Seafood owns 49% of Ocean Gold. Paragraph 266 alleges the City of Eureka terminated a hoist lease. And paragraph 388 alleges that Hallmark and Nor-Cal are dominant buyers in Port Orford, Oregon. None of these paragraphs comes close to pleading necessary, specific allegations of concerted action or participation in a conspiracy by *any* Defendants stretching back to 2015—let alone *all*.

Plaintiffs next argue that the Amended Complaint includes sufficient allegations of conspiratorial conduct for the 2020/21 and 2021/22 seasons. (*Id.* at 20–21.) But the single text message between Bornstein and Ocean King does not remotely support a price-fixing conspiracy—it states that crabbers were asking $2.75, and that Pacific Seafood was at $2.50 but later agreed to meet crabbers' demand at $2.75 (as did Bornstein). (Am. Compl. ¶¶ 187–91.) For the 2021/22 season, Plaintiffs argue that the allegations are not limited to a single text between Nor-Cal and an unidentified crabber. (Opp. at 20–21.) But the only additional allegation for that entire season alleges that a crabber who usually sold in Port Orford instead sold his crab that year in Charleston to obtain higher prices. (Opp. at 21 (citing Am. Compl. ¶¶ 390–91).) This single allegation is entirely insufficient to establish a conspiracy spanning the 2021/22 season.

Plaintiffs also cannot refute Defendants' claim that the Amended Complaint fails to allege any conspiracy allegations for several Defendants—instead pleading only unilateral conduct. (Opp. at 39–42.)

- **South Bend Defendants.** For the South Bend Defendants, Plaintiffs admit that the only allegation is that they "control" a hoist in Eureka and sell some crab to other Defendants. (*Id.* at 39.) This overstates the allegations, which provide only that South Bend "leases a portion of the Fishermen's Terminal Facility." (Am. Compl. ¶ 268.) But, more importantly, the allegations state only *unilateral*—not conspiratorial—conduct.

- **Caito Defendants.** Plaintiffs argue that they have pled sufficient facts to show successor liability of Southwind Foods, LLC ("Southwind"), but fail to point to allegations showing conspiratorial conduct to which such successor liability would apply. Plaintiffs point only to a statement from John Caito, which they stretch to say that he sold his company to Southwind "to insulate himself from liability related to this lawsuit." (Opp. at 40 (citing Am. Compl. ¶ 93).) This too is unilateral—not conspiratorial—conduct.

- **Ocean Gold.** For Ocean Gold, Plaintiffs claim the Motion "mischaracterized" allegations concerning Ocean Gold's hoists and omitted allegations regarding Pacific Seafood's connections with Ocean Gold. (*Id.* at 41.) Those allegations were not ignored or mischaracterized. (Mot. at 18.) The allegations concerning the hoist are *unilateral*

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-15-

3:23-CV-01098-AGT

conduct of Ocean Gold and do not support any claim that it joined or participated in any price-fixing conspiracy. The allegations that Pacific Seafood owns 49% of Ocean Gold, and markets its seafood to downstream buyers, also are irrelevant. (*Id*. at 14, n.6.)

- **Ocean King, ASE, Fishermen's Catch, Global Quality and Nor-Cal.** For Ocean King and Nor-Cal, Plaintiffs claim the allegations show they "actively discussed a price-fixing agreement." (Resp. at 42 (citing Am. Compl. ¶¶ 171, 187–91, 195–99, 234–42, 262–64, 285–89, 307–10).) Those allegations *do not discuss any price-fixing agreement*, and instead reflect unilateral conduct. The only allegation that relates to a pricing decision is Nor-Cal's statement to one crabber in November 2021 that it would be "matching" Pacific Seafood's price. (Am. Compl. ¶¶ 196–99.) But such "follow-the-leader" pricing is "more consistent with conscious parallelism" than a price-fixing conspiracy. *DRAM*, 28 F.4th at 48; *see also* Section II.A.2.b, *supra*. Nor do the allegations that these Defendants purchase from other Defendants in ports where they do not have a presence demonstrate participation in a price-fixing agreement. *See* n. 4, *supra*.

