CHARLES H. SAMEL (SBN 182019)
charles.samel@stoel.com
EDWARD C. DUCKERS (SBN 242113)
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900

MATTHEW D. SEGAL (SBN 190938)
matthew.segal@stoel.com
MICHELLE J. ROSALES (SBN 343519)
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700

TIMOTHY W. SNIDER (Admitted *Pro Hac Vice*)
timothy.snider@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

*Attorneys for Pacific Seafood Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BRAND LITTLE and ROBIN BURNS, individually and on behalf of All Others Similarly Situated,

Plaintiffs,

v.

PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC, PACIFIC SEAFOOD – WESTPORT, LLC;

Case No. 3:23-cv-01098-AGT

**DEFENDANTS' CORRECTED OMNIBUS REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Date: January 24, 2025
Time: 10:00 a.m.
Courtroom: A, 15th Floor
Judge: The Honorable Alex G. Tse

PACIFIC SURIMI – NEWPORT, LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY, INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES, INC.; CAITO FISHERIES, INC.; CATIO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING FISH, INC.; SOUTH BEND PRODUCTS LLC; SWANES SEAFOOD HOLDING COMPANY LLC; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; and DOES 29-60,

Defendants.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... II
I. INTRODUCTION .......... 1
II. REPLY ARGUMENT .......... 1
A. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Plausible Coastwide *Per Se* Unlawful Price-Fixing Conspiracy .......... 1
1. Plaintiffs' Opposition Misunderstands the Requirements to Plead Direct Evidence of Conspiracy and Why the Amended Complaint Fails to Do So .......... 2
2. Plaintiffs Fail to Plead Circumstantial Evidence of a Conspiracy .......... 5
a. Plaintiffs Fail to Plead Facts Showing Parallel Pricing .......... 5
b. Plaintiffs Have No Answer for Their Failure to Plead Plus Factors Showing Defendants' Actions Are Inconsistent with Unilateral Conduct .......... 7
B. Plaintiffs' Arguments Cannot Transform Defective Group Pleading Allegations into Defendant-Specific Allegations of Fact Required to State a Plausible Claim .......... 10
C. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead State Law and Declaratory Judgment Claims .......... 12
D. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Basis for Tolling the Statute of Limitations .......... 13
E. Plaintiffs' Arguments and "New Facts" Do Not Cure the Amended Complaint's Failure to Plead Standing to Assert Antitrust Claims Against Defendants .......... 14
F. Plaintiffs Have Not Refuted Defendants' Showing That Further Amendment Would Be Futile and the Amended Complaint Should Be Dismissed with Prejudice .......... 15
III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Atl. Richfield Co.*,
25 Cal. 4th 826 (2001) .......... 13

*In re Automobile Antitrust Cases I & II*,
1 Cal. App. 5th 127 (2016) .......... 4

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) .......... 2, 9, 10

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
203 F.3d 1028 (8th Cir. 2000) .......... 2

*In re Cal. Bail Bond Antitrust Litig.*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) .......... 2, 9

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 13

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999), *aff'd*, 741 F.3d 1022 (9th Cir. 2014) .......... 2, 8, 9, 10

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962) .......... 1, 12

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
28 F.4th 42 (9th Cir. 2022) .......... 8, 12

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .......... 8

*Flannery Associates LLC v. Barnes Family Ranch Associates, LLC*,
727 F. Supp. 3d 895 (E.D. Cal. 2024) .......... 4

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,
No. 19-cv-00078-EJD, 2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) .......... 5

*Flextronics International USA, Inc. v. Panasonic Holdings Corp.*,
No. 22-15231, 2023 WL 4677017 (9th Cir. July 21, 2023) .......... 7

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) .......... 13

*In re German Auto. Mfrs. Antitrust Litig.*,
612 F. Supp. 3d 967 (N.D. Cal. 2020) .......... 8

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) .......... 6

*Hightower v. Celestron Acquisition, LLC*,
No. 20-CV-03639-EJD, 2021 WL 2224148 (N.D. Cal. June 2, 2021) .......... 13

*Hogan v. Cleveland Ave Restaurant Inc.*,
No. 2:15-CV-2883, 2018 WL 1475398 (S.D. Ohio Mar. 26, 2018) .......... 4

*Howes v. Yankton Medical Clinic, P.C.*,
No. 15-CV-04177-KES, 2016 WL 4385898 (D.S.D. Aug. 17, 2016) .......... 14, 15

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) .......... 9

*Jung v. Ass'n of Am. Med. Colls.*,
300 F. Supp. 2d 119 (D.D.C. 2004) .......... 1

*Kjessler v. Zaappaaz, Inc.*,
No. CV 4:18-0430, 2019 WL 3017132 (S.D. Tex. Apr. 24, 2019) .......... 4

*In re Late Fee & Over-Limit Fee Litig.*,
528 F. Supp. 2d 953 (N.D. Cal. 2007) .......... 8, 9, 10

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) .......... 8, 10

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
795 F.3d 1124 (9th Cir. 2015) .......... 7

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022) .......... 3, 6

*Plymouth Dealers' Association of Northern California v. United States*,
279 F.2d 128 (9th Cir. 1960) .......... 6, 7

*In re Processed Egg Prods. Antitrust Litig.*,
962 F.3d 719 (3d Cir. 2020) .......... 12

*Quality Auto Painting Ctr. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019) .......... 9

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) .......... 15

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) .......... 14

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
No. CV F 09-0560 LJO SMS, 2011 WL 2678879 (E.D. Cal. July 7, 2011) .......... 4

