UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRAND LITTLE, et al.,

            Plaintiffs,

      v.

PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,

            Defendants.

Case No. 23-cv-01098-AGT

**ORDER ON MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. Nos. 189, 199, 200, 205

      In their first amended complaint, plaintiffs dropped their monopsony claim and built out their price-fixing claim. The latter claim is no longer based on general allegations of an industry-wide buyer's cartel; it is based on pleaded facts plausibly supporting that Pacific Seafood fixed the price that it and other major buyers of Dungeness crab paid crabbers.

      The pleaded facts include:

- Text messages in which buyers indicated that Pacific Seafood would set the price for Dungeness crab. *See, e.g.*, FAC ¶¶ 198, 217 ("I'm waiting [for the] big boss [to] give out [the] price." "Will [be] [m]atching the big boss."); *id.* ¶¶ 198–99 (identifying Pacific Seafood's principal, Frank Dulcich, as the "big boss"); *id.* ¶ 225 ("[Pacific Seafood] will make the decision. Could be as high as 2.25."); *id.* ¶ 224 ("3 does not work[.] 1.85-2.00 is the number and that is where [Pacific Seafood] will be."); *id.* ¶ 180 ("What's price doing? Hearing Pacific is raising to $3.25.").

- A December 2023 meeting at which Pacific Seafood and other buyers "expressed a uniform position [that] they did not want to offer crabbers more than $2.50/lb. as an opening ex vessel price." *Id.* ¶ 228.[1]

---

[1] Defendants say this meeting was "part of state-sanctioned and supervised pricing negotiations between ex vessel buyers and crabbers." Omnibus MTD, Dkt. 189 at 32. The amended

- A December 2023 email from Pacific Seafood to other buyers, "instructing them to keep the ex vessel price at or below $3/lb." FAC ¶ 349.

- A January 2024 meeting at Pier 45 in San Francisco, during which Pacific Seafood and other buyers discussed the ex vessel price they planned to offer and complained about a buyer, Confidential Buyer Informant # 1 ("CBI #1"), who was offering a higher price. *See id.* ¶¶ 334–36.

- Buyers' attempts to coerce CBI #1 to match Pacific Seafood's price. *See, e.g.*, *id.* ¶ 296 (identifying buyers who told CBI #1 "he was screwing things up for everyone else and needed to lower [his] ex vessel price"); *id.* ¶ 301 (alleging that CBI #1 received calls and texts from buyers who tried to convince him to follow what they called the "cooked price"); *id.* ¶ 308 (detailing a call in which one buyer asked CBI #1 to "participate" by "bringing down the ex vessel price he was paying").

- Buyers' efforts to retaliate against CBI #1 after he didn't adopt the group's price. *See, e.g.*, *id.* ¶ 320 (alleging that Pacific Seafood and another buyer pressured the Charleston, Oregon, harbormaster to deny CBI #1 "use of the public hoist"); *id.* ¶ 342 (alleging that Pacific Seafood and another buyer broadcast "that they would take everyone's crab, as long as no one sold to or bought from [CBI #1]"); *id.* ¶ 398 (alleging that buyers told "crabbers that if they didn't stop buying from [CBI #1], they'd close their doors").

These and other allegations in the first amended complaint "raise a reasonable expectation that discovery will reveal evidence of [an] illegal agreement" to fix prices. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Courts "categorically condemn" horizontal price-fixing agreements of the kind pleaded here, in which competitors "agree to charge the same prices." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 819–20 (9th Cir. 2023).

* * *

---

complaint says nothing of the sort, and the Court declines to take judicial notice of the truth of statements made in meeting minutes and related records whose accuracy cannot be determined on a motion to dismiss. *See* RJN, Dkt. 189-1 at 3–4; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take judicial notice of disputed facts contained in . . . public records."); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.").

Having determined that plaintiffs have plausibly alleged a price-fixing agreement in violation of Sherman Act § 1, the Court considers the other issues raised by defendants in their motions to dismiss—whether plaintiffs have antitrust standing, whether their claims are time-barred, whether each defendant plausibly participated in the alleged conspiracy, and whether plaintiffs' other claims are well-pleaded.

