Stuart G. Gross (SBN 251019)
Ross A. Middlemiss (SBN 323737)
Travis H.A. Smith (SBN 331305)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628

*Attorneys for Plaintiffs and the Proposed Classes*
[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**BRAND LITTLE** and **ROBIN BURNS**, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

**PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC; PACIFIC SEAFOOD – WESTPORT, LLC; PACIFIC SURIMI – NEWPORT LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY,**

Case No. 3:23-cv-01098-AGT

**JOINT RULE 26(f) REPORT**

Date: February 28, 2025
Time: 2:00 p.m.
Dept: Courtroom A, 5th Floor
Judge: Hon. Alex G. Tse

**INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES, INC.; CAITO FISHERIES, INC.; CAITO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING FISH INC.; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; and DOES 30-60,**

Defendants.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Plaintiffs Brand Little ("Little") and Robin Burns ("Burns") (collectively, "Plaintiffs") and Defendants Pacific Seafood Procurement, LLC, Pacific Seafood Distribution, LLC, Pacific Seafood Processing, LLC, Pacific Seafood USA, LLC, Dulcich, Inc., Pacific Seafood – Eureka, LLC; Pacific Seafood – Charleston, LLC, Pacific Seafood – Warrenton, LLC, Pacific Seafood – Newport, LLC, Pacific Seafood – Brookings, LLC, Pacific Seafood – Westport, LLC, and Pacific Surimi – Newport LLC (collectively, "Pacific Seafood"), Blue River Seafood, Inc.; Safe Coast Seafoods, LLC; Safe Coast Seafoods Washington, LLC (collectively, "Safe Coast"), Ocean Gold Seafoods, Inc. ("Ocean Gold"), Nor-Cal Seafood, Inc. ("Nor-Cal"), Kevin Lee, American Seafood Exp, Inc. ("ASE"), California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc. (collectively, "Hallmark"), Alaska Ice Seafoods, Inc. and Long Fisheries, Inc. (collectively, "Fathom Seafood"), Caito Fisheries, Inc. ("Caito Fisheries, Inc."), Caito Fisheries, LLC, and Southwind Foods, LLC ("Caito LLC/Southwind"), Fishermen's Catch, Inc. ("Fishermen's Catch"), Global Quality Foods, Inc. ("Global Quality Foods, Inc.), Global Quality Seafood LLC ("Global Quality Seafood LLC"), Ocean King Fish Inc. ("Ocean King"), Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC (collectively, "Bornstein")[1], have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) on February 3, 2025 (the "Rule 26(f) conference") and jointly submit the following Rule 26(f) Report based thereon.

## (A) <u>CHANGES CONCERNING FRCP 26(a) INITIAL DISCLOSURES</u>

The parties have agreed that initial disclosures shall occur on or before March 7, 2025.[2] This represents a timing shift compared to the Court's March 13, 2023 Order Setting Initial Case Management Conference and ADR Deadlines, which required initial disclosures 7 days before the Initial Case Management Conference. Applying that same spacing now would set the initial disclosure deadline on February 21, 2025. The parties do not believe any further changes

[1] Plaintiffs understand that all Defendants have approved the contents of this document. However, as of the time of filing, formal approval to sign on behalf of certain counsel had not yet been received. Signatures for such counsel have been omitted.

[2] Plaintiffs and Defendant Ocean King have agreed that its Initial Disclosures will be due on the date that any answer by it is due..

concerning FRCP 26(a) initial disclosures are required.

**(B) SCOPE, TIMING, AND ANY LIMITATIONS OF ANTICIPATED DISCOVERY**

**I. Scope of Discovery**

PLAINTIFFS STATE:

Plaintiffs anticipate discovery into topics that include, without limitation:

1) Defendants' company structure, including the ownership and control of Defendants' various corporate entities and physical assets as well as decision-making authority;

2) Defendants' operations, including, without limitation, the location and nature of relevant facilities and/or assets, information about Defendants' purchases of Dungeness crab (ex vessel and otherwise), sales of Dungeness crab (including from other ex vessel buyers), costs incurred by Defendants in connection with the purchase, processing, and/or sale of Dungeness crab, profits earned by Defendants from the purchase and sale of Dungeness crab, and information about Defendants' partnerships with and/or acquisition of other business entities involved in the commercial Dungeness crab market;

3) Defendants' internal policies, practices, and procedures, including with regard to the price and amount of Dungeness crab that it purchases and sells and how decisions are made regarding the same;

4) Defendants' acquisition and processing of Dungeness crab, including price negotiations for and documentation relating to the same;

6) Agreements, payments, and/or other dealings among Defendants and between Defendants and other buyers of Dungeness crab;

7) Agreements, payments, and/or other dealings between Defendants and operators of Dungeness crab facilities and crab fishermen;

8) Communications among Defendants and between Defendants and crab fishermen, other Dungeness crab buyers, and operators of Dungeness crab facilities regarding matters including, without limitation, the purchase of Dungeness crab, the opening dates of the commercial season for Dungeness crab, the ex vessel price for Dungeness crab, and agreements and arrangements

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

relating thereto, and communications concerning Plaintiffs and this action; and

9) Internal communications between Defendants and their employees, agents, managers, and/or executives or between Defendants' employees, agents, managers, and/or executives, about the purchase of Dungeness crab and/or about Plaintiffs and this action.

