1  Stuart G. Gross (SBN 251019)
   Ross A. Middlemiss (SBN 323737)
2  Travis H.A. Smith (SBN 331305)
   **GROSS KLEIN PC**
3  The Embarcadero
   Pier 9, Suite 100
4  San Francisco, CA 94111
   (415) 671-4628
5

6  *Attorneys for Plaintiffs and the Proposed Classes*
   [additional counsel listed on signature page]
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12 | **BRAND LITTLE** and **ROBIN BURNS**, | Case No. 3:23-cv-01098-AGT |
   | Individually and on Behalf of All Others Similarly Situated, | |
13 | | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY DISCOVERY** |
14 |              Plaintiffs, | |
   |     v. | |
15 | | |
   | **PACIFIC SEAFOOD PROCUREMENT, LLC;** | |
16 | **PACIFIC SEAFOOD PROCESSING, LLC;** | Date:      July 25, 2025 |
   | **PACIFIC SEAFOOD FLEET, LLC; PACIFIC** | Time:      10:00 a.m. |
17 | **SEAFOOD DISTRIBUTION, LLC; PACIFIC** | Courtroom: A, 15th Floor |
   | **SEAFOOD USA, LLC; DULCICH, INC.;** | Judge:     Alex G. Tse |
18 | **PACIFIC SEAFOOD – EUREKA, LLC;** | |
   | **PACIFIC SEAFOOD – CHARLESTON, LLC;** | |
19 | **PACIFIC SEAFOOD – WARRENTON, LLC;** | |
   | **PACIFIC SEAFOOD – NEWPORT, LLC;** | |
20 | **PACIFIC SEAFOOD – BROOKINGS, LLC;** | |
   | **PACIFIC SEAFOOD – WESTPORT, LLC;** | |
21 | **PACIFIC SURIMI – NEWPORT LLC; BLUE** | |
   | **RIVER SEAFOOD, INC.; SAFE COAST** | |
22 | **SEAFOODS, LLC; SAFE COAST SEAFOODS** | |
   | **WASHINGTON, LLC; OCEAN GOLD** | |
23 | **SEAFOODS, INC.; NOR-CAL SEAFOOD,** | |
   | **INC.; KEVIN LEE; AMERICAN SEAFOOD** | |
24 | **EXP, INC.; CALIFORNIA SHELLFISH** | |
   | **COMPANY, INC.; ROBERT BUGATTO** | |
25 | **ENTERPRISES, INC.; ALASKA ICE** | |
   | **SEAFOODS, INC.; LONG FISHERIES, INC.;** | |
26 | **CAITO FISHERIES, INC.; CAITO** | |
   | **FISHERIES, LLC; SOUTHWIND FOODS,** | |
27 | **LLC; FISHERMEN'S CATCH, INC.;** | |
   | **GLOBAL QUALITY FOODS, INC.; GLOBAL** | |
28 | **QUALITY SEAFOOD LLC; OCEAN KING** | |

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY DISCOVERY; Case No. 3:23-cv-01098-AGT

1  **FISH INC.; SOUTH BEND PRODUCTS LLC; SWANES SEAFOOD HOLDING COMPANY LLC; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; and DOES 29-60,**

                    Defendants.

# **TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................... 1

RELIEF SOUGHT .................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND & PROCEDURAL HISTORY ........................................................ 2

III.    LEGAL STANDARD ................................................................................................... 5

IV.    ARGUMENT ................................................................................................................ 7

    A.    Plaintiffs' narrowly tailored Document Subpoena seeks relevant discovery ................... 7

    B.    Ms. Adams' asserted search is insufficient. ...................................................... 8

    C.    Ms. Adams must produce all responsive documents within her possession, custody, or control, regardless of how they came to be so. ....................................................... 9

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006) ................................... 6

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*, Case No. 12-cv-0630-LHK (PSG), 2013 WL 1942163 (N.D. Cal. May 9, 2013) ................................... 9

