1  Stuart G. Gross (SBN 251019)
   Ross A. Middlemiss (SBN 323737)
2  Travis H.A. Smith (SBN 331305)
   **GROSS KLEIN PC**
3  The Embarcadero
   Pier 9, Suite 100
4  San Francisco, CA 94111
   (415) 671-4628
5

6  *Attorneys for Plaintiffs and the Proposed Classes*
   [additional counsel listed on signature page]
7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| **BRAND LITTLE** and **ROBIN BURNS**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC; PACIFIC SEAFOOD – WESTPORT, LLC; PACIFIC SURIMI – NEWPORT LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY, INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES, INC.; CAITO FISHERIES, INC.; CAITO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING | Case No. 3:23-cv-01098-AGT<br><br>**DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY DISCOVERY**<br><br>Date: _____, 2025<br>Time: 10:00 a.m.<br>Courtroom: A, 15th Floor<br>Judge: Alex G. Tse |

| | |
|---|---|
| 1 | **FISH INC.; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; and DOES 29-60,** |
| 2 | |
| 3 | Defendants. |

I, Stuart G. Gross, declare as follows:

1. I am a principal at Gross Klein PC and counsel for Plaintiffs. I submit this declaration in support of Plaintiffs' Motion for an Order Compelling Non-Party Crystal Adams to Comply with Plaintiffs' Document Subpoena. If called as a witness, I could and would truthfully testify to the following based on my personal knowledge.

2. Plaintiffs assert allegations in the Second Amended Complaint against Defendants California Shellfish Company, Inc. ("CA Shellfish") and Robert Bugatto Enterprises, Inc., which collectively do business and commonly known as a single entity named "Hallmark."

3. Crystal Adams was an employee of Defendant Hallmark during the vast majority of the Class Period, and is the daughter of Hallmark's long-time general manager, Scott Adams. CA Shellfish identified Ms. Adams in its List of Persons, pursuant to F.R.C.P. 26(a)(i), as an individual who is likely to have discoverable information. A true and correct copy of CA Shellfish's Initial Disclosures [Fed. R. Civ. Proc. Rule 26(a)(1)] dated March 7, 2025 is attached hereto as **Exhibit A**.

4. It is my understanding that on or around October 2023, Ms. Adams left her employment at Hallmark to become the Executive Director of the Oregon Dungeness Crab Commission (the "ODCC" or "the commission"), a position she holds to this day.

5. According to its website, https://oregondungeness.org/about-the-oregon-dungeness-crab-commission/, the ODCC is a state-chartered, industry-funded body that guides efforts to enhance the image of the Oregon Dungeness crab fishery through promotion, education and research, and the commissions members include representatives of crab buyers, including Defendant Hallmark.

6. On May 31, 2023, and on June 14, 2024, Plaintiffs served document subpoenas on Hallmark, requesting, *inter alia*, communications related to prices and purchases of Dungness Crab.

7. In response, Hallmark indicated that its employees used their own cell phones for work purposes and that it had no obligation to search for and produce responsive documents on such phones, including their text messages.

8. During meet and confers in March and April of 2025, Hallmark's Counsel stated that Ms. Adams was no longer a Hallmark employee, so Plaintiffs would need to subpoena her directly for any documents on her personal device.

9. In a subsequent call, Hallmark's Counsel represented that Ms. Adams had traded in the phone she used while employed by Hallmark for a new personal device and that all of the data on the device was lost as a result. And, in response to an email memorializing this, he stated: "I don't remember if she said she deleted the texts, got rid of them, or just that she didn't have them any longer. Later, when I tried to clarify, she explained that she traded her phone in and it's just gone. The data from the old phone was not transferred to her new phone, and she lost everything." A true and correct copy of that email dated April 8, 2025 is attached hereto as **Exhibit B**.

10. Based on the communications between the parties to date, it is unclear exactly when Ms. Adams traded in the personal mobile device she used in the ordinary course of her employment at Hallmark for the one she uses now, but it is clear that she did so after Plaintiffs served a preservation demand on Hallmark that specifically requested it take measures to preserve communications on its employees' devices concerning Dungeness crab ex vessel prices and other matters relevant to this action. A true and correct copy of Plaintiffs' preservation notice to Hallmark dated March 20, 2023 is attached hereto as **Exhibit C**.

11. On April 1, 2025, Plaintiffs served a document subpoena (the "Document Subpoena") and deposition subpoena on Ms. Adams through her Counsel, Scott Cameron, who also represents Hallmark in this action. A true and correct copy of Plaintiffs' Document Subpoena and attachment "Schedule A" is attached hereto as **Exhibit D**.

12. On May 14, 2025, Mr. Scott served Ms. Adams' responses and objections to the Requests for Production in Plaintiffs' Document Subpoena. A true and correct copy of Ms. Adams' objections and responses is attached hereto as **Exhibit E**.

13. On May 21, 2025, Mr. Cameron and I held a meet and confer to discuss Ms. Adams' Document Subpoena responses. During that meet and confer, I asked Mr. Cameron for any authority for the position that materials on Ms. Adams' device, that are the property of her

employer, are not within her custody, possession or control. Mr. Cameron cited no authority and stated that if Plaintiffs wanted responsive documents in Ms. Adams' possession that were sent or received by her in her current position at the ODCC—including those on her personal device used to conduct business on behalf of the commission—Plaintiffs would have to subpoena the commission.

14. During that same meet and confer, Counsel confirmed that Ms. Adams had not searched her mobile device or any other media for ***any*** responsive documents, regardless of whether the documents were sent or received in her capacity as Executive Director of the ODCC. I requested that, if Ms. Adams continued to refuse to search for and produce documents "received based on her current position," she should at least search for and produce documents not received based on her current position, and amend her objection to the definition of "You" to clarify her position that such documents are not in her possession, custody, or control, whether or not they exist on her personal cell phone or another media in her possession.

15. On June 9, 2025, Ms. Adams' served amended responses to Plaintiffs' Document Subpoena. A true and correct copy of Ms. Adams' Amended responses and objections is attached hereto as **Exhibit F.**

16. To date, Ms. Adams has not provided Plaintiffs with any sworn declaration or affirmation detailing any searches undertaken in connection with Plaintiffs' Document Subpoena.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 18, 2025.

By:     */s/ Stuart G. Gross*
        STUART G. GROSS