# EXHIBIT D

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| Brand Little, et al. | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.   23-cv-1098 |
| Pacific Seafood Procurement, LLC, et al. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Crystal Adams c/o Scott Cameron, 400 Capitol Mall, 11th floor, Sacramento, CA 95814

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Gross Klein PC<br>The Embarcadero, Pier 9, Suite 100<br>San Francisco, CA 94111 | Date and Time:<br><br>04/22/2025 10:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/01/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | Stuart G. Gross<br>_____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs
Brand Little and Robin Burns , who issues or requests this subpoena, are:

Stuart G. Gross, The Embarcadero, Pier 9, Ste 100, S.F.,CA 94111, sgross@grosskleinlaw.com (415) 671-4628

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 23-cv-1098

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                *Server's signature*

                                        _____
                                                *Printed name and title*

                                        _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Crystal Adams**

**SCHEDULE A**

## I.    DEFINITIONS

As used in the Requests herein, the following terms shall have the definitions and constructions listed below. Terms not defined shall have the meanings assigned to them, if any, by the Federal Rules of Civil Procedure and or Local Rules.

1.    The terms "**You**" and "**Your**," including its possessive, refer to Crystal Adams, and any predecessors, successors, subsidiaries, departments, divisions, affiliates, and any organization or entity which the responding person or entity manages, controls, and any organization or entity which the responding person or entity manages, controls, or has an ownership interest in, or did manage, control or have an ownership interest in, as well as all current and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding person or entity.

2.    The phrase "**this Action**," including its possessive, refers to the instant action, *Brand Little, et al. v. Pacific Seafood Procurement, LLC, et al.* No. 23-cv-01098 (N.D. Cal.).

3.    The term "**Plaintiffs**," including its possessive, refers to Plaintiffs Brand Little and Robin Burns.

4.    The term "**Defendants**," including its possessive, refers, collectively, to Defendants Pacific Seafood Procurement, LLC, Pacific Seafood Distribution, LLC, Pacific Seafood Processing, LLC, Pacific Seafood USA, LLC, Dulcich, Inc., Pacific Seafood – Eureka, LLC; Pacific Seafood – Charleston, LLC, Pacific Seafood – Warrenton, LLC, Pacific Seafood – Newport, LLC, Pacific Seafood – Brookings, LLC, Pacific Seafood – Westport, LLC, and Pacific Surimi – Newport LLC, Blue River Seafood, Inc.; Safe Coast Seafoods, LLC; Safe Coast Seafoods Washington, LLC, which collectively do business and are commonly known as a single entity named "Safe Coast" (collectively, "Safe Coast"), Ocean Gold Seafoods, Inc. ("Ocean Gold"), Nor-Cal Seafood, Inc. "Nor-Cal"), Kevin Lee, American Seafood Exp, Inc. ("ASE"),

California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc., which collectively do business and are commonly known as a single entity named "Hallmark" (collectively, "Hallmark"), Alaska Ice Seafoods, Inc. and Long Fisheries, Inc., which collectively do business and are commonly known as a single entity named "Fathom Seafood" (collectively, "Fathom Seafood"), Caito Fisheries, Inc., Caito Fisheries, LLC, and Southwind Foods, LLC, which collectively do business and are commonly known as a single entity named "Caito" (collectively, "Caito"), Fishermen's Catch, Inc. ("Fishermen's Catch"), Global Quality Foods, Inc. and Global Quality Seafood LLC, which collectively do business and are commonly known as a single entity named "Global Quality Seafood" (collectively, "Global Quality"), Ocean King Fish Inc. ("Ocean King"), Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC, which collectively do business and are commonly known as a single entity named "Bornstein" (collectively, "Bornstein"), and where applicable, their owners, officers, executives, directors, employees, partners, consultants, divisions, branches, offices, and agents, including without limitation legal counsel.

