CHARLES H. SAMEL (SBN 182019)
charles.samel@stoel.com
EDWARD C. DUCKERS (SBN 242113)
ed.duckers@stoel.com
STOEL RIVES LLP
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
Telephone: 415.617.8900

MATTHEW D. SEGAL (SBN 190938)
matthew.segal@stoel.com
MICHELLE J. ROSALES (SBN 343519)
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700

TIMOTHY W. SNIDER (admitted *pro hac vice*)
timothy.snider@stoel.com
ALEX VAN RYSSELBERGHE (admitted *pro hac vice*)
alex.vanrysselberghe@stoel.com
ALEXANDRA CHOI GIZA (admitted *pro hac vice*)
alexandra.giza@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

*Attorneys for Pacific Seafood Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAND LITTLE and ROBIN BURNS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,<br><br>Defendants. | Case No. 3:23-cv-01098-AGT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR APPROVAL TO SERVE SUBPOENAS**<br><br>Date: Friday, May 1, 2026<br>Time: 10:00 a.m.<br>Judge: Honorable Alex G. Tse<br>Location: Courtroom A, 15th Floor |

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS

152587617.7 0052902-00054

3:23-CV-01098-AGT

## I.    INTRODUCTION

Plaintiffs do not dispute the relevance or Rule 26 propriety of the discovery sought from non-party Marketing Associations.  Nor could they.  The requested discovery goes to the core issue in this case: how ex-vessel Dungeness crab prices were determined.  Plaintiffs contend those prices result from unlawful price-fixing by Defendants.  Defendants contend the prices result from the supply and demand conditions existing at the time of arms-length price negotiations between crabbers and individual buyers—negotiations often conducted collectively by crabbers through Marketing Associations seeking to ensure that crabbers all receive the same price.  Evidence of how prices are negotiated and how price agreements are reached is plainly relevant and central to Plaintiffs' theory of liability.

Rather than address the obvious relevance of such discovery, Plaintiffs attempt to reframe Defendants' motion (Dkt. 645, the "Motion") as a request that the Court reconsider its Discovery Order.  It is not.  The Discovery Order applies to putative class members, but Marketing Associations are not class members—a legal distinction Plaintiffs wholly ignore.  And even if the Discovery Order were to apply, Defendants expressly seek to comply with it by requesting the Court's permission to serve the Subpoenas as provided in the Discovery Order.

Plaintiffs also mischaracterize why Defendants seek this discovery and rely on speculation to claim the Subpoenas will unduly burden the Marketing Associations.  This discovery is not sought to justify or excuse price-fixing as Plaintiffs keep insisting.  The discovery is relevant to show that no price-fixing by Defendants occurred at all—a purpose supported by the case law cited by Defendants (which Plaintiffs also ignore).  Indeed, more than three years into this case, Plaintiffs have no direct evidence of a price-fixing agreement between or among any Defendants (let alone all), and instead rely on the same handful of recycled text messages that they argue circumstantially support their claim that parallel pricing resulted from an antecedent agreement among Defendants.  Although the text messages are not susceptible to such an interpretation, Defendants also are entitled to pursue evidence showing that any pricing similarities result from ordinary market forces, including collective negotiations by Marketing Associations seeking the same prices for their members.  Plaintiffs present no evidence that the Subpoenas are unduly

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS                -1-                3:23-CV-01098-AGT

152587617.7 0052902-00054

burdensome, and any potential burden can, and should, be addressed if and when it is raised by the Marketing Associations once the Subpoenas are served.

## II.    ARGUMENT

### A.    Defendants' Motion Is Not an Improper Motion for Reconsideration.

Plaintiffs first argue that Defendants' Motion is an improper reconsideration motion under local rules. *See* Dkt. 659 ("Opp.") at 13–15. It is not. The Discovery Order by its terms only applies to putative class members. The Marketing Associations are not putative class members. They are separate legal entities. Plaintiffs completely ignore this critical distinction, as well as the controlling authority cited by Defendants distinguishing the legal status of class members from the status of associations comprised of class members. *See Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 39 n.10 (N.D. Cal. 1977) (citing *Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2d Cir. 1968)). Because the Marketing Associations are not class members, the Discovery Order does not apply to them. Given Plaintiffs do not contest that the requested discovery is relevant under Rule 26, no further analysis is required, and the Court should approve service of the Subpoenas.

