UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRAND LITTLE, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>PACIFIC SEAFOOD PROCUREMENT,<br>LLC, et al.,<br><br>     Defendants. | Case No.  23-cv-01098-AGT<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 662 |

Plaintiffs and Pacific Seafood negotiated a list of keywords to be used by Defendants to search for ESI responsive to Plaintiffs' requests for production. As contemplated by Plaintiffs and Pacific Seafood, the list is a starting point. Defendants will run the searches, and then if "particular keywords or particular keyword combinations . . . yield[] an unreasonably large number of non-responsive documents," Defendants will flag those words and Plaintiffs will consider adjusting or removing them. Dkt. 662-3 at 4.

The Southwind Defendants have refused to use the keyword list, not even to generate hit reports that could be used to test the list's effectiveness. They assert that the list includes several thousand keywords, and to run the searches and generate hit reports they "would need to retain an outside vendor (rather than relying on counsel's litigation support staff)."

Dkt. 662 at 5. They also insist that they never agreed to the keyword list, "cannot discern the topics to which many of these searches pertain," and "should have the ability to select their own search terms." *Id.* Plaintiffs argue that the Southwind Defendants didn't object to the framework under which Pacific Seafood agreed to negotiate keywords on behalf of all Defendants, and that the Southwind Defendants should be bound by the keyword list unless they can demonstrate with hit reports that certain keywords are overbroad. *Id.* at 1–3.

Even if the Southwind Defendants aren't technically bound by the negotiated framework that resulted in the keyword list—the framework is memorialized in an email chain in which counsel referred to the framework as "a voluntary process," dkt. 662-3 at 3—the Court agrees with Plaintiffs that the list provides a helpful starting point for ESI searches. The list's length and detail indicate that Plaintiffs expended considerable effort creating it, and using the negotiated list will be more efficient than having each Defendant family create its own.

Concerning the burden objection, the Court doesn't have enough information to evaluate it. For a small company, retaining an outside vendor to run hit reports could be unduly burdensome. *See* Fed. R. Civ. P. 26(b)(1) (noting that courts consider "the parties' resources" in determining the scope of discovery). But the Southwind Defendants' size and resources are unknown to the Court. To establish undue burden, the Southwind Defendants must provide more information, preferably financial statements documenting their assets, liabilities, owners' equity, revenues, and profits. They must file this information by June 3, 2026, or their burden objection will be deemed overruled. Financial details may be filed under seal.

As for relevance, it seems unlikely that the chosen keywords are irrelevant given Pacific Seafood's involvement in negotiating them. But if the Southwind Defendants doubt that certain keywords or keyword categories are relevant or tied to Plaintiffs' RFPs, they

may flag those keywords and Plaintiffs should provide more detail concerning them.

Lastly, regarding the negotiated framework more generally, if the parties intend to rely on it going forward, the Court encourages them to file a stipulation and proposed order to memorialize the framework and clarify its requirements and limitations.

**IT IS SO ORDERED.**

Dated: May 29, 2026

_____
Alex G. Tse
United States Magistrate Judge