Stuart G. Gross (SBN 251019)
Jan W. A. Jorritsma (SBN 326772)
Travis H. A. Smith (SBN 331305)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628

*Attorneys for Plaintiffs and the Proposed Classes*
[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

<table>
<tr><td>

**BRAND LITTLE, ROBIN BURNS, AND CHERRY FISHERIES INC.,** Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

**PACIFIC SEAFOOD PROCUREMENT, LLC,** et al.,

Defendants.

</td><td>

Case No. 3:23-cv-01098-AGT

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE, LLC AND GERARD WETLE, JR.**

Date:     July 31, 2026
Time:    10:00 a.m.
Judge:   Honorable Alex G. Tse
Courtroom: A, 15th Floor

Redacted Copy of Document Filed Under Seal

</td></tr>
</table>

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE, LLC AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................. 1

STATEMENT OF REQUESTED RELIEF ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.  INTRODUCTION ......................................................................................................... 2

II.  BACKGROUND ........................................................................................................... 3

    A.  Plaintiffs' Allegations ........................................................................................ 3

    B.  Procedural History ............................................................................................. 3

    C.  Discovery and Factual Investigations to Date.................................................. 5

    D.  Summary of Negotiations with Settling Buyers ............................................. 5

    E.  Summary of Settlement Terms........................................................................... 7

        1.  The First Round Settlement Class..................................................... 7

    F.  The Settling Buyers............................................................................................. 7

        1.  Settlement Amounts and Additional Consideration..................... 8

        2.  Attorneys' Fees and Expenses .......................................................... 9

        3.  Release of All Claims.......................................................................... 9

III.  Legal Standard and Process for Preliminary Approval of a Class Settlement ...................... 10

IV.  ARGUMENT.................................................................................................................. 11

    A.  The Proposed Settlements Should be Preliminarily Approved........................................... 11

        1.  The Settlements Are Fair, Reasonable, and Adequate.............................................. 11

    B.  The Threshold Requirements for Certification of a First Round Settlement Class Are Met ............................................................................ 16

        1.  Numerosity, Commonality, Typicality, and Adequacy are Shown Here.................. 17

        2.  Predominance and Superiority are Shown Here ......................................................... 19

    C.  The Court Should Appoint Stuart Gross, Matthew Ruan, and Matthew Weiler as Settlement Class Counsel ................................................................. 20

V.  THE USE OF SETTLEMENT FUNDS .......................................................................... 21

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

VI.    NOTICE AND SETTLEMENT ADMINISTRATION ........................................... 22

  A.  The Proposed Notice Plan Should be Approved................................................. 22

  B.  Selection of the Settlement Administrator ...................................................... 24

VII.    PROPOSED PLAN OF ALLOCATION ................................................................. 24

VIII.    CAFA COMPLIANCE ......................................................................................... 25

IX.    THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ..................... 25

CONCLUSION ........................................................................................................................ 25

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 20, 23

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .................................. 11

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) ............................................................. 11

*Collins v. Thompson,* 679 F.2d 168 (9th Cir. 1982) ................................................................. 10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ..................................................................... 10

*D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140 (E.D. Va. Dec. 2, 2020) ........................................................................................................................ 18

*DeLoach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551 (M.D.N.C. 2002) ........................ 18

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................ 18

*Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 MBM, 1992 WL 321632 (S.D.N.Y. 1992) ................................................................................................................... 21

*Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F.Supp. 493 (E.D.Pa.1985) ................................ 13

*Flintkote Co. v. Lysfjord*, 246 F.2d 368 (9th Cir. 1957) ........................................................... 13

*Four In One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFB, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014) ......................................................................................... 13

*Giuliano v. Sandisk Corporation*, No. C 10-02787 RS, 2015 WL 10890654 (N.D. Cal., May 14, 2015) ........................................................................................................... 19

*Hanlon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................................................. 18

*Harrington v. City of Albuquerque*, 222 F.R.D. 505 (D.N.M. 2004) ........................................ 21

*Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ................................................................................................................................. 18, 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............................. 11

*In re Bulk [Extruded] Graphite Prod. Antitrust Litig.*, No. Civ. 02–6030 WHW, 2006 WL 891362 .............................................................................................................. 19

*In re California Bail Bonds Antitrust Litigation*, No. 4:19-cv-00717, Dkt. 512 (N.D. Cal. Dec. 11, 2024) ...................................................................................................... 22

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

iii

*In re Capacitors Antitrust Litigation*, No. 3:14-cv-03264; Dkt. 1455 (N.D. Cal. Jan. 27, 2017) ................................................................................................................22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) ...............................................................18, 24

*In re Citric Acid Antitrust Litig.*,145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. 2093 (Oct. 27, 2010)................................................................................24

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) .............................................................................................10

*In re Omnivision Techs*, *Inc*., 559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................24

*In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) .........................................................................................................................14

*In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) .....................14, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ........................18

*In re Xyrem (Sodium Oxybate) Antitrust Litig.,* No. 20-MD-02966-RS, 2024 WL 1683640 (N.D. Cal. Apr. 17, 2024) .............................................................................22

*Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336 (9th Cir. 1970) .................16

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) ..........................................................18

*Linney v. Cellular Alaska P'ship,* No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ................................................................................................................12

*Moore v. City of San Jose*, 615 F.2d 1265 (9th Cir. 1980) ..........................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004)................10

*Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128 (N.D. Cal. 2011) .......................13

*Satchell v. Fed. Express Corp.*, No. 03-cv-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...............................................................................................................12

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) ..................................................................18

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)........................................................17, 19

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ..............................................20

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir.1976) ..................................................10

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

iv

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................... 17, 18

**STATUTES**

28 U.S.C. § 1715 ................................................................................................................ 25

**OTHER AUTHORITIES**

3 Newberg and Rubenstein on Class Actions § 8:15 (6th ed.) .............................................. 23

Manual for Complex Litigation, Fourth § 21.651 (2025) ..................................................... 22

Manual for Complex Litigation, Third, § 30.41 (1995) ........................................................ 10

**RULES**

Fed. R. Civ. P. 23(b) ........................................................................................................... 20

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 17, 20

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................................. 20

Fed. R. Civ. P. 23(c)(l)(B) .................................................................................................. 20

Fed. R. Civ. P. 23(e) ........................................................................................................... 10

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................. 11

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 2, 11

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................. 14

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................. 14

Fed. R. Civ. P. 23(e)(l) ............................................................................................. 10, 16, 23

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................................. 21

Fed. R. Civ. P. 23(g)(1)(C)(i) .............................................................................................. 21

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS
PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE
CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

v

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 31, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom A, 15th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Brand Little, Robin Burns, and Cherry Fisheries ("Plaintiffs"), individually and on behalf of the proposed First Round Settlement Class, will and hereby do move this Court for an order granting preliminary approval of the First Round Settlement Class and the class action settlements between Plaintiffs and Defendants John Caito, Joseph Caito, James Caito, Jeanette Caito (collectively, the "Caito Siblings"), and Caito Fisheries, Inc. ("Caito Inc." and together with the Caito Siblings, the "Caitos"); between Plaintiffs and Defendant Pacific Dream Seafood, Inc. ("Pacific Dream" and together with the Caitos, the "Settling Defendants"); and between Plaintiffs and non-parties Fisherman's Choice, LLC, and Gerard Wetle, Jr. (collectively "Fisherman's Choice," and together with the Settling Defendants, the "Settling Buyers"). These settlements are referred to herein as the "First Round Settlements." This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Stuart G. Gross and the exhibits attached thereto ("Gross Dec."), the declaration of the proposed settlement administrator, the Court's files and records in this matter, and such other further matters as the Court may consider.

## STATEMENT OF REQUESTED RELIEF

Plaintiffs, individually and on behalf of the proposed First Round Settlement Class, respectfully request that the Court: (1) grant preliminary approval of the First Round Settlement Agreements; (2) certify the First Round Settlement Class for the purposes of these settlements; (3) approve the proposed plan of notice to the First Round Settlement Class; (4) set a schedule for disseminating notice to the First Round Settlement Class Members and deadlines to comment on, object to, or opt out of the First Round Settlements; (5) designate Stuart G. Gross (Lead), Matthew Ruan (Executive Committee Member), and Matthew Weiler (Executive Committee Member) as Settlement Class Counsel; and (5) preliminarily approve Plaintiffs' plan to use the proceeds from the settlements to cover out-of-pocket litigation and claims administration

expenses incurred by Plaintiffs;  (6) schedule a hearing pursuant to rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed First Round Settlement Agreements are fair, reasonable, and adequate and should be finally approved.

<div align="center">

**MEMORANDUM OF POINTS AND AUTHORITIES**

</div>

## I.    Introduction

The First Round Settlements create a cash fund of $2.25 million (the "First Round Settlement Fund") for the benefit of the First Round Settlement Class, with $1 million to be paid by Pacific Dream and $1.25 million to be paid by the Caitos, and require the Settling Buyers to provide certain discovery and, in the case of Fisherman's Choice, certain cooperation. The parties reached these agreements through arm's-length negotiations between experienced and informed counsel after more than three years of litigation and, in the case of the settlements with the Settling Defendants, with the active assistance of the Honorable Judge Joseph C. Spero, before whom several settlement conferences were conducted. These ice-breaker settlements represent solid recoveries for the First Round Settlement Class and are well within the range of possible recoveries to warrant preliminary approval, send notice of the settlement to the First Round Settlement Class Members, and schedule a Final Fairness Hearing.

Plaintiffs do not seek an award of attorneys' fees from the proceeds of these settlements or their distribution to First Round Settlement Class Members. Rather, with the Court's approval, Plaintiffs will use the funds to cover out-of-pocket expenses incurred in the continued litigation of their claims against the remaining Defendants (including expert fees), placing them in a strong position to recover additional and larger amounts for the class.

At this juncture, the Court need determine only whether it will likely be able to approve the First Round Settlements under Rule 23(e)(2) and certify the First Round Settlement Class for the purposes of settlement approval. A final determination of whether the settlements are sufficiently fair, reasonable, and adequate will be made at or after the Fairness Hearing, after notice of the settlements has been provided and class members have had the opportunity to object to the settlements or opt out of the First Round Settlement Class. The First Round Settlements easily meet this standard, and Plaintiffs respectfully request their preliminary approval

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## II.   BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs and the proposed First Round Settlement Class are Dungeness crab fishers in California, Oregon, and Washington (excluding Puget Sound) (the "Pacific Northwest Area") who have caught and sold Dungeness crab ex vessel (i.e., "off the boat") between January 1, 2016 and the date of Final Approval (the "First Round Settlement Class Period"). The Defendants in this Action, along with Fisherman's Choice, are buyers who purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period. Plaintiffs allege that the Settling Buyers, along with the other Defendants, formed and maintained an illegal cartel to fix, suppress, and stabilize prices for Dungeness crab, causing damages to Plaintiffs and the First Round Settlement Class. *See* Dkt. 596.

### B.   Procedural History

Plaintiff Brand Little brought this Action on March 13, 2023 against six related defendants (collectively, the "Pacific Seafood Defendants") under federal and state antitrust and consumer protection laws seeking damages, injunctive relief, and declaratory relief. Dkt. 1. Initially, the case was focused on claims for monopsonization and attempted monopsonization under § 2 of the Sherman Act, but also alleged other claims, including price-fixing by the Pacific Seafood Defendants with other buyers. *Id*. On May 15, 2023, the Pacific Seafood Defendants filed a Motion to Dismiss. Dkt. 21. The Court granted this motion on May 21, 2024, at the same time granting leave for Plaintiff to amend his complaint with regard to all claims except the standalone claim for declaratory judgment. Dkt. 59.

While discovery was stayed during the pendency of the original motion to dismiss (Dkt. 38), Plaintiffs engaged in a substantial factual investigation and after the dismissal in limited discovery, uncovering evidence that strongly supported their (previously secondary) price-fixing claims under § 1 of the Sherman Act, the Cartwright Act, and California's Unfair Competition Law ("UCL"). Gross Dec., ¶¶ 5-7. Dkt. 61. Plaintiffs also identified an additional 29 buyers involved in the price fixing (including Caito Inc.) who were added as defendants in the First Amended Complaint (the "FAC"), and the identities of certain other buyers who were involved,

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

potentially unwillingly, in cartel conduct, who were added as unnamed co-conspirators (including Fisherman's Choice). *Id.*, ¶ 7; Dkt. 78. Robin Burns joined as a plaintiff in the FAC. *Id.*, ¶ 8.

On November 1, 2024, an Omnibus Motion to Dismiss was filed on behalf of all Defendants (Dkt. 189). Five Defendants additionally filed separate motions. Dkt. 199-201, 205, 206. The Court rejected Defendants' Omnibus Motion to Dismiss on January 17, 2025, finding that Plaintiffs had adequately alleged the existence of a price-fixing conspiracy, but granted motions to dismiss as to the participation of three Defendants in the conspiracy. Dkt. 242. On February 7, 2025, Plaintiffs filed their Second Amended Complaint ("SAC"), in which additional allegations were made to support their claims against one of the dismissed Defendants (Dkt. 255), whose subsequent motion to dismiss the SAC (Dkt. 288) was denied on May 20, 2025. Dkt. 339.

Plaintiffs thereafter performed extensive written discovery of Defendants and third parties, determined that Pacific Dream and two other buyers should be added as defendants, and moved for leave to add claims against them (Dkt. 377), which the Court granted (Dkt. 389). Gross Dec., ¶¶ 11-12.  Before Plaintiffs filed their Third Amended Complaint ("TAC"), however, Pacific Dream requested that the parties explore settlement with the assistance of the Honorable Judge Joseph C. Spero, and the Court entered a stipulated order that gave Plaintiffs leave to omit Pacific Dream as a defendant in the TAC while pursuing settlement negotiations, with the right to add Pacific Dream later if they were unsuccessful. Dkt. 403.

Accordingly, on September 2, 2025, Plaintiffs filed their TAC (Dkt. 394), and, on December 10, 2025, after initial negotiation efforts with Pacific Dream did not result in a fully executed agreement, Plaintiffs filed their Fourth Amended Complaint, adding it as a Defendant (Dkt. 529). Finally, on February 3, 2026, in advance of the deadline to add new parties and claims, Plaintiffs filed their Fifth Amended Complaint ("5AC"), which (1) added Cherry Fisheries, Inc., as a plaintiff, (2) added the Caito Siblings as Defendants, (3) added fraudulent transfer claims against the Caito Inc. Defendants, (4) added an Oregon-specific class, and (5) added claims on behalf of that class under the Oregon Antitrust Law and the Oregon Unlawful Trade Practices Act. Dkt. 596. In short, the successive amendments reflect Plaintiffs' continuing

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

4

investigation and discovery-driven expansion of the case to add newly identified participants, claims, and class representatives, not a narrowing of the case after pleading defeats or losses.

### C.    Discovery and Factual Investigations to Date

While there is still a large amount of fact discovery to conduct, Plaintiffs have engaged in significant discovery to date. Defendants have produced a significant volume of documents and communications, and Plaintiffs continue to negotiate with Defendants on a daily basis with regard to additional production of relevant documents, data, and communications.[1] Gross Dec., ¶¶ 15-20. Plaintiffs have also conducted extensive third-party discovery, including, without limitation: discovery of records from the Departments of Fish and Wildlife for California, Oregon, and Washington, which have provided records of every ex vessel purchase of Dungeness crab in those states going back to 1999; discovery from cell phone carriers of records of text messages and phone calls for phone numbers associated with Defendants and their agents, which have provided Plaintiffs with a corpus of records showing vast numbers of calls and texts between Defendants; and discovery of third-parties involved in the Dungeness crab industry, such as other buyers and industry organizations. Gross Dec., ¶ 21. In addition, Plaintiffs have engaged in an extensive factual investigation, including discussions with potential witnesses and analysis of data about the Dungeness crab fishery and ex vessel sales of Dungeness crab. Gross Dec., ¶ 22. As a result of these efforts and with the assistance from experts, who Plaintiffs engaged before filing the original complaint, Plaintiffs have been able to develop a solid preliminary understanding of the operation of, and membership in, the price fixing conspiracy; the scale of the commerce affected by the conspiracy and each Defendant's share thereof; and the conspiracy's impacts on the ex vessel prices that the First Round Settlement Class received for Dungeness crab during the First Round Settlement Class Period. Gross Dec., ¶ 23.

### D.    Summary of Negotiations with Settling Buyers

**Pacific Dream.** On August 29, 2025, Plaintiffs and Pacific Dream filed a stipulation for referral to a settlement conference (Dkt. 388), which was ultimately held in person before the

---

[1] Additional information about these discovery efforts and the fruits thereof are included in the Gross Dec., ¶¶ 15-24.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Honorable Judge Joseph C. Spero on October 30, 2025. Dkt. 469. Pursuant to orders from Judge Spero, the parties exchanged demands and provided statements to Judge Spero ahead of this conference. Gross Dec., ¶ 45. After comprehensive negotiations facilitated by Judge Spero, Plaintiffs and Pacific Dream reached an agreement to settle all of Plaintiffs' claims against Pacific Dream. *Id.*, ¶ 46. However, after Plaintiffs provided Pacific Dream with a draft settlement agreement, Pacific Dream purported to rescind the agreement on November 24, 2025. *Id.*, ¶ 47-48. After unsuccessful informal negotiations, the parties attended a further settlement conference before Judge Spero by videoconference on December 16, 2025, at which time the parties reached an agreement that was then read into the record. *Id.*, ¶ 49. Subsequently, after months of back-and-forth about the details of the agreement, which included multiple videoconferences between counsel to discuss the language of the Settlement Agreement, Plaintiffs and Pacific Dream executed the final version on June 5, 2026. Gross Dec., ¶¶ 50-51, Ex. A.

**The Caitos.** On October 1, 2025, Plaintiffs and Caito Inc. filed a stipulation for referral to a settlement conference. Dkt. 429. As with Pacific Dream, the parties exchanged settlement proposals and provided statements to Judge Spero ahead of the in-person conference before Judge Spero on January 15, 2026. Gross Dec., ¶ 53. With Judge Spero's assistance, Plaintiffs and the Caitos reached an agreement in principle at this conference, which was fleshed out by counsel in the subsequent weeks and placed on the record by Judge Spero via videoconference on January 27, 2026. *Id.*, ¶ 55. After exchanging edits and drafts—and after several rounds of video calls between counsel to finalize the details of the agreement—this agreement was ultimately signed by both parties on April 23, 2026. *Id.*, ¶¶ 56-57, Ex. B.

**Fisherman's Choice.** At about the same time settlement negotiations were initiated with Pacific Dream and the Caitos, Plaintiffs began speaking with certain smaller non-party buyers regarding potential settlement, including Fisherman's Choice and its owner Gerard Wetle, Jr. Gross Dec., ¶ 58. Fisherman's Choice and Mr. Wetle were represented by counsel, and negotiations lasted for several months, spanning numerous phone and video calls. Gross Dec., ¶ 59. Ultimately, on January 28, 2026, Plaintiffs and non-party Fisherman's Choice signed a settlement agreement. *Id.*, ¶¶ 60-61, Ex. C.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

### E.    Summary of Settlement Terms

#### 1.    The First Round Settlement Class

All three settlements seek certification of a First Round Settlement Class consisting of:

> "All persons who, during the First Round Settlement Class Period, made ex vessel sales of Dungeness crab caught off the coast of, or landed in, California, Oregon, and/or coastal Washington (not including Puget Sound), on their own behalf. Excluded from the First Round Settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, or co-conspirators; the court, court staff, defense counsel, all respective immediate family members of these excluded entities, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities."

*See*, *e.g.,* Pacific Dream Settlement Agreement at 3, Gross Dec., Ex. A. This is, in substance, the same class definition set forth in the operative complaint. *See* 5AC, Dkt. 596.[2]

### F.    The Settling Buyers

**Pacific Dream** is a buyer and distributor located in Washington that purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness crab. Gross Dec., ¶ 25; Dkt. 596. Pacific Dream purchased approximately 10,838,044 pounds of crab between the 2015/2016 season and the 2024/2025 season, paying approximately $47,160,467. Gross Dec., ¶ 26. By pounds, Pacific Dream's purchases represented approximately 2.3% of the Dungeness crab market in the Pacific Northwest Area during that time. *Id*., ¶ 27.

**Caito Inc.** was a buyer and distributor, located in California, that purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness crab. Gross Dec., ¶ 29; 5AC, Dkt. 596. On July 28, 2023, Caito Inc. sold its assets to Defendant Southwind Foods, LLC (collectively with Caito Fisheries, LLC, "Southwind"), and ceased operations, though certain of the Caito Siblings who formerly worked for Caito, Inc., proceeded to work for Southwind. Gross Dec., ¶ 30. Before the sale to Southwind, Caito purchased a total of

Gross Klein PC
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

---

[2] The only difference between the proposed First Round Settlement Class and the class going forward is that the relevant time period for the First Round Settlement Class will end at Final Approval of the First Round Settlements, while the period has not yet been defined for the class going forward. Gross Dec., ¶ 64.

11,066,883 pounds of crab between the 2015-2016 season and the 2022-2023 season, which represented approximately 2.9% of the market during that timeframe. *Id.*, ¶ 34. Caito Inc. paid approximately $34,250,797 for this crab. *Id.* ¶ 35. In addition to Caito Inc., Plaintiffs have also agreed to settle with its former owners, the Caito Siblings. *Id.*, ¶ 54.

**Fisherman's Choice LLC** is a buyer and distributor located in California that purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness crab. Dkt. 596; Gross Dec., ¶ 36. Fisherman's Choice is a relatively small buyer, purchasing 654,815 pounds of Dungeness crab during the First Round Settlement Class Period, which represented approximately 0.14% of the market during that timeframe and for which it paid approximately $2,951,568. *Id.*, ¶ 37.

### 1.    Settlement Amounts and Additional Consideration

**Pacific Dream** agreed to pay $1 million within 72 hours of the Court's granting the Final Approval Motion to resolve the claims of the First Round Settlement Class. Gross Dec., ¶ 59, Ex. A, p. 9. This payment is non-reversionary, and would only be returned to Pacific Dream in the event that the agreement was rescinded for one of the reasons specified in the agreement (in particular, if the approval is set aside on appeal or if the Court does not enter a final judgment with regard to Pacific Dream). *Id.* at p. 16. As additional consideration, Pacific Dream has agreed to provide text messages between Pacific Dream's principals, Jerod Goodin and Jonathan Mark, and other Defendants from the beginning of the First Round Settlement Class Period to the date of production. *Id.* at p. 15. It has also agreed that it will not object to Plaintiffs' deposition of both Jerod Goodin and Jonathan Mark, Pacific Dream's owners. *Id.* at p. 16. This discovery will assist in the development of the case against the other Defendants and would have been difficult to attain had Pacific Dream remained a Washington-based non-party to the litigation.

**The Caitos** have agreed to pay $1.25 million within 30 days of the Court's granting the Final Approval Motion to resolve the claims of the First Round Settlement Class. This payment is non-reversionary, and would only be returned to the Caitos in the event that the agreement was rescinded for one of the reasons specified therein. Gross Dec., ¶ 57, Ex. B, p. 15.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

**Fisherman's Choice** has agreed to cooperate with Plaintiffs by conferring with Settlement Class Counsel about persons, events, documents, and practices relevant to this Action; assisting Settlement Class Counsel with preparation for taking the testimony of other parties; and discussing the Dungeness crab fishing industry and related issues with Settlement Class Counsel. Gross Dec., ¶ 61, Ex. C, pp. 11-13. Fisherman's Choice has also agreed to provide any documents reasonably requested by Plaintiffs, in the format requested by Plaintiffs (i.e., with all electronically stored information associated with such documents), and has committed to providing honest testimony at trial and to authenticating any applicable documents. *Id.[3]*

### 2.      Attorneys' Fees and Expenses

The settlement agreements provide that Settlement Class Counsel (defined below) may seek an award of attorneys' fees and costs from the First Round Settlement proceeds. Gross Dec., ¶ 83. However, Settlement Class Counsel does not seek an award of attorneys' fees from the proceeds, but rather that the Court allow them to be deposited into a Qualified Settlement Fund from which Plaintiffs will seek, with Court approval, reimbursement of out-of-pocket litigation expenses (including expert fees) from time to time. *Id.*, ¶¶ 84-85.

### 3.      Release of All Claims

In exchange for the above-described consideration, upon entry of a final judgment approving the First Round Settlements, Plaintiffs and the First Round Settlement Class will release the Settling Buyers, as well as their owners, employees, and related companies, of all claims that were or could have been asserted against the Settling Buyers in this litigation, whether known or unknown. Gross Dec., ¶ 86. Additionally, as part of the settlement with the Caitos, Plaintiffs have agreed to release Southwind from liability for claims that could have been asserted against Southwind on a theory of successor liability or on the basis of the operation of Caito Inc. before Southwind's purchase of Caito Inc., and have agreed not to sue or seek recovery from

---

[3] Other than the agreements described above and agreements necessary to implement Court-approved notice, settlement administration, and escrow/QSF administration, there are no other agreements made in connection with the First Round Settlements that are required to be identified under Rule 23(e)(3). Gross Dec., ¶ 62.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Southwind for such claims, while preserving all other claims against Southwind. *Id.*, ¶ 87.

### III.    Legal Standard and Process for Preliminary Approval of a Class Settlement

Rule 23(e) provides that a class action shall not be dismissed or settled without the approval of the court, and that notice of the proposed settlement shall be provided in a reasonable manner to all class members who would be bound. Fed. R. Civ. P. 23(e)(l). The primary concern of this subsection is to ensure that the rights of the class members have been given due regard by the negotiating parties. *Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir. 1982). The preliminary approval stage is "an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted).

By its very nature, settlement results from compromise, "a yielding of absolutes and an abandoning of highest hopes." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (quotation omitted); *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980). Courts have recognized that settlement is favored in class action cases, which are particularly complex to litigate and therefore quite expensive. "[T]here is an overriding public interest in settling and quieting litigation ... particularly ... in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citations omitted).

The settlement approval process set forth in Rule 23(e) involves three steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the proposed settlement to all class members; and (3) a formal fairness hearing, during which class members may be heard regarding the proposed settlement, and at which time counsel may introduce evidence and present argument concerning the settlement's fairness, adequacy, and reasonableness. *See, e.g., Nat'l Rural Telecomms.*, 221 F.R.D. at 525 (citing Manual for Complex Litigation, Third, § 30.41, at 236- 37 (1995)). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as guardian of class interests.

At preliminary approval, the key questions are whether the Court will likely be able to: (1) approve the First Round Settlements under Rule 23(e)(2); and (2) certify the First Round Settlement Class for purposes of judgment under Rule 23(e)(1)(B). Fed. R. Civ. P. 23(e)(1)(B). This requires the Court to consider whether the settlement:

> is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The purpose of the "fairness" inquiry is to protect against collusion among the parties and ensure that the settlement was reached through arm's length negotiating. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245,259 (N.D. Cal. 2015) ("fairness factors" consider whether "the settlement is fair, adequate and reasonable" and "not the result of collusion"). In pre-class certification settlements, courts must also look for signs that class counsel have allowed "their own self-interests…to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (courts apply the *Bluetooth* factors to "smoke out potential collusion"). These factors include whether (1) class counsel receives a disproportionate distribution of the settlements; (2) the agreements contain a "clear sailing" agreement, where the defendant agrees not to challenge an attorneys' fees request; and (3) the agreements contain a "kicker" or "reverter" which returns unawarded fees to the defendant, rather than the class. *Id.*

## IV.    ARGUMENT

### A.    The Proposed Settlements Should be Preliminarily Approved

#### 1.    The Settlements Are Fair, Reasonable, and Adequate

Plaintiffs and Settlement Class Counsel have adequately represented the class by working tirelessly to advance this litigation and the interests of the First Round Settlement Class for more than three years, defeating multiple motions to dismiss, performing extensive discovery and

Gross Klein PC
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

11

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

investigation, and hiring econometricians, forensic accountants, and other experts who have, *inter alia*, analyzed the data Plaintiffs have gathered to model and quantify the damages resulting from the conspiracy. Gross Dec., *passim*. Also weighing in favor of preliminary approval is Settlement Class Counsel's experience and success in similar class actions. Settlement Class Counsel have worked on many large, complex cases, including antitrust and consumer protection class action cases. Gross Dec., ¶¶ 90-93, Ex. D-F. Thus, Settlement Class Counsel understand well the risks and potential upsides of the litigation. This satisfies the requirements of Rule 23(e)(2)(A).

The settlements are the product of arm's-length negotiations between attorneys who are highly experienced in complex antitrust cases and are well-informed about the facts and legal issues in this case. Gross Dec., ¶ 39. The settlements with Pacific Dream and the Caitos were reached in the context of Settlement Conferences before the Honorable Judge Joseph C. Spero, who was intimately involved in the negotiations, the evaluation of the merits, and the ultimate settlements. *Id.*, ¶ 40. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). These settlements were reached by well-informed parties and with the assistance of the Court, strongly indicating that they are fair and reasonable and satisfying the requirements of Rule 23(e)(2)(B).

The relief provided under the First Round Settlements is more than adequate. For each of the First Round Settlements, Plaintiffs conducted extensive settlement discussions with the Settling Buyers, and, while discovery is ongoing, it is sufficiently advanced with regard to the Settling Buyers and with third parties to evaluate the appropriateness and viability of settlement. *Id*. Settlements are presumptively fair if reached after relevant discovery has taken place. *See Linney v. Cellular Alaska P'ship,* No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), aff'd, 151 F.3d 1234 (9th Cir. 1998). Additionally, the First Round Settlement Agreements only include the Settling Buyers; litigation is continuing against the non-settling Defendants, who "remain jointly and severally liable for the

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

treble damages" for the impacts of the conspiracy. *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1136 (N.D. Cal. 2011). Thus, the First Round Settlements only minimally impact the ultimate liability of the other Defendants, with the settlement amounts only deducted from awarded damages *after trebling*. *See Flintkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957). In sum, the fact that these settlements only relate to a fraction of the Defendants, in a case where Defendants are subject to joint and several liability, means that Plaintiffs do not forfeit a significant amount of the total damages at issue by entering into these settlements. On the other hand, resolving claims against the Settling Buyers will not only permit Plaintiffs to focus their resources on litigating this case against the non-settling Defendants, but, if Plaintiffs' requested use of the settlement proceeds is approved, will increase the resources available to do so.

Further, these settlements were reached early in the litigation. Fisherman's Choice was never named as a Defendant, and Pacific Dream was named as a Defendant only immediately before its settlement agreement was reached. Gross Dec., ¶ 42. This means that these settlements were secured with less relative expense and effort by Plaintiffs than will be the case with subsequent settlements. *Id*. While the settlement with the Caitos involved more litigation, it still came substantially before the close of discovery and before any dispositive motion practice. *Id*. Further, the fact that these early settlements will provide both funds to support the litigation and further information regarding the conspiracy means that Plaintiffs will have a firmer economic and factual foundation as they pursue the case going forward, meaning that the Settlements represent a significant benefit for the First Round Settlement Class.

The recovery for the First Round Settlement Class in the settlements with Pacific Dream and the Caitos exceeds the amounts in other antitrust cases, where courts have approved settlements of 1% or less of a company's U.S. commerce. *See Four In One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFB, 2014 WL 28808, at *9 (E.D. Cal. Jan. 2, 2014) (settlement amounting to 1% of defendants' U.S. sales of tomatoes during the class period "compares favorably with antitrust class action settlements ultimately approved by other courts"); *see also Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F.Supp. 493, 499 (E.D.Pa.1985) (approving antitrust class action settlement that "represented approximately .2% of sales of $240 million during 1979–

82."). The Settlements that include monetary consideration well exceed these thresholds. With regard to Fisherman's Choice, cooperation-only settlement agreements are appropriate in circumstances like these, where the cooperation comes early in the case and where Settlement Class Counsel is not seeking to recover any attorney fees based on the settlement. *See*, *e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 304 (E.D. Pa. 2012) (granting final approval of a cooperation-only settlement).

The First Round Settlements also satisfy all of the *Bluetooth* factors. Because Settlement Class Counsel is not seeking *any* attorneys' fees from the First Round Settlements, Gross Dec., ¶ 84, Settlement Class Counsel will not receive a disproportionate distribution of the settlement, and whether the Settling Defendants will oppose any such request is moot, and the First Round Settlements do not contain reversionary clauses. *Id.*, ¶ 51, Ex. A, p. 16; ¶ 57 Ex B, p 23. Thus, all three of the *Bluetooth* factors weigh in favor of preliminary approval of the pre-certification settlement. Moreover, as discussed below, direct notice will be provided to the vast majority of the First Round Settlement Class. Thus, the requirements of Rule 23(e)(2)(C) are satisfied.

Consistent with Rule 23's instruction that the Court should consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the First Round Settlements do not grant preferential treatment to class representatives or segments of the class because the funds from the First Round Settlements, if and when distributed, will be distributed to Class Members pro rata based on each class member's percentage of the total catch. Gross Dec., ¶ 81. Because "reimburs[ing] class members based on the extent of their injuries is generally reasonable," this factor weighs in favor of preliminary approval. *In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Thus, the requirements of Rule 23(e)(2)(D) are satisfied.

**The Pacific Dream Settlement is fair, reasonable, and adequate.** Pacific Dream was the first Defendant to settle, and it agreed to pay $1 million and to provide certain cooperation. Gross Dec., ¶ 51, Ex A, pp. 9, 15-16. While the negotiations with Pacific Dream were extensive and involved multiple settlement conferences before Judge Spero, they substantially took place *before* it was added to the case as a defendant, meaning that the amount of work that Plaintiffs

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

were required to perform to secure this settlement is significantly lower than it is likely to be for other Defendants. *Id.*, ¶¶ 42, 44-49. This settlement represents approximately 2.12% of Pacific Dream's total ex vessel purchases of Dungeness crab in the Pacific NW Area during the First Round Settlement Class Period, well in excess of other settlements approved by courts in the Ninth Circuit. *Id.*, ¶ 66. This constitutes an excellent recovery for Plaintiffs and the Class.

**The Caitos Settlement is fair, reasonable, and adequate.** The Caitos were the second Defendants to settle with Plaintiffs, agreeing to pay $1.25 million to Plaintiffs in exchange for a release. *Id.*, ¶ 57, Ex. B, p. 15. This equates to 3.65% of Caito Inc.'s ex vessel purchases of Dungeness crab in the Pacific NW Area during the First Round Settlement Class Period. *Id.*, ¶ 70. Apart from the fact that it well exceeds the amounts that have been approved in other cases, this amount represents a solid recovery for Plaintiffs and the Class for several other reasons. The first is that Caito Inc. has ceased operations, and Plaintiffs have reason to believe that the proceeds from the sale of its assets were paid to its owners, the Caito Siblings. *Id.*, ¶¶ 30-31. Given the fact that it has ceased operations and is not generating additional revenue, Caito Inc., does not appear to have assets sufficient to support a large judgment, while the homestead exemption and other factors would likely make it difficult for Plaintiffs to recover significant damages from the Caito Siblings. *Id.* Protracted litigation would further reduce the funds available to satisfy a judgment. While this is true in all cases, it is particularly true here. Because Caito Inc. is not operating and the Caito Siblings are elderly, there is a finite corpus of funds available to satisfy any judgment. *Id.*, ¶ 32. Not only would litigation expenses incurred by the Caitos eat into these funds, but litigation expenses incurred by Southwind would as well. This is because, ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ *Id.*, ¶ 33. Given this obligation, if Plaintiffs had pursued successor liability claims against Southwind (which will be released as part of the First Round Settlements), Southwind would almost certainly seek indemnification from the Caitos for any adjudicated successor liability as well as related litigation expenses, which would likely wipe out any funds otherwise available to pay damages to Plaintiffs and the class. Thus, to maximize the recovery available to the First Round Settlement Class,

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Plaintiffs agreed to release Southwind and related company Caito Fisheries, LLC for conduct related to Caito Fisheries, Inc.'s actions before the transaction.[4] *Id.*, ¶ 72. Accordingly, this settlement is fair, reasonable, and adequate and offers a solid recovery for Plaintiffs and the Class.

**The Fisherman's Choice Settlement is fair, reasonable, and adequate.** Fisherman's Choice was the first party to settle. *Id.* The terms of its agreement require Fisherman's Choice to provide significant assistance to Plaintiffs and Settlement Class Counsel in pursuing this case, including documentary, testimonial, and informational support. *Id.* As discussed previously, Fisherman's Choice is repeatedly referred to in the Complaint as Unnamed Co-Conspirator #2, indicating that Fisherman's Choice will have valuable information about the workings of the conspiracy. *Id.* Thus, these terms constitute valuable consideration here, particularly at the early stages of litigation, with no preceding government investigation or indictment. *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. at 303. Moreover, given Fisherman's Choice's limited market share (and thus revenue), Plaintiffs and the First Round Settlement Class are unlikely to be able to obtain significant monetary compensation from Fisherman's Choice, even if Plaintiffs were to fully prevail at trial. *Id.*, ¶ 37. Accordingly, this settlement is fair, reasonable, and adequate and offers an excellent value for Plaintiffs and the First Round Settlement Class.

### B.    The Threshold Requirements for Certification of a First Round Settlement Class Are Met

The Court will "likely be able to…certify the class" as required by Fed. R. Civ. P. 23(e)(1)(B)-(B)(ii). The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality and adequacy. *Id.* ("(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

<div class="margin">GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111</div>

---

[4] Nothing in the Caito Settlement restricts in any way Plaintiffs' continued pursuit of their claims against Southwind for damages arising from the entire duration of the conspiracy on the basis that it knowingly joined the conspiracy, including, without limitation, such claims based on knowledge imputed from former employees and/or principals who continued to work for the business post-acquisition, *see Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970), or arising from Southwind's post-acquisition conduct. Thus, Settlement Class Counsel believes that the limited release of Southwind in the Caito Settlement will not ultimately materially decrease the amount that Plaintiffs or the class will ultimately receive from Southwind at trial or in settlement. Gross Dec., ¶ 88.

defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."). Certification of a class action for damages also requires predominance and superiority, which are showings that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). There is a "strong presumption in favor of voluntary settlement agreements," that is "especially strong in class actions and other complex cases…because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011).

### 1.   Numerosity, Commonality, Typicality, and Adequacy are Shown Here

The Numerosity requirement is met here because the First Round Settlement Class is so numerous that joinder of all members is impracticable. There are approximately 3,000 members of the First Round Settlement Class spread over three states. Declaration of Julie Meichsner in Support of Plaintiffs' Preliminary Approval Motion ("Simpluris Dec."), ¶ 12.

The Commonality requirement is met here because there are questions of law and fact common to the Class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (to satisfy commonality, class members' claims must depend upon a common contention that "is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). For the purposes of Rule 23(a)2, "even a single common question will do." *Id*. at 359. There are numerous factual and legal issues common to the Class, including whether the Defendants coordinated to fix or stabilize the price of ex vessel Dungeness crab in violation of Section 1 of the Sherman Act, the Cartwright Act, and the Oregon Antitrust Act, and if so whether Plaintiffs and the Class sold Dungeness crab ex vessel at a price that was artificially deflated due to this conduct. In antitrust cases, commonality is satisfied where there are "questions of law and fact common to the Class, including whether the Defendants engaged in a price-fixing conspiracy that injured Plaintiffs." *In*

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

*re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 1873554, at *5 (N.D. Cal. Mar. 11, 2020). Indeed, "[w]here an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) (quotation marks and citation omitted). As a result, courts routinely certify antitrust class actions brought on behalf of sellers of a commodity who have been impacted by a conspiracy to artificially deflate prices. *See DeLoach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 554–55 (M.D.N.C. 2002) (certifying class in a case against buyers by tobacco growers and quota holders); *D&M Farms v. Birdsong Corp.*, No. 2:19-CV-463, 2020 WL 7074140, at *1 (E.D. Va. Dec. 2, 2020) (certifying class of peanut farmers against buyers); *see also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 591 (3d Cir. 1999) (upholding approval of settlement on behalf of a class of oil producers and investors).

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled on other grounds by Dukes*, 564 U.S. at 347–48. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Typicality is met because Plaintiffs share with the First Round Settlement Class Members the same alleged injuries arising from the same alleged conduct: the ex vessel sale of Dungeness crab at prices suppressed by the conspiracy. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.") (citations and internal quotation marks omitted); Gross Dec., ¶ 108.

The requirement of adequacy is met because Plaintiffs and Settlement Class Counsel have shown that they will adequately protect the interests of the class. *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *10 (N.D. Cal. Apr. 3, 2009). Neither Plaintiffs nor Settlement Class Counsel have any conflicts of interest with class members, and Plaintiffs and Settlement

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

18

Class Counsel have dutifully and vigorously performed their obligations as class representatives to date and will continue to do so in the future. *See Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *10 (N.D. Cal. Apr. 3, 2009) (the adequacy standard is met if "(l) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class"). Here, all of the Plaintiffs (or, in the case of Robin Burns, her deceased husband) caught and sold Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period, and thus will be members of the First Round Settlement Class, and Settlement Class Counsel has and will continue to vigorously pursue the best interests of both the First Round Settlement Class and any subsequent classes. Gross Dec., ¶¶ 108-110. Thus, Plaintiffs have met the requirements of Rule 23(a).

### 2.   Predominance and Superiority are Shown Here

Common questions of law and fact predominate. Plaintiffs allege a price-fixing conspiracy. *Giuliano v. Sandisk Corporation*, No. C 10-02787 RS, 2015 WL 10890654 (N.D. Cal., May 14, 2015) at *17 ("The question of whether there has been an antitrust violation is a common issue rather than an individual one. In no event will the individual circumstances of particular class members be relevant to the inquiry of whether such a violation has occurred."); *see also In re Bulk [Extruded] Graphite Prod. Antitrust Litig.*, No. Civ. 02–6030 WHW, 2006 WL 891362 at *9 ("whether a conspiracy exists is a common question that is thought to predominate over other issues in the case and has the effect of satisfying the first prerequisite of FRCP 23(b)(3)."). Plaintiffs allege anticompetitive conduct—including a conspiracy amongst buyers to fix the ex vessel price for Dungeness crab, as well as punishment of non-compliant buyers and crabbers—that is amply supported by common evidence to date. Gross Dec., ¶ 24. There is no reason that individual questions would overwhelm the analysis. That is all that is needed at this stage. In the settlement context, the "district court need not envision the form that a trial would take, nor consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial." *Sullivan*, 667 F.3d at

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

305-306.

The requirement of superiority is established as well. This class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3). Non-exclusive factors include: "[1] the class members' interests in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already begun by or against class members; [3] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [4] the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). A class action is the superior method for managing litigation where common issues will reduce litigation costs and promote greater efficiency, and where no realistic alternative to class resolution exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Given the complexity of the case—concerning over three dozen individual defendants and a conspiracy spanning over a decade—the first and third factors favor class adjudication. There is little incentive to generate the costly and time-consuming expert evidence needed to assert the claims at issue here in an individual action or in different courts. The second factor favors class adjudication because the litigation regarding the claims is already concentrated in this action. The fourth factor, 23(b)(3)(D), is not at issue because, if the settlements are finally approved, there will be no trial as to these Defendants, thus simplifying the litigation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class adjudication of this matter is more efficient and manageable than the alternative, which would be thousands of individual lawsuits in three different states. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism, and separate adjudication of claims creates a risk of inconsistent rulings, further favoring class treatment. Thus, a class action is the superior method of adjudicating the claims raised in this case, and Plaintiffs meet the requirements of Rule 23(b).

C.     **The Court Should Appoint Stuart Gross, Matthew Ruan, and Matthew Weiler as Settlement Class Counsel**

Fed. R. Civ. P. 23(c)(l)(B) states that "[a]n order that certifies a class action ... must

Gross Klein PC
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (A) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources counsel will commit to representing the class."

Stuart Gross seeks to be appointed Lead Counsel, and Matthew Ruan and Matthew Weiler seek to be appointed as members of the Executive Committee (together, "Settlement Class Counsel"). All three of these attorneys have led the prosecution of this litigation on behalf of the First Round Settlement Class and have coordinated efforts with respect to the negotiations that led to the First Round Settlements. Gross Dec., ¶¶ 94-96. Stuart Gross has spent an extensive amount of time and resources to investigate and develop this case, with the assistance of Messrs. Ruan and Weiler, who began working on the case in 2023 and 2024, respectively. *Id.*, ¶ 96. As shown from their respective resumes, these attorneys meet the criteria of Rule 23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 MBM, 1992 WL 321632, at *5 (S.D.N.Y. 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants."). The Court is well aware of the work performed to date, the efficiency with which the case has been prosecuted, and the significant progress of the litigation, all of which support the appointment of Messrs. Gross, Ruan, and Weiler as Settlement Class Counsel. *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). Messrs. Gross, Ruan, and Weiler remain willing and able to vigorously prosecute this Action and to devote all necessary resources of their respective firms to obtain the best possible result. Gross Dec., ¶ 94.

## V.     THE USE OF SETTLEMENT FUNDS

Settlement Class Counsel proposes that the funds from the First Round Settlements be put into an interest-bearing Qualified Settlement Fund (the "First Round Settlement Fund"), held and administered by an escrow agent selected by Settlement Class Counsel with the approval of the Court. Settlement Class Counsel recommends that Esquire Bank be appointed the Escrow Agent.

Settlement Class Counsel further proposes that the distribution of the First Round Settlement Fund to Class Members be deferred. This is common practice in complex cases with

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT

21

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

partial settlements. Manual for Complex Litigation, Fourth § 21.651 (2025). Piecemeal distributions are expensive, time-consuming, and have the potential to confuse class members. At the present juncture, Settlement Class Counsel seek the Court's permission to use the First Round Settlement Fund to reimburse Settlement Class Counsel for litigation expenses and notice administration costs and propose to move the Court for disbursements for these purposes from time to time. This process is consistent with approved requests made at analogous junctures in many other large, complex class actions involving multiple defendants. *See, e.g., In re Xyrem (Sodium Oxybate) Antitrust Litig.,* No. 20-MD-02966-RS, 2024 WL 1683640, at *5 (N.D. Cal. Apr. 17, 2024) (granting final approval of a settlement "which will be used to pay costs and expenses incurred in the ongoing litigation against the Remaining Defendants"); *In re California Bail Bonds Antitrust Litigation*, No. 4:19-cv-00717, Dkt. 512 (N.D. Cal. Dec. 11, 2024) (granting preliminary approval of settlements with smaller defendants, deferring payments to the class, and authorizing payments of administration expenses from the settlements); *In re Capacitors Antitrust Litigation*, No. 3:14-cv-03264; Dkt. 1455 (N.D. Cal. Jan. 27, 2017) (granting preliminary approval for certain defendants and authorizing payment of notice expenses from settlements).

Plaintiffs expect that there will be further settlements with other Defendants in the future that will entail distributions to First Round Settlement Class Members, among others. Should funds from the First Round Settlements remain in the First Round Settlement Fund at the termination of this litigation, those funds will be distributed to the First Round Settlement Class pro rata along with other settlement proceeds, if applicable, or donated to an appropriate *cy pres* recipient, with Court approval, if distribution to class members would be economically unreasonable. Gross Dec., ¶ 81. In the meantime, the residual amount in the First Round Settlement Fund after any disbursements will earn interest and remain for the benefit of the First Round Settlement Class. No portion of the First Round Settlement Fund will be distributed absent an order of this Court, nor will it be used for incentive payments to Plaintiffs. Gross Dec., ¶ 80.

## VI.    NOTICE AND SETTLEMENT ADMINISTRATION

### A.    The Proposed Notice Plan Should be Approved

Plaintiffs request that the Court approve the Long-Form and Short-Form Notices (the

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

"Notices") and the Intent to Participate Form for transmission to the First Round Settlement Class, as well as the proposal for their dissemination. Should the Court grant preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Notice of a proposed settlement must inform class members of: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See* Settlement notice manner and method, 3 Newberg and Rubenstein on Class Actions § 8:15 (6th ed.) ("Newberg"). The form of notice is adequate if "busy, lay class members can easily apprehend its meaning." Newberg, § 8.17. Notice to the class must be "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc.*, 521 U.S. at 617.

The proposed notice plan exceeds these standards. In plain language, the Long Form Notice provides a brief explanation of the case, the terms of the proposed Settlement, the plan for distribution of the First Round Settlement Fund, the date, time, and place of the final approval hearing, the opportunity to opt out of the First Round Settlement Class, and the procedures for First Round Settlement Class Members to follow in submitting comments on and objections to the First Round Settlements and in arranging to appear at the settlement hearing to state any objections. Gross Dec., ¶ 97, Ex. G. The Short Form Notice provides a condensed summary of the same along with the settlement website address. *Id.*, ¶ 98, Ex. H. The Short-Form notice will be sent via US Mail to all of the holders of Dungeness crab permits or licenses for whom Plaintiffs have a physical address, as well as all of the fishers listed on fishing records for Dungeness crab landings in California and Oregon for the First Round Settlement Class Period. *Id.*, ¶ 101. Simpluris Dec., ¶¶ 15-18. The Long-Form Notice will also be emailed to all license/permit holders and all individuals listed on landing records for whom Plaintiffs have email addresses, and sent via a link in a text message to all of the foregoing individuals for whom Plaintiffs have phone numbers. *Id.*, ¶¶ 19-22. Thus, the vast majority of the identified individuals—which will almost certainly be over-representative of the First Round Settlement Class—will receive the

notice both by mail and electronically. Plaintiffs will also publish a link to the settlement website in the Commercial Salmon, Albacore, and Crab Fishers Facebook group, which has more than 22,000 members and of which many First Round Settlement Class Members are participants, and undertake a media notice strategy aimed at crabbers. *Id.*, ¶¶ 23-27; Gross Dec., ¶ 104. Plaintiffs also propose to provide the Long-Form Notice and Intent to Participate Form, which allows Class Members to indicate whether they would like to participate in or receive information about future settlements, on the website or, upon request, in paper. *Id.*, ¶ 100.

### B.    Selection of the Settlement Administrator

Plaintiffs requested bids from three different Settlement Administrators. Gross Dec., ¶¶ 105-106. After reviewing these bids, Plaintiffs selected Simpluris as the administrator based on 1) the fact that their bid was the most economical and 2) Simpluris' reputation of excellent performance with regard to settlement administration. *Id*. Simpluris estimates that the cost for administering the First Round Settlement Notice will be $35,438.00. Simpluris Dec., ¶ 10.

### VII.    PROPOSED PLAN OF ALLOCATION

Plaintiffs do not propose to distribute funds from the Settlements at this time. However, should such distribution ultimately occur, such distribution would be on the same basis as Plaintiffs intend to distribute funds from future settlements or verdict(s): on a pro rata basis based on the volume of Dungeness crab sold ex vessel by each class member in the Pacific NW Area during the First Round Settlement Class Period as a percentage of the total volume in pounds of Dungeness crab landed by participating class members in the same area and time period. A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements. Distribution on a pro rata basis, with no class member being favored over others, has consistently been deemed fair, adequate, and reasonable. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. 2093, at 2 (Oct. 27, 2010); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## VIII.   CAFA COMPLIANCE

Because the amount in controversy in this Action exceeds $5 million, the notice provisions of the Class Action Fairness Act require that notice of the First Round Settlements be given to appropriate federal and state regulators. 28 U.S.C. § 1715. Under the First Round Settlement Agreements, the Settling Buyers are to provide this notice. Gross Dec., ¶ 111.

## IX.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Should the Court grant preliminary approval, Plaintiffs request that the Court set the following schedule:

| EVENT | SCHEDULE |
|---|---|
| Notice of Class Action Settlement to be Mailed and Posted on Internet | Within 30 Days of Preliminary Approval Order |
| Receipt/Filing Deadline for Comments, Objections, Notices of Intent to Participate, and Opt-Outs | Within 90 Days of Preliminary Approval Order |
| Motions for Final Approval | To be Filed 75 Days After Preliminary Approval Order |
| Opposition(s), if any, to Motion for Final Approval | To be Filed 20 Days Prior to Final Approval Hearing |
| Replies in Support of Motion for Final Approval, to be Filed Only in the Event that Objections to the Motion are Filed | To be Filed 10 Days Prior to Final Approval Hearing |
| Service/Filing of Notices of Appearance at Final Hearing | 10 Days Prior to Final Approval Hearing |
| Deadline to File Notice Report | 10 Days Prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2026 (to be Scheduled by the Court) |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the First Round Settlement Agreements; certify the First Round Settlement Class; approve the proposed notice plan; set a schedule for the notice, as well as deadlines to comment on or object to the settlements; designate Stuart G. Gross, Matthew Ruan, and Matthew Weiler as Settlement Class Counsel; and schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed First Round Settlement Agreements are fair, reasonable, and adequate and should be finally approved.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Dated: June 22, 2026                    Respectfully submitted,


By:                                     */s/*
                                        Stuart G. Gross (SBN 251019)
                                        Jan W. A. Jorritsma (SBN 326772)
                                        Travis H.A. Smith (SBN 331305)
                                        **GROSS KLEIN PC**
                                        The Embarcadero
                                        Pier 9, Suite 100
                                        San Francisco, CA 94111
                                        (415) 671-4628
                                        *sgross@grosskleinlaw.com*
                                        *tsmith@grosskleinlaw.com*
                                        *rmiddlemiss@grosskleinlaw.com*

                                        Matthew W. Ruan (SBN 264409)
                                        *Samantha Gupta (admitted pro hac vice)*
                                        **JUSTICE JAGHER LONDON & MILLEN
                                        LLC**
                                        100 Tri-State International, Suite 128
                                        Lincolnshire, IL 60069
                                        (224) 632-4500
                                        *mruan@fklmlaw.com*
                                        *sgupta@fklmlaw.com*

                                        Matthew S. Weiler (SBN 236052)
                                        Raymond S. Levine (SBN 348030)
                                        **SCHNEIDER WALLACE COTTRELL
                                        KONECKY, LLP**
                                        2000 Powell Street, Suite 1400
                                        Emeryville, CA 94608
                                        (415) 421-7100
                                        mweiler@schneiderwallace.com
                                        *rlevine@schneiderwallace.com*


                                        *Counsel for Plaintiffs and the Proposed Classes*

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS
PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE 26
CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.; Case No. 3:23-cv-01098-AGT