Stuart G. Gross (SBN 251019)
Ross A. Middlemiss (SBN 323737)
Travis H.A. Smith (SBN 331305)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628

*Attorneys for Plaintiffs and the Proposed Classes*
[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **BRAND LITTLE, ROBIN BURNS,** and **CHERRY FISHERIES INC.**, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC; PACIFIC SEAFOOD – WESTPORT, LLC; PACIFIC SURIMI – NEWPORT LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY, INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES, INC.; CAITO FISHERIES, INC.; CAITO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING** | Case No. 3:23-cv-01098-AGT <br><br> **DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.** <br><br> Date:       July 31, 2026 <br> Time:      10:00 a.m. <br> Judge:    Honorable Alex G. Tse <br> Courtroom: A, 15th Floor <br><br> Redacted Copy of Document Filed Under Seal |

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.  Case No. 3:23-cv-01098-AGT

**FISH INC.; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; DA YANG SEAFOOD INC.; GREAT OCEAN SEAFOOD INC.; PACIFIC DREAM SEAFOOD, INC.; JOHN CAITO; JOSEPH CAITO; JAMES CAITO; JEANETTE CAITO; and DOES 37-60,**

Defendants.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS PACIFIC DREAM SEAFOOD, CAITO FISHERIES, INC., JOHN CAITO, JAMES CAITO, JOSEPH CAITO, AND JEANETTE CAITO AND NON-PARTIES FISHERMAN'S CHOICE AND GERARD WETLE, JR.  Case No. 3:23-cv-01098-AGT

I, Stuart G. Gross, declare as follows:

1.    I am a principal at Gross Klein PC and counsel for Plaintiffs. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with Defendants Pacific Dream Seafood, Caito Fisheries, Inc., John Caito, James Caito, Joseph Caito, and Jeanette Caito and non-parties Fisherman's Choice and Gerard Wetle Jr. If called as a witness, I could and would truthfully testify to the following based on my personal knowledge and upon my review of the documents and other materials related to this Action.

## PROCEDURAL HISTORY

2.    Plaintiff Brand Little filed the initial Complaint in this matter on March 13, 2023 naming six Pacific Seafood entities as Defendants (the "Pacific Seafood Defendants"). Dkt. 1. This Complaint focused on claims for monopsonization and attempted monopsonization under § 2 of the Sherman Act, but also alleged other claims including price-fixing by the Pacific Seafood Defendants with other buyers.

3.    Prior to filing this Complaint, Settlement Class Counsel (defined below) retained the services of econometrics experts to assist them in the analysis of evidence related to the alleged conspiracy and the impact thereof.

4.    On June 23, 2023, the Court stayed discovery pending a ruling on the Motion to Dismiss. Dkt. 38.

5.    While discovery was stayed, Settlement Class Counsel engaged in independent fact investigation, including interviews from various informants and document collections therefrom.

6.    The Court ultimately granted the Pacific Seafood Defendants' first Motion to Dismiss. Dkt. 59. At the same time, it also permitted Plaintiff Brand Little to conduct limited discovery into matters relevant to the pleading deficiencies in the original complaint.

7.    Through that investigation and discovery, we uncovered evidence that strongly supported their (previously secondary) price-fixing claims under § 1 of the Sherman Act, the Cartwright Act, and California's Unfair Competition Law. This included evidence that demonstrated frequent and widespread price-fixing among buyers with regard to the ex vessel

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

1

prices they were paying and intended to pay for Dungeness crab in California, Oregon, and coastal Washington (not including Puget Sound) (collectively, the "Pacific Northwest Area") and efforts by them to ensure that other buyers did not pay higher ex vessel prices. This investigation and discovery also revealed the identities of an additional 29 buyers involved in the price fixing, who were added as defendants—including Caito Inc.—and the identities of certain other buyers who were involved in cartel conduct, who were added to the allegations in the complaint and referred to as unnamed co-conspirators—including Fisherman's Choice.

8. On August 20, 2024 Plaintiff Brand Little, joined now by Plaintiff Robin Burns, filed the First Amended Complaint adding these additional Defendants and focusing on the price-fixing aspect of the conspiracy.

9. On November 1, 2024, an Omnibus Motion to Dismiss was filed on behalf of all Defendants (Dkt. 189), and five Defendants— Ocean King Fish Inc. ("Ocean King"); South Bend Products, LLC and Swanes Seafood Holding Co. (collectively "South Bend Defendants"); and Southwind Foods, LLC and Caito Fisheries, LLC and (collectively, "Southwind")—additionally filed separate motions. Dkt. 199-201, 205, 206. The Court rejected Defendants' Omnibus Motion to Dismiss along with Southwind's individual motion on January 17, 2025, but granted motions to dismiss as to Ocean King and the South Bend Defendants. Dkt. 242.

10. On February 7, 2025, Plaintiffs Brand Little and Robin Burns filed their Second Amended Complaint ("SAC"), in which additional allegations were made to support their claims against Ocean King but which omitted claims against the South Bend Defendants (Dkt. 255). Ocean King filed another motion to dismiss the SAC on March 14, 2025 (Dkt. 288), which the Court denied on May 20, 2025. Dkt. 339.

11. Plaintiffs Brand Little and Robin Burns thereafter initiated extensive written discovery directed at Defendants and third parties. During the course of their fact investigation, Plaintiffs Brand Little and Robin Burns uncovered substantial additional information supporting their allegations and have identified additional members of the price-fixing conspiracy.

12. Based on the preliminary results of the aforementioned discovery, Plaintiffs Brand Little and Robin Burns determined that Pacific Dream, along with two other buyers, Da Yang

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Seafood, Inc. and Great Ocean Seafood, Inc. (together the "Da Yang Defendants"), should be added as defendants, and moved for leave to amend the SAC to add claims against them, (Dkt. 377), which the Court granted. Dkt. 389. Before Plaintiffs Brand Little and Robin Burns filed their Third Amended Complaint ("TAC"), however, Pacific Dream requested that the parties explore settlement with the assistance of Judge Spero, prior to adding Pacific Dream as a defendant, and the Court entered a stipulated order that gave Plaintiffs leave to omit Pacific Dream Seafood as a defendant in the TAC while settlement negotiations were pursued, with the right to add Pacific Dream as a defendant later if negotiations were unsuccessful. Dkt. 403.

13. Accordingly, on September 2, 2025, Plaintiffs filed their Third Amended Complaint, which added the Da Yang Defendants (Dkt. 394), and, on December 10, 2025, after initial negotiation efforts with Pacific Dream did not result in a fully executed agreement, Plaintiffs filed their Fourth Amended Complaint, adding Pacific Dream as a Defendant. Dkt. 529. Finally, on February 3, 2026, in advance of the deadline to add new parties and claims, Plaintiffs filed their Fifth Amended Complaint ("5AC"), which (1) added Cherry Fisheries, Inc., as a Plaintiff (together with Brand Little and Robin Burns, "Plaintiffs"), (2) added the John Caito, James Caito, Joseph Caito, and Jeanette Caito (the "Caito Siblings") as Defendants, (3) added fraudulent transfer claims against the Caito Inc. Defendants, (4) added an Oregon-specific class, and (5) added claims on behalf of that class under the Oregon Antitrust Law and the Oregon Unlawful Trade Practices Act. Dkt. 596.

14. Most recently, the Court granted motions to dismiss as to the Da Yang Defendants, but permitted Plaintiffs to seek further discovery. Dkt. 600. Plaintiffs have since received additional information from the Da Yang Defendants relevant to their allegations and intend to file a Sixth Amended Complaint on June 29, 2026.

## DISCOVERY AND FACTUAL INVESTIGATIONS TO DATE

15. Discovery in this matter is ongoing on a daily basis. In response to Plaintiffs' requests, however, Defendants have thus far produced more than 236,000 documents, comprising more than 408,000 pages.

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

3

16. Included in these productions are approximately 116,357 24-hour segments of text strings reflecting conversations between Defendants, other third-party buyers of Dungeness crab, and hundreds of identified crabbers.

17. Also included are internal text messages and emails for some Defendants, as well as transactional and other financial data for some Defendants.

18. The aforementioned messages, emails, and data reflect significant details about the conspiracy to fix ex vessel price of Dungeness crab low, including how Defendants coordinated prices with other buyers, engaged in "out-the-backdoor" sales of Dungeness crab, and engaged in behaviors intended to ensure compliance with the dictates of the cartel.

19. For Defendant Southwind Foods, LLC and Caito Fisheries, LLC (collectively, "Southwind"), Plaintiffs have also obtained materials that relate to the sale of Caito Inc.'s assets to Southwind, which allowed Plaintiffs to establish how much Caito Inc. received in consideration for that transaction, as well as information about the transfer of liabilities to Defendant Southwind, both of which were key to the settlement negotiations with the Caitos.

20. At the insistence of Defendants, Plaintiffs have also negotiated certain scope issues and search keywords with Pacific Seafood with the understanding that these negotiations were performed on behalf of all Defendants. These (extensive) negotiations are ongoing, and have enabled Plaintiffs to negotiate a comprehensive list of keywords for searching the correspondence of Defendants and their agents, as well as a framework for the production of transactional data.

21. Plaintiffs have also conducted extensive third-party discovery, including, without limitation: discovery of records from the Departments of Fish and Wildlife for California, Oregon, and Washington, which have provided records of every ex vessel purchase of Dungeness crab (including all purchases by the Settling Buyers) in those states going back to 1999; discovery from cell phone carriers of records of text messages and phone calls for phone numbers associated with Defendants and their agents, which have provided Plaintiffs with a corpus of records showing vast numbers of calls and texts between Defendants; and discovery of third-parties involved in the Dungeness crab industry, such as other buyers and industry organizations.

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

4

22. In addition, Plaintiffs have engaged in an extensive factual investigation, including discussions with potential witnesses, review of media stories and articles regarding Dungeness crab and the Dungeness crab industry, and analysis of data about the Dungeness crab fishery and ex vessel sales of Dungeness crab.

23. Thus, Settlement Class Counsel have performed significant factual investigation of the Dungeness crab market, the factors that influence it, and the cartel activity that is the basis of the claims against the Settling Defendants and Defendants' asserted Defenses thereto. As a result of these efforts and with the assistance from various experts, including econometricians and forensic accountants, Plaintiffs have been able to develop a robust preliminary understanding of the operation of, and membership in, the price fixing conspiracy; the scale of the commerce affected by the conspiracy and each Defendant's share thereof; and the conspiracy's impacts on the ex vessel prices that the First Round Settlement Class received for Dungeness crab during the First Round Settlement Class Period.

24. The evidence reviewed by Settlement Class Counsel to date strongly indicates the existence of the alleged conspiracy.

### THE SETTLING BUYERS

**I.   Pacific Dream**

25. Pacific Dream is a buyer and distributor of Dungeness crab located in Washington that purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness Crab. *See* 5AC, Dkt. 596.

26. Plaintiffs' analysis of Department of Fish and Wildlife records reveals Pacific Dream purchased a total of approximately 10,838,044 pounds of crab between the 2015/2016 season and the 2024/2025 season, paying approximately $47,160,467 for this Dungeness crab.

27. By pounds, Pacific Dream's purchases represented approximately 2.3% of the Dungeness crab market in the Pacific Northwest during that timeframe.

28. These figures, as well as those for the Caitos and Fisherman's Choice below, are based on Department of Fish and Wildlife landing/fish-ticket records. Market share by pounds

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

5

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

was calculated by comparing each buyer's purchases during the relevant period to total ex-vessel Dungeness crab sales in the Pacific Northwest Area during the same period.

II.    **Caitos**

29.    Caito Fisheries, Inc. was a buyer and distributor of Dungeness crab located in California that purchased Dungeness crab ex vessel in the Pacific Northwest during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness crab. *See* 5AC, Dkt. 596.

30.    On July 28, 2023, Caito Inc. sold its assets to Defendant Southwind and ceased operations. John Caito is now a Southwind employee, but Joseph and James Caito were involved in running the business for some period after the sale.

31.    Plaintiffs understand it is likely that the proceeds from the sale of Caito Fisheries, Inc.'s assets were paid to Caito Fisheries, Inc.'s owners, John, James, Joseph, and Jeanette Caito (the "Caito Siblings"). Thus, Settlement Class Counsel has reason to believe that Caito Fisheries, Inc., does not have the resources to pay a significant verdict.

32.    Settlement Class Counsel believes that collectability from Caito Inc. and the Caito Siblings presents substantial risk. Those risks include Caito Inc.'s cessation of operations, the finite proceeds available from the asset sale, and potential exemptions or other collection obstacles applicable to elderly individual defendants. While this is true in all cases, it is particularly true here. Because Caito Inc. is not operating and the Caito Siblings are elderly, there is a finite corpus of funds available to satisfy any judgment. Not only would litigation expenses incurred by the Caitos eat into these funds, but litigation expenses incurred by Southwind would as well.

33.    Additionally, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

34.    Plaintiffs' analysis of Department of Fish and Wildlife records reveals that before the sale to Southwind, Caito purchased a total of 11,066,883 pounds of crab between the 2015-

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

2016 season and the 2022-2023 season, which represented approximately 2.9% of the market during that timeframe.

35.     Caito Inc. paid approximately $34,250,797 for this crab.

**III.     Fisherman's Choice**

36.     Fisherman's Choice, LLC is a buyer and distributor of Dungeness crab located in California that purchased Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period and is alleged to have participated in the conspiracy to fix and suppress prices for Dungeness crab.

37.     Based on Plaintiffs' analysis of Department of Fish and Wildlife records, Fisherman's Choice is a relatively small buyer, purchasing 654,815 pounds of Dungeness crab during the First Round Settlement Class Period, which represented approximately 0.14% of the market during that timeframe and for which it paid approximately $2,951,568.

**SETTLEMENT NEGOTIATIONS**

38.     Against the extensive factual backdrop generated by Plaintiffs' discovery and investigation to date, Plaintiffs have engaged in settlement discussions with several Defendants and third parties. These include not just the Caitos (defined below), Pacific Dream, and Fisherman's Choice, but also include at least preliminary discussions with Defendants Global Quality Foods, Global Quality Seafoods, Fathom, Southwind, Fisherman's Catch, American Seafood Exp., and Safe Coast, as well as other non-parties. While negotiations are ongoing, they have not (or have not yet) resulted in compromise with other parties.

39.     The settlements here are the product of arm's-length negotiations between attorneys who, on Plaintiffs' side, are highly experienced in complex antitrust cases and who are well-informed about the facts and legal issues of this case.

40.     Two of the First Round Settlements—with Pacific Dream and Caito—were reached in the context of several in-person and videoconference Settlement Conferences before the Honorable Judge Joseph C. Spero, who was intimately involved in the negotiations, the evaluation of the merits, and the ultimate settlements. Judge Spero's involvement was not limited

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

to the settlement conferences, themselves, but rather also include telephone and email communications.

41. For each of the First Round Settlements, Plaintiffs conducted extensive settlement discussions with each of the Settling Buyers.

42. Each of the First Round Settlements was reached relatively early in the litigation. Fisherman's Choice was never named as a Defendant, and Pacific Dream was named as a Defendant only immediately before its settlement agreement was reached. This means that these settlements were secured with less relative expense and effort by Plaintiffs than will be the case with subsequent settlements. While the settlement with the Caitos involved more litigation, it still came before the close of discovery and before any dispositive motion practice.

43. While discovery is ongoing, it is substantially advanced with regard to the Settling Buyers. Thus, these settlements were reached based on well-informed decisions of the parties and with the assistance of the Court.

## I.    <u>Pacific Dream</u>

44. On August 29, 2025, Plaintiffs and Pacific Dream filed a stipulation for referral to a settlement conference (Dkt. 388), which was ultimately held in person before Magistrate Judge Joseph Spero on October 30, 2025.

45. Pursuant to orders from Judge Spero, the parties exchanged demands and provided statements to Judge Spero ahead of this conference.

46. After comprehensive negotiations facilitated by Judge Spero, Plaintiffs and Pacific Dream reached an agreement to settle all of Plaintiffs' claims against Pacific Dream at this conference.

47. Plaintiffs provided Pacific Dream with a draft settlement agreement, consistent with their negotiations, shortly after that conference.

48. Pacific Dream purported to rescind the agreement on November 24, 2025.

49. After unsuccessful informal negotiations, the parties attended a further settlement conference before Judge Spero by videoconference on December 16, 2025, at which time the parties reached an agreement that was then read into the record.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

50. Subsequently, after months of back-and-forth about the details of the agreement, which included multiple videoconferences between counsel to discuss the language of the Settlement Agreement, Plaintiffs and Pacific Dream executed the final version on June 5, 2026 (the "Pacific Dream Settlement Agreement").

51. A true and correct copy of the Pacific Dream Settlement Agreement is attached hereto as **Exhibit A**.

## II. The Caitos

52. On October 1, 2025, Plaintiffs and Caito Fisheries, Inc. filed a stipulation for referral to a settlement conference. Dkt. 429.

53. As with Pacific Dream, the parties exchanged settlement proposals and provided statements to Judge Spero ahead of the in-person conference before Judge Spero on January 15, 2026.

54. In addition to Caito Fisheries, Inc., Plaintiffs have also agreed to settle with its owners, John, James, Joseph, and Jeanette Caito (collectively and together with Caito Inc., "the Caitos").

55. With Judge Spero's assistance, Plaintiffs and the Caitos reached an agreement in principle at this conference, which was fleshed out by counsel in the subsequent weeks and placed on the record by Judge Spero via videoconference on January 27, 2026.

56. After exchanging edits and drafts, and after several rounds of video calls between counsel to finalize the details of the agreement, this agreement was ultimately signed by both parties on April 23, 2026 (the "Caito Settlement Agreement").

57. A true and correct copy of the Caito Settlement Agreement is attached hereto as **Exhibit B**.

## III. Fisherman's Choice.

58. At approximately the same time that settlement negotiations were initiated with Pacific Dream and the Caitos, Plaintiffs began speaking with certain smaller non-party buyers regarding potential settlement, including Fisherman's Choice—which was identified as Unnamed Co-Conspirator #2 in the FAC and subsequent complaints—and its owner Gerard Wetle, Jr.

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

9

59. Fisherman's Choice and Mr. Wetle were represented by counsel, and negotiations lasted for several months, spanning numerous phone and video calls.

60. Ultimately, on January 28, 2026, Plaintiffs and non-party Fisherman's Choice signed a settlement agreement (the "Fisherman's Choice Settlement Agreement").

61. A true and correct copy of the Fisherman's Choice Settlement Agreement is attached hereto as **Exhibit C**.

62. Other than the First Round Settlement Agreements described above and agreements necessary to implement Court-approved notice, settlement administration, and escrow/QSF administration, there are no other agreements made in connection with the First Round Settlements that are required to be identified under Rule 23(e)(3).

## SETTLEMENT TERMS

### I.    The First Round Settlement Class

63. Plaintiffs seek to certify a First Round Settlement Class consisting of:

All persons who, during the First Round Settlement Class Period, made ex vessel sales of Dungeness crab caught off the coast of, or landed in, California, Oregon, and/or coastal Washington (not including Puget Sound), on their own behalf. Excluded from the First Round Settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, or co-conspirators; the court, court staff, defense counsel, all respective immediate family members of these excluded entities, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

64. This is, in substance, the same class definition set forth in the operative complaint. *See* 5AC, Dkt. 596. The only difference between the proposed First Round Settlement Class for the First Round Settlements and the class going forward is that the relevant time period for the First Round Settlement Class will end at Final Approval of the First Round Settlements, where the class period will continue for the remainder of the class/other classes going forward.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

## II. Settling Buyer-Specific Terms

### A. Pacific Dream

65. In exchange for a release of all claims that were or could have been asserted against them in this Action by the First Round Settlement Class, Pacific Dream has agreed to pay $1 million within 72 hours of the Court's granting the Final Approval Motion.

66. This settlement represents 2.12% of Pacific Dream's total purchases of Dungeness crab between January 1, 2016 and the end of the 2024/2025 Dungeness crab season, the most recent date for which the Plaintiffs have landing data.

67. This payment is non-reversionary, and would only be returned to Pacific Dream in the event that the agreement was rescinded for one of the reasons specified in the agreement (e.g., if the Court does not ultimately approve the settlement agreement, if the approval is set aside on appeal, or if the Court does not enter a final judgment with regard to Pacific Dream).

68. As additional consideration, Pacific Dream has agreed to provide the text messages between Pacific Dream's principals, Jerod Goodin and Jonathan Mark, on the one hand, and other Defendants, on the other, from the beginning of the First Round Settlement Class Period to the date of production. It has also agreed that it will not object to Plaintiffs' deposition of both Jerod Goodin and Jonathan Mark, Pacific Dream's owners.

### B. The Caitos

69. In exchange for a release of all claims that were or could have been asserted against them in this Action by the First Round Settlement Class, the Caitos have agreed to pay $1.25 million within 30 days of the Court's granting the Final Approval Motion.

70. This equates to 3.65% of Caito's purchases of Dungeness crab between January 1, 2016 and the time it ceased doing business (July of 2023).

71. This payment is non-reversionary, and would only be returned to the Caitos in the event that the agreement is rescinded for one of the reasons specified therein.

72. Because of the collectability issues described above, Plaintiffs have additionally agreed to release the Southwind Defendants from successor liability claims related to Caito Fisheries, Inc.'s conduct of its business before the asset sale to Southwind.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

11

### C.    Fisherman's Choice

73.    In exchange for a release of all claims that could have been asserted against them in this Action by the First Round Settlement Class, Fisherman's Choice has agreed to cooperate with Plaintiffs by conferring with Settlement Class Counsel about persons, events, documents, and practices relevant to this action; assisting Settlement Class Counsel with preparation for taking the testimony of other parties; and discussing the Dungeness crab fishing industry and related issues with Settlement Class Counsel.

74.    Fisherman's Choice has also agreed to provide any documents reasonably requested by Plaintiffs, in the format requested by Plaintiffs (i.e., with all electronically stored information associated with such documents).

75.    Fisherman's Choice has also committed to providing honest testimony at trial and to authenticating any applicable documents.

## III.    Settlement Fund

76.    Settlement Class Counsel proposes that the funds from the First Round Settlements be put into an interest-bearing Qualified Settlement Fund account (the "First Round Settlement Fund"), held and administered by an escrow agent selected by Settlement Class Counsel with the consent of the Settling Defendants and with the approval of the Court.

77.    Settlement Class Counsel recommends that Esquire Bank be appointed as the Escrow Agent.

78.    Settlement Class Counsel proposes that the First Round Settlement Fund should be distributed in accordance with applicable orders of the Court in order to pay for notice and settlement administration costs, Court-approved litigation expenses, and, if applicable at the conclusion of the case, for potential payments to Class Members.

79.    Should the request be granted, Plaintiffs would, from time to time, seek the Court's approval to use funds from these settlements to reimburse costs incurred by Settlement Class Counsel, including litigation expenses and the costs incurred in connection with the administration of these settlements.

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

12

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

80.    No funds will be distributed from the First Round Settlement Fund in the absence of an order from the Court, and the First Round Settlement Fund will not be used to make incentive payments to Plaintiffs.

81.    In the event that the funds from the First Round Settlement Fund are disbursed to First Round Settlement Class Members in the future, Settlement Class Counsel intend distribute them to First Round Settlement Class Members pro rata based on the amount of a given First Round Settlement Class Member's sales of ex vessel Dungeness crab in the Pacific Northwest Area during the First Round Settlement Class Period as a portion of the ex vessel sales of all participating First Round Settlement Class Members' landings in the Pacific Northwest Area during the same time period. If they cannot be so distributed because it would not be economically feasible to do so, Plaintiffs intend, with the Court's approval, to donate the funds to an appropriate *cy pres* recipient.

82.    Plaintiffs will provide updated information on the distribution, including the formulae used to make allocation, on the settlement website, if and when such a distribution takes place.

## IV.    Attorneys' Fees and Costs

83.    The settlement agreements do not prohibit Settlement Class Counsel from seeking an award of attorneys' fees and costs from the First Round Settlement proceeds.

84.    However, Settlement Class Counsel does not intend to seek an award of attorneys' fees from the First Round Settlement Fund.

85.    Rather, as discussed above, Plaintiffs request that the Court allow the funds to be used for the benefit of the First Round Settlement Class by using them to pay the costs—including expert fees—incurred in the pursuit of claims against the non-settling Defendants.

## V.    Release of all Claims

86.    In exchange for the monetary and other consideration and as more fully discussed in the First Round Settlement Agreements, upon entry of a final judgment approving the First Round Settlements, Plaintiffs and the First Round Settlement Class will release the Settling Buyers, as well as their owners, employees, and related companies, of all claims that were or

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

13

could have been asserted against the Settling Buyers in this litigation, whether known or unknown.

87.    Additionally, as part of the settlement with the Caitos, Plaintiffs have agreed to release Southwind from liability for claims that could have been asserted against Southwind on a theory of successor liability or on the basis of the Caitos' conduct that occurred before Southwind's purchase of Caito Fisheries, Inc., and have agreed not to sue or seek recovery from Southwind for such claims, while preserving all other claims against Southwind.

88.    Settlement Class Counsel believes that the limited release of Southwind in the Caito Settlement will not ultimately materially decrease the amount that Plaintiffs or the class will ultimately receive from Southwind at trial or in settlement.

**QUALIFICATION OF SETTLEMENT CLASS COUNSEL**

89.    I seek appointment as Lead Counsel for the First Round Settlement Class, and Matthew Ruan and Matthew Weiler seek appointment to the Executive Committee. Collectively. We collectively seek appointment as Settlement Class Counsel.

90.    Settlement Class Counsel have worked on many large, complex cases, including antitrust and consumer protection class action cases.

91.    The resume of Gross Klein PC is attached hereto as **Exhibit D**.

92.    The resume of Justice Jagher London & Millen LLC is attached hereto as **Exhibit E**.

93.    The resume of Schneider Wallace Cottrell Kim LLP is attached hereto as **Exhibit F**.

94.    Settlement Class Counsel have led the prosecution of this litigation on behalf of the First Round Settlement Class and have coordinated efforts with respect to the negotiations that led to the First Round Settlements. Each of them remains willing and able to devote the resources necessary to this case to obtain the best possible result for Plaintiffs, the First Round Settlement Class, and any subsequent classes.

95.    I have litigated cases for members of California's and Washington's commercial fishing fleets for since 2007, and this case originated from that work and the information I learned

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

doing it. Based on that information, I initiated the initial investigation of facts that gave rise to the claims in this action, and I developed this case from the ground up.

96.     Matthew Ruan entered the case in 2023, and Matthew Weiler entered the case in 2024. Since then, both have performed significant discovery and motion work and have served as key advisors on the direction of the case.

## **NOTICE**

97.     Settlement Class Counsel's proposed Long-Form Notice to First Round Settlement Class Members is attached hereto as **Exhibit G**.

98.     Settlement Class Counsel's proposed Short-Form Notice to First Round Settlement Class Members is attached hereto as **Exhibit H**.

99.     Settlement Class Counsel's proposed Intent to Participate Form for First Round Settlement Class Members is attached hereto as **Exhibit I**.

100.     The Intent to Participate Form will help the Settlement Administrator maintain current contact information and, where necessary, verify class membership and future payment eligibility. It does not affect a class member's right to participate in, object to, or opt out of any future settlement, unless and until the Court approves separate notice procedures for that future settlement. Plaintiffs additionally propose to provide the Long-Form Notice and Intent to Participate Form, which allows Class Members to indicate whether they would like to participate in or receive information about future settlements, on the website or, upon request, in paper.

101.     Plaintiffs have addresses for approximately 99% of California, Oregon, and coastal Washington Dungeness crab vessel permit and license holders. Plaintiffs intend to also obtain, before the Preliminary Approval Hearing, addresses and other contact information for the fishers in California and Oregon who were listed on the landing records for Dungeness crab during the First Round Settlement Class Period, to the extent that they are different than the persons identified as Dungeness crab vessel permit and license holders. It is not necessary to request additional addresses for Washington fishers, because all of the individuals who landed Dungeness crab are already identified in the Washington Department of Fish and Wildlife records. Plaintiffs intend to send direct notice to each of these individuals.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

15

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

102.    While the holders of California, Oregon, and coastal Washington Dungeness crab vessel permit and license holders will make up the bulk of the First Round Settlement Class, as such a permit or license is necessary to sell Dungeness crab ex vessel. However, in certain circumstances, including when a person has leased a vessel to which is associated a Dungeness crab vessel permit and when a person has purchased such a vessel and entered into an owner-financing arrangement with the seller under which the seller's name remains on the permit, a member of the First Round Settlement Class may not be included in the records of California, Oregon, and coastal Washington Dungeness crab vessel permit and license holders. For that reason, Plaintiffs are also sending notice to all persons who are listed on the catch records, as such persons can be anyone with a commercial fishing license who is crewing or operating a vessel from which ex vessel sales are made.

103.    The notice plan, which provides for notice by mail to almost 100% of potential First Round Settlement Class Members, will also provide for email and text message notice, as well as notice through a widely used Facebook group. This notice is tailored to reach potential First Round Settlement Class Members, who are frequently out at sea and who are more likely to use their smartphones than a computer.

104.    Plaintiffs propose to publish a link to the settlement website in the Commercial Salmon, Albacore, and Crab Fishers Facebook group, which has more than 22,000 members and of which many First Round Settlement Class Members are participants, and further intend to engage in a comprehensive media notice plan, as discussed in the declaration of Julie Meichsner ("Administrator Dec.").

105.    Plaintiffs requested bids from three different Settlement Administrators: Simpluris, Eisner Amper, and Angeion Group.

106.    After reviewing these bids, Plaintiffs selected Simpluris as the administrator based on 1) the fact that their bid was the most economical and 2) Simpluris' reputation of excellent performance with regard to settlement administration.

107.    Gross Klein has not previously hired Simpluris to perform any work.

## COMMONALITY, TYPICALITY, AND ADEQUACY

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT

16

108.   All of the Plaintiffs (or, in the case of Robin Burns, her deceased husband Kenneth Burns) caught and sold Dungeness crab ex vessel in the Pacific Northwest Area during the First Round Settlement Class Period, and thus will be both members of the First Round Settlement Class and any subsequent classes going forward.

109.   Settlement Class Counsel has and will continue to vigorously pursue the best interests of both the First Round Settlement Class and any subsequent classes.

110.   Settlement Class Counsel is not aware of any conflict between Plaintiffs, Settlement Class Counsel, and the First Round Settlement Class.

### CAFA

111.   Under the First Round Settlement Agreements, the Settling Buyers are responsible for serving CAFA notice, to the extent necessary.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 22, 2026.

By:   */s/ Stuart G. Gross*
STUART G. GROSS

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

DECLARATION OF STUART G. GROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; Case No. 3:23-cv-01098-AGT