# EXHIBIT B

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of the Execution Date (defined below), by and between all named Class Representatives, including but not limited to Plaintiffs Brand Little, Robin Burns, and Cherry Fisheries Inc. (together, "Class Representatives" or "Plaintiffs"), on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Defendants Caito Fisheries, Inc., James Caito, Jeanette Caito, John Caito, and Joseph Caito (together, the "Caito Inc. Defendants," and collectively with Plaintiffs and the Settlement Class, the "Parties").

WHEREAS, Plaintiffs are prosecuting claims on their own behalf and on behalf of the Settlement Class in *Little, et al. v. Pacific Seafood Procurement, LLC, et al.*, Case No. 23-cv-1098 (N.D. Cal) (the "Action");

WHEREAS, Plaintiffs, on behalf of themselves and as representatives of the Settlement Class, assert[1] that they were injured, *inter alia*, as a result of the Caito Inc. Defendants' alleged participation in an unlawful conspiracy to fix, depress, and control the ex vessel price paid to crabbers in the Pacific NW area in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), the California Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, *et seq.*), the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Oregon Antitrust Law (Or. Rev. Stat. §646.725, *et seq.*), and Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 *et seq.*);

WHEREAS, Plaintiffs assert that they and the Settlement Class would be entitled to, *inter alia,* actual damages, treble damages, attorney's fees, costs, and injunctive relief for loss or

---

[1] For avoidance of any doubt the assertions of one side or the other contained in the recitals are merely unilateral assertions. They should not be read as describing any facts mutually conclusively presumed between the parties and the lack of rebuttal of any assertions should not be read as adoptive admissions of any assertions.

1

damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Action, arising from conduct by *inter alia* the Caito Inc. Defendants;

WHEREAS, the Caito Inc. Defendants vigorously deny Plaintiffs' allegations and assertions, deny any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against them in the Action, and assert that they have a number of valid defenses to Plaintiffs' claims and that the claims are entirely without merit;

WHEREAS, this Action has involved substantial discovery, including Plaintiffs obtaining and analyzing an extensive volume of documents, and the investigation and analysis of the facts and underlying events relating to the subject matter of their claims and the applicable legal principles;

WHEREAS, Plaintiffs have engaged in and conducted substantial actual investigation, including obtaining substantial discovery responses and productions from the Caito Inc. Defendants; have had ample opportunity to test the veracity of any relevant responses and productions; and are firmly of the belief that they possess adequate information and analysis to competently enter into this Agreement at this time based upon such information;

WHEREAS, Plaintiffs and the Caito Inc. Defendants participated in an all-day settlement conference before the Honorable Judge Joseph C. Spero, on January 15, 2026, and, with the assistance of Judge Spero, engaged in arm's-length negotiations that resulted in a binding settlement that was read into the record on January 27, 2026 and is embodied and memorialized in this Agreement, which is the product of further arm's-length negotiations by counsel for the Parties and embodies all of the terms and conditions of the Settlement;

WHEREAS, Plaintiffs, through their counsel, conducted an investigation into the facts and law regarding the Action and the Caito Inc. Defendants' involvement, and have concluded that

2

resolving the claims against the Caito Inc. Defendants, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of, *inter alia*, litigation risk, the payment of the Settlement Amount (defined below), potential collectability issues, the good faith nature of the settlement, and the timing of the Settlement;

WHEREAS, the Caito Inc. Defendants, despite their vigorous contentions that they are not liable for the claims asserted or which could be asserted by Plaintiffs and their vigorous contentions that they have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, stress, inconvenience, and the distraction of burdensome and protracted discovery and litigation, and to obtain the release, order, and judgment contemplated by this Agreement, and to put to rest with finality all claims (and first-party discovery obligations) that have been or could have been asserted against the Caito Inc. Defendants with respect to the ex vessel price paid to crabbers in the fisheries of California, Oregon, and coastal Washington, excluding Puget Sound (collectively, the "Pacific NW Coastal Fisheries"), including without limitation, claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, or that could have been alleged in the Action or otherwise have been the subject of the Action (both known and unknown), as more particularly set out below;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event this Agreement does not obtain Final Approval (defined below);

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

on any representations (or the lack thereof) made by any other of the Parties concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs and the Settlement Class be settled, compromised, and promptly dismissed on the merits with prejudice as to the Caito Inc. Defendants, subject to—and conditional upon—Court approval, on the following terms and conditions (collectively, the "Settlement"):

1.    **General Definitions**. The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

a.    "Caito Fisheries, Inc." means the defendant in the Action and California corporation by that same name, along with its officers, owners, directors, employees, and/or agents.

b.    "Caito Fisheries, Inc.'s Affiliates" means any Person (as defined in this Paragraph 1(b) for this paragraph) that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Caito Fisheries, Inc. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of either Caito Fisheries, Inc. or a Person, whether through the ownership of voting securities, by contract or otherwise. For purposes of this Paragraph 1(b), a "Person" means any individual, corporation, partnership, joint venture, limited liability company, governmental authority, unincorporated organization, trust, association or other entity. For the elimination of doubt and notwithstanding anything in the foregoing definition, Caito Fisheries, Inc.'s Affiliates does not

Doc ID: b44f26e4137ca2a6f26323290a70a3e01c79c888

include Defendants Southwind Foods, LLC, Caito Fisheries, LLC, or their respective parents or owners.

c.    "Caito Inc. Released Claims" shall have the meaning set forth in Paragraph 4(a) of this Agreement.

d.    "Caito Inc. Releasees" means the Caito Inc. Defendants and any and all of their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future owners, principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind. For the elimination of doubt, Caito Inc. Releasees do not include any Southwind Releasees (defined herein), with the sole exception of those Caito Inc. Defendants (and their employees, agents, representatives, insurers, attorneys, spouses, next of kin, heirs, executors, administrators, beneficiaries, and representatives of any kind) who could also meet the definition of "Southwind Releasee"; and, in the latter case, such persons are deemed to be Caito Inc. Releasees for the purposes of interpreting the releases contained in Paragraph 4 of this Agreement, but, notwithstanding anything in the foregoing definition, in no event shall Caito Inc. Releasees include Defendants Southwind Foods, LLC, Caito Fisheries, LLC, or their respective parents or owners.

e.    "Class Notice" means the notice to any Class Members approved by the Court.

5

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

f. "Court" means the United States District Court for the Northern District of California and the Honorable Alex G. Tse.[2]

g. "Defendants" means those Defendants named in Plaintiffs' complaint, as well as any other individuals or entities against whom Plaintiffs seek, have sought, or may in the future seek relief in the Action.

h. "Effective Date" shall have the meaning set forth in Paragraph 2 of this Agreement.

i. "Execution Date" means the last date of the execution of this Agreement by all Parties.

j. "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from the Settlement in accordance with the exact procedures set forth in the Court-approved Class Notice.

k. "Opt-Out Deadline" means the Court-ordered date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

l. "Plaintiffs' Executive Committee Members" means Matthew W. Ruan of Freed Kanner London & Millen LLC and Matthew S. Wieler of Schneider Wallace Cottrell Kim LLP.

m. "Plaintiffs' Lead Counsel" means Stuart G. Gross of Gross Klein PC.

n. "Southwind Released Claims" shall have the meaning set forth in Paragraph 4(b) of this Agreement.

---

[2] Notwithstanding this definition, any exclusive or retained powers of the Court shall survive and follow with any transfer of the Action to a different magistrate, judge, venue, forum, or jurisdiction.

o.    "Southwind Releasees" means Defendants Southwind Foods, LLC and Caito Fisheries, LLC, along with their applicable affiliates, subsidiaries, parents, owners, principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind (except to the extent any such persons or entities are encompassed by the definition of "Caito Inc. Releasees," in which case the provisions applicable to the Caito Inc. Releasees control).

p.    "Releasors" means Plaintiffs, the Settlement Class, and each and every Settlement Class member and their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, divisions, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future owners, principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, servants, accounts, plans, groups, heirs, wards, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, executors, administrators, beneficiaries, and representatives of any kind, and all other persons, partnerships, or corporations, with whom any of the foregoing have been, or are now or will be, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing, as well as any party claiming by, for, or through the Releasors.

q.    "Settlement Administrator" means the firm defined in Paragraph 7 below.

r.    "Settlement Amount" means the amount defined in Paragraph 5 below.

s.    "Settlement Class" means the class defined in Paragraph 3 below.

7

t.    "Settlement Class Counsel" shall collectively refer to Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee Members, together with members of their respective law firms.

u.    "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

v.    "Settlement Class Period" means from January 1, 2016, to the present.

w.    "Settlement Fund" means the Settlement Amount plus accrued interest on said amount as set forth in Paragraph 6.

x.    "Southwind Transaction Closing Date" means July 28, 2023 (for purposes of clarity, the time of day shall be the end of day).

y.    "Taxes" means any and all federal, state and local income taxes, excise taxes, estimated taxes, gross receipt taxes, or any other taxes, as well as interest, penalties, tax detriments, and any other additions to taxes.

**2.    <u>Approval of This Agreement and Dismissal of Claims Against the Caito Inc. Defendants.</u>**

a.    Plaintiffs' Counsel shall promptly pursue preliminary and final approval of this Settlement; with Plaintiffs' Counsel's motions for approval of the Settlement and any related documents necessary to effectuate and implement the terms and conditions of the Agreement. Subject to the approval of the Court, the Parties will promptly undertake their reasonable best efforts, including all steps and efforts consistent with the Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to promptly carry out the terms of the Agreement.

Doc ID: b44f26e4137ca2a6f26323290a70e3e01e79e888

b.      Plaintiffs shall promptly (and no later than sixty (60) days from the Execution Date) submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement. Both the motion and proposed order shall be provided to the Caito Inc. Defendants for comment and potential meet and confer well in advance prior to submission.

c.      Plaintiffs understand and acknowledge that as provided in this Agreement the Caito Inc. Defendants may seek a bar order (and/or its equivalent), including without limitation the equivalent of a motion for determination of good faith settlement under California Code of Civil Procedure section 877.6, as well as any provisions of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent, with the timing of any motion seeking such an order being left to the sole discretion of the Caito Inc. Defendants. Plaintiffs and the Caito Inc. Defendants will coordinate with advance notice as to the sequencing or timing vis-à-vis approval motions and motions for bar orders or good faith settlement determinations.

d.      Plaintiffs shall promptly submit to the Court a motion for authorization to disseminate notice of the Settlement and final judgment contemplated by this Agreement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed form of, method for, and proposed dates of dissemination of Class Notice.

e.      Plaintiffs shall promptly seek the entry of an order and final judgment as soon as practicable based on the timelines/notice periods set by the Court. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

9

i.   certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii.  approving finally this Settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii. directing that all Releasors shall, by operation of law, be deemed to have released the Caito Inc. Releasees and the Southwind Releasees from the Caito Released Claims and the Southwind Released Claims, respectively, and claims to be respectively waived and released pursuant to Paragraph 4;

iv.  directing that the Action be immediately dismissed as to the Caito Inc. Defendants with prejudice and without costs;

v.   reserving exclusive jurisdiction over the Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over the Caito Inc. Defendants, Plaintiffs, and Settlement Class for their completion of obligations pursuant to this Agreement;

vi.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice in the Action as to the Caito Inc. Defendants shall be final; and providing that (a) the Court's certification of the Settlement

10

Class is for settlement purposes only and without prejudice to, or waiver of, the rights of any Defendant or the Caito Inc. Defendants to contest certification of any other class proposed in the Action, (b) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any motion to certify any class in the Action; and (c) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class.

f.      This Agreement shall become final and be deemed to have received "Final Approval" when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to the Caito Inc. Defendants and without costs, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to the Caito Inc. Defendants described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to the Caito Inc. Defendants have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review (the "Effective Date"). It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and the Caito Inc. Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraph 11.

11

Doc ID: b44f26e4137ca2a6f26323290a70e3e01e79e888

**3.**    **Certification of a Settlement Class**. Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons who, during the Settlement Class Period, made ex vessel sales of Dungeness crab caught off the coast of, or landed in, California, Oregon, and/or coastal Washington (not including Puget Sound), on their own behalf.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, or co-conspirators; the court, court staff, defense counsel, all respective immediate family members of these excluded entities, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

The Caito Inc. Defendants agree that solely for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. The Parties agree that, if the Court does not approve the Agreement, then each side shall be returned to their pre-Settlement positions, and the Caito Inc. Defendants shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Agreement or preliminary approval papers against the Caito Inc. Defendants, against any other Defendant, or in relation to the Action.  Should the parties to this Agreement be returned to their pre-settlement positions, this Agreement shall be without any evidentiary effect whatsoever.

**4.    Settlement Class's Releases.**

a.    Caito Inc. Release. Upon the Effective Date and in consideration of the Settlement Amount and the other terms of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Caito Inc. Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys'

fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now has directly, representatively, derivatively or in any other capacity against any of the Caito Inc. Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of when it occurred at any time prior to the Effective Date concerning the claims alleged in this Action, including without limitation, claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, or that could have been alleged in the Action or otherwise have been the subject of the Action, which arise without any limitation under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust enrichment, civil conspiracy law, fraud, RICO, or any other law, code, rule, or regulation of any country or jurisdiction worldwide, including under federal or state law, and regardless of the type or amount of damages claimed, from the beginning of time through the Effective Date (the "Caito Inc. Released Claims").

b.      Southwind Limited Release. Upon the Effective Date and in consideration of the Settlement Amount and the other terms of this Agreement, the Releasors shall be deemed to completely, finally and forever release, acquit, and discharge the Southwind Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now

13

Doc ID: b44f26e4137ca2a6f26323290a70a3e01e79c888

has directly, representatively, derivatively or in any other capacity against any of the Southwind Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, regardless of when it occurred at any time prior to the Effective Date that are (i) based on a theory of successor liability as to Caito Fisheries, Inc. or, (ii) resulting from or arising out of the business, operations, properties, assets or obligations of Caito Fisheries, Inc. or any of Caito Fisheries, Inc.'s Affiliates, conducted, existing or arising on or prior to the Southwind Transaction's Closing Date (the "Southwind Released Claims"). Notwithstanding the foregoing, nothing in this Agreement shall release the Southwind Releasees for, or restrict in any way Plaintiffs' or the Settlement Class's rights or abilities to pursue claims against any of the Southwind Releasees based on their knowledge of the conspiracy at the time the Southwind Releasees are alleged to have joined it, and Plaintiffs may use evidence of any subject matter as evidence of such knowledge. With the sole exception of the Southwind Released Claims, Plaintiffs and the Settlement Class preserve all claims against the Southwind Releasees, and no claims by Plaintiffs or the Settlement Class against the Southwind Releasees are compromised, settled, released, or affected in any way by anything in this Agreement, except the Southwind Released Claims.

c.     In addition to the provisions of Paragraph 4(a) and (b), the Releasors acknowledge they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the

14

California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

d.      The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

e.      The Releasors agree that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, the releases herein given shall be and remain in effect as a full, final, and complete general release of the Released Claims and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

5. **Settlement Amount**.   The Caito Inc. Defendants agree that $1,250,000 (one million two hundred and fifty thousand) U.S. dollars ("Settlement Amount"), all in cash, will be paid on behalf of the Caito Inc. Defendants, via wire transfer—unless logistical issues prevent a wire transfer, in which case, via cashier's check(s)—as the Settlement Amount in settlement of the Action, inclusive of any and all Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), and costs, in full resolution of the claims made by the Plaintiffs and the Settlement Class in the Action. The payment described above shall constitute the total amount to be paid by the Caito Inc. Defendants in settlement of these claims.

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

Said payment by Caito Inc. Defendants is inclusive of all claims to damages, penalties, attorney's fees, expert costs, and the like, and represents the full financial obligation of the Caito Inc. Defendants in relation to the Action. Each side shall bear its own attorney's fees and costs. The Settlement Amount shall be paid into an escrow account (the "Escrow Account") within thirty (30) days after Final Approval and the Caito Inc. Defendants' receipt of Plaintiffs' escrow agent and transmittal instructions. No later than five (5) days after Final Approval and after the Caito Inc. Defendants' receipt of Plaintiffs' escrow agent and transmittal instructions, which shall not materially deviate from any provision of this Agreement, Plaintiffs shall also provide the Caito Inc. Defendants with a duly completed and executed Internal Revenue Service Form W-9. Provision to the Caito Inc. Defendants of a duly completed and executed Internal Revenue Service Form W-9 shall be a material precondition to the transmittal of any funds. The Parties agree and acknowledge that the Settlement Amount paid by the Caito Inc. Defendants under this Agreement shall not be deemed to be, in any way, a penalty or a fine of any kind.

6.      **Escrow Account**.  An Escrow Account shall be maintained by Settlement Class Counsel at a bank designated by Settlement Class Counsel.  The Escrow Account shall be administered under the Court's continuing supervision and control.

a.      All payments into the Escrow Account shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become a part of the Settlement Fund.  The Caito Inc. Defendants shall have no responsibility for, or liability in connection

16

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

with, the Settlement Fund or Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

b.    The Settlement Fund held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to the Plan of Allocation approved by the Court.

c.    The Settlement Administrator, under the supervision of Settlement Class Counsel, shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Escrow Account and shall file all informational and other tax returns necessary to report income earned by the Escrow Account and will work with the Escrow Agent and Settlement Class Counsel to take out of the Escrow Account, as and when legally required, any tax payments, including interest and penalties due on income earned by the Escrow Account.  All taxes (including any interest and penalties) due with respect to the income earned by the Escrow Account shall be paid from the Escrow Account.  The Caito Inc. Defendants shall have no responsibility to make any filings relating to the Escrow Account and will have no responsibility to pay tax on any income earned by the Escrow Account or to pay any taxes on the Escrow Account.

d.    The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" (a "QSF") for U.S. federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, *et seq.,* and to that end the Parties shall cooperate with each other and the Settlement Administrator in providing any statements or making any elections or filings or taking any other actions to satisfy all requirements for such treatment and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment, except

17

as otherwise required pursuant to a "determination" within the meaning of Section 1313 of the Internal Revenue Code of 1986, as amended (the "Code"). Without limiting the foregoing, at the request of the Caito Inc. Defendants, a "relation back election" as described in Treas. Reg. § 1.468B-l(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the Parties shall take all actions as may be necessary or appropriate to this end. The Caito Inc. Defendants shall be the "transferor" to the QSF within the meaning of Treas. Reg. § 1.468B-1(d)(1) with respect to the Settlement Amount. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treas. Reg. § 1.468B-1(k)(3), responsible (in addition to those responsibilities set forth in the immediately preceding paragraph) for complying with any applicable information reporting or tax withholding requirements on or with respect to the QSF (including the distribution of any amount to any Releasing Party from the Escrow Account) consistent with Treas. Reg. § 1.468B-2(l)(2) or any other applicable tax law. The Settlement Administrator shall deliver to the Caito Inc. Defendants prior to the deposit of the Settlement Amount into the Escrow Account a properly completed and duly executed Internal Revenue Service Form W-9 from the QSF.

e.    The Releasees do not make and have not made any representations regarding the taxability of any settlement benefit, Fee and Expense Award, and/or any other payments made pursuant to this Settlement or Agreement. Plaintiffs and Settlement Class Counsel on behalf of themselves and the Settlement Class Members represent that they have not relied upon any representation of the Caito Inc. Defendants, their attorneys, or the Releasees on the subject of taxability of any consideration provided pursuant to this Settlement or Agreement. Plaintiffs and Settlement Class Counsel on behalf of themselves and the

Doc ID: b44f26c4137ca2a6f26323200a70a3c01c79c888

Settlement Class Members understand and expressly agree that any income or other tax, including any interest, penalties, or other payment obligations ultimately determined to be payable from or with respect to any settlement benefit, Fee and Expense Award, and/or any other payments made pursuant to this Settlement or Agreement, as well as any state or federal reporting obligations imposed on them arising therefrom or attributable thereto, shall not be the responsibility of either the Caito Inc. Defendants or the Releasees.

7. **Class Administration and Notice.** If not already accomplished, immediately upon execution of this Agreement, Plaintiffs will promptly retain one or more professional and independent entities that, jointly or separately, are responsible for all aspects of settlement administration ("Settlement Administrator"). Such Settlement Administrator shall be approved by the Court as a sub-component of the motion for preliminary approval of this Agreement as a settlement and, if approved, overseen by Plaintiffs following the Effective Date. Plaintiffs shall be solely responsible for the payment of all costs and fees associated with settlement administration, including the costs and fees charged by the Settlement Administrator for work performed by the Settlement Administrator under this Agreement (excluding, for the avoidance of doubt, any Taxes, penalties, or other assessments imposed by a taxing authority in connection with settlement administration). The Caito Inc. Defendants shall not be responsible for paying any amount related to settlement administration or the Settlement Administrator. Plaintiffs may make reasonable efforts to notice multiple settlements with multiple Defendants in a single notice to the extent possible, but no notices, motions, or other actions associated with the obtaining of preliminary or Final Approval shall be unreasonably delayed to accommodate any efforts to notice multiple settlements with multiple Defendants in a single notice. For purposes of the foregoing sentence only, this provision shall be limited to Plaintiffs seeking simultaneous approval of settlements with

19

Doc ID: b44f26e4137ea2a6f26323290a70e3e01e79e888

Pacific Dream Seafood, Inc., Fisherman's Choice, LLC, and with any other party with whom a settlement for which a definitive agreement has been executed on or before May 20, 2026 (for the elimination of doubt, a definitive agreement does not include an agreement entered on the record or a term sheet).

a.    If necessary, the Settlement Administrator will consult with Settlement Class Counsel to answer any questions or resolve any disputes that arise.

b.    At no time and under no circumstances shall Plaintiffs, the Caito Inc. Defendants, Settlement Class Counsel, counsel for the Caito Inc. Defendants, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrators or their agents.

c.    Notice to Settlement Class Members of this Agreement shall be in conformance with the notice plan approved by the Court, after submission by Plaintiffs. Written notice to Settlement Class Members of this Agreement shall conform to the form of notice(s) approved by the Court, after proposed notice(s) are submitted to the Court by Plaintiffs. The claim form and procedures for submitting claims shall conform to the form and procedures approved by the Court after proposed submissions by Plaintiffs. The Parties shall jointly agree on, subject to approval by the Court, the content of any supplemental notice to Class Members, if deemed necessary by Settlement Class Counsel, regarding the Agreement or the Settlement.

8.  **Exclusions**.

a.    The Caito Inc. Defendants reserve all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

b.    Subject to Court approval, a request for exclusion must be in writing and state the full name, street address, telephone number, and email address of the person or entity

20

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

seeking exclusion from the Settlement Class by the Opt-Out Deadline. Further, the written request for exclusion must include a statement that he, she, or it wishes to be excluded from the Settlement. Subject to Court approval, a request for exclusion that does not comply with these and any other requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid request shall be deemed a Settlement Class Member and shall be bound by this Agreement upon Final Approval.

c.    The Caito Inc. Defendants or Settlement Class Counsel may dispute an exclusion request in accordance with the Notice Plan approved by the Court.

d.    Plaintiffs, Settlement Class Counsel, anyone who has appeared as an attorney of record in the Action for any Plaintiffs or Class Representitives in the Action together with members of their respective law firms, the Caito Inc. Defendants, and the Caito Inc. Defendants' counsel, covenant and agree to take no actions, directly or indirectly, designed or intended to influence any member or putative member of the potential Settlement Class to opt out of the Settlement, or to assist others in doing so from the Execution Date onward; and warrant that neither they nor anyone acting on their behalf has done so at any time from Janaury 15, 2026 through the Execution Date.

## 9.    The Settlement Fund.

a.    The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against the Releasees as to the Released Claims.

b.    After Final Approval, the Settlement Fund shall be distributed in accordance with a Plan of Allocation to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  The Caito Inc. Defendants will

21

take no position with respect to such proposed Plan of Allocation or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund.

c.      Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court Order. The Releasees shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

**10.      Fee Awards, Costs, and Expenses.**

a.      The procedure for and the allowance or disallowance by the Court of any application by Settlement Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to a request for attorneys' fees and reimbursement of expenses, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.

b.      The Releasees under this Agreement shall have no responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs of any fee and expense award in the Action.

c.      The Releasees under this Agreement shall have no responsibility for,

22

or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Action.

d.      The Caito Inc. Defendants will take no position on the terms of Settlement Class Counsel's request for attorneys' fees, costs or expenses, the appropriateness of any award by any court, or the timing of payment to Settlement Class.  Nothing in this Paragraph 10, nor anything related to Settlement Class Counsel's request(s) for fees, costs or expenses, shall impact the finality of this. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, or expenses shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of the Caito Inc. Defendants, the Caito Inc. Releasees, or the Southwind Releasees under this Agreement.

**11.    TERMINATION AND RESCISSION.**

a.      *Rejection or Alteration of Settlement Terms*. If (a) the Court does not grant preliminary or final approval of this Agreement or certify the Settlement Class; (b) preliminary or final approval of this Agreement or certification of the Settlement Class is set aside on appeal; (c) the Court does not enter a final judgment with respect to the Caito Inc. Defendants; or (d) the Court enters a final judgment with respect to the Caito Inc. Defendants, appellate review is sought, and, upon such review, a final judgment is not affirmed, the Caito Inc. Defendants and Plaintiffs each have the option at their sole discretion to rescind the Agreement. If the Court provides feedback such that its approval is conditioned on material modifications to the Agreement, the Caito Inc. Defendants and Plaintiffs agree to discuss within fourteen (14) days whether any adjustments to the Agreement are appropriate, including whether termination is appropriate. In the event the

23

Parties are unable to reach an agreement as to the acceptability of the Court's modifications to the Agreement, then the Agreement shall be deemed rescinded.

b.    *Termination of Settlement*. In the event of termination or rescission pursuant to this Paragraph 11, then the Agreement shall be deemed null and void and the Parties shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and the Parties shall proceed in all respects as if no settlement had been reached and the Agreement had not been executed. In such a circumstance, this Agreement will be without any evidentiary effect whatsoever, whether in relation to the Action or otherwise. In such a circumstance, any monies paid in relation to the Agreement by the Caito Inc. Defendants, shall be refunded in full and with any interest earned thereon (subject only to any withholding of only a portion of interest earned thereon to the extent necessary to cover taxes on said earned interest) within fourteen (14) days of any event of termination or rescission.

c.    Plaintiffs, the Settlement Class, Settlement Class Counsel, and the Caito Inc. Defendants agree that, whether or not the Court finally approves the Agreement, neither the fact of nor content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by the Caito Inc. Defendants or any Releasee, or the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

**12.    <u>Covenant Not to Seek to Impose Liability</u>**. The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability (a) against any of the Caito Inc. Releasees based, in whole or part, upon any of the Caito Inc. Released Claims, or

(b) against any of the Southwind Releasees based, in whole or part, upon any of the Southwind Released Claims.

13. **The Caito Inc. Defendants' Release**. Upon final judicial approval of the Settlement, the Caito Inc. Defendants shall release Plaintiffs, Settlement Class Members, and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the pending Action. Notwithstanding the foregoing, and without limitation, any claimed breaches of Paragraph 12 of this Agreement shall expressly survive final judicial approval.

14. **No Admission of Liability**. The Parties expressly agree that this Agreement is purely a compromise of a disputed claim and, whether or not this Agreement shall become final, nothing in this Agreement, nor any negotiations, documents, or discussions associated with it, shall be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing, fault, or damages whatsoever, or of (ii) the truth or the merits of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, all of which are expressly denied. All settlement negotiations, offers, counteroffers, and related communications are intended to be confidential compromise discussions and shall be treated as such under Federal Rule of Evidence 408 and any applicable state equivalents, regardless of whether based in statute, common law, regulation, or otherwise. Further, this Agreement and any and all negotiations, documents, and discussions associated with this Agreement shall not be used against any Defendant and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding. Without limiting the foregoing, nothing in the wording of Paragraph 12 is intended to evidence, suggest, or imply the existence of any conspiracy, cartel, restraint on trade, or the like (or the lack thereof); and the wording of that paragraph only exists to describe the covenants contained therein.

15. **Joint and Several Liability Preserved Against Other Defendants**. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than (a) the Caito Inc. Released

25

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

Claims, and (b) the Southwind Released Claims. All other claims against any Defendant are specifically reserved by Plaintiffs and the Settlement Class. All other claims based on alleged illegal conduct concerning ex vessel sales of Dungeness crab caught off the coast of, or landed in, California, Oregon, and/or coastal Washington (not including Puget Sound) by any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person are specifically reserved by Plaintiffs and members of the Settlement Class, other than the Caito Inc. Released Claims and Southwind Released Claims, which are released only as to the Caito Inc. Releasees and Southwind Releasees, respectively.

16. **Bar Order May be Sought**. The Caito Inc. Defendants may seek a bar order (and/or its equivalent), including without limitation the equivalent of a motion for determination of good faith settlement under California Code of Civil Procedure section 877.6, as well as any provisions of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent, with the timing of any motion seeking such an order being left to the sole discretion of the Caito Defendants, and Plaintiffs and the Settlement Class will not oppose such an order, but the entry of any such order shall not be a condition of settlement.

17. **CAFA**. The Caito Inc. Defendants shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished. Plaintiffs Lead Counsel shall provide the Caito Inc. Defendants with copies of the materials required under 28 U.S.C. § 1715, subdivisions (b)(3) and (7) within three (3) business days after Plaintiffs file their Preliminary Approval Motion.

26

18.  **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including challenges to the reasonableness of any party's actions, and no Party will object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum. The Parties agree that any final order of dismissal or the like shall explicitly incorporate this continuing jurisdiction clause and provide that the Court is retaining jurisdiction for the purposes set forth in this Agreement.

19.  **Entire Agreement**. This Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and the Caito Inc. Defendants pertaining to the settlement of the Action against the Caito Inc. Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and the Caito Inc. Defendants in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and the Caito Inc. Defendants, and approved by the Court.

20.  **Binding Effect**. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and the Caito Inc. Defendants. Without limiting the generality of the foregoing, upon Final Approval of this Agreement, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. Upon the Effective Date, the Southwind Releasees and Caito Inc. Releasees (other than the Caito Inc. Defendants who are first-party beneficiaries to this

27

Doc ID: b44f26c4137ca2a6f26323290a70a3c01c79c888

Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, Settlement Class Members, Releasors, Caito Inc. Releasees, and the Southwind Releasees any right or remedy under or by reason of this Agreement.

21.    **Execution in Counterparts**. This Agreement may be executed in counterparts by Plaintiffs and the Caito Inc. Defendants, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

22.    **Notice**. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 22), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

23.    **Privilege**. Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity. Moreover, nothing in this agreement shall diminish any common interest, allied litigant, or joint defense privileges relating to the Action. Caito shall have the right to destroy materials covered by attorney work product doctrine and shared subject to any joint defense agreement, common interest agreement, or allied litigant agreement.

24.     **Voluntary Settlement and Agreement; Advice of Counsel**. Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement. Each Party agrees that this Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

25.     **No Party is the Drafter**. This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for the Caito Inc. Defendants. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

26.     **Headings**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

27.     **Opportunity to Cure**. If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach (not to exceed fourteen (14) days under any circumstances, though a reasonable cure period may be shorter) before taking any action to enforce any rights under this Agreement.

28.     **Governing Law**. All terms of this Agreement shall be governed and interpreted according to the substantive laws of California without regard to its choice of law or conflict of laws principles.

29

29.   **<u>Reasonable Extensions</u>**. Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement, though this clause does not require the granting of any extensions (outside of notice and opportunity to cure provisions) absent requisite mutual agreement.

30.   **<u>Counsel's Express Authority</u>**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s), subject to Court approval.

FOR PLAINTIFFS:

Dated: 4/23/26

Stuart G. Gross (SBN 251019)
Ross A. Middlemiss (SBN 323737)
Travis H. A. Smith (SBN 331305)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628
sgross@grosskleinlaw.com
rmiddlemiss@grosskleinlaw.com
tsmith@grosskleinlaw.com

Matthew W. Ruan (SBN 264409)
Samantha M. Gupta (*Pro Hac Vice*)
**JUSTICE JAGHERLONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
(224) 632-4500
mruan@jjlmlaw.com
sgupta@jjlmlaw.com

Matthew S. Weiler (SBN 236052)
Raymond S. Levine (SBN 348030)

30

**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
(415) 421-7100
mweiler@schneiderwallace.com
rlevine@schneiderwallace.com

*Attorneys for Plaintiffs Brand Little, Robin Burns, Cherry Fisheries Inc., and the Proposed Classes*

FOR THE CAITO INC. DEFENDANTS:

Dated:  04 / 23 / 2026

_____
Colin W. Morrow (SBN 285024)
Vannucci Momsen Morrow
An Association of Sole Practitioners
P.O. Box 1214
Mendocino, CA 95460
707-380-1070
cmorrow@vmm-law.com

*Attorneys for the Caito Inc. Defendants*

31

**Dropbox** Sign                                        Audit trail

| | |
|---|---|
| **Title** | 260420_Caito_Settlement_Final_Draft.pdf |
| **File name** | 260420_Caito_Settlement_Final_Draft.pdf |
| **Document ID** | b44f26c4137ca2a6f26323290a70e3c01c79c888 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
**04 / 23 / 2026**
14:39:12 UTC-7
Sent for signature to Colin Morrow (cmorrow@vmm-law.com) by services@clio.com acting on behalf of cmorrow@vmm-law.com
IP: 98.42.5.90

**VIEWED**
**04 / 23 / 2026**
14:39:49 UTC-7
Viewed by Colin Morrow (cmorrow@vmm-law.com)
IP: 98.42.5.90

**SIGNED**
**04 / 23 / 2026**
14:40:06 UTC-7
Signed by Colin Morrow (cmorrow@vmm-law.com)
IP: 98.42.5.90

**COMPLETED**
**04 / 23 / 2026**
14:40:06 UTC-7
The document has been completed.

Powered by **Dropbox** Sign