No amount of reading the Amended Complaint "holistically" can make up for the lack of specific, factual allegations showing each Defendant joined the alleged conspiracy and had a role in it. (Opp. at 20 (citing *Cont'l Ore*, 370 U.S. 690).) "'If the warning [in *Continental Ore*] against "compartmentalizing" an antitrust conspiracy were meant to prevent a court from breaking down a plaintiff's allegation of a "unitary" conspiracy into its component parts for purposes of analysis, the Court would not have engaged in the "forbidden" analysis in the very same opinion in which it issued the warning.'" *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 727 (3d Cir. 2020) (citation omitted). Plaintiffs simply fail to plead plausible *facts* demonstrating the claimed nine-year, coastwide conspiracy, among *all* 34 Defendants. For this separate reason, the Motion should be granted.

C. **Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead State Law and Declaratory Judgment Claims**

Plaintiffs do not address the grounds in the Motion for dismissing their claims for violations of the Cartwright Act or the UCL, or for declaratory judgment (Mot. at 36–38), except to argue that the Amended Complaint pleads a claim for violation of the "unfairness" prong of the UCL. (Opp. at 42–45.) Plaintiffs are incorrect.

Although "'conspiracy is not an element of an unfair competition law cause of action in the abstract as a matter of law,'" Plaintiffs "'cannot deny that conspiracy is indeed a component of the unfair cause of action in this case as a matter of fact.'" *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 663 (9th Cir. 2009) (quoting *Aguilar v. Atl. Richfield Co.*, 25

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-16-

3:23-CV-01098-AGT

Cal.4th 826, 866–67 (2001)).  Plaintiffs' UCL claim, as pled, depends upon the same allegations

of an unlawful agreement by all Defendants as alleged in support of their Section 1 and

Cartwright Act claims.  (Am. Compl. ¶¶ 442–47.)  Plaintiffs therefore fail to state a claim for

violation of the UCL under the unfairness prong because the Amended Complaint does not

contain factual allegations necessary to plead a plausible conspiracy.[6]

**D.**     **Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Basis for Tolling the Statute of Limitations**

Plaintiffs claim they adequately pled fraudulent concealment tolling based on allegations

of "affirmative misrepresentations of fact alone." (Opp. at 45–46.)  The single case they cite,

however, *Hightower v. Celestron Acquisition, LLC*, No. 20-CV-03639-EJD, 2021 WL 2224148,

at *6–8 (N.D. Cal. June 2, 2021), articulates and analyzes the required *three* elements as set out in

the Motion—not misrepresentations alone.  Plaintiffs next argue that they need not specify the

date, time, or place of the alleged affirmative misrepresentations required to plead fraudulent

concealment.  (Opp. at 47.)  But that is precisely what Rule 9(b)'s heightened-pleading

requirements mandate.  (*See* Mot. at 32–33 (citing cases).)  Plaintiffs' failure to allege the "who,

what, where, when, and how" of the claimed fraudulent concealment is dispositive. *Garrison v.

Oracle Corp.*, 159 F. Supp. 3d 1044, 1075 (N.D. Cal. 2016).  Nor are Plaintiffs correct that tolling

should not be resolved at the pleading stage.  (See Mot. at 32-23 (citing cases rejecting fraudulent

concealment tolling on motions to dismiss).)

Plaintiffs also are wrong that the Amended Complaint includes sufficient allegations for

fraudulent concealment tolling.  Plaintiffs claim that Pacific Seafood misrepresented to crabbers

that demand was weak during the 2022/23 season.  (Opp. at 46–47.)  But the allegations do not

support that *crabbers*—also market participants—had no actual or constructive knowledge of the

true demand for their catch. *Hightower*, 2021 WL 2224148, at *6 (tolling requires allegations

that "plaintiff did not have actual or constructive knowledge").  Indeed, the Amended Complaint

alleges crabbers were aware of "high consumer demand" during the 2022/23 season.  (Am.

---

[6] As an independent basis for dismissal, the Amended Complaint also fails to plead unilateral
conduct that harmed competition. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d
1026, 1041 (N.D. Cal. 2024).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS                                  -17-                                3:23-CV-01098-AGT

127155834.12 0052902-00054

Compl. ¶¶ 205–07 (alleging crabbers received $9.75 and $10/lb. in the Puget Sound during 2022/23 season).) Moreover, these statements were during the 2022/23 season, and Plaintiffs allege no such statements before March 2019 that might permit extending the statute of limitations further.

In the alternative, Plaintiffs now claim that they also pled "continuing violation tolling," citing paragraph 425. (Opp. at 50.) That paragraph, under the heading "Delayed Discovery/Fraudulent Concealment," includes the conclusory allegation—"continuing nature of Defendants' conspiracy"—but does so in summarizing prior allegations of fraudulent concealment. Plaintiffs nowhere plead the elements of continuing violation tolling, including a "new and independent" overt act that inflicts "new and accumulating injury *on the plaintiff*." (*Id.* (reciting elements of continuing violation tolling (emphasis added)).) Plaintiffs argue that such overt acts were pled as to CI #1 during the 2023/24 season. (*Id.*) But CI #1 *is not the plaintiff* and is not even a crabber. CI #1 is crab *buyer*. The Amended Complaint fails to plausibly allege tolling to permit Plaintiffs to pursue claims predating March 13, 2019.

**E.** **Plaintiffs' Arguments and "New Facts" Do Not Cure the Amended Complaint's Failure to Plead Standing to Assert Antitrust Claims Against Defendants**

Plaintiffs claim that Little suffered antitrust injury because "Little sold to both Unnamed Co-conspirator #1 and Unnamed Co-conspirator #2 on or after March 19, 2019." (Opp. at 51.) But none of the allegations in the Amended Complaint plausibly allege that either unnamed party joined the alleged conspiracy or their role in it. (Mot. at 35–36.) And as explained above, the Amended Complaint fails to allege tolling to permit Little to sue over sales to Pacific Seafood made more than four years before this lawsuit was filed.

As to Burns, Plaintiffs claim that she is her late husband's "successor in interest" and "personal representative," citing counsel's declaration purporting to attach a filing that Burns served as personal representative for her husband's estate. (Opp. at 52.) The Amended Complaint, however, does not so allege and Plaintiffs may not amend their complaint through briefs in opposition to a motion to dismiss. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Moreover, neither the Amended Complaint nor the estate

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS
127155834.12 0052902-00054

-18-

3:23-CV-01098-AGT

1  document submitted by counsel establishes that Burns was assigned, devised or bequeathed her

2  late husband's antitrust claims through administration of his estate.

3      The single case relied upon by Plaintiffs, *Howes v. Yankton Medical Clinic, P.C.*, No. 15-

4  CV-04177-KES, 2016 WL 4385898 (D.S.D. Aug. 17, 2016), also does not abrogate the

5  well-established principle that non-market participants must show an *express assignment* of

6  antitrust claims for there to be antitrust standing.  (Mot. at 36 (citing cases).)  No party in *Howes*

7  argued that an express assignment was required, so the *Howes* court did not evaluate whether the

8  surviving spouse could pursue her deceased husband's claims.  Moreover, the surviving spouse in

9  *Howes* was also denied care and thus had antitrust injury in her own right.  *Id.* at *4 ("Here,

10 *plaintiffs* were denied care …. In sum, *plaintiffs* have antitrust standing …." (emphasis added)).

11 Burns has failed to allege she suffered antitrust injury by virtue of her husband's ex vessel crab

12 sales during the alleged class period, or possesses any right to assert his claims.

13 **F.     Plaintiffs Have Not Refuted Defendants' Showing That Further Amendment Would
        Be Futile and the Amended Complaint Should Be Dismissed with Prejudice**
14

15      In their final paragraph, Plaintiffs ask this Court to grant them leave to amend if any

16 portion of the Motion is granted.  (Opp. at 55.)  But Ninth Circuit law is clear:  when a district

17 court grants leave to amend as this Court previously did, but the party fails to remedy earlier

18 deficiencies, the Court in its discretion may dismiss without further amendment.  *Williams v.*

19 *California*, 764 F.3d 1002, 1018 (9th Cir. 2014).  That is the case here.  This Court dismissed

20 Plaintiffs' previous complaint because the allegations were "not specific enough to support a

21 plausible 'multi-hundred-member buyer's cartel.'"  (Dkt. 59, at 4.)  The Amended Complaint is

22 more of the same—disconnected and sporadic "instances" and "occurrences" in "only some

23 geographic areas" (*id.*), and an airing of grievances by CI #1.  Plaintiffs have now, twice, fully

24 failed to plausibly allege facts supporting a plausible, multi-year, coastwide, price-fixing

25 conspiracy, despite this Court's clear direction.  Plaintiffs' repeated failures to remedy pleading

26 deficiencies demonstrates that further leave to amend will be futile.  *Rutman Wine Co. v. E. & J.*

27 *Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming dismissal with prejudice where

28 amended complaint failed to remedy defects identified by district court in prior complaint).

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS                    -19-              3:23-CV-01098-AGT
127155834.12 0052902-00054

# III. CONCLUSION

For all of these reasons, the Court should dismiss the Amended Complaint with prejudice for failure to state a claim pursuant to Rule 12(b)(6).

DATED: December 20, 2024

*/s/ Charles H. Samel*

Edward C. Duckers (SBN 242113)
ed.duckers@stoel.com
Charles H. Samel (SBN 182019)
charles.samel@stoel.com
**STOEL RIVES LLP**
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900

Matthew D. Segal (SBN 190938)
matthew.segal@stoel.com
Michelle J. Rosales (SBN 343519)
michelle.rosales@stoel.com
**STOEL RIVES LLP**
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700

Timothy W. Snider (appearing *Pro Hac Vice*)
timothy.snider@stoel.com
**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

*Attorneys for Pacific Seafood Defendants*

DATED: December 20, 2024

*/s/ Christopher J. Kayser*

Christopher J. Kayser
Elizabeth E. Parker
**LARKINS VACURA KAYSER**
121 SW Morrison St. Suite 700
Portland, OR
Telephone: (503) 222-4424
cjkayser@lvklaw.com
eparker@lvklaw.com

Brian A. E. Smith
Joseph J. Fraresso
**BARTKO LLP**
1100 Sansome Street
San Francisco, CA 94111
Telephone: (415) 956-1900
bsmith@bartkolaw.com
jfraresso@bartkolaw.com

*Attorneys for Defendant Ocean Gold Seafoods, Inc.*

Stoel Rives LLP
Attorneys at Law
San Francisco

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-20-

3:23-CV-01098-AGT

127155834.12 0052902-00054

DATED: December 20, 2024

*/s/ Bao Quan P. Pham*
Bao-Quan P. Pham
**Law Office of Bao-Quan P. Pham**
345 N. 18th Street
San Jose, CA 95112
408-275-6701
baopham408@sbcglobal.net

*Attorneys for Defendant Global Quality Seafood LLC*

DATED: December 20, 2024

*/s/ Jonathan W. Thames*
Jonathan W. Thames
**KENNEDYS LAW LLP**
455 Market Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 323 4464
Jonathan.Thames@kennedyslaw.com

*Attorneys for Defendant American Seafood EXP, Inc.*

DATED: December 20, 2024

*/s/ Scott Cameron*
Scott Cameron
Josiah Prendergast
**WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: (916) 558-6000
scameron@weintraub.com
Jprendergast@weintraub.com

*Attorneys for Defendant California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc.*

DATED: December 20, 2024

*/s/ Colin W. Morrow*
Colin W. Morrow
**VANNUCCI MOMSEN MORROW**
45060 Ukiah St., Ste. A
P.O. Box 1214
Mendocino, CA 95460
Telephone: 707-380-1070
cmorrow@vmm-law.com

*Attorneys for Defendant Caito Fisheries, Inc.*

Stoel Rives LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-21-

3:23-CV-01098-AGT

127155834.12 0052902-00054

| | | |
|---|---|---|
| 1 | DATED: December 20, 2024 | /s/ Steven J. Goon |
| 2 | | Steven J. Goon |
| | | Sarah Van Buiten |
| 3 | | **RUTAN & TUCKER, LLP** |
| | | 18575 Jamboree Road, 9th Floor |
| 4 | | Irvine, CA 92612 |
| | | Telephone: 714-641-5100 |
| 5 | | sgoon@rutan.com |
| | | Svanbuiten@rutan.com |
| 6 | | |
| | | *Attorneys for Defendant Caito Fisheries, LLC and* |
| 7 | | *Southwind Foods, LLC* |
| 8 | DATED: December 20, 2024 | /s/ David Ebel |
| 9 | | David Ebel (appearing *Pro Hac Vice*) |
| | | Stephanie P. Berntsen |
| 10 | | Davis Leigh (appearing *Pro Hac Vice*) |
| | | **SCHWABE, WILLIAMSON & WYATT** |
| 11 | | 1420 Fifth Ave. |
| | | Seattle, WA 98101 |
| 12 | | Telephone: (206) 622-1711 |
| | | debel@schwabe.com |
| 13 | | sberntsen@schwabe.com |
| | | DBLeigh@schwabe.com |
| 14 | | |
| | | Stephen G. Sullivan |
| 15 | | **SCHWABE, WILLIAMSON & WYATT** |
| | | 800 West El Camino Real |
| 16 | | Mountain View, CA 94040 |
| | | Telephone: (650) 396-1403 |
| 17 | | ssullivan@schwabe.com |
| 18 | | *Attorneys for Defendant South Bend Products LLC* |
| | | *and Swanes Seafood Holding Company LLC* |
| 19 | | |
| 20 | DATED: December 20, 2024 | /s/ Christopher M. Wyant |
| | | Christopher M. Wyant (appearing *Pro Hac Vice*) |
| 21 | | Trudy D. Tessaro |
| | | **K&L Gates LLP** |
| 22 | | 925 Fourth Avenue, Suite 2900 |
| | | Seattle, WA 98104-1158 |
| 23 | | Telephone: (206) 370-7893 |
| | | christopher.wyant@klgates.com |
| 24 | | trudy.tessaro@klgates.com |
| 25 | | Michael J. Stortz |
| | | **K&L Gates LLP** |
| 26 | | 4 Embarcadero Center, Suite 1200 |
| | | San Francisco, California 94111 |
| 27 | | Telephone: (415) 882-8011 |
| | | Michael.Stortz@klgates.com |
| 28 | | |

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-22-

3:23-CV-01098-AGT

127155834.12 0052902-00054

| | |
|---|---|
| 1 | *Attorneys for Defendant Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC* |
| 2 | |
| 3 | DATED: December 20, 2024      /s/ Sean Gates |

DATED: December 20, 2024

/s/ Sean Gates
Sean Gates
**ILLOVSKY GATES & CALIA LLP**
155 N. Lake Avenue, Suite 800
Pasadena, California 91101
Telephone: (626) 508-1715
sean@illovskygates.com

*Attorneys for Defendant Safe Coast Seafoods, LLC, Safe Coast Seafoods Washington, LLC, and Blue River Seafood, Inc.*

DATED: December 20, 2024

/s/ Ann A. P. Nguyen
Ann A.P. Nguyen
**MESSNER REEVES LLP**
160 W Santa Clara Street, Suite 1000
San Jose, CA 95113
Telephone: (408) 298-7120
anguyen@messner.com

*Attorneys for Defendant Global Quality Foods, Inc.*

DATED: December 20, 2024

/s/ Nick Gunn
Duncan Macfarlane
**MACFARLANE LAW**
710 Ericksen Ave. NE, Suite 201
Bainbridge Is, WA 98110
Telephone: (206) 451-4058
Duncan@Macfarlane-Law.com

Nick Gunn, Esq. (appearing *Pro Hac Vice*)
**INTERNATIONAL MARITIME GROUP, PLLC**
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 707-8338
Gunn@Maritime.Law

*Attorneys for Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc.*

Stoel Rives LLP
Attorneys at Law
San Francisco

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-23-

3:23-CV-01098-AGT

127155834.12 0052902-00054

| 1 | DATED: December 20, 2024 | /s/ Philip J. Wang |
| 2 | | Philip J. Wang |
| | | Traci Michelle Keith |
| | | **PUTTERMAN YU WANG LLP** |
| 3 | | 345 California St. Suite 1160 |
| | | San Francisco, CA 94104 |
| 4 | | pwang@plylaw.com |
| | | tkeith@plylaw.com |
| 5 | | |
| | | *Attorneys for Defendant Ocean King Fish Inc.* |
| 6 | | |
| | DATED: December 20, 2024 | /s/ Steven McLellan |
| 7 | | Steven McLellan |
| | | **MCLELLAN LAW GROUP LLP** |
| 8 | | 900 E. Hamilton Ave. Suite 100 |
| | | Campbell, CA 95008 |
| 9 | | Mclellanlawgroup.com |
| 10 | | *Attorneys for Defendant Fisherman's Catch Inc.* |
| 11 | DATED: December 20, 2024 | /s/ Huechi Wong |
| | | Huechi Wong, Esq. |
| 12 | | HH LEGAL GROUP |
| | | 2443 Fillmore Street, #380-4372 |
| 13 | | San Francisco, CA 94115 |
| | | huechi@hhdisputes.com |
| 14 | | |
| | | *Attorney for Defendants Nor-Cal Seafood, Inc. and* |
| 15 | | *Kevin Lee* |
| 16 | | |

**ATTESTATION UNDER L.R. 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), I attest under the penalty of perjury that the above

signatories authorized the use of an electronic signature and concurred in the filing of this

document.

/s/ Charles H. Samel

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OMNIBUS REPLY ISO
MOTION TO DISMISS

-24-

3:23-CV-01098-AGT

127155834.12 0052902-00054