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) .......... 13

*Williams v. California*,
764 F.3d 1002 (9th Cir. 2014) .......... 15

**Statutes**

Cartwright Act .......... 12, 13

Sherman Act .......... 6

Sherman Act, Section 1 .......... passim

**Rules**

Fed. R. Civ. P. 9(b) .......... 13

Fed. R. Civ. P. 12(b)(6) .......... 15

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' CORRECTED OMNIBUS REPLY ISO MOTION TO DISMISS

-iv-

3:23-CV-01098-AGT

127155834.14 0052902-00054

## I. INTRODUCTION

This Court detailed the pleading defects in the original complaint and provided Plaintiffs a roadmap to cure them, but the Opposition hardly refers to the Court's order and fails to explain how, if at all, Plaintiffs corrected those deficiencies after discovering their monopolization case was "indeed a cartel action." (Opp. at 50 n.31.) Plaintiffs' new allegations, even apart from using improper group pleading and failing to allege facts specific to each Defendant, do nothing to address the fact that "it's a big jump to conclude that hundreds of direct purchasers up and down the West Coast were coerced into joining a price-fixing conspiracy." (Dkt. 59 at 4.) In their Opposition, Plaintiffs string cite hundreds of paragraphs from the 450-paragraph Amended Complaint with little or no discussion of the facts purportedly contained in those allegations. That is because the lion's share of those allegations are conclusory, and those that include some facts fail to support the propositions for which they are cited, or merely recount the idiosyncratic experiences of buyer CI #1. None individually, or considered as a whole, supports Plaintiffs' claim that Defendants engaged in a nine-year, coastwide conspiracy involving themselves and untold numbers of other buyers. This Court should dismiss this action with prejudice.

## II. REPLY ARGUMENT

### A. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Plausible Coastwide *Per Se* Unlawful Price-Fixing Conspiracy

Plaintiffs wrongly claim that the Motion improperly "dismember[s]" the Amended Complaint rather than viewing it as a whole. (Opp. at 15.) However, *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962), relied on by Plaintiffs, does not "relieve[] plaintiffs of the burden of adequately alleging that a conspiracy to restrain trade existed in the first instance and that each defendant knowingly joined or agreed to participate in the conspiracy." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004). "If plaintiffs fail to do so," *Continental Ore* does not "shield plaintiffs' claims from dismissal." *Id.* (citation omitted). The Amended Complaint is missing what is required by *Twombly*: factual allegations plausibly showing Defendants acted in concert to coordinate ex vessel prices.

**1. Plaintiffs' Opposition Misunderstands the Requirements to Plead Direct Evidence of Conspiracy and Why the Amended Complaint Fails to Do So**

"'Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)). Plaintiffs are correct that an unlawful agreement can be tacit and shown by a "knowing wink." (Opp. at 22.) But Plaintiffs "must still allege a 'wink' or its equivalent." *In re Cal. Bail Bond Antitrust Litig.* ("*Bail Bond*"), 511 F. Supp. 3d 1031, 1042 n.3 (N.D. Cal. 2021) (citation omitted). Here, the Amended Complaint improperly "assumes a conspiracy first, and then sets out to 'prove' it." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000). None of the allegations cited by Plaintiffs (Opp. at 17–20) contains facts to establish—without any inferences—the existence of an agreement to fix prices by any Defendant.

***Alleged statements by Defendants about prices are not direct evidence of conspiracy.*** As Plaintiffs acknowledge: "Crabbers being who they are and dock talk being what it is, what a crabber paid for a load of crab was soon widely known" among both "members of the fleet" and "the same or different buyers." (Am. Compl. ¶ 168.) Such "dock talk" does not show an agreement. *Bail Bond*, 511 F. Supp. 3d at 1042. Similarly, alleged discussions among buyers about prices being offered in the marketplace (Opp. at 17–18; Am. Compl. ¶¶ 180–84, 186–91, 236–40) are not direct evidence of an agreement to fix prices. Nor are commonplace bilateral negotiations between ex vessel buyers and crabbers (Am. Compl. ¶¶ 197–99, 215–19), in which the buyer tells the crabber it will only "match[]" another buyer (*id.* ¶¶ 198, 219). Such statements are insufficient when, as here, "nowhere does the [complaint] allege that [either defendant] actually *agreed* to the conspiracy in the first place." *Bail Bond*, 511 F. Supp. 3d at 1042.

Moreover, many of the "direct evidence" allegations cited by Plaintiffs describe unilateral conduct. For example, one Defendant's statement that Pacific Seafood will "make the decision" (Am. Compl. ¶¶ 223–27) about the season-opening price is not direct evidence of any agreement. Paragraph 281 refers to an "agreed price," but the allegation relates to the price agreed between

buyers and crabbers—not between buyers competing with one another. Similarly, allegations that two Defendants incentivized CI #1 to pay lower prices (*id.* ¶ 285), that CI #1 was told a port was "locked down" (*id.* ¶ 291), or that Pacific Seafood sent an email to some buyers "instructing" them to pay no more than $3 per pound (*id.* ¶ 349) are not direct evidence of any price-fixing conspiracy. None of those communications mentions any agreement among competitors.

***Allegations of "recruiting" are not direct evidence of conspiracy.*** Communications that Plaintiffs characterize as efforts to "recruit" CI #1 assume there is a conspiracy to join (Opp. at 18; Am. Compl. ¶¶ 283–84). These allegations largely recycle CI #1's complaints, including that certain Defendants reacted (*id.* ¶¶ 285, 309) when CI #1 tried to offer crabbers higher prices because it would disadvantage other buyers (*id.* ¶¶ 289, 292–96, 307–11). These communications are typical, lawful marketplace chatter and do not show direct evidence of any conspiracy. *See, e.g.*, *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1162 (S.D. Cal. 2022) (finding "trader communications expressing their preference for low-supply/high-price conditions and the backdrop of general collaboration among Defendants" did not demonstrate a conspiracy).

***Allegations of "policing" other crab buyers are not direct evidence of conspiracy.*** Allegations that Defendants "enforce" the claimed price-fixing agreement (Opp. at 19) again assume the existence of a conspiracy and again focus on CI #1 and an alleged campaign to drive him "out of business" (Am. Compl. at 55:13–14). For example, Plaintiffs allege that when CI #1 refused incentives from Nor-Cal to lower the price he paid crabbers, Nor-Cal undercut his price, causing retailers to cancel agreements. (*Id.* ¶¶ 285–88.) Plaintiffs assert that Pacific Seafood interfered with CI #1's efforts to lease a waterfront property (*id.* ¶¶ 297–99), spread rumors about him (*id.* ¶ 300), and instructed other Defendants not to do business with him (*id.* ¶¶ 312–13). Plaintiffs allege that a couple of Defendants canceled orders to purchase crab from CI #1 when he offered higher prices to crabbers. (*Id.* ¶¶ 312–19.) The Amended Complaint speculates that Fathom caused a harbormaster to deny CI #1 use of a public hoist for 48 hours. (*Id.* ¶¶ 320–22.) And Plaintiffs allege that after a meeting among some Defendants, one buyer told CI #1 that those buyers were upset with CI #1 for "broadcasting" a higher opening price and that there would be

"repercussions." (*See* Am. Compl. ¶¶ 334–43.) None of these allegations are direct evidence of a conspiracy among Defendants *to fix prices* requiring no inferences—they presume one.

***Allegations of "punishing" crabbers by "blacklisting" are not direct evidence of conspiracy.*** The cases cited by Plaintiffs at pages 19-20 of the Opposition do not support their proposition that blacklisting" is "also direct evidence" of a price-fixing agreement. Those cases involved factual allegations of a preceding unlawful agreement later enforced through boycotts. For example, in *Hogan v. Cleveland Ave Restaurant Inc.*, No. 2:15-CV-2883, 2018 WL 1475398, at *4 (S.D. Ohio Mar. 26, 2018), the plaintiff "alleged a direct, explicit 'industry agreement' to employ a price-fixing contract (a copy of which is already in the record)." Similarly, in *In re Automobile Antitrust Cases I & II*, 1 Cal. App. 5th 127, 167 (2016), there was testimony "that one of the key alleged co-conspirators thought that there was a 'consensus' among all of the meeting participants to work together to keep Canadian vehicles from crossing the border." No such antecedent agreement is plausibly alleged here.

***The Amended Complaint does not plead the types of facts that other courts found sufficient to allege direct evidence of conspiracy.*** The other cases relied upon by Plaintiffs (Opp. at 16–18, 22) are distinguishable because they included well-pled factual allegations of the alleged unlawful agreements. For example, in *Kjessler v. Zaappaaz, Inc.*, No. CV 4:18-0430, 2019 WL 3017132, at *11 (S.D. Tex. Apr. 24, 2019), the complaint alleged "specific, recorded meetings between [defendants] discussing [customized promotional products'] pricing and coordinating future meetings to discuss pricing." In screenshots of messages, defendants "admitted the so-called cartel exists, attempted to recruit the competitor to the group, and implicated the other Defendants." *Id.* at *3. Likewise, in *Flannery Associates LLC v. Barnes Family Ranch Associates, LLC*, 727 F. Supp. 3d 895, 910–11 (E.D. Cal. 2024), the complaint contained text messages between defendants referring to their unlawful agreement and showing that they colluded about how much they should accept to sell their land: "the remaining property owners should be in agreement on what we would want to sell [our] properties for" and "we should have a meeting in the next two weeks to talk about [Plaintiff]." And in *Stanislaus Food Products Co. v. USS-POSCO Industries*, No. CV F 09-0560 LJO SMS, 2011 WL 2678879, at *6

(E.D. Cal. July 7, 2011), the complaint alleged the "location and dates of meetings where the Market Allocation agreement was negotiated and finalized." Nothing in the Amended Complaint comes close to such direct evidence allegations.

***Plaintiffs misconstrue the significance of the Oregon statute authorizing pricing discussions.*** Finally, the Opposition misunderstands the import of the state action doctrine. (Opp. at 23–25.) Defendants are not seeking a finding of nonliability on an affirmative defense. Instead, the fact that the alleged December 2023 meeting was held pursuant to an Oregon regulatory program subject to antitrust immunity makes it unreasonable to infer that the alleged meeting can form a basis for an antitrust conspiracy. (Mot. at 21–23; Am. Compl. ¶¶ 227–28; Opp. at 18.) Oregon's regulatory program provides a common-sense explanation for a lawful meeting of competitors to discuss the season opening price and renders Plaintiffs' alleged conspiracy all the more implausible.

### 2. Plaintiffs Fail to Plead Circumstantial Evidence of a Conspiracy

#### a. Plaintiffs Fail to Plead Facts Showing Parallel Pricing

Plaintiffs' theory of the case is that Defendants engaged in a "pricing cartel that has artificially fixed, depressed, and controlled the ex vessel price paid to crabbers in the Pacific NW Area" since 2016. (Am. Compl. ¶ 8; Opp. at 26–27.) A pricing cartel, by definition, requires that "Defendants actually charged higher prices and that they did so in parallel." *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 19-cv-00078-EJD, 2020 WL 5106851, at *15 (N.D. Cal. Aug. 31, 2020). Plaintiffs fail to allege facts showing such parallel pricing. It is true that parallel pricing "need not be exactly simultaneous and identical" (Opp. at 28), but Plaintiffs offer no factual allegations to show, let alone compare, ex vessel prices paid by Defendants or other buyers over any period of time. To the contrary, Plaintiffs admit the Amended Complaint alleges Defendants used a variety of means to price *differently*.[1] (Opp. at 10-11.)

[1] To the extent Plaintiffs argue that Defendants engaged in similar nonprice conduct (Opp. at 27), there are no factual allegations to demonstrate how, for example, prices were suppressed by Defendants supplying one another in ports where they lack a presence, nor could there be as total supply remained unchanged (Opp. at 3). There also are no allegations of any antecedent agreement to do so and to prevent "white van buyers" from purportedly driving up ex vessel prices. It is lawful for competitors to supply products to one another. Such "'exchange agreements have long been recognized as procompetitive in purpose and effect, enabling or

It is no answer for Plaintiffs to point to their graph of coastwide ex vessel prices since 2016 relative to prices in the Puget Sound market either. (Opp. at 26.) Comparing *average* prices in one market to another market says nothing about the *individual* prices Defendants paid to crabbers and whether those prices moved in unison. (Mot. at 24–25.) "If data points are lumped together and averaged before the analysis, the averaging compromises the ability to tease meaningful relationships out of the data." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 493 (N.D. Cal. 2008). As a result, "[a]veraging" prices to demonstrate alleged price-fixing "masks the differences and by definition glides over what may be important differences" in actual prices paid by antitrust defendants. *Id.* at 494.

Plaintiffs' failure to plead parallel pricing is indefensible. Before filing the Amended Complaint, Plaintiffs obtained transaction-level data (indicating the price, buyer, and port) for each ex vessel sale of Dungeness crab in California, Oregon, and Washington going back to 2000. (Dkts. 60, 217.) Presumably, an analysis of the data would have been included if it showed Defendants paid the same ex vessel prices at the season opening or at any other time. That the Amended Complaint relies instead on irrelevant average pricing is telling.

Acknowledging that prices were not the same, Plaintiffs argue (Opp. at 29–30) that even "frequent" price deviation is immaterial because they allege a coastwide conspiracy to set a uniform season starting price in each port. But the cases Plaintiffs rely upon for the proposition that an agreement to fix a starting point for price negotiations may violate Section 1 all pled an antecedent unlawful agreement to set a starting point, which the Amended Complaint does not. For instance, in *Plymouth Dealers' Association of Northern California v. United States*, 279 F.2d 128 (9th Cir. 1960), an automobile dealers' association was convicted of criminal violations of the Sherman Act for publishing a price list and circulating it to its members, which the members used to start negotiations. *Id.* at 132. As the court observed in that case, "common sense tells us that there is no need for competitors to meet, agree upon content, print and circularize 'list prices'

---

facilitating companies to compete in product and/or geographical and/or temporal markets in which they otherwise could not or would not compete as efficiently or at all.'" *Persian Gulf*, 632 F. Supp. 3d at 1138–39 (citation omitted) (dismissing claim on summary judgment for alleged price-fixing conspiracy).

that are never to be looked at." *Id.* at 133. Here, in stark contrast, there are no factual allegations that Defendants (and possibly numerous other buyers) met and agreed upon ex vessel prices they would pay to fishermen.

The conclusory allegations of the Amended Complaint also contrast sharply with factual allegations that the Ninth Circuit found sufficient to permit an inference of parallel pricing in *Flextronics International USA, Inc. v. Panasonic Holdings Corp*., No. 22-15231, 2023 WL 4677017, at *1 (9th Cir. July 21, 2023), cited by Plaintiffs (Opp. at 26 n.25). The operative complaint there included a statistical analysis of plaintiff's own purchase data to demonstrate that the prices charged by defendants "always moved in parallel, and prices remained stubbornly stable" throughout the alleged conspiracy period. 2023 WL 4677017, at *1. Here, the Amended Complaint lacks any factual allegations to show that the Defendants paid the same ex vessel price over time, or at any given point in time. This failure alone precludes Plaintiffs from stating a claim for violation of Section 1 based on circumstantial evidence. (Mot. at 24.)

**b. Plaintiffs Have No Answer for Their Failure to Plead Plus Factors Showing Defendants' Actions Are Inconsistent with Unilateral Conduct**

Even if Plaintiffs had plausibly alleged that Defendants engaged in parallel pricing, the Amended Complaint fails to allege factually-supported plus factors as required to plead a conspiracy using circumstantial evidence. (Mot. at 26–31.) Plaintiffs' claims that Defendants "improperly argue the facts" (Opp. at 21) and their request that the Court adopt "their preferred inference" (*id*. at 29) or "alternative theories" (*id*. at 36) misunderstand the Ninth Circuit's admonition that district courts must consider "obvious alternative explanations for a defendant's behavior when analyzing plausibility" of an alleged anticompetitive agreement. *name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015) (citation omitted). Here, each alleged plus factor is consistent with self-interested, unilateral conduct.

***Alleged "price leadership" does not show conduct against economic self-interest.*** Plaintiffs maintain that Defendants should have "broken ranks" to pay higher ex vessel prices to try to capture a greater share of supply (Opp. at 33, 35–36), and argue that the Court should

ignore the well-established principle that "follow-the-leader" pricing routinely occurs in the absence of an unlawful agreement (Mot. at 27-29).

Plaintiffs' theory, however, was rejected in *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 596 (N.D. Cal. 2019). The plaintiff argued there that it would be "economically irrational" not to undercut a competitor's price "in a genuinely competitive market, because it foregoes an opportunity to increase market share by offering better prices" and "[e]rgo, [defendant's] pricing evidences collusion." *Id*. The court disagreed: "*Musical Instruments* rejects this syllogism for 'fail[ing] to account for conscious parallelism and the pressures of an interdependent market.'" *Id.* (citation omitted). Instead, as in the present case, "'so long as prices can be easily readjusted without persistent negative consequences,'" then "'one firm can risk being the first to raise prices, confident that if its price is followed, all firms will benefit.'" *Id*. (citation omitted). Thus, "'[f]ollow the leader' pricing" can be economically rational "without any unlawful agreement." *Id*.

The conduct alleged by Plaintiffs here is fully consistent with lawful "follow-the-leader" pricing and does not suffice to plead facts from which it is permissible to infer conspiracy. The Ninth Circuit, and numerous other courts, have recognized that follow-the-leader competition is "more consistent with conscious parallelism than with the plus factor recognized by the *Twombly* court." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.* ("*DRAM*"), 28 F.4th 42, 48 (9th Cir. 2022); *see also In re German Auto. Mfrs. Antitrust Litig.*, 612 F. Supp. 3d 967, 986 (N.D. Cal. 2020) (granting motion to dismiss and observing that "'follow the leader' pricing … is a well-recognized form of lawful conscious parallelism"); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 964 (N.D. Cal. 2007) (granting motion to dismiss and observing that "'[a] section 1 violation cannot ... be inferred from ... an industry's follow-the-leader pricing strategy'" (alterations in original) (quoting *In re Citric Acid Litig.*, 191 F.3d at 1102))), *aff'd*, 741 F.3d 1022 (9th Cir. 2014). "Following the example set by a competitor, without agreeing to do so in advance, is textbook 'price leadership'—a practice [many courts] have repeatedly stated is insufficient to establish the existence of an agreement" in violation of

Section 1. *Quality Auto Painting Ctr. v. State Farm Indem. Co.*, 917 F.3d 1249, 1264 (11th Cir. 2019) (affirming order granting motion to dismiss).

***Market "concentration" is a neutral factor.*** Plaintiffs next argue that alleged characteristics of the Pacific Northwest area market make it "highly susceptible to" a conspiracy to fix prices because of a "high concentration of buying power in Defendants." (Opp. at 34.) That argument ignores the alleged marketplace realities undermining this claim, including that there are 1,400 crabbers (Am. Compl. ¶ 1) and hundreds of ex vessel direct purchasers (*id.* ¶ 151). The alleged combined market share of the 34 Defendants also cannot tip the scales in favor of plausibility. The "relevant market in *Twombly*—where defendants were alleged to possess a 90% share—was more highly concentrated, and the Supreme Court nevertheless concluded that the complaint there failed to state a claim under section 1." *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964. Often, as here, "allegations concerning market characteristics are … just as likely to be consistent with innocent as unlawful behavior" and as a result, "the features of the market and its structure are therefore neutral facts." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 917 (N.D. Cal. 2019).

***"Opportunities to conspire" do not permit inference of agreement.*** Plaintiffs argue that allegations that Defendants had opportunities to collude and fix prices, including through trade associations, is a plus factor. (Opp. at 2 n.5, 34.) "The Supreme Court rejected similar allegations in *Twombly* … and other courts have consistently refused to infer the existence of a conspiracy from these kinds of averments." *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 963–64; *see also In re Citric Acid Litig.*, 191 F.3d at 1098 ("Gathering information about pricing and competition in the industry is standard fare for trade associations."). Similarly, "communications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *In re Baby Food Antitrust Litig.*, 166 F.3d at 126 (citation omitted). As for alleged opportunities to collude (Opp. at 2 n.5), the Amended Complaint "does not allege that any [] Defendant learned of or agreed to join the conspiracy at any of these meetings, or any details of who attended them or what was discussed." *Bail Bond*, 511 F. Supp. 3d at 1049.

"***Motive to conspire" is not enough.*** Plaintiffs argue (Opp. at 18) that Defendants have a motive to conspire to suppress ex vessel prices, which the Court should credit as a plus factor. But allegations of a motive to conspire are "never enough." *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964 (citation omitted). "[I]f 'a motive to achieve higher prices' were sufficient, every company in every industry could be accused of conspiracy because they all 'would have such a motive.'" *Id.* (citation omitted). Stated differently, "common motive does not suggest an agreement" because "[a]ny firm that believes that it could increase profits by raising prices has a motive to reach an advance agreement with its competitors." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015).

***"Gathering competitors' price information" is lawful and procompetitive.*** Finally, Plaintiffs are incorrect that allegations that some Defendants gathered information about other Defendants' ex vessel prices support an inference of conspiracy. (Opp. at 34–35.) Possessing competitor price information is not circumstantial evidence of conspiracy, and absent an agreement among competitors to exchange price information, is not unlawful. *See In re Baby Food Antitrust Litig.*, 166 F.3d at 126 ("Gathering competitors' price information can be consistent with independent competitor behavior."). In *Citric Acid*, for example, the Ninth Circuit held that evidence that the defendant's "files contained copies of competitors' price lists" did not permit an inference of conspiracy. 191 F.3d at 1103. The court observed that the plaintiff failed to make any "showing … that there was an *agreement* to exchange pricing information" and that "[t]here are many legal ways in which [the defendant] could have obtained pricing information on competitors." *Id.* Here, too, there are no factual allegations in the Amended Complaint to show any agreement to exchange pricing information.

**B. Plaintiffs' Arguments Cannot Transform Defective Group Pleading Allegations into Defendant-Specific Allegations of Fact Required to State a Plausible Claim**

Plaintiffs do not dispute that they must plausibly allege that *each* Defendant "joined the conspiracy and played some role in it." (Opp. at 37.) Despite that, Plaintiffs insist that the alleged nonspecific, scattershot, and random communications between certain representatives of a

handful of Defendants satisfy their burden of pleading a plausible nine-year, coastwide, price-fixing conspiracy involving all Defendants. (*Id.* at 20–21.) They do not.

The Amended Complaint does not include allegations stretching back to 2015–2019 as Plaintiffs contend. (*Id*. at 20.) Paragraphs 7–8 simply state the conclusion that "Defendants … created a pricing cartel … since the beginning of the 2015/16 season." Paragraph 54 refers to an irrelevant settlement in another lawsuit in 2017. Paragraphs 170 to 174 allege statements by three individuals that one crabber would not see prices as high as the 2015/16 season—the highest prices ever paid. Paragraphs 250 to 252 allege that Pacific Seafood owns 49% of Ocean Gold. Paragraph 266 alleges the City of Eureka terminated a hoist lease. And paragraph 388 alleges that Hallmark and Nor-Cal are dominant buyers in Port Orford, Oregon. None of these paragraphs comes close to pleading necessary, specific allegations of concerted action or participation in a conspiracy by *any* Defendants stretching back to 2015—let alone *all*.

Plaintiffs next argue that the Amended Complaint includes sufficient allegations of conspiratorial conduct for the 2020/21 and 2021/22 seasons. (*Id*. at 20–21.) But the single text message between Bornstein and Ocean King does not remotely support a price-fixing conspiracy—it states that crabbers were asking $2.75, and that Pacific Seafood was at $2.50 but later agreed to meet crabbers' demand at $2.75 (as did Bornstein). (Am. Compl. ¶¶ 187–91.) For the 2021/22 season, Plaintiffs argue that the allegations are not limited to a single text between Nor-Cal and an unidentified crabber. (Opp. at 20–21.) But the only additional allegation for that entire season alleges that a crabber who usually sold in Port Orford instead sold his crab that year in Charleston to obtain higher prices. (Opp. at 21 (citing Am. Compl. ¶¶ 390–91).)

Plaintiffs also cannot refute Defendants' claim that the Amended Complaint fails to allege any conspiracy allegations for several Defendants. (Opp. at 39–42.)

- **South Bend Defendants.** For the South Bend Defendants, Plaintiffs admit that the only allegation is that they "control" a hoist in Eureka and sell some crab to other Defendants. (*Id.* at 39.) This overstates the allegations, which provide only that South Bend "leases a portion of the Fishermen's Terminal Facility." (Am. Compl. ¶ 268.) But, more importantly, the allegations state only *unilateral*—not conspiratorial—conduct.

- **Caito Defendants.** Plaintiffs argue that they have pled sufficient facts to show successor liability of Southwind Foods, LLC ("Southwind"), but fail to point to allegations showing conspiratorial conduct to which such successor liability would apply. Plaintiffs point only

to a statement from John Caito, which they stretch to say that he sold his company to Southwind "to insulate himself from liability related to this lawsuit." (Opp. at 40 (citing Am. Compl. ¶ 93).) This too is unilateral—not conspiratorial—conduct.

- **Ocean Gold.** For Ocean Gold, Plaintiffs claim the Motion "mischaracterized" allegations concerning Ocean Gold's hoists and omitted allegations regarding Pacific Seafood's connections with Ocean Gold. (*Id.* at 41.) Those allegations were not ignored or mischaracterized. (Mot. at 18.) The allegations concerning the hoist are *unilateral* conduct of Ocean Gold and do not support any claim that it joined or participated in any price-fixing conspiracy. The allegations that Pacific Seafood owns 49% of Ocean Gold, and markets its seafood to downstream buyers, also are irrelevant. (*Id.* at 14, n.6.)

- **Ocean King, ASE, Fishermen's Catch, Global Quality and Nor-Cal.** For Ocean King and Nor-Cal, Plaintiffs claim the allegations show they "actively discussed a price-fixing agreement." (Resp. at 42 (citing Am. Compl. ¶¶ 171, 187–91, 195–99, 234–42, 262–64, 285–89, 307–10).) Those allegations *do not discuss any price-fixing agreement*, and instead reflect unilateral conduct. The only allegation that relates to a pricing decision is Nor-Cal's statement to one crabber in November 2021 that it would be "matching" Pacific Seafood's price. (Am. Compl. ¶¶ 196–99.) But such "follow-the-leader" pricing is "more consistent with conscious parallelism" than a price-fixing conspiracy. *DRAM*, 28 F.4th at 48; *see also* Section II.A.2.b, *supra*. Nor do the allegations that these Defendants purchase from other Defendants in ports where they do not have a presence demonstrate participation in a price-fixing agreement. *See* footnote 1, *supra*.

No amount of reading the Amended Complaint "holistically" can make up for the lack of specific, factual allegations showing each Defendant joined the alleged conspiracy and had a role in it. (Opp. at 20 (citing *Cont'l Ore*, 370 U.S. 690).) "'If the warning [in *Continental Ore*] against "compartmentalizing" an antitrust conspiracy case were meant to prevent a court from breaking down a plaintiff's allegation of a "unitary" conspiracy into its component parts for purposes of analysis, the Court would not have engaged in the "forbidden" analysis in the very same opinion in which it issued the warning.'" *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 727 (3d Cir. 2020) (citation omitted). Plaintiffs simply fail to plead plausible *facts* demonstrating the claimed nine-year, coastwide conspiracy, among *all* 34 Defendants.

### C. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead State Law and Declaratory Judgment Claims

Plaintiffs do not address the grounds in the Motion for dismissing their claims for violations of the Cartwright Act or the UCL, or for declaratory judgment (Mot. at 36–38), except to argue that the Amended Complaint pleads a claim for violation of the "unfairness" prong of the UCL. (Opp. at 42–45.) Plaintiffs are incorrect. Although "'conspiracy is not an element of an unfair competition law cause of action in the abstract as a matter of law,'" Plaintiffs "'cannot

deny that conspiracy is indeed a component of the unfair competition law cause of action in this case as a matter of fact.'" *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 663 (9th Cir. 2009) (quoting *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 866–67 (2001)). Plaintiffs' UCL claim, as pled, depends upon the same allegations of an unlawful agreement as their Section 1 and Cartwright Act claims. (Am. Compl. ¶¶ 442–47.) Plaintiffs therefore fail to state a claim under the unfairness prong because they fail to plead a plausible conspiracy.[2]

### D. Plaintiffs' Arguments Do Not Cure the Amended Complaint's Failure to Plead a Basis for Tolling the Statute of Limitations

Plaintiffs claim they adequately pled fraudulent concealment tolling based on allegations of "affirmative misrepresentations of fact alone." (Opp. at 45–46.) The single case they cite, however, *Hightower v. Celestron Acquisition, LLC*, No. 20-CV-03639-EJD, 2021 WL 2224148, at *6–8 (N.D. Cal. June 2, 2021), articulates and analyzes the required *three* elements—not misrepresentations alone. Plaintiffs next argue that they need not specify the date, time, or place of the alleged affirmative misrepresentations to plead fraudulent concealment. (Opp. at 47.) But that is precisely what Rule 9(b) mandates. (*See* Mot. at 32–33 (citing cases).) Plaintiffs' failure to allege the "who, what, where, when, and how" of the claimed fraudulent concealment is dispositive. *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1075 (N.D. Cal. 2016). Nor are Plaintiffs correct that tolling should not be resolved at the pleading stage. (*See* Mot. at 32-23 (citing cases rejecting fraudulent concealment tolling on motions to dismiss).)

Plaintiffs also are wrong that the Amended Complaint sufficiently alleges fraudulent concealment tolling. Plaintiffs claim that Pacific Seafood misrepresented to crabbers that demand was weak during the 2022/23 season. (Opp. at 46–47.) But the allegations do not support that *crabbers*—also market participants—had no actual or constructive knowledge of the true demand for their catch. *Hightower*, 2021 WL 2224148, at *6 (tolling requires allegations that "plaintiff did not have actual or constructive knowledge"). Indeed, the Amended Complaint alleges crabbers were aware of "high consumer demand" during the 2022/23 season. (Am. Compl.

---

[2] As an independent basis for dismissal, the Amended Complaint also fails to plead unilateral conduct that harmed competition. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1041 (N.D. Cal. 2024).

¶¶ 205–07 (alleging crabbers received $9.75/lb and $10/lb in the Puget Sound during 2022/23 season).) Moreover, these statements were during the 2022/23 season, and Plaintiffs allege no such statements before March 2019 that might permit extending the statute of limitations further.

In the alternative, Plaintiffs now claim that they also pled "continuing violation tolling," citing paragraph 425. (Opp. at 50.) That paragraph, under the heading "Delayed Discovery/Fraudulent Concealment," includes the conclusory allegation "continuing nature of Defendants' conspiracy." Plaintiffs, however, nowhere plead the elements of continuing violation tolling, including a "new and independent" overt act that inflicts "new and accumulating injury *on the plaintiff*." (*Id.* (reciting elements of continuing violation tolling (emphasis added)).) Plaintiffs argue that such overt acts were pled as to CI #1 during the 2023/24 season. (*Id.*) But CI #1 *is not the plaintiff* and is not even a crabber. CI #1 is crab *buyer*.

**E. Plaintiffs' Arguments and "New Facts" Do Not Cure the Amended Complaint's Failure to Plead Standing to Assert Antitrust Claims Against Defendants**

Plaintiffs claim that Little suffered antitrust injury because "Little sold to both Unnamed Co-conspirator #1 and Unnamed Co-conspirator #2 on or after March 19, 2019." (Opp. at 51.) But none of the allegations in the Amended Complaint plausibly allege that either unnamed party joined the alleged conspiracy or their role in it. (Mot. at 35–36.) And as explained above, the Amended Complaint fails to allege tolling to permit Little to sue over earlier sales.

As to Burns, Plaintiffs claim that she is her late husband's "successor in interest" and "personal representative," citing counsel's declaration purporting to attach a filing that Burns served as personal representative for her husband's estate. (Opp. at 52.) The Amended Complaint, however, does not so allege and Plaintiffs may not amend their complaint through briefs in opposition to a motion to dismiss. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Moreover, neither the Amended Complaint nor the estate document submitted by counsel establishes that Burns was assigned, devised or bequeathed her late husband's antitrust claims through administration of his estate.

The single case relied upon by Plaintiffs, *Howes v. Yankton Medical Clinic, P.C.*, No. 15-CV-04177-KES, 2016 WL 4385898 (D.S.D. Aug. 17, 2016), also does not abrogate the rule that

non-market participants must show an *express assignment* of antitrust claims for antitrust standing. (Mot. at 36 (citing cases).) No party in *Howes* argued that an express assignment was required, so the *Howes* court did not evaluate whether the surviving spouse could pursue her deceased husband's claims. Moreover, the surviving spouse in *Howes* was also denied care and thus had antitrust injury in her own right. 2016 WL 4385898, at *4 ("Here, *plaintiffs* were denied care …. In sum, *plaintiffs* have antitrust standing …." (emphasis added)). Burns has failed to allege she possesses any right to assert her late husband's antitrust claims.

**F. Plaintiffs Have Not Refuted Defendants' Showing That Further Amendment Would Be Futile and the Amended Complaint Should Be Dismissed with Prejudice**

In their final paragraph, Plaintiffs ask this Court to grant them leave to amend if any portion of the Motion is granted. (Opp. at 55.) But Ninth Circuit law is clear: when a district court grants leave to amend as this Court previously did, but the party fails to remedy earlier deficiencies, the Court in its discretion may dismiss without further amendment. *Williams v. California*, 764 F.3d 1002, 1018 (9th Cir. 2014). That is the case here. This Court dismissed Plaintiffs' previous complaint because the allegations were "not specific enough to support a plausible 'multi-hundred-member buyer's cartel.'" (Dkt. 59, at 4.) The Amended Complaint is more of the same—disconnected and sporadic "instances" and "occurrences" in "only some geographic areas" (*id.*), and an airing of grievances by CI #1. Plaintiffs have now, twice, fully failed to plausibly allege facts supporting a plausible, multi-year, coastwide, price-fixing conspiracy, despite this Court's clear direction. Plaintiffs' repeated failures to remedy pleading deficiencies demonstrate that further leave to amend will be futile. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming dismissal with prejudice where amended complaint failed to remedy defects identified by district court in prior complaint).

## III. CONCLUSION

For all of these reasons, the Court should dismiss the Amended Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

/ / /

DATED: December 30, 2024

/s/ Charles H. Samel
Edward C. Duckers (SBN 242113)
ed.duckers@stoel.com
Charles H. Samel (SBN 182019)
charles.samel@stoel.com
**STOEL RIVES LLP**
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900

Matthew D. Segal (SBN 190938)
matthew.segal@stoel.com
Michelle J. Rosales (SBN 343519)
michelle.rosales@stoel.com
**STOEL RIVES LLP**
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700

Timothy W. Snider (appearing *Pro Hac Vice*)
timothy.snider@stoel.com
**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

*Attorneys for Pacific Seafood Defendants*

DATED: December 30, 2024

/s/ Christopher J. Kayser
Christopher J. Kayser
Elizabeth E. Parker
**LARKINS VACURA KAYSER**
121 SW Morrison St. Suite 700
Portland, OR
Telephone: (503) 222-4424
cjkayser@lvklaw.com
eparker@lvklaw.com

Brian A. E. Smith
Joseph J. Fraresso
**BARTKO LLP**
1100 Sansome Street
San Francisco, CA 94111
Telephone: (415) 956-1900
bsmith@bartkolaw.com
jfraresso@bartkolaw.com

*Attorneys for Defendant Ocean Gold Seafoods, Inc.*

DATED: December 30, 2024

*/s/ Bao-Quan P. Pham*
Bao-Quan P. Pham
**Law Office of Bao-Quan P. Pham**
345 N. 18th Street
San Jose, CA 95112
408-275-6701
baopham408@sbcglobal.net

*Attorneys for Defendant Global Quality Seafood LLC*

DATED: December 30, 2024

*/s/ Jonathan W. Thames*
Jonathan W. Thames
**KENNEDYS LAW LLP**
455 Market Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 323 4464
Jonathan.Thames@kennedyslaw.com

*Attorneys for Defendant American Seafood EXP, Inc.*

DATED: December 30, 2024

*/s/ Scott Cameron*
Scott Cameron
Josiah Prendergast
**WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: (916) 558-6000
scameron@weintraub.com
Jprendergast@weintraub.com

*Attorneys for Defendant California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc.*

DATED: December 30, 2024

*/s/ Colin W. Morrow*
Colin W. Morrow
**VANNUCCI MOMSEN MORROW**
45060 Ukiah St., Ste. A
P.O. Box 1214
Mendocino, CA 95460
Telephone: 707-380-1070
cmorrow@vmm-law.com

*Attorneys for Defendant Caito Fisheries, Inc.*

DATED: December 30, 2024

*/s/ Steven J. Goon*
Steven J. Goon
Sarah Van Buiten
**RUTAN & TUCKER, LLP**
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
sgoon@rutan.com
Svanbuiten@rutan.com

*Attorneys for Defendant Caito Fisheries, LLC and Southwind Foods, LLC*

DATED: December 30, 2024

*/s/ David Ebel*
David Ebel (appearing *Pro Hac Vice*)
Stephanie P. Berntsen
Davis Leigh (appearing *Pro Hac Vice*)
**SCHWABE, WILLIAMSON & WYATT**
1420 Fifth Ave.
Seattle, WA 98101
Telephone: (206) 622-1711
debel@schwabe.com
sberntsen@schwabe.com
DBLeigh@schwabe.com

Stephen G. Sullivan
**SCHWABE, WILLIAMSON & WYATT**
800 West El Camino Real
Mountain View, CA 94040
Telephone: (650) 396-1403
ssullivan@schwabe.com

*Attorneys for Defendant South Bend Products LLC and Swanes Seafood Holding Company LLC*

DATED: December 30, 2024

*/s/ Christopher M. Wyant*
Christopher M. Wyant (appearing *Pro Hac Vice*)
Trudy D. Tessaro
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Telephone: (206) 370-7893
christopher.wyant@klgates.com
trudy.tessaro@klgates.com

Michael J. Stortz
**K&L Gates LLP**
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8011
Michael.Stortz@klgates.com

*Attorneys for Defendant Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC*

DATED: December 30, 2024

*/s/ Sean Gates*
Sean Gates
**ILLOVSKY GATES & CALIA LLP**
155 N. Lake Avenue, Suite 800
Pasadena, California 91101
Telephone: (626) 508-1715
sean@illovskygates.com

*Attorneys for Defendant Safe Coast Seafoods, LLC, Safe Coast Seafoods Washington, LLC, and Blue River Seafood, Inc.*

DATED: December 30, 2024

*/s/ Ann A. P. Nguyen*
Ann A.P. Nguyen
**MESSNER REEVES LLP**
160 W Santa Clara Street, Suite 1000
San Jose, CA 95113
Telephone: (408) 298-7120
anguyen@messner.com

*Attorneys for Defendant Global Quality Foods, Inc.*

DATED: December 30, 2024

*/s/ Nick Gunn*
Duncan Macfarlane
**MACFARLANE LAW**
710 Ericksen Ave. NE, Suite 201
Bainbridge Is, WA 98110
Telephone: (206) 451-4058
Duncan@Macfarlane-Law.com

Nick Gunn, Esq. (appearing *Pro Hac Vice*)
**INTERNATIONAL MARITIME GROUP, PLLC**
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 707-8338
Gunn@Maritime.Law

*Attorneys for Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc.*

DATED: December 30, 2024

*/s/ Philip J. Wang*
Philip J. Wang
Traci Michelle Keith
**PUTTERMAN YU WANG LLP**
345 California St. Suite 1160
San Francisco, CA 94104
pwang@plylaw.com
tkeith@plylaw.com

*Attorneys for Defendant Ocean King Fish Inc.*

DATED: December 30, 2024

*/s/ Steven McLellan*
Steven McLellan
**MCLELLAN LAW GROUP LLP**
900 E. Hamilton Ave. Suite 100
Campbell, CA 95008
Mclellanlawgroup.com

*Attorneys for Defendant Fisherman's Catch Inc.*

DATED: December 30, 2024

*/s/ Huechi Wong*
Huechi Wong, Esq.
HH LEGAL GROUP
2443 Fillmore Street, #380-4372
San Francisco, CA 94115
huechi@hhdisputes.com

*Attorney for Defendants Nor-Cal Seafood, Inc. and Kevin Lee*

**ATTESTATION UNDER L.R. 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), I attest under the penalty of perjury that the above signatories authorized the use of an electronic signature and concurred in the filing of this document.

*/s/ Charles H. Samel*