1.    <u>Antitrust Standing</u>

The named plaintiffs, Brand Little and Robin Burns, plausibly allege that they were injured by the price-fixing conspiracy, triggering antitrust standing.

A commercial fisherman, Little sold Dungeness crab to Unnamed Co-conspirator #1 ("UCC #1") in four of the last five seasons. *See* FAC ¶ 12. UCC #1 plausibly participated in the conspiracy. After Pacific Seafood's representative "paid [UCC #1] a visit and pointedly told him Pacific Seafood was only paying $2.25 ex vessel," UCC #1 "lowered the price" he was offering. *Id.* ¶ 345. UCC #1 told Little "he'd like to pay [him] more" but couldn't because defendants "directed him to pay a lesser amount." *Id.* ¶ 278.

UCC #1 may have participated in the conspiracy "involuntarily or under coercion," but he participated nonetheless, making him a co-conspirator. *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992). Little was plausibly injured by the conspiracy when he sold crab to UCC #1 at the conspiracy's fixed, deflated price. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1157 (9th Cir. 2019).[2]

As for named plaintiff Robin Burns, her late husband was a fisherman who sold Dungeness crab to several defendants. *See* FAC ¶ 13 (alleging sales to Pacific Seafood [2016/17,

---

[2] Having concluded that Little was plausibly injured when he sold crab to UCC #1, the Court needn't consider whether Little's other crab sales support standing, too. *See* FAC ¶ 12.

2018/19, 2019/20 seasons]; Nor-Cal Seafood, Inc. [2019/20]; and American Seafood Exp,

Inc. [2020/21], among other sales). Now that her husband is deceased, Burns plausibly has

antitrust standing as her husband's successor in interest. *See* Cal. Civ. Proc. Code §§ 377.11,

-.30; FAC ¶ 13 (alleging that Burns "stands in the place of her late husband").

Burns needn't allege that her husband expressly assigned his claims to her, as de-

fendants contend. Defendants haven't cited any precedent that would require a widow to

plead an express assignment before pursuing her late husband's claims. *Cf.* Omnibus MTD,

Dkt. 189 at 47 (citing decisions[3] considering the assignment of claims between corporate

entities, patients and their healthcare providers, and a company and its shareholders).

2. <u>Statute of Limitations</u>

Both named plaintiffs sold crab to alleged conspiracy members within the four years

before they filed this lawsuit. *See* FAC ¶¶ 12–13 (alleging sales in 2020 and 2021, among

other years). As a result, plaintiffs' claims aren't barred by the statute of limitations even if,

as defendants argue, tolling doesn't apply. *See* Omnibus MTD, Dkt. 189 at 43.

In invoking the statute of limitations, defendants focus on the class period, which, as

proposed, would reach from January 1, 2016, to the present. *See* FAC ¶ 12. Defendants con-

tend that the proposed class period covers claims barred by the statute of limitations and that

tolling doesn't apply. *See* Dkt. 189 at 43 (arguing that "claims based on sales prior to March

13, 2019—four years before the date the original Complaint was filed—are time-barred").

The Court needn't consider the length of the class period now. What matters on a

---

[3] *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437–40 (3d
Cir. 1993); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880,
895–98 (C.D. Cal. 2012); *Korea Kumho Petrochemical v. Flexsys Am. LP*, No. C07-010577-
MJJ, 2007 WL 2318906, at *3 n.2 (N.D. Cal. Aug. 13, 2007).

motion to dismiss is whether the named plaintiffs have pled timely claims, which they have. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims . . . ," *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015), or, by implication, piecemeal dismissals of portions of a proposed class period. The Court will defer ruling on the appropriate class-period length until plaintiffs move for class certification.

3.    Participation in the Conspiracy

With limited exception, plaintiffs plausibly allege that each defendant joined the conspiracy. Pacific Seafood set the opening price offered to crabbers. *See* FAC ¶ 175. The other defendants adopted the same price and pressured others to do the same.

| Defendants | Allegations |
| --- | --- |
| Pacific Seafood<br>Safe Coast Defendants[4]<br>Nor-Cal Defendants<br>Global Quality Defendants<br>Caito Defendants<br>Fishermen's Catch, Inc.<br>American Seafood Exp, Inc. | In February 2023, in Crescent City, CA, defendants' representatives "told [CBI #1] their agreed ex vessel price in Crescent City was $2.25/lb." *Id.* ¶ 281. |
| Bornstein Defendants | In August 2023, Mike Shirley and Andrew Bornstein of Bornstein Seafoods, Inc., called and texted CBI #1, informing him about the "cooked price" for Dungeness crab. *Id.* ¶ 301. |
| Safe Coast Defendants | In November 2023, Safe Coast Seafoods LLC's Max Boland sent a series of texts to CBI #1, informing him that Pacific Seafood would set the ex vessel price paid at the opening of the 2023/24 Dungeness crab season. *See id.* ¶ 223; *id.* ¶ 224 ("3 does not work[.] 1.85-2.00 is the |

---

[4] The umbrella terms used in this section, i.e., the "Safe Coast Defendants," are each used to refer to groups of entity defendants, all of which are identified in the complaint. *See id.* ¶¶ 40–126. In total, there are 13 defendant groups and 35 defendants.

|  | number and that is where [Pacific Seafood] will be."); *id.* ¶ 225 ("PAC will make the decision. Could be as high as 2.25."). |
|---|---|
| Nor-Cal Defendants | In December 2023, Kevin Lee of Nor-Cal Seafood, Inc., called CBI #1 and asked him to "participate" by bringing down the ex vessel price he was paying. *Id.* ¶ 308. Lee told CBI #1 to "keep the price the same as Nor-Cal's," *id.* ¶ 309, and noted that "Hallmark was doing the same [as] Nor-Cal, matching ex vessel prices and taking care of each other," *id.* ¶ 310. |
| Pacific Seafood<br>Bornstein Defendants<br>Safe Coast Defendants<br>Fathom Defendants<br>Hallmark Defendants | At a December 2023 meeting, defendants' representatives "expressed a uniform position [that] they did not want to offer crabbers more than $2.50/lb. as an opening ex vessel price." *Id.* ¶ 228. |
| Pacific Seafood<br>Fathom Defendants | In January 2024, Fathom Seafood's Nick Mareno and Pacific Seafood's representatives orchestrated an effort to deny CBI #1 access to the public hoist in Charleston, Oregon, after CBI #1 refused to match their ex vessel price. *See id.* ¶¶ 317–33. |
| Pacific Seafood<br>Safe Coast Defendants<br>Hallmark Defendants<br>Global Quality Defendants<br>Fishermen's Catch, Inc.<br>Unnamed Co-conspirators #1 and #2 | In January 2024, representatives of defendants and Unnamed Co-conspirators #1 and #2 met at Pier 45 in San Francisco. *Id.* ¶ 334. Afterward, Safe Coast's Max Boland told CBI #1 that "the group was upset with [CBI #1] for broadcasting to crabbers a higher opening price than what Pacific Seafood and the other big buyers wanted, and that there would be repercussions." *Id.* ¶ 335; *see also id.* ¶¶ 336–43 (detailing the repercussions that followed the meeting). |
| Pacific Seafood<br>Ocean Gold Seafoods, Inc. | Following the Pier 45 meeting, Pacific Seafood's and Ocean Gold's representatives enforced the group's set price by "broadcast[ing] to other buyers that they would take everyone's crab, as long as no one sold to or bought from |

[CBI #1]." *Id.* ¶ 342; *see also id.* ¶¶ 397–98.

Southwind Foods LLC also plausibly participated in the conspiracy, as successor to Caito Fisheries, Inc. Southwind purchased Caito Fisheries, Inc., in the spring of 2023. FAC ¶ 92. Caito Fisheries, Inc.'s principal told CBI #1 that the sale "was done in reaction to the filing of the instant case," *id.* ¶ 93, plausibly to evade liability. *See also id.* ¶ 65 (alleging that Nor-Cal's principal considered Caito's sale to Southwind an example of how to "evade liability from the instant lawsuit"). A "purchaser of a company . . . assume[s] the seller's liabilities" if "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007) (citing *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)). Plaintiffs plausibly allege such a fraudulent transfer here.

Also, since the spring 2023 acquisition, Caito Fisheries, Inc., "has continued to buy ex vessel crab, as Caito Fisheries LLC." FAC ¶ 274. As alleged, Caito Fisheries LLC has deferred to Pacific Seafood's ex vessel pricing decisions, implicating Caito Fisheries LLC in the conspiracy as well. *See id.* ¶ 226 (alleging that in November 2023, John Caito told CBI #1 that "Caito would not set an opening ex vessel price until Pacific Seafood did").[5]

\* \* \*

The only defendants not plausibly implicated in the conspiracy are South Bend Products LLC, Swanes Seafood Holding Co., and Ocean King Fish, Inc.

South Bend Products LLC and Swanes Seafood Holding Co. "collectively do . . .

---

[5] The Court takes judicial notice of the Caito Defendants' articles of incorporation and related formation documents. *See* Dkt. 206. The documents' existence doesn't conflict with plaintiffs' allegations, and to the extent the documents raise disputed factual issues, those issues must be resolved later in the case. *See Khoja*, 899 F.3d at 999.

business as 'South Bend.'" FAC ¶ 116. Plaintiffs allege that the South Bend Defendants leased the public hoist and related dock facilities in Eureka, *id.* ¶¶ 267–69; unloaded crabs with the hoist, *id.* ¶ 272; and sold crabs to several conspiracy members, *id.* ¶ 273.

The South Bend Defendants could have had "rational, legal business [reasons]" for leasing a public hoist, unloading crab, and selling crab to several conspiracy members. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015). No well-pleaded factual allegations indicate that they agreed to Pacific Seafood's fixed price. Neither company is plausibly implicated in the conspiracy.

As for Ocean King Fish, Inc., in 2021, an Ocean King representative texted a Bornstein representative about ex vessel pricing. *See* FAC ¶¶ 187–191; 236–240. The texts show that Ocean King knew about Pacific Seafood's ex vessel price and wanted to know if Bornstein would adopt it. *See, e.g.*, *id.* ¶ 237 (asking Bornstein, "Will you be matching the price?"). In the texts, though, Ocean King never agreed to Pacific Seafood's price, and Ocean King's curiosity, without more, doesn't plausibly implicate the company in the conspiracy.

All defendants plausibly participated in the conspiracy except South Bend Products LLC, Swanes Seafood Holding Co., and Ocean King Fish, Inc.

4.  <u>Other Claims</u>

In addition to their Sherman Act § 1 price-fixing claim, plaintiffs bring claims under California's Cartwright Act and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 16720, 17200, and for declaratory relief, 28 U.S.C. § 2201. These claims mirror the § 1 claim, and defendants seek their dismissal on the same grounds as the § 1 claim. Finding that those grounds lack merit, with the limited exceptions identified above, the Court concludes that plaintiffs' Cartwright Act, UCL, and declaratory relief claims are well pleaded.

## CONCLUSION

The Court denies defendants' omnibus motion to dismiss (dkt. 189), except the Court grants the motion as to all claims against defendant Ocean King Fish, Inc. Plaintiffs' allegations don't plausibly implicate Ocean King in the price-fixing conspiracy.

The Court grants South Bend Products LLC's and Swanes Seafood Holding Co.'s motions to dismiss (dkts. 199, 200). Plaintiffs' allegations don't plausibly implicate either South Bend Defendant in the price-fixing conspiracy.

The Court denies Caito Fisheries LLC and Southwind Foods LLC's motion to dismiss (dkt. 205). Caito Fisheries LLC and Southwind Foods LLC are plausibly implicated in the conspiracy as the successors of Caito Fisheries, Inc.

Plaintiffs have leave to amend their complaint for the limited purpose of adding factual allegations against Ocean King and the South Bend Defendants. If plaintiffs choose to file a second amended complaint, they must file it by February 7, 2025. If plaintiffs decide not to amend, defendants must answer the operative complaint by February 21, 2025.

**IT IS SO ORDERED.**

Dated: January 17, 2025

Alex G. Tse
United States Magistrate Judge