DEFENDANTS STATE:

Defendants anticipate discovery into topics that include, without limitation:

1)  Plaintiffs' sales of Dungeness crab;

2)  Plaintiffs' agreements or dealings with buyers of Dungeness crab;

3)  Plaintiffs' business structure and operations related to sales of Dungeness crab;

4)  Plaintiffs' communications around price negotiations and sales of Dungeness crab, including, but not limited to, discussions on social media accounts, discussions with Confidential #1 and Unnamed Co-conspirators #1 and #2 and other crabbers;

5)  Plaintiff Burns' rights to assert claims of her deceased husband;

6)  Plaintiffs' agreements or dealings with other buyers of Dungeness crab;

7)  Plaintiffs' participation in associations or groups related to crabbing, Dungeness crab pricing, or Dungeness crab sales;

8)  Third-party discovery relating to Confidential Informant #1, Unnamed Co-conspirators 1 and 2, and other crabbers including, without limitation, company structure, operations information, and communications related to Dungeness crab price negotiations and sales and other allegations relating to such persons as alleged in the Second Amended Complaint;

9)  Party and third-party discovery concerning meetings and communications alleged in the Second Amended Complaint;

10) Party and third-party discovery concerning negotiations of ex vessel pricing at various ports in California, Oregon and Washington, and related communications; and

11) California, Oregon and Washington Departments of Fish and Wildlife and Agriculture relating to regulation and oversight of Dungeness crab seasons and price negotiations.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**II. Timing**

The parties propose a fact discovery cutoff of November 9, 2026 and an expert discovery cutoff of July 9, 2027.

**III. Phasing**

The parties do not believe that there would be any benefit to phasing discovery in this action.

## (C) ELECTRONICALLY STORED INFORMATION

The parties certify that their respective counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and that meet and confer has occurred, and continues to occur, concerning the issues detailed below.

**I. Disclosure - ESI Protocol**

The parties are working in good faith on an ESI protocol, having exchanged drafts and redlines following the Rule 26(f) conference, and intend to provide a stipulated ESI protocol to the Court in due course.

**II. Discovery - Meet and Confer with Individual Defendant Families**

"Defendant families" used throughout this Report corresponds to the groupings alleged in Plaintiffs' Second Amended Complaint ("SAC"), ¶¶ 14-12, with two exceptions: (1) Caito Fisheries, Inc. is treated as one family, and Caito Fisheries, LLC and South Wind Fisheries, LLC are treated as one family; (2) Global Quality Seafood, Inc. and Global Quality Foods, Inc. are treated as two separate families. Thus, there are a total of 14 Defendant families for purposes of this Report.

In order to identify and resolve any preliminary obstacles to efficient discovery regarding ESI, Plaintiffs are conducting meet and confer with individual Defendant families to discuss the following general ESI topics specific to that Defendant:

- How structured and/or non-structured data are maintained and related storage locations (e.g., cloud, server, individual devices, etc.);
- How data is accessed, and which individuals have access;

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

- Whether records concerning Dungeness crab market activity are kept separate from records concerning other seafood products;
- How the Defendant's communications are conducted, the devices used for that communication, and how communications are stored and accessed;
- Whether paper records are used, and if so, how and where they are stored;

As of the filing of this Joint Rule 26(f) Report, Plaintiffs have had calls with the following Defendant families concerning the aforementioned topics:

- Pacific Seafood
- Hallmark
- Safe Coast
- Fishermen's Catch
- Southwind Seafood LLC and Caito Fisheries LLC[3]
- Nor-Cal Seafood and Kevin Lee
- Caito Fisheries Inc.

Plaintiffs have scheduled, or are working to set up, meet and confer calls with the following Defendants during the week of February 24-28, 2025:

- Global Quality Foods[4]
- Global Quality Seafoods
- Bornstein
- Ocean Gold
- Fathom
- ASE

Defendants also will jointly conduct meet and confer with Plaintiffs on general ESI topics specific to Plaintiffs.

---

[3] Caito Fisheries, LLC, and Southwind Foods, LLC are represented by different counsel than Caito Fisheries, Inc., and Plaintiff conducted separate calls with counsel accordingly.

[4] Global Quality Foods, Inc. and Global Quality Seafood LLC are separately represented, and Plaintiffs will conduct separate calls with counsel for each Defendant.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**III. Preservation Issues**

During the Rule 26(f) conference Plaintiffs asked each Defendant if its employees had been advised that the Defendant's litigation hold extends to ESI on the cell phones and other personal electronic devices of employees and owners that are used within the scope of their employment by, or agency for, the Defendant, irrespective whether or not the device was issued by the Defendant or is their personal property.

Defendants Pacific Seafood, Hallmark, Ocean Gold, Safe Coast, and Fishermen's Catch represented during the Rule 26(f) conference that such an instruction had been given. Defendants Fathom confirmed during subsequent meet and confer that its employees had been instructed to preserve company records on all personal devices, and confirmation was provided that Defendant Kevin Lee was also instructed to preserve ESI on his personal devices.

Each of the Plaintiffs has been reminded of their obligation to preserve all records relevant to this action, and Plaintiffs also provided a document preservation requests to Confidential Informant #1. and Unnamed Co-conspirators #1 and #2.

Plaintiffs will address the issue of ESI preservation with the remaining Defendants during planned meet and confers regarding ESI. Defendants likewise will address the issue of ESI preservation with Plaintiffs during a future meet and confer regarding ESI, as Plaintiffs have requested a global conference concerning Plaintiffs' ESI obligations to be set at a future date. If unresolved preservation issues exist after this process, Plaintiffs will seek their resolution by the Court.

**(D) PRIVILEGE ISSUES**

The court entered a Stipulated Protective Order on June 26, 2024, which addresses certain privilege issues and is applicable to all parties. Dkt. 63. And the current draft of the ESI protocol also addresses certain privilege issues. The parties will continue to meet and confer in good faith about issues of privilege as discovery proceeds. There are currently no issues concerning privilege to bring to the Court's attention.

**(E) FURTHER CHANGES TO, OR LIMITATIONS ON, DISCOVERY**

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**I. Agreed Changes**

Following several good faith meet and confers, the parties agreed to the following modifications to Discovery:

- Plaintiffs can serve requests for document production that are directed to all or several Defendants, but to which each Defendant (or the several to which the requests are directed) would respond separately.
- The parties agreed to negotiate in good faith a stipulation or stipulations to resolve, to the extent practicable, authenticity and admissibility issues, with the exception of relevancy and FRE 403 matters. In the absence of coverage of certain evidence by such a stipulation, the parties have agreed that a party may serve any necessary requests for admission to address any potential evidentiary objections, and that such "document requests for admission" may be served after the close of fact discovery.

The parties further agreed that:

- Within a reasonable time following initial disclosures, the parties shall meet and confer in good faith to devise a mutually acceptable deposition protocol, which will address, *inter alia*, the total number of depositions that each side is allowed to take.
- Within a reasonable time following initial disclosures, the parties will consider whether a stipulation concerning expert discovery is necessary, and if so, meet and confer in good faith to devise a mutually acceptable stipulation.

**II. Disputed Changes Concerning Interrogatories and Requests for Admission**

The parties are in agreement that the number of interrogatories each party can serve should be limited beyond the number set by Rule 33. They are in disagreement regarding the content of that limitation and what deadline should be set for answering contention interrogatories.

The Parties are in disagreement regarding whether numerical limitations should be placed on requests for admission and what deadline should be set for answering requests for admission that do not seek to establish the admissibility or authenticity of a document.

The Parties' competing proposals are below:

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**1. PLAINTIFFS' PROPOSAL:**

Interrogatories

- Plaintiffs may jointly serve:
    - 25 contention interrogatories on each Defendant family (defined above); and
    - 15 non-contention interrogatories on each Defendant, 3 of which would concern the Defendant's structured data.[5]
- Defendants may jointly serve:
    - 25 contention interrogatories; and
    - 20 non-contention interrogatories.
- Each Defendant family may serve:
    - 5 (non-duplicative of jointly served) contention interrogatories; and
    - 5 (non-duplicative of jointly served) non-contention interrogatories.

Responses to all contention interrogatories are due at the close of fact discovery, regardless of when the interrogatory was served. Defendants may divide their allocated interrogatories as they prefer between each Plaintiff.

Requests for Admission

- Plaintiffs may jointly serve: 35 requests for admission on each Defendant family.
- Defendants may jointly serve: 30 requests for admission.
- Each Defendant family may serve: 5 (non-duplicative of jointly served) requests for admission.

The foregoing numerical limitations do not apply to requests for admission that are served to establish the admissibility and/or authenticity of a document.

With the exception of responses to the latter, which are due according to normal rules, responses to all requests for admission are due at the close of fact discovery, regardless of when the request was served. Defendants may divide their allocated requests for admission as they

[5] As discussed during the 26(f) conference, Plaintiffs propose an iterative process for interrogatories concerning structured data, whereby responses thereto would memorialize information provided to Plaintiffs int the course of meet and confer on the topic that would precede the response.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

prefer as between each Plaintiff.

All of the above limitations are subject to a Party's ability to move the Court to increase the number of interrogatories and requests for admission consistent with LR 33-3, modified to also apply to requests for admission.

Plaintiffs' Proposals Are Proportional to the Needs of the Case and Are Necessary to Prevent Plaintiffs from Being Unduly Burdened

A party is limited to discovery that is "proportional to the needs of the case," Rule 26(b)(1); and the Court "must limit the frequency or extent of discovery otherwise allowed by [the FRCP] or by local rule if it determines that…the proposed discovery is outside the scope permitted by Rule 26(b)(1)," Rule 26(b)(2)(C)(iii). The Court further is empowered to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c)(1).

Plaintiffs' proposals are proportional to each party's needs in this case, allowing all parties to gather the necessary information appropriately sought through interrogatories and requests for admission, while preventing Plaintiffs from being unduly burdened by repeated barrages of hundreds of duplicative interrogatories and requests for admission—the vast majority of which would almost certainly seek information about Plaintiffs' contentions, given that Plaintiffs are both individuals and thus have little non-contention information that is appropriately sought through an interrogatory or request for admission.

Plaintiffs allege an almost decade-long, multi-state price-fixing conspiracy among over thirty Defendants and co-conspirators, most of whom are significant companies with numerous employees and facilities. Plaintiffs need certain basic facts about each Defendant that are appropriately sought through non-contention interrogatories, including, without limitation, basic facts necessary to understand how various Defendant family members are related to one another, the role each Defendant plays in the ex vessel market, and the identity of each Defendant's relevant employees. Plaintiffs propose 12 non-contention interrogatories to gather this information from each Defendant, which is proportional, and in fact conservative, viewed against Plaintiffs' informational needs. The additional 3 non-contention interrogatories concerning each

Defendant's structural data is a reasonable and non-burdensome way to ensure that there are no misunderstandings or ambiguities concerning this important topic, which should substantially decrease the likelihood or at least the scope of disputes later regarding structured data, which in large antitrust class actions are unfortunately quite common.

The 25 contention interrogatories per Defendant family that are allotted to Plaintiffs are necessary to address the different defenses that each Defendant family will raise, both as formal affirmative defenses in their answers and otherwise. Plaintiffs need sufficient interrogatories to explore the factual bases for each of these defenses, some of which will likely be boilerplate that nonetheless need to be examined, with a contention interrogatory the most appropriate means of doing so.

Finally, the 35 requests for admission allotted to Plaintiffs to serve on each Defendant family concerning matters other than admissibility and authenticity of documents is proportional to Plaintiffs' needs. This number would allow Plaintiffs to establish the lack of dispute about certain basic facts in advance of dispositive motion practice and trial and would not unduly burden any Defendant.

The proposed allotment of interrogatories and requests for admission to Defendants is also proportional to their needs in the case, if not generous. Plaintiffs are individuals, and none of the claims made in this action arise out of any of their conduct. Accordingly, it is difficult to conceive of more than a handful of non-contention interrogatories that Defendants, as a whole, would need to serve on them. Nonetheless, under Plaintiffs' proposal, Defendants can jointly serve 20 non-contention interrogatories on Plaintiffs, and each Defendant family can serve 5 more. Defendants have not, in the parties' meet and confer, identified any need that this allocation would not satisfy, and it is impossible to imagine one.

As to contention interrogatories, the allotment to Defendants is also proportional to their needs in the case. Plaintiffs allege that Defendants are members of a single conspiracy, who acted together to suppress the ex vessel price for Dungeness crab in the Pacific NW Area; thus, definitionally, the factual basis of the allegations against them are overwhelmingly common. The 25 contention interrogatories that Plaintiffs' proposal allots to Defendants to jointly serve should

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

be more than enough to get at those common facts sufficiently to prepare them for dispositive motion practice and trial, in combination with other discovery. Nonetheless, Plaintiffs' proposal allots each Defendant family an additional 5 contention interrogatories that each can serve in the unlikely event there is some contention by Plaintiffs that has not yet been adequately explored through the jointly served interrogatories.

Moreover, under Plaintiffs' proposal, if any Defendant believes that it needs additional interrogatories (contention or non-contention) or requests for admission, it could move the Court for leave to serve them in accordance with the procedure outlined in LR 33-3.

Finally, Plaintiffs' proposal that answers to contention interrogatories and requests for admission be due at the close of fact discovery is the default rule in many federal courts, has significant efficiency benefits, and would prevent the undue burdening of Plaintiffs by successive rounds of duplicative and/or overlapping contention interrogatories from the 30 plus defendants in this action. *See, e.g.,* SDNY Civil Local Rule 33.3(c); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period"). Without this limitation, parties are compelled to provide what are inevitably partial or provisional responses early in discovery, and then later amend them to reflect information later learned. This is particularly likely here, given the size and scope of the case. This limitation, moreover, would allow Plaintiffs to effectively consolidate their responses to different but overlapping contention interrogatories and requests for admission served by various Defendants, substantially mitigating what would otherwise be the undue burden of responding multiple times to the same or similar requests.

On the other hand, under both the default rules and Defendants' proposal, Plaintiffs are potentially subject to relentless and erratic (or coordinated) barrages of literally hundreds of interrogatories (most of which would likely be contention) and requests for admission, a situation that would, at best, lead to repeated and disorganized motion practice, as Plaintiffs sought to use Rule 26(c)(1) to keep this case on track and prevent the burden from overwhelming them.

Without modifications, the thirty-three Defendants could collectively serve 1650

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

interrogatories on Plaintiffs—most of which, as discussed above and based on statements by Defendants' counsel, would be contention interrogatories—and an unlimited number of requests for admission, responses to all of which would be due approximately 30 days later. There is no way this would be proportional to Defendants' needs in the case, and responding to such requests would collapse Plaintiffs' ability to pursue their claims; basically, Plaintiffs' counsel would be able to do little other than answer the requests or file motions seeking relief from the Court from the responsibility to do so.

Under the Defendants' proposal, the situation is better, but would still impose an undue burden on Plaintiffs. Defendants propose no limitations on the number of requests for admission, no limitation on when contention interrogatories or requests for admission must be answered, and propose that each Defendant family be allowed to serve 25 interrogatories on each Plaintiff. Under this proposal, the thirty-three Defendants could collectively serve 350 interrogatories—most, if not all, of which would be contention interrogatories and many of which would very likely seek duplicative or overlapping information—on Plaintiffs, without any coordination, at any time in the case, with responses to due according to no coordinated schedule. Added to this would be an unlimited number of requests for admission, which, again, could be served without any effort at coordination, at any time in the case, with responses due approximately 30 days after the particular Defendant decided to serve the set. The disruption this would cause to the orderly and efficient prosecution and management of this case is obvious, as is the undue burden it would impose on Plaintiffs. And, on the other hand, Defendants have identified no need to which this level of discovery is proportional and no good faith need for such discovery is conceivable.

Defendants' counter arguments (stated below) are unavailing.

As an initial matter, while Defendants state, "discovery is not entirely a numbers game," their arguments are based almost entirely on complaints regarding the lack of numerical equivalence between the number of interrogatories and requests for admission respectively allotted to Plaintiffs and Defendants in Plaintiffs' proposal. However, numerical equivalence is not the standard; rather, the standard is "proportional to the needs in the case," Rule 26(b)(1), and Defendants have not made below (or in the parties' meet and confers) any real argument why

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

subjecting Plaintiffs to an unlimited number of requests for admission and 350 interrogatories—the bulk of which would seek information about Plaintiffs' contentions and which would apparently be served at various times throughout the discovery period, according the whims of particular Defendants and without any attempt at coordination amongst Defendants—is proportionate to Defendants' needs in the case.[6]

The closest Defendants come to describing their relevant discovery needs is noting that the SAC alleges facts concerning various events that involve various Defendants. However, these allegations do not justify the Defendants' argument that each Defendant has significant discovery needs that are independent of the other Defendants: it is black letter law that members of a conspiracy are liable for the conduct of their co-conspirators; thus, all Defendants share the same interest in conducting discovery into all of Plaintiffs' allegations. And certainly nothing along these lines creates the need for Defendants to subject Plaintiffs to unlimited requests for admission and 350 interrogatories served with no attempt at any coordination.[7]

Finally, with regards to contention interrogatories, Defendants concede that "some such Interrogatories are best answered at or near the end of fact discovery," and yet argue no restriction should be imposed on when any contention interrogatory is answered, on two apparent bases: (1) that sometimes it is difficult to determine whether an interrogatory qualifies as a contention interrogatory; and (2) there may be a small number of contention interrogatories that would be

---

[6] Indeed, if numerical equivalence was the standard, there is no reason it should not be judged from the perspective of the responding parties as opposed to from the perspective of propounding parties. If one looked at from the perspective of the responding parties: under Plaintiffs' proposal, Plaintiffs would be required to respond to 185 interrogatories and 100 requests for admission, and each Defendant would be required to respond, on average, to approximately 25 interrogatories and 15 requests for admission; and under Defendants' proposal, Plaintiffs would be required to respond to 350 interrogatories and unlimited requests for admission, and each Defendant would be required to respond, on average, to approximately 10 interrogatories and unlimited requests for admission. From this perspective, Defendants' proposal is grossly out of numerical equivalence in their favor, while Plaintiffs' proposal is out of equivalence in Defendants' favor as well.

[7] Defendants' "Plaintiffs deserve it for naming so many defendants" response concerning the undue burden this would impose on Plaintiffs is facially unavailing. Discovery is not guided by punitive principles; and Plaintiffs did nothing improper by bringing claims against the various named Defendants whose participation in the alleged conspiracy the Court has already found plausible. Rather the standard, again, is proportional to the needs in the case.

useful to have answered sooner in the discovery process. With regards to the first basis, Plaintiffs are confident that the experienced counsel involved in this case can figure out whether an interrogatory is a contention interrogatory or not and, in the absence of consensus on the question, the Court is capable of making this determination. With regards to the second basis, Plaintiffs would be open to an arrangement that would provide for a certain number of contention interrogatories to be answered before fact discovery; however, this was never proposed by any Defendant. And more to the point, the hypothetical need by some Defendants to get answers to a limited number of contention interrogatories earlier than the close of fact discovery does not justify Defendants' absolutist position that no limits should be placed on contention interrogatories whatsoever.

Thus, Plaintiffs request that the Court enter the limitations on interrogatories and requests for admission that Plaintiffs have proposed.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

### 2. DEFENDANTS' PROPOSAL

Interrogatories:

- Plaintiffs may serve 25 Interrogatories on each Defendant family.
- Each Defendant family may serve 25 Interrogatories on Plaintiffs.
- Each Party may decide whether to serve "contention" interrogatories, or "non-contention" Interrogatories, but the total number of Interrogatories are as set out above.

Requests for Admission:

- Defendants do not propose any limitations on the number of Requests for Admission, as Rule 36 includes no limitations on the use of this discovery device, other than the general limitations set out in Rule 26.

Defendants' Proposal is Proportional to the Needs of the Case; Plaintiffs' Proposal is Not

Plaintiffs allege a decade-long price-fixing conspiracy among over thirty Defendants across three states and numerous ports along the entire West Coast. Plaintiffs' proposal, which provides over four times the number of Interrogatories to Plaintiffs over Defendants and places arbitrary limits on the types of interrogatories, and over four times the number of Requests for

Admission to Plaintiffs over Defendants, is not proportional. Defendants' proposal, on the other hand, gives equal Interrogatories to each collective "party" to use as they see fit, and places no limits on Requests for Admission consistent with Rule 36.

Although discovery is not entirely a numbers game, under Plaintiffs' proposal, Plaintiffs are permitted to serve 845 Interrogatories (25 contention per Defendant family (14 families), and 15 non-contention per Defendant (33 defendants). Defendants, on the other hand, are permitted to serve only 185 total Interrogatories among the 14 Defendant families comprising 33 separate Defendants—45 of which are *joint* with only 10 (5 contention, 5 non-contention) given to each Defendant family separately. Plaintiffs' proposal appears to be based on the misconception that all Defendants can and will defend this case the same way, and are similarly positioned with one another. That is not the case. The Defendants are a diverse group of businesses with differing operations, structures, and business plans that create different products and work in different markets. Many Defendants had not even heard of one another until Plaintiffs named them in the same lawsuit—indeed, the Second Amended Complaint is the only thing that ties them together other than the fact that they all purchase or have purchased Dungeness crab ex vessel in different amounts, in different ports, for different purposes. Moreover, the Second Amended Complaint details numerous and disconnected events involving only some Defendants, others involving other Defendants, and many involving no Defendants. For example, Plaintiffs allege that Caito LLC/Southwinds' acquisition of Caito Fisheries was a fraudulent transfer—an allegation relating to those Defendants only that would be the subject of unique and substantial discovery requests by itself. Similarly, Plaintiffs make numerous claims concerning Pacific Seafoods' acquisitions that have nothing to do with other Defendants, but will be the subject of Pacific Seafoods' discovery directed at Plaintiffs. These are just examples, as the Second Amended Complaint is chockfull of allegations relating to numerous events, meetings, contracts and alleged retaliation by differing Defendants, all of which are proper subjects of discovery and do not lend themselves to largely *joint* Interrogatories as proposed by Plaintiffs—let alone justify Plaintiffs being allotted more than *four times* the number given to all Defendants.

Plaintiffs also place arbitrary limits on "contention" and "non-contention" Interrogatories

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

that are contrary to Rule 33. Defendants may choose to serve some "contention" Interrogatories, but they should be permitted to use their allotted Interrogatories in any manner each deems appropriate for the defense of the case.

Defendants further disagree that responses to any contention Interrogatories not be required until the end of fact discovery. As an initial matter, what is a "contention" Interrogatory is not always clear, and although some such Interrogatories are best answered at or near the end of fact discovery, other such contention Interrogatories may be used as a discovery device to determine what further discovery may be needed. For example, a "contention" Interrogatory asking to list all witnesses Plaintiffs contend have knowledge of the alleged price-fixing conspiracy would not be useful at the end of fact discovery. Although such an Interrogatory may be supplemented at the end of discovery, a blanket ruling that Plaintiffs need not respond until it is too late to engage in further discovery is not appropriate. Indeed, Plaintiffs' own cited case contemplates how such a discovery tool should not be precluded entirely and does not support that "contention" interrogatories should be pushed entirely to the end of fact discovery. *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985) ("[T]he wisest course is not to preclude entirely the *early* use of contention interrogatories, but to place a burden of justification on a party who seeks answers to these kinds of questions before substantial documentary or testimonial discovery has been completed.") Here, moving "contention" interrogatories to the end of discovery essentially eliminates their use as a "discovery" tool given the multi-state, multi-defendant allegations of a price-fixing conspiracy.

Defendants' proposal is straightforward, fair and proportional. Plaintiffs have 25 Interrogatories per Defendant family to use as they see fit between contention and non-contention for a total of 350. Each Defendant family likewise has 25 Interrogatories for Plaintiffs to use as they see fit in defense of the claims against them, for a total of 350.

Plaintiffs' proposed limits on Requests for Admission also are not proportional, and overwhelmingly favor the Plaintiffs. Under their proposal, Plaintiffs would be permitted to serve 490 Requests for Admission, to Defendants' 100 Requests—nearly *five times* those allotted to

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Defendants. There is no reason, or basis, for this disparity—particularly given that there are no limits on Requests for Admission in Rule 36. Requests for Admission may be an important discovery tool and depending on the responses may foreclose or limit areas of discovery completely. And if any party feels another party is abusing or overusing Requests for Admission, that is best addressed through a Rule 26 motion for a protective order—not by arbitrary limits set at the outset of discovery.

Plaintiffs' proposal to only answer Requests for Admission at the end of discovery also is not workable. To be sure, there may be certain Requests that the parties are not in a position to answer until later in discovery—but that will not be the case for every Request. Like Interrogatories, these can and should be evaluated on a case-by-case basis without a blanket "ruling" on when responses are due in the abstract.

Plaintiffs argue that their proposed allotment of Interrogatories and Requests for Admission is proportional to their needs in the case because Plaintiffs are individuals, and "none of the claims made in this action arise out of any of their conduct." Defendants disagree. Just as Plaintiffs may have Interrogatories as to Defendants' individual affirmative defenses, each Defendant family will have the same number of questions about Plaintiffs' allegations attempting to tie them into a coast-wide, price-fixing conspiracy that all Defendants deny. Many Defendants had not even heard of one another until drawn together by Plaintiffs' lawsuit, and Defendants intend to aggressively pursue discovery to uncover the evidentiary bases (if any) for Plaintiffs' broad assertions. To the extent Plaintiffs claim a burden by responding to 14 Defendant family's Interrogatories in Defendants' proposal, that is a problem of their own making by suing so many different parties in a single lawsuit. In no event, does the size of Plaintiffs' allegations and claims justify harsh and arbitrary limitations on Defendants' discovery rights allocated by Rules 33 and 36.

Defendants' proposal is fair, reasonable and proportionate. If the Court declines both sides' alternatives, Defendants would request that no limitations be placed on discovery under Rules 33 and 36 at this time, other than as provided in those rules and subject to overall limits under Rule 26.

**(F) FURTHER ORDERS BY THE COURT UNDER FRCP 26(c) AND/OR 16(b)-(c)**

The parties will request the Court enter ESI Protocol, once the parties reach agreement thereon. The parties will further seek the Court to enter a stipulated order regarding a deposition protocol, once such is agreed amongst the parties, and potentially a stipulated order regarding expert discovery, should the parties deem it necessary.

Subject to the parties' efforts to resolve potential disputes through meet and confer, Plaintiffs anticipate orders from the Court will be necessary regarding the following:

1) Preservation of ESI on personal devices of employees of certain Defendants;
2) The obligation of Defendants to search for responsive documents on personal devices of employees by certain Defendants that have thus far taken the position that they have no possession, custody or control of such documents.

Dated: February __, 2025

GROSS KLEIN PC

By: ______________________

STUART G. GROSS

Stuart G. Gross (SBN 251019)
Travis H.A. Smith (SBN 331305)
Ross A. Middlemiss (SBN 323737)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628
*sgross@grosskleinlaw.com*
*tsmith@grosskleinlaw.com*
*rmiddlemiss@grosskleinlaw.com*

Matthew W. Ruan (SBN 264409)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
(224) 632-4500
*mruan@fklmlaw.com*

Matthew S. Weiler (SBN 236052)
Raymond S. Levine (SBN 348030)
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
(415) 421-7100
mweiler@schneiderwallace.com
*rlevine@schneiderwallace.com*

Steven N. Williams (SBN 175489)
**STEVEN WILLIAMS LAW, P.C.**
201 Spear St, Suite 1100
San Francisco, CA 94105
(415) 671-4628
*swilliams@stevenwilliamslaw.com*

*Counsel for Plaintiffs and the Proposed Classes*

DATED: February 21, 2025

*/s/ Timothy W. Snider*
Edward C. Duckers (SBN 242113)
ed.duckers@stoel.com
Charles H. Samel (SBN 182019)
charles.samel@stoel.com
**STOEL RIVES LLP**
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900

Matthew D. Segal (SBN 190938)
matthew.segal@stoel.com
Michelle J. Rosales (SBN 343519)
michelle.rosales@stoel.com
**STOEL RIVES LLP**
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700

Timothy W. Snider (appearing *Pro Hac Vice*)
timothy.snider@stoel.com
**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

*Attorneys for Pacific Seafood Defendants*

DATED: February 21, 2025

Christopher J. Kayser
Elizabeth E. Parker
**LARKINS VACURA KAYSER**
121 SW Morrison St. Suite 700
Portland, OR
Telephone: (503) 222-4424
cjkayser@lvklaw.com
eparker@lvklaw.com

Brian A. E. Smith
Joseph J. Fraresso
**BARTKO LLP**
1100 Sansome Street
San Francisco, CA 94111
Telephone: (415) 956-1900
bsmith@bartkolaw.com
jfraresso@bartkolaw.com

*Attorneys for Defendant Ocean Gold Seafoods, Inc.*

DATED: February 21, 2025

*/s/ Bao-Quan P. Pham*
Bao-Quan P. Pham
**Law Office of Bao-Quan P. Pham**
345 N. 18th Street
San Jose, CA 95112
408-275-6701
baopham408@sbcglobal.net

*Attorneys for Defendant Global Quality Seafood LLC*

DATED: February 21, 2025

Jonathan W. Thames
**KENNEDYS LAW LLP**
455 Market Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 323 4464

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Jonathan.Thames@kennedyslaw.com

*Attorneys for Defendant American Seafood EXP, Inc.*

DATED: February 21, 2025

*/s/ Scott Cameron*
Scott Cameron
Josiah Prendergast
**WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: (916) 558-6000
scameron@weintraub.com
Jprendergast@weintraub.com

*Attorneys for Defendant California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc.*

DATED: February 21, 2025

*/s/ Colin W. Morrow*
Colin W. Morrow
**VANNUCCI MOMSEN MORROW**
45060 Ukiah St., Ste. A
P.O. Box 1214
Mendocino, CA 95460
Telephone: 707-380-1070
cmorrow@vmm-law.com

*Attorneys for Defendant Caito Fisheries, Inc.*

DATED: February 21, 2025

*/s/ Steven J. Goon*
Steven J. Goon
Sarah Van Buiten
**RUTAN & TUCKER, LLP**
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
sgoon@rutan.com
Svanbuiten@rutan.com

*Attorneys for Defendant Caito Fisheries, LLC and Southwind Foods, LLC*

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DATED: February 21, 2025

/s/ J. Timothy Hobbs
J. Timothy Hobbs (appearing *Pro Hac Vice*)
Henry J. Brockway
Victoria S. Duarte
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Telephone: (206) 370-7893
christopher.wyant@klgates.com
trudy.tessaro@klgates.com

Michael J. Stortz
**K&L Gates LLP**
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8011
Michael.Stortz@klgates.com

*Attorneys for Defendant Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC*

DATED: February 21, 2025

/s/ Sean Gates
Sean Gates
**ILLOVSKY GATES & CALIA LLP**
155 N. Lake Avenue, Suite 800
Pasadena, California 91101
Telephone: (626) 508-1715
sean@illovskygates.com

*Attorneys for Defendant Safe Coast Seafoods, LLC, Safe Coast Seafoods Washington, LLC, and Blue River Seafood, Inc.*

DATED: February 21, 2025

/s/ Ann A. P. Nguyen
Ann A.P. Nguyen
**MESSNER REEVES LLP**
160 W Santa Clara Street, Suite 1000
San Jose, CA 95113
Telephone: (408) 298-7120
anguyen@messner.com

*Attorneys for Defendant Global Quality Foods, Inc.*

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DATED: February 21, 2025

*/s/ Nick Gunn*
Duncan Macfarlane
**MACFARLANE LAW**
710 Ericksen Ave. NE, Suite 201
Bainbridge Is, WA 98110
Telephone: (206) 451-4058
Duncan@Macfarlane-Law.com

Nick Gunn, Esq. (appearing *Pro Hac Vice*)
**INTERNATIONAL MARITIME GROUP, PLLC**
701 Fifth Avenue, 42nd Floor
Seattle, WA 98104
Telephone: (206) 707-8338
Gunn@Maritime.Law

*Attorneys for Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc.*

DATED: February 21, 2025

*/s/ Philip J. Wang*
Philip J. Wang
Traci Michelle Keith
**PUTTERMAN YU WANG LLP**
345 California St. Suite 1160
San Francisco, CA 94104
pwang@plylaw.com
tkeith@plylaw.com

*Attorneys for Defendant Ocean King Fish Inc.*

DATED: February 21, 2025

*/s/ Steven McLellan*
Steven McLellan
**MCLELLAN LAW GROUP LLP**
900 E. Hamilton Ave. Suite 100
Campbell, CA 95008
Mclellanlawgroup.com

*Attorneys for Defendant Fisherman's Catch Inc.*

DATED: February 21, 2025

______________________________
Huechi Wong, Esq.
HH LEGAL GROUP
2443 Fillmore Street, #380-4372
San Francisco, CA 94115
huechi@hhdisputes.com

*Attorney for Defendants Nor-Cal Seafood, Inc. and Kevin Lee*

**ATTESTATION UNDER L.R. 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), I attest under the penalty of perjury that the above signatories authorized the use of an electronic signature and concurred in the filing of this document.

Dated: February 21, 2025

by: */s/ Stuart G. Gross*
STUART G. GROSS

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

JOINT RULE 26(f) REPORT; Case No. 3:23-cv-01098-AGT
24

127977398.4 0052902-00054