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ................................... 6

*DirecTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) ................................... 6

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529, 2012 WL 5519199 (N.D. Cal. Nov. 14, 2012) ................................... 6

*Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) ................................... 5

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) ................................... 6

*PlayUp, Inc. v. Minta,* No. 2:21-CV-02129-GMN-NJK, 2024 WL 3621449 (D. Nev. Aug. 1, 2024)*s* ................................... 10

*Rogers v. Giurbino*, 288 F.R.D. 469 (S.D. Cal. 2012) ................................... 7, 9

*Signal IP, Inc. v. Kia Motors Am., Inc.*, No. CV 14-02457-JAK (JEMx), 2015 WL 12765543 (C.D. Cal. Jan. 29, 2015) ................................... 6

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) ................................... 5, 6

*uSens, Inc. v. Shi*, No. 18-cv-01959-SVK, 2019 WL 13201984 (N.D. Cal. Apr. 24, 2019) ................................... 10

*V5 Techs. v. Switch, Ltd*. 332 F.R.D. 356 (D. Nev. 2019) ................................... 6, 9

**RULES**

Fed. R. Civ. P. 26(b)(1) ................................... 5

Fed. R. Civ. P. 34(a)(1) ................................... 6, 10

Fed. R. Civ. P. 45 ................................... 1

Fed. R. Civ. P. 45(a)(1)(A)(iii) ................................... 5, 6, 9, 10

Fed. R. Evid. 401 ................................... 6

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 25, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom A, 15th Floor, before the Honorable Alex G. Tse, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 45 to compel third party Crystal Adams to comply with a subpoena to produce documents issued on April 1, 2025.

# RELIEF SOUGHT

Plaintiffs seek an order compelling non-party Crystal Adams to produce documents responsive to the subpoena duces tecum served on her through Counsel on April 1, 2025, as required by Federal Rule of Civil Procedure 45.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs respectfully move this Court to compel non-party Crystal Adams to comply with a subpoena duces tecum issued under Rule 45. Ms. Adams is a former employee of Defendant California Shellfish Company, Inc. dba Hallmark Fisheries ("Hallmark" or "CA Shellfish") and is currently employed in the same industry at issue in this litigation. Plaintiffs' subpoena seeks targeted, highly relevant documents directly bearing on the allegations in the operative Second Amended Complaint ("SAC").

While Ms. Adams largely claims to have no responsive documents within her "care", custody, or control, she categorically refuses to search for or produce any documents in her *possession* that she has created, sent, or received based on her current role as Executive Director of the Oregon Dungeness Crab Commission. That position is legally unsupported. Rule 45 requires a subpoenaed party to search for and produce all responsive documents within their "possession, custody, or control," which includes materials that are in Ms. Adams' possession by virtue of her current employment or otherwise. Plaintiffs respectfully request that the Court compel full compliance. Fed. R. Civ. P. 45.

## II. BACKGROUND & PROCEDURAL HISTORY

Crystal Adams is a former employee of Defendant Hallmark and a key witness in this case. Declaration of Stuart G. Gross ("Gross Dec."), ¶ 3. Ms. Adams was a Hallmark employee during the Class Period until October 2023, when she left to become the Executive Director of the Oregon Dungeness Crab Commission ("the ODCC" or "the commission")[1], a position she holds to this day. *Id.* ¶ 4. Ms. Adams is listed in Hallmark's initial disclosures as a person likely to have discoverable documents. *Id.*, Ex. A (CA Shellfish's Initial Disclosures dated March 7, 2025).

On May 31, 2023, Plaintiffs served a document subpoena on Hallmark, requesting, *inter alia*, communications related to prices and purchases of Dungeness crab. *Id.* ¶ 6. On June 23, 2023, before Hallmark responded to the subpoena, the Court granted Pacific Seafood's motion to stay discovery. *See* Dkt. 31. On June 14, 2024, Plaintiffs served a further document subpoena on Hallmark requesting, *inter alia*, communications related to prices and purchases of Dungeness crab. Gross Dec., ¶ 6. In response, Hallmark indicated that its employees used their own cell phones for work purposes and that it had no obligation to search for and produce responsive documents on such phones, including their text messages. *Id.* ¶ 7.

During meet and confers in March and April of 2025, Hallmark's Counsel stated that Ms. Adams was no longer a Hallmark employee, so Plaintiffs would need to subpoena her directly for any documents on her personal device. *Id.* ¶ 8. In a subsequent call, Hallmark's Counsel represented that Ms. Adams had traded in the phone she used while employed by Hallmark for a new personal device and that all of the data on the device was lost as a result. *Id.* ¶ 9. And, in response to an email memorializing the call, he stated: "I don't remember if she said she deleted the texts, got rid of them, or just that she didn't have them any longer. Later, when I tried to clarify, she explained that she traded her phone in and it's just gone. The data from the old phone was not transferred to her new phone, and she lost everything." *Id.*, Ex. B (Email from Hallmark's Counsel dated April 8, 2025). Based on the communications between the parties to date, it is

---

[1] According to its website, the ODCC is a state-chartered, industry-funded body that guides efforts to enhance the image of the Oregon Dungeness crab fishery through promotion, education and research; the Dungeness crab fishery in Oregon is the very industry and geographic location the alleged conspiracy is claimed to have targeted in this litigation. Gross Dec., ¶ 5; *see generally* SAC.

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY DISCOVERY; Case No. 3:23-cv-01098-AGT

2

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

unclear exactly when Ms. Adams traded in the personal mobile device she used in the ordinary course of her employment at Hallmark for the one she uses now, but it is clear that she did so after Plaintiffs served a preservation demand on Hallmark that specifically requested it take measures to preserve communications on its employees' devices concerning Dungeness crab ex vessel prices and other matters relevant to this action. *Id*. ¶ 10, Ex. C.

On April 1, 2025, Plaintiffs served a document subpoena (the "Document Subpoena") and deposition subpoena on Ms. Adams through her Counsel, Scott Cameron, who also represents Hallmark in this action. *Id*. ¶ 11, Ex. D (Plaintiffs' Document Subpoena).

On May 14, 2025, Mr. Cameron served Ms. Adams' responses and objections to the Requests for Production in Plaintiffs' Document Subpoena. *Id*., Ex. E (Ms. Adams' Subpoena Responses and Objections). These included, *inter alia*, Ms. Adams' objection to the term "You" or "Your":

> . . . . to the extent that it includes any predecessors, successors, subsidiaries, departments, divisions, affiliates, and any organization or entity which the responding person or entity manages, controls, and any organization or entity which the responding person or entity manages, controls, or has an ownership interest in, or did manage, control, or have an ownership interest in, as well as all current and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding person or entity. Ms. Adams is an individual. Her responses are limited to herself as an individual, and to no one else beyond herself. **For avoidance of any doubt, Ms. Adams will not search for or produce any documents that she may have or may have [sic] received based on her current position as Executive Director, Oregon Dungeness Crab Commission.** Ms. Adams will search for and produce only documents related to her prior employment with Hallmark Fisheries, whether received before or after Ms. Adams' employment with Hallmark Fisheries.

*Id*. at 3 (emphasis added). Relying on that objection, Ms. Adams responded to nearly all of Plaintiffs' fifty-two document requests by stating that, "[f]ollowing a diligent and reasonable search, Ms. Adams has no responsive documents in her *care*, custody, or control," *id*. at 5-21 (emphasis added); notably, no indication was made whether she had any responsive documents in her ***possession***, *see id.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY DISCOVERY; Case No. 3:23-cv-01098-AGT

3

On May 21, 2025, Counsel for Plaintiffs and Counsel for Ms. Adams met and conferred regarding Ms. Adams' May 14 Document Subpoena responses. *Id.*, ¶ 13. During that call, Counsel for Ms. Adams reiterated that if Plaintiffs wanted responsive documents in her possession that were sent or received by her in her current position at the ODCC—including those on her personal device used to conduct business on behalf of the commission—Plaintiffs would have to subpoena the commission. *Id*. In other words, Counsel took exactly the opposite position from the one previously asserted with respect to Plaintiffs' subpoena to Hallmark, *i.e.*, that if Plaintiffs wanted documents sent or received by Hallmark employees in the course of Hallmark business on their personal devices, Plaintiffs needed to subpoena the employees themselves, as Hallmark would not search for or produce responsive documents on its employees' personal devices. *Compare id. with id.*, ¶ 7. Counsel further confirmed that Ms. Adams had not searched her mobile device or any other media for **any** responsive documents, regardless of whether the documents were sent or received in her capacity as Executive Director of the ODCC. *Id.*, ¶ 14. Plaintiffs' Counsel requested that, if Ms. Adams continued to refuse to search for and produce documents "received based on her current position," she should at least search for and produce documents not received based on her current position, and amend her objection to the definition of "You" to clarify her position that such documents are not in her possession, custody, or control, whether or not they exist on her personal cell phone or another media in her possession. *Id*.

On June 9, 2025, Ms. Adams served amended responses to Plaintiffs' Document Subpoena, but the above objection to "You" remains unchanged. *Id*. ¶ 15, Ex. F (Ms. Adams' Amended Subpoena Objections and Responses) at 5. Her responses to all but one of the individual requests, *id*. at 7-8, contain the same statement that "[f]ollowing a diligent and reasonable search," Ms. Adams has either no "non-privileged, responsive documents" or simply "no responsive documents in her **care**, custody, or control." *Id*. at 6-24. (emphasis added). To date, Ms. Adams has not provided a sworn declaration or any affirmation specifying the search she has conducted, including the devices and/or accounts involved, beyond the above objection incorporated into her responses. *Id*. ¶ 16.

Neither Ms. Adams' written responses nor her Counsel's statements during the meet and confer addressing the responses cited any authority supporting this narrow interpretation of Ms. Adams' discovery obligations or explaining why responsive documents that are in her possession—whether obtained during her current employment or otherwise—are beyond the scope of Plaintiffs' Document Subpoena. Gross Dec., ¶ 13, Exs. D, F. Instead, at the meet and confer held on May 21, 2025, Mr. Cameron simply reiterated that no search had been conducted and any responsive documents relating to her employment at the ODCC would need to be subpoenaed from the commission directly. *Id*. ¶ 13. Again, even when specifically asked, Mr. Cameron offered no authority for this view, nor did he explain why the contents of Ms. Adams' cell phone are not also within her custody, possession, or control for purposes of Federal Rule of Civil Procedure 45(a)(1)(A)(iii). *Id*. ¶¶ 13-14.

Mr. Cameron's position is undermined by his own prior representations to the Court in opposing Plaintiffs' deposition subpoena of Ms. Adams, which sought to address the above-referenced preservation and spoliation concerns. In the parties' Joint Letter to the Court, Mr. Cameron asserted, "[t]he [deposition] subpoena is not directed to Hallmark and Hallmark has no authority to control Ms. Adams," and disclaimed that the text messages on Ms. Adam's personal phone, sent and received in the normal course of her employment for Hallmark, were within Hallmark's custody, possession or control. Dkt. 334, at 2-4. Now, however, Mr. Cameron inexplicably contends that Plaintiffs must subpoena Ms. Adams' current employer for the relevant materials they seek *on Ms. Adams' phone*, rather than subpoena them from Ms. Adams. Gross Dec., ¶ 13. The Court should dismiss such disingenuous arguments and compel Ms. Adams' full compliance with Plaintiffs' Document Subpoena.

### III. <u>LEGAL STANDARD</u>

The scope of discovery under the Federal Rules of Civil Procedure is "extremely broad." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *See Soto*, 162 F.R.D. at 610. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

1  discovery regarding any non-privileged matter that is relevant to any party's claim or defense."
2  Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make a fact more or less"
3  likely to be true. Fed. R. Evid. 401. The question of relevancy should be construed liberally and
4  "'discovery should be allowed unless the information has no conceivable bearing on the case.'"
5  *Signal IP, Inc. v. Kia Motors Am., Inc.*, No. CV 14-02457-JAK (JEMx), 2015 WL 12765543, at
6  *1 (C.D. Cal. Jan. 29, 2015) (quoting *Soto*, 162 F.R.D. at 610).

7      A party who resists discovery has "the burden of showing that discovery should not be
8  allowed, and also has the burden of clarifying, explaining and supporting its objections with
9  competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529,
10 2012 WL 5519199, at *3 (N.D. Cal. Nov. 14, 2012) (citing *DirecTV, Inc. v. Trone*, 209 F.R.D.
11 455, 458 (C.D. Cal. 2002)); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
12 1975) (noting that upon remand, the district court should reconsider its denial of a motion to
13 compel because "[u]nder the liberal discovery principles of the Federal Rules," the non-moving
14 party was "required to carry a heavy burden of showing why discovery was denied").

15     Once served with a subpoena under Federal Rule of Civil Procedure 45, a non-party is
16 generally subject to the same obligations and scope of discovery applicable to parties under Rule
17 34. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (internal quotations and
18 citation omitted). Thus, under Rule 45(a)(1)(A)(iii), as under Rule 34(a)(1), a responding party
19 must produce "any designated documents or electronically stored information" that is "in the
20 responding party's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The phrase
21 "possession, custody, or control" is stated in the disjunctive; thus, satisfying any one of these
22 conditions suffices to trigger a party's production obligation. *Soto*, 162 F.R.D. at 619 (internal
23 quotations and citation omitted).

24     Therefore, a person subpoenaed for production of documents is "under an affirmative
25 duty to seek and produce that information reasonably available to her." *V5 Techs. v. Switch, Ltd.*
26 332 F.R.D. 356, 366 (D. Nev. 2019) (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D.
27 186, 190 (C.D. Cal. 2006)). "This duty is discharged through the formulation and completion of a
28 reasonable search conducted with due diligence." *Id.* at 367 (citing *Rogers v. Giurbino*, 288

F.R.D. 469, 485 (S.D. Cal. 2012)). When no responsive documents are found or a dispute arises out of the completeness of the production that is made, the subpoenaed person must come forward with an explanation of the search conducted "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id*.

## IV. ARGUMENT

### A. **Plaintiffs' narrowly tailored Document Subpoena seeks relevant discovery.**

Ms. Adams does not object to any of the requests in the Document Subpoena on the grounds that they seek documents that are not relevant to the parties' claims or defenses (thus waiving any such objection), *id*., Ex. F at 3; and such an objection, if made, would be baseless.

Plaintiffs allege, *inter alia*, that in advance of the 2015/16 Pacific NW Area Dungeness crab season, the Defendants, including Hallmark, conspired to "form a cartel of Pacific NW Area Dungeness crab buyers that had the purpose and effect of driving down the ex vessel price of Dungeness crab in the Pacific NW Area, so that the Defendants could earn higher profits." SAC ¶ 7. One of the levers the Defendants are alleged to have used to implement their conspiracy was controlling the opening/closing date of the Dungeness crab season. *Id*. ¶¶ 148-51. Plaintiffs further allege that Defendants relied on communication exchanges, including via text messages, amongst themselves and others in order to memorialize, maintain and enforce the operations of the cartel. *See, e.g.*, *id*. ¶¶ 230-59, 439.

Ms. Adams is the daughter of Hallmark's long-time general manager, Scott Adams, was a Hallmark employee during the vast majority of the Class Period and now works as the Executive Director of the ODCC, on which representatives of buyers, including Hallmark, sit. Gross Dec., ¶¶ 3-5. Plaintiffs specifically allege that Ms. Adams engaged in illegal cartel conduct, including communications, while at Hallmark. *See* SAC, ¶¶ 408, 411. Defendant Hallmark has identified Ms. Adams as an individual who is likely to have discoverable information, including "information regarding the purchase of crab ex vessel from crabbers, the sale of crab to retail and wholesale customers, the communications with crabbers and customers, and the price paid to crabbers for crab and the price of crab sold by [Hallmark]." Gross Dec., Ex. A at 2.

Each of the Requests for Production contained in Plaintiffs' Document Subpoena is narrowly tailored to target documents concerning exactly the subjects regarding which Hallmark indicated Ms. Adams is likely to have discoverable information and/or the preservation/destruction of documents containing that information. *Id*., Ex. D. For example, Requests Nos. 5-18 all relate to communications "between You" and "any Ex Vessel Dungeness crab Buyer" regarding various topics pertinent to the alleged conspiracy such as the opening/closing date of any Dungeness crab season and the ex vessel price, the commercial ex vessel purchase, and the demand and supply of Dungeness crab. *Id*., at 9-11. Requests Nos. 22-32 relate to all communications regarding the same topics "between You" and "any Crabber" and Requests Nos. 33-38 encompass those same types of communications "between You" and "Hallmark." *Id*. at 12-14.

This information is non-privileged and relevant to Plaintiffs' claims, as it may shed light on the operation of the alleged conspiracy, its scope and duration, potential continuing effects, and industry-wide pricing norms or coordination. This is true for responsive communications acquired both during Ms. Adams' employment at Hallmark and through her current role at the ODCC.

Plaintiffs have thus satisfied their initial burden of demonstrating the relevance of the evidence sought.

**B.     Ms. Adams' asserted search is insufficient.**

Although Ms. Adams claims she is not in the *care,* custody, or control of documents responsive to all but three of Plaintiffs' requests, she has wholly refused "to search for or produce any documents that she may have or may have [sic] received based on her current position as Executive Director, Oregon Dungeness Crab Commission." Gross Dec., Ex. F at 5. Instead, Ms. Adams's objection to the Document Subpoena expressly limits her search and production to "only documents related to her prior employment with Hallmark Fisheries, whether received before or after Ms. Adams' employment with Hallmark Fisheries." *Id*. Plaintiffs' Document Subpoena, however, is not so limited and whatever search Ms. Adams has conducted within those

1  parameters is inadequate, as the search explicitly did not include all of the documents in her

2  "possession, custody, or control," as commanded by Rule 45(a)(1)(A)(iii).

3        The court in *V5 Technologies* faced similar facts when presiding over a motion to compel

4  a non-party to produce documents in response to Rule 45 subpoena. 332 F.R.D. 356. The court

5  granted plaintiffs' motion, finding that the search the non-party had conducted, and the

6  description of the search provided, were both defective. *Id*. at 367. While the non-party's search

7  had focused almost exclusively on her business email account, the court noted that the "subpoena

8  is not so limited" and "its scope also covers Ms. Folino's personal email accounts and text

9  messages." *Id*. (internal citation omitted).  The court further emphasized that a responding person

10  "must do more than merely assert that the search was conducted with due diligence" and that a

11  detailed accounting of the search conducted is "especially critical in the context of searches for

12  electronically stored information." *Id.* (internal quotations omitted) (citing *Rogers*, 288 F.R.D. at

13  485 and *Apple, Inc. v. Samsung Elecs. Co. Ltd*., Case No. 12-cv-0630-LHK (PSG), 2013 WL

14  1942163, at *3 (N.D. Cal. May 9, 2013)).

15        The requirements here are no different, and Ms. Adams' failure to comply with them is

16  even more egregious. She has not identified *any* devices or email accounts, personal or business,

17  as the focus of her supposedly "diligent and reasonable search." Gross Dec., ¶ 16. Her arbitrary

18  exclusion of documents she may possess or may have received "based on her current position" is

19  vague and unsupported. *Id*., Ex. F at 5. The Court should order Ms. Adams to conduct a

20  compliant search for responsive documents, including those contained in her business and

21  personal accounts and devices, and to provide a detailed account of that search.

22        **C.**    **Ms. Adams must produce all responsive documents within her possession, custody, or control, regardless of how they came to be so.**

24        Ms. Adams seeks to limit her search and production of documents on her mobile device

25  and other media based on the capacity in which she received such documents, explicitly refusing

26  to search for or produce "any documents that she may have or may have [sic] received based on

27  her current position as Executive Director, Oregon Dungeness Crab Commission." Gross Dec.,

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Ex. F at 5. But there is no carve-out in the Federal Rules permitting someone to withhold documents merely because she have the documents or received the documents in a particular capacity. Courts in this Circuit have consistently rejected parties' efforts to narrow discovery obligations in this way.

In *PlayUp, Inc. v. Mintas*, for example, the court rejected the same attempted limitation, compelling further discovery where the responding party denied possession of responsive communications on the grounds that they were made in relation to his work for a non-party entity. No. 2:21-CV-02129-GMN-NJK, 2024 WL 3621449 (D. Nev. Aug. 1, 2024). The court found that because Rule 34(a)(1)—like Rule 45(a)(1)(A)(iii)—is written in the disjunctive, "actual possession is enough to oblige production of responsive documents, and that legal ownership is not determinative." *Id*. at *3. The court also reasoned that "a corporate officer party who has actual possession of responsive documents is required to produce them regardless of any contention that the documents were created in that person's role as a corporate officer" since the case law "does not 'differentiate between documents that [parties] possess as a corporate officer and documents they possess as an individual.'" *Id*. (quoting *uSens, Inc. v. Shi*, No. 18-cv-01959-SVK, 2019 WL 13201984, at *2 (N.D. Cal. Apr. 24, 2019)).

This completely undermines the distinction Ms. Adams attempts to draw in her objection: "Ms. Adams is an individual. Her responses are limited to herself as an individual, and to no one else beyond herself." Gross Dec., Ex. F at 5. Accordingly, whether Ms. Adams possesses responsive documents in her capacity as an individual or in her capacity as Executive Director of the ODCC makes no difference for purposes of ascertaining possession. Just like the responding party in *PlayUp, Inc*., Ms. Adams plainly has possession and control over the text messages and emails she sent or received. *Id*. at *4. Whether the ODCC asserts ownership over documents on her device is irrelevant under Rule 45.

Ms. Adams has both access to and possession of the responsive materials and thus must search for and produce those documents.

**CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully move this Court to compel Ms. Adams to comply fully with Plaintiffs' Document Subpoena by searching for and producing all responsive documents within her possession, custody, or control, regardless of their relationship to her current employment, and grant such other relief as the Court deems just and proper.

Respectfully Submitted,

Dated: June 18, 2025                    GROSS KLEIN PC

By:    */s/ Stuart G. Gross*
       STUART G. GROSS

Stuart G. Gross (SBN 251019)
Travis H. A. Smith (SBN 331305)
Ross A. Middlemiss (SBN 323737)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628
*sgross@grosskleinlaw.com*
*tsmith@grosskleinlaw.com*
*rmiddlemiss@grosskleinlaw.com*

Matthew W. Ruan (SBN 264409)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
(224) 632-4500
*mruan@fklmlaw.com*

Matthew S. Weiler (SBN 236052)
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
(415) 421-7100
*mweiler@schneiderwallace.com*

Steven N. Williams (SBN 175489)
**STEVEN WILLIAMS LAW, P.C.**
201 Spear St, Suite 1100
San Francisco, CA 94105
(415) 671-4628
*swilliams@stevenwilliamslaw.com*

*Counsel for Plaintiffs and the Proposed Classes*

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY DISCOVERY; Case No. 3:23-cv-01098-AGT

12