5.    The term "**Pacific Seafood**," including its possessive, refers, collectively, to Defendants Pacific Seafood Procurement, LLC, Pacific Seafood Distribution, LLC, Pacific Seafood Processing, LLC, Pacific Seafood USA, LLC, Dulcich, Inc., Pacific Seafood – Eureka, LLC; Pacific Seafood – Charleston, LLC,  Pacific Seafood – Warrenton, LLC, Pacific Seafood – Newport, LLC, Pacific Seafood – Brookings, LLC, Pacific Seafood – Westport, LLC, and Pacific Surimi – Newport LLC, which collectively do business and are commonly known as a single entity named "Pacific Seafood"; any company owned or controlled by Pacific Seafood; and any company doing business as "Pacific Seafood" or "Pacific Choice."

6.    The term "**Safe Coast**" refers, collectively, to Defendants Blue River Seafood, Inc.; Safe Coast Seafoods, LLC; Safe Coast Seafoods Washington, LLC, which collectively do business and are commonly known as a single entity named "Safe Coast"; any company owned or controlled by Safe Coast, and any company doing business as "Safe Coast."

7.      The term "**Ocean Gold**" refers to Defendant Ocean Gold Seafoods, Inc.; any company owned or controlled by Ocean Gold, and any company doing business as "Ocean Gold."

8.      The term "**Nor-Cal Seafood**" refers to Defendant Nor-Cal Seafood, Inc.; any company owned or controlled by Nor-Cal Seafood, and any company doing business as "Nor-Cal Seafood."

9.      The terms "**ASE**" and "**American Seafood Exp.**" refer to Defendant American Seafood Exp, Inc., any company owned or controlled by ASE, and any company doing business as "ASE" or "American Seafood Exp."

10.     The term "**Hallmark**" refers, collectively, to Defendants California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc., any company owned or controlled by Hallmark, and any company doing business as "Hallmark" or "The Tides."

11.     The term "**Fathom Seafood**" refers, collectively, to Defendants Alaska Ice Seafoods, Inc. and Long Fisheries, Inc.; any company owned or controlled by Fathom Seafood, and any company doing business as "Fathom Seafood" or Fathom.

12.     The term "**Caito Fisheries**" refers, collectively, to Defendants Caito Fisheries, Inc., and Caito Fisheries, LLC; any company owned or controlled by either Caito Fisheries, Inc. or Caito Fisheries, LLC, and any company doing business as "Caito Fisheries" or "Caito."

13.     The term "**Southwind**" refers to Defendant Southwind Foods, LLC; any company owned or controlled by Southwind, and any company doing business as "Southwind."

14.     The term "**Fishermen's Catch**" refers to Defendant Fishermen's Catch, Inc.; any company owned or controlled by Fishermen's Catch, and any company doing business as "Fishermen's Catch."

15.     The term "**Global Quality**" refers, collectively, to Defendants Global Quality Foods, Inc. and Global Quality Seafood LLC, any company owned or controlled by Global Quality Foods, Inc. or Global Quality Seafood LLC, and any company doing business as "Global Quality" or "Global Quality Foods" or "Global Quality Seafood."

16.     The Term "**Ocean King**" refers to Defendant Ocean King Fish Inc.; any company owned or controlled Ocean King, and any company doing business as "Ocean King."

17.     The term "**Bornstein Seafoods**" refers, collectively, to Defendants Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC, any company owned or controlled by Bornstein Seafoods, Inc. or Astoria Pacific Seafoods, LLC, and any company doing business as "Bornstein Seafoods."

18.     The term "**Pacific NW Area**," refers to California, coastal Washington (which excludes Puget Sound), and Oregon.

19.     The term "**Puget Sound Area**" refers to areas within and adjacent to Puget Sound, Washington, where commercial Dungeness crab fishing is permitted.

20.     The term "**Crabber**," including its possessives, refers to individuals that participate in commercial Dungeness crab fishing, either as a licensed captain and/or operator of a commercial Dungeness crab fishing vessel or as a crew member of a commercial Dungeness crab fishing vessel.

21.     The term "**Fisher**," including its possessives, refers to individuals that participate in commercial fishing, either as a licensed captain and/or operator of a commercial fishing vessel or as a crew member of a commercial fishing vessel.

22.     The term "**Buyer**" refers to a Person who purchases Dungeness crab and/or other fishes directly from a Fisher with the purpose of reselling the fish, with or without further processing.

23.     The term "**Person**" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

24.     The term "**Ex Vessel**" refers to a purchase of fresh commercial seafood by a licensed buyer directly from the vessel that caught the commercial seafood.

25.     The term "**Ex Vessel Price**" refers to the price paid per pound for Ex Vessel seafood.

26.     The term "**Fish Ticket**," including its possessives, refers to an individual landing record made each time commercial seafood is unloaded from a licensed fishing vessel, and recorded by the Department of Fish and Wildlife of the state in which the seafood is landed, that provides the unique ticket number, date, location, vessel name, Fisher license number, vessel number, species landed, weight landed, Ex Vessel price, total price, condition of the seafood, the name of the entity buying the seafood, and license number of the buyer, among other information that varies by state.

27.     The term "**Out the Back Door**" refers to a transaction between two licensed seafood buyers where one buyer purchases Dungeness crab Ex Vessel, and is listed as the buyer on the corresponding Fish Ticket, and then sells that same unprocessed Dungeness crab to the other licensed seafood buyer.

28.     The term "**Processed Dungeness Crab**" refers to commercial Dungeness crab that has been cooked after its Ex Vessel purchase and before its sale.

29.     The term "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. Pro. 34(a)(1)(A). Documents include Communications.

30.     The term "**Communication**" means the transmission or transfer of information of any kind, orally, in writing, electronically, or in any other manner, at any time or place, and under any circumstances whatsoever. Communication includes, without limitation, emails, text messages, voice records, etc.

31.     The term "**Concerning**" means relating to, referring to, applicable to, describing, evidencing or constituting.

32.     References to the singular include the plural, and plural includes the singular.

33.     The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

34.     The use of the disjunctive form, *e.g.* "or," shall be considered to also include within its meaning the conjunctive form, *e.g.* "and," and vice versa.

35. "**All**" should be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

36. "**Including**" shall be construed to mean "without limitation." "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request, or any other request, in any way.

## INSTRUCTIONS

1. Unless otherwise indicated the temporal scope of the Requests is from January 1, 2015 to the date of Your responses.

2. If you have any questions or concerns regarding these instructions or how to respond to these requests, Your or Your attorney should contact Plaintiffs' counsel at the email address or phone number immediately.

3. Your response to these Requests must include documents known to You, or in Your possession, custody, or control from any source wherever situated, including but not limited to, any documents in the possession of Your agents, employees, attorneys, investigators, consultants, and all persons acting on Your behalf or under Your control. You have an affirmative duty to investigate.

4. Documents which are maintained in electronic form in the ordinary course of business shall be produced in such electronic forms, i.e., in their native form, unless another agreement is reached with counsel for Plaintiffs, except if the information requested is contained in a database. Thus, for example, excel spreadsheets should be produced as electronic files, with an .xlsx or .xls extension, and emails should be produced as electronic files, with a .eml or .msg or similar extension. If the requested information is contained in a database, You should produce reports from the database that contain the requested information, indicating the type of database (e.g., Quickbooks) from which the report came (Plaintiffs reserve all rights to make further requests concerning such databases but will work with you to reduce burdens associated therewith).

5.      If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter, and the reasons why the documents were lost or destroyed shall be explained with sufficient particularity.

6.      Each Request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to, directly or indirectly, Your control. In addition, each Request should be considered as including a Request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (*e.g.*, by reason of difference in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

7.      All documents produced in response to the Requests shall be produced in their entirety notwithstanding the fact that portions thereof may contain information not requested.

8.      The documents produced in response to these Requests shall include all attachments and enclosures.

9.      With respect to any document requested that was once in Your possession, custody, or control, but which no longer is, please indicate the date the document ceased to be Your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

10.     If You object to part of any Request, please state the objection and the basis of the objection, including citations to relevant authority, as appropriate, and furnish documents responsive to the remainder of the Request.

11.     All documents or portion of documents called for by these Requests, for which You claim a privilege, statutory authority, or regulatory authority as a ground for nonproduction shall be identified in a privilege log containing information sufficient to evaluate the claimed privilege or authority.

12.     If anything is deleted or redacted from a document produced, please state:  the reason for the deletion; the subject matter of the deletion; and the name of the person or persons who decided to delete such matter.

13.     All documents produced in response to these Requests shall be segregated and identified by the Request to which they are primarily responsive.  Where required by a particular paragraph of these Requests, documents produced shall be further segregated and identified as indicated in the paragraph.  For any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken.

14.     These Requests are continuing in nature; if, after responding, You obtain or become aware of any further information or documents responsive to these Requests, a supplementary answer and/or production is required.  Fed. R. Civ. P. 26(c).

15.     Please produce each and all of the documents requested herein on or before March 31, 2025 by delivering true and correct copies of such documents by delivery of the appropriate media containing the documents to Stuart G. Gross, Gross & Klein PC, The Embarcadero, Pier 9, Suite 100, San Francisco, CA 94111, or, if via email or another form of electronic transfer, to sgross@grosskleinlaw.com and iatkinsonyoung@grosskleinlaw.com.

## **DOCUMENTS TO BE PRODUCED**

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to show Your ownership interest in any entity, including but not limited to partnerships, corporations, and limited liability corporations, involved in the Commercial Dungeness Crab Industry.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to show the duration and nature of Your employment by Hallmark, including by not limited to the date of commencement and date of termination of your

employment, all job titles held, the scope of work within each position, and the geographic range over which your employment responsibilities extended.

**REQUEST FOR PRODUCTION NO. 3:**

All Communications Concerning the preservation of Documents Concerning the Commercial Dungeness Crab Industry or this Action, including, without limitation, instructions provided by Hallmark or counsel for Hallmark.

**REQUEST FOR PRODUCTION NO. 4:**

All Communications Concerning the destruction of Documents Concerning the Commercial Dungeness Crab Industry or this Action, including, without limitation, instructions provided by Hallmark or counsel for Hallmark.

**REQUEST FOR PRODUCTION NO. 5:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning the opening of any Dungeness crab season, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 6:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning the opening of any Dungeness crab season, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 7:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning the closing date of any Dungeness crab season, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 8:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning the closing date of any Dungeness crab season, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 9:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning any Ex Vessel price for Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 10:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning any Ex Vessel price for Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 11:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning the commercial Ex Vessel purchase of Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 12:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning the commercial Ex Vessel purchase of Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 13:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning the supply of Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 14:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning the supply of Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, Concerning the demand for Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 16:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer Concerning the demand for Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 17:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, excluding Hallmark, sent or received prior to You leaving Your position with Hallmark, that are not responsive to Requests Nos. 5, 7, 9, 11, 13, or 15.

**REQUEST FOR PRODUCTION NO. 18:**

All Communications, including, without limitation, text messages and emails, between You and any Ex Vessel Dungeness crab Buyer, sent or received prior to You leaving Your position with Hallmark, that are not responsive to Requests Nos. 6, 8, 10, 12, 14, or 16.

**REQUEST FOR PRODUCTION NO. 19:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the opening of any commercial Dungeness crab fishery, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 20:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the opening of any commercial Dungeness crab fishery, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 21:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the closing date of any commercial Dungeness crab fishery, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 22:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the closing date of any commercial Dungeness crab fishery, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 23:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the commercial Ex Vessel purchase of Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 24:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the commercial Ex Vessel purchase of Dungeness crab, sent or received after You left Your position with Hallmark.

**EQUEST FOR PRODUCTION NO. 25:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the Ex Vessel Price of Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**EQUEST FOR PRODUCTION NO. 26:**

      All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the Ex Vessel Price of Dungeness crab, sent or received after you left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 27:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the supply of Dungeness crab, sent or received prior to you leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 28:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the supply of Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 29:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the demand for Dungeness crab, sent or received prior to you leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 30:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber Concerning the demand for Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 31:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber, sent or received prior to You leaving Your position with Hallmark, that are not responsive to Requests Nos. 19, 21, 23, 25, 27, and 29.

**REQUEST FOR PRODUCTION NO. 32:**

All Communications, including, without limitation, text messages and emails, between You and any Crabber, sent or received prior to You leaving Your position with Hallmark, that are not responsive to Requests Nos. 20, 22, 24, 26, 28, or 30.

**REQUEST FOR PRODUCTION NO. 33:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning the Ex Vessel prices being offered by other Buyers for Dungeness crab, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 34:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning the Ex Vessel prices being offered by other Buyers for Dungeness crab, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 35:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning the purchase of Dungeness crab by other Buyers, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 36:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning the purchase of Dungeness crab by other Buyers, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 37:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning any decision to not do business with any Crabber, including by not limited to buying Dungeness crab or other commercial seafood, selling bait, selling ice, allowing use of hoists, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 38:**

All Communications, including, without limitation, text messages and emails, between You and Hallmark Concerning any decision to not do business with any Crabber, including by not limited to buying Dungeness crab or other commercial seafood, selling bait, selling ice, allowing use of hoists, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 39:**

All Communications, including, without limitation, text messages and emails, Concerning Triple G Seafood, Ozzie Gregorio, and/or the owners, employees, agents or representatives of Triple G Seafood, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 40:**

All Communications, including, without limitation, text messages and emails, Concerning Triple G Seafood, Ozzie Gregorio, and/or the owners, employees, agents or representatives of Triple G Seafood, sent or received after you left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 41:**

All Communications, including, without limitation, text messages and emails, with Triple G Seafood, Ozzie Gregorio, and/or the owners, employees, agents or representatives of Triple G Seafood, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 42:**

All Communications, including, without limitation, text messages and emails, with Triple G Seafood, Ozzie Gregorio, and/or the owners, employees, agents or representatives of Triple G Seafood, sent or received after you left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 43:**

All Communications, including, without limitation, text messages and emails, between You and Nor-Cal Seafoods or Kevin Lee Concerning Crabbers selling Dungeness crab to Buyers other than Hallmark or Nor-Cal Seafoods in Port Orford, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 44:**

All Communications, including, without limitation, text messages and emails, between You and Nor-Cal Seafoods or Kevin Lee Concerning Crabbers selling Dungeness crab to Buyers other than Hallmark or Nor-Cal Seafoods in Port Orford, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 45:**

All Communications, including, without limitation, text messages and emails, between You and Nor-Cal Seafoods or Kevin Lee Concerning Buyers other than Hallmark or Nor-Cal Seafoods making Ex Vessel purchases in Port Orford, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 46:**

All Communications, including, without limitation, text messages and emails, between You and Nor-Cal Seafoods or Kevin Lee Concerning Buyers other than Hallmark or Nor-Cal Seafoods making Ex Vessel purchases in Port Orford, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 47:**

All Communications, including, without limitation, text messages and emails, Concerning Joel Purkey, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 48:**

All Communications, including, without limitation, text messages and emails, Concerning Joel Purkey, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 49:**

All Communications, including, without limitation, text messages and emails, with Joel Purkey, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 50:**

All Communications, including, without limitation, text messages and emails, with Joel Purkey, sent or received after You left Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 51:**

All communications Concerning This Action, including but not limited to the allegations made in it, sent or received prior to You leaving Your position with Hallmark.

**REQUEST FOR PRODUCTION NO. 52:**

All communications Concerning This Action, including but not limited to the allegations

made in it, sent or received after You left Your position with Hallmark.

## PROOF OF SERVICE

I, Ian Atkinson-Young, declare:

I am a citizen of the United States and employed in San Francisco, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Pier 9, Suite 100, The Embarcadero, San Francisco, CA 94111.  On April 1, 2025, I served a copy of the following documents:

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO CRYSTAL ADAMS**

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION TO CRYSTAL ADAMS**

☒ **BY EMAIL:** by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

## SERVICE LIST

| | |
|---|---|
| Crystal Adams c/o Scott Cameron Josiah Prendergast Weintraub Tobin Chediak Coleman Grodin 400 Capitol Mall, 11th Floor Sacramento, California 95814 scameron@weintraub.com JPrendergast@weintraub.com DAguillen@weintraub.com aespanapurpur@weintraub.com mcantrell@weintraub.com | |

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed April 1, 2025.

By: _____

Ian Atkinson-Young

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111