Moreover, if the Discovery Order applies, Defendants expressly seek leave in the Motion to serve the Subpoenas consistent with the Discovery Order's terms. Defendants have fully supported that request with legal argument and an evidentiary record that addresses the considerations in the Discovery Order, and which Plaintiffs fail to meaningfully rebut.

### B.    Defendants' Motion Satisfies the Discovery Order.

To the extent the Discovery Order applies, the Subpoenas clearly satisfy it. The Subpoenas' requests are narrowly tailored to communications regarding the Marketing Associations' price negotiations (Requests 1–3, 5), documents concerning Marketing Association membership and pricing-related activities (Requests 4, 6), and documents relating to this litigation, if any (Request 7). Defendants have a "clear need" for this discovery, as it is highly relevant to core issues in the case about how ex vessel prices are determined, and there is no alternative source from which Defendants could obtain the same information (a fact Plaintiffs do not seriously dispute).

**1.    Defendants Have a "Clear Need" for Subpoenaed Discovery.**

*Internal and external Marketing Association pricing communications are relevant to rebut Plaintiffs' theory of liability.*  Plaintiffs claim that Defendants lack a "clear need" for pricing communications by Marketing Associations (Requests 1–3, 5) because Plaintiffs have direct evidence of a price-fixing conspiracy.  *See* Opp. at 18.  They do not.  Direct evidence is proof which, standing alone, demonstrates an express price-fixing agreement among all Defendants, without requiring the trier-of-fact to make any inference.  *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) ("Direct evidence is smoking-gun evidence that 'establishes, without requiring any inferences' the existence of a conspiracy." (quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999))).  By contrast, circumstantial evidence permits a price-fixing agreement to be inferred by showing "parallel conduct" combined with "additional 'plus factor' evidence that 'tend[s] to rule out the possibility that the defendants were acting independently.'"  *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1126–27 (S.D. Cal. 2022) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)); *see also In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022).

To date, Plaintiffs have outright refused to answer discovery requests that ask them to identify the agreement or agreements upon which their claims rest, and have made no commitment to confine their theory of liability to a direct-evidence price-fixing conspiracy.  *See, e.g.*, Plaintiff Brand Little's Responses and Objections to Defendants' Joint Interrogatories, Set One (Dkt. 503, Exhibit B), at Responses to Interrogatory Nos. 8–25 (pp. 19–35).[1]  And after more than three years of litigation, Plaintiffs can only point to a handful of text messages in which one or two buyers discuss prices they are observing in the market, which is lawful conduct and no proof of conspiracy.  One buyer's unilateral statement that "I told him I would not commit to a price unless PAC came out with one," or confirmation that a crabber's claim that certain buyers

---

[1] Plaintiffs recently stated in opposing another motion seeking to depose a percipient fact-witness crabber that "Plaintiffs have never rested this case on allegations of parallel pricing and plus factors, but rather on direct evidence of price fixing among Ocean Gold and other buyers."  *See* Dkt. 664 at 7, n.5.  But Plaintiffs have refused to make such commitments in formal and binding discovery responses.

"are paying 3" was false (Dkt. 572-8), is not evidence of an agreement at all, let alone direct evidence of a decade-long, coast-wide conspiracy among nearly 40 named Defendants. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (reasoning that "it would be most difficult to draw a reasonable inference of conspiracy where there was no meeting of the minds"); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 917 (N.D. Cal. 2019) (noting buyers "are likely to monitor and mimic the behavior of competitors carefully *because* pricing provides the chief competitive leverage"); *see also* Order on Motion to Dismiss (Dkt. 59) at 2 (observing that in this industry there is an "economic rationale for tracking Pacific Seafood's pricing decisions"). Indeed, this Court recently rejected Plaintiffs' claims that similar text messages supported a conspiracy to fix prices in its order granting a motion to dismiss certain Defendants from this case. *See* Order on Motion to Dismiss (Dkt. 600) at 2–3.

Plaintiffs next hedge by arguing that Marketing Association pricing communications are not relevant in a circumstantial case either because such evidence is not necessary to rebut potential "plus factor" evidence. *See* Opp. at 19. In making this argument, Plaintiffs largely ignore the authority Defendants cite for the relevance of this evidence in a circumstantial-evidence case. Plaintiffs do address *Persian Gulf*, 632 F. Supp. 3d at 1127, but they wrongly contend that the case limits the plus-factor analysis to Defendants' conduct alone. Nothing in *Persian Gulf* supports excluding evidence of market-wide or plaintiff-side conduct. *See id.* And other courts have expressly recognized the relevance of such evidence. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2016 WL 6216664, at *5–6 (N.D. Cal. Oct. 25, 2016) ("[A]gree[ing] with Defendants . . . that evidence of information exchanges among the [Plaintiffs] and their competitors is relevant and not unfairly prejudicial so long as it is introduced to demonstrate that such information exchanges can have a legitimate purpose."); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670, 2018 WL 4327876, at *4 (S.D. Cal. Sept. 10, 2018) (permitting discovery of antitrust plaintiffs' pricing communications to counter inference of collusion based on defendants' pricing communications).

Defendants are entitled to pursue and present evidence that any pricing similarities are attributable to normal market forces of supply and demand, including collective bargaining by

Marketing Associations across ports seeking the same price for their members. Such evidence will be reflected in the Marketing Associations' internal and external communications regarding prices and negotiations. *See* Motion at 16–18. Discovery from the Marketing Associations also will rebut Plaintiffs' repeated assertion that isolated instances of information sharing (such as the text messages they repeatedly cite) constitute evidence of price-fixing, when such exchanges have a legitimate purpose and are commonplace in arm's-length negotiations on both sides of the Dungeness crab market. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 4327876, at *4. Defendants do not seek this discovery to justify or excuse unlawful conduct alleged by Plaintiffs. Defendants instead seek to disprove those allegations and rebut Plaintiffs' price-fixing claims by presenting an accurate account of how prices are determined by ordinary market factors and why prices for Dungeness crab (like nearly all commodities) settle on a "market price" accepted and expected by all buyers and sellers. In this market, price negotiations include collective-bargaining efforts by Marketing Associations to get the same price for their crabbers.

*Identifying Marketing Association membership and participation is relevant to class certification, injury and causation.* Defendants also have a clear need for discovery concerning Marketing Association membership and association activities relating to crab price negotiations (Requests 4, 6). Plaintiffs seek to certify all crabbers in a single class—large and small, association members and non-association members, whether they transacted with Defendants or not, in all ports, in three states—as though all are similarly situated. They are not.

Plaintiffs fail to address **any** of the cases cited by Defendants on this point (*see* Motion at 17–18), and instead offer the conclusory assertion that Defendants do not need discovery from the Marketing Associations to address class-wide injury and causation. *See* Opp. at 17 (stating Defendants are "in possession of all the information they need on this issue"). That is simply untrue. Defendants have no way of identifying which crabbers participate in which Marketing Associations in which ports in which years, and no way to access that information without subpoenaing the Marketing Associations. It also is disingenuous to suggest that differences in prices received by putative class members are irrelevant to class certification. *Id.* at 22. If there is a relationship between Marketing Association membership and the prices received by members

compared to non-members, that distinction (among many others) bears directly on whether Plaintiffs can show class-wide injury.  Plaintiffs may "strongly disagree," but differences among putative class members—including participation in Marketing Associations—is relevant to whether class treatment is appropriate, including whether Plaintiffs can meet the typicality requirement of Rule 23.  Defendants are entitled to explore those differences through discovery.

*No alternative source exists for the discovery Plaintiffs seek to block.*  Defendants cannot obtain this discovery by other means.  There is no alternative source for internal Marketing Association communications or documents, and Plaintiffs do not—and cannot—dispute that this satisfies the "clear need" requirement.  Plaintiffs argue that Defendants do not need crabber-to-buyer communications because Defendants already possess them, but Defendants are not seeking their own communications.  In many ports, Defendants account for less than half of the Dungeness crab purchases, and Defendants therefore do no already possess all crabber-to-buyer communications for such ports.  The only alternative would be for Defendants to subpoena hundreds of individual non-Defendant buyers in the hopes of locating any communications with Marketing Associations, which makes little sense when the Marketing Associations themselves possess any such communications to the extent they exist.[2]

**2.    There Is No Evidentiary Record to Support Plaintiffs' Claims That the Subpoenas Are Unduly Burdensome or Intimidating**.

Plaintiffs' assertion of undue burden (on behalf of the Marketing Associations) rests on speculation, not evidence, and provides no basis to deny the Motion.  As an initial matter, the Marketing Associations themselves are not (and cannot be) putative class members.  *See* Fifth Amended Complaint (Dkt. 596) ¶ 498 (identifying the proposed class as comprised of "persons who, during the Class Period, made ex vessel sales of Dungeness crab caught off the coast of, or landed in, California, Oregon and/or coastal Washington (not including Puget Sound), on their own behalf").  As such, the burden and "intimidation" concerns discussed in the Discovery Order

---

[2] Plaintiffs object to Defendants' estimate of ex vessel purchases in paragraph 13 of the Snider Declaration.  *See* Opp. at 23.  That estimate is based on an analysis of available fish-ticket data produced to all parties and is not expert testimony.  It merely summarizes an Excel spreadsheet using simple math.  Notably, Plaintiffs offer no evidence to rebut this estimate.

are not applicable here.  Plaintiffs' speculation that somehow Defendants are "targeting" individual crabbers indirectly by seeking discovery from Marketing Associations is unsupported and meritless.

Plaintiffs rely on *On the House Syndication, Inc. v. Federal Express Corp.* to argue that this discovery would transform putative class members into named plaintiffs, but the case does not support their claim.  *See* Opp. at 24 (citing 203 F.R.D. 452, 456 (S.D. Cal. 2001)).  In *On the House*, following a class certification order indicating that common issues predominate, the defendant sought to reopen discovery to serve interrogatories on absent class members to obtain evidence related to certain defenses.  203 F.R.D. at 453–44.  The court rejected the request, finding the discovery sought was irrelevant at that stage in the case.  *Id.* at 457–58.

*On the House* is not on point.  First, unlike in *On the House*, the Court has not certified a class, and, as explained above, the discovery sought by Defendants is relevant to both merits and class issues.  Second, unlike the subpoena recipients in *On the House*, the Marketing Associations are not absent (or putative) class members.

Plaintiffs also have no record—none—that the Marketing Associations possess burdensome volumes of text messages or other difficult-to-produce electronic data that would render the Subpoenas unduly burdensome.  As Defendants pointed out in their Motion, the Marketing Associations are corporate entities capable of raising their own objections in response to the Subpoenas served.

At bottom, Plaintiffs demand a one-sided game where they are the evidentiary gatekeepers, and seek to block Defendants from obtaining evidence that is directly relevant (if not fatal) to Plaintiffs' claims.  The Court should reject Plaintiffs' meritless arguments and permit Defendants to pursue evidence that will contradict Plaintiffs' narrative and demonstrate a competitive, dynamic market for Dungeness crab, in which crabbers seek to ensure that buyers pay them the same prices by using Marketing Associations to collectively bargain on their behalf.

///

///

///

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and permit service of the Subpoenas.


DATED: April 10, 2026.                     STOEL RIVES LLP


                                           /s/ Timothy W. Snider
                                           CHARLES H. SAMEL
                                           charles.samel@stoel.com
                                           EDWARD C. DUCKERS
                                           ed.duckers@stoel.com
                                           TIMOTHY W. SNIDER (appearing *pro hac vice*)
                                           timothy.snider@stoel.com
                                           MATTHEW D. SEGAL
                                           matthew.segal@stoel.com
                                           MICHELLE J. ROSALES
                                           michelle.rosales@stoel.com

                                           *Attorneys for Pacific Seafood Defendants*


DATED: April 10, 2026.                     /s/ Christopher J. Kayser
                                           Christopher J. Kayser
                                           Elizabeth E. Parker
                                           **LARKINS VACURA KAYSER**
                                           121 SW Morrison St. Suite 700
                                           Portland, OR
                                           Telephone: (503) 222-4424
                                           cjkayser@lvklaw.com
                                           eparker@lvklaw.com

                                           Brian A. E. Smith
                                           Joseph J. Fraresso
                                           **BARTKO LLP**
                                           1100 Sansome Street
                                           San Francisco, CA 94111
                                           Telephone: (415) 956-1900
                                           bsmith@bartkolaw.com
                                           jfraresso@bartkolaw.com

                                           *Attorneys for Defendant Ocean Gold Seafoods, Inc.*

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS                  -8-                     3:23-CV-01098-AGT

DATED: April 10, 2026.

/s/ Sean Tamura-Sato
Sean Tamura-Sato
**MINAMI TAMAKI LLP**
101 Montgomery Street, Suite 825
San Francisco, CA 94104
Telephone: 415-788-9000
*seant@minamitamaki.com*

*Attorneys for Defendant American Seafood EXP, Inc.*

DATED: April 10, 2026.

/s/ Scott Cameron
Scott Cameron
Josiah Prendergast
**WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: (916) 558-6000
scameron@weintraub.com
Jprendergast@weintraub.com

*Attorneys for Defendant California Shellfish Company, Inc. and Robert Bugatto Enterprises, Inc.*

DATED: April 10, 2026.

/s/ Steven J Goon
Steven J. Goon
Sarah Van Buiten
**RUTAN & TUCKER, LLP**
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
sgoon@rutan.com
Svanbuiten@rutan.com

*Attorneys for Defendant Caito Fisheries, LLC and Southwind Foods, LLC*

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS

-9-

3:23-CV-01098-AGT

DATED: April 10, 2026.

*/s/ Timothy Hobbs*

J. Timothy Hobbs (*pro hac vice*)
**K&L GATES LLP**
501 Commerce Street, Ste. 1500
Nashville, Tennessee 37203
Telephone: (615) 780-6700
Tim.Hobbs@klgates.com

Henry J. Brockway (*pro hac vice*)
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 623-7580
Henry.Brockway@klgates.com

Victoria S. Pereira Duarte (*pro hac vice*)
**K&L Gates LLP**
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Victoria.Duarte@klgates.com

Michael J. Stortz (SBN 139386)
**K&L Gates LLP**
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 882-8011
Michael.Stortz@klgates.com

*Attorneys for Defendant Bornstein Seafoods, Inc.*
*and Astoria Pacific Seafoods, LLC*

DATED: April 10, 2026.

*/s/ Sean Gates*

Sean Gates
**ILLOVSKY GATES & CALIA LLP**
155 N. Lake Avenue, Suite 800
Pasadena, California 91101
Telephone: (626) 508-1715
sean@illovskygates.com

*Attorneys for Defendant Safe Coast Seafoods,*
*LLC, Safe Coast Seafoods Washington, LLC, and*
*Blue River Seafood, Inc.*

DATED: April 10, 2026.

/s/ Steven McLellan
Steven McLellan
**MCLELLAN LAW GROUP LLP**
900 E. Hamilton Ave. Suite 100
Campbell, CA 95008
Mclellanlawgroup.com

*Attorneys for Defendant Fisherman's Catch Inc.*

DATED: April 10, 2026.

/s/ Traci Michelle Keith
Philip J. Wang
Traci Michelle Keith
**PUTTERMAN YU WANG LLP**
345 California St. Suite 1160
San Francisco, CA 94104
pwang@plylaw.com
tkeith@plylaw.com

*Attorneys for Defendant Ocean King Fish Inc.*

DATED: April 10, 2026.

/s/ Ann A. P. Nguyen
Ann A.P. Nguyen
**MESSNER REEVES LLP**
160 W Santa Clara Street, Suite 1000
San Jose, CA 95113
Telephone: (408) 298-7120
anguyen@messner.com

*Attorneys for Defendant Global Quality Foods, Inc.*

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS

-11-

3:23-CV-01098-AGT

DATED: April 10, 2026.

 /s/ Micah Allred

Micah C. Allred
Timothy B. Fitzgerald
**McNaul Ebel Nawrot & Helgren PLLC**
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816
mallred@mcnaul.com
tfitzgerald@mcnaul.com

Lukas Sosnicki
**Thompson Coburn LLP**
10100 Santa Monica Blvd, Suite 500
Los Angeles, CA 90067
(310) 282-2500
lsosnicki@thompsoncoburn.com

*Attorneys for Defendants Alaska Ice Seafoods, Inc.*
*and Long Fisheries, Inc.*

Stoel Rives LLP
Attorneys at Law
San Francisco

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO SERVE SUBPOENAS

-12-

3:23-CV-01098-AGT