COLIN W. MORROW, SBN 285024
Email: cmorrow@vmm-law.com
VANNUCCI MOMSEN MORROW
AN ASSOCIATION OF SOLE PRACTITIONERS
45060 Ukiah St., Ste. A
P.O. Box 1214
Mendocino, CA 95460
Telephone:   707-380-1070
Facsimile:   707-234-8025

*Attorney for defendants*
*CAITO FISHERIES, INC., JOHN CAITO,*
*JAMES CAITO, JEANETTE CAITO,*
*& JOSEPH CAITO*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **BRAND LITTLE, etc., et al.** | Case No. 3:23-cv-01098-AGT |
| Plaintiffs,<br>v. | **CAITO INC. DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT AND BAR ORDER** |
| **PACIFIC SEAFOOD PROCUREMENT, LLC, etc., et al.,** | Date:        July 31, 2026<br>Time:        10:00 AM<br>Judge:       Honorable Alex G. Tse<br>Courtroom:  A, 15th Floor |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION ............................................................................ v

STATEMENT OF REQUESTED RELIEF ....................................................................... vi

STATEMENT OF ISSUE TO BE DECIDED ................................................................. vii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................... 1

    II.a.    Plaintiffs' Allegations & Procedural History ............................................. 1

    II.b.    History of Arm's Length Negotiations ...................................................... 2

    II.c.    The Caito Defendants Have Provided Substantial Materials in Discovery ... 3

III.    APPLICABLE LAW & ARGUMENT ................................................................ 3

    III.a.   There Is No Right to Contribution or Equitable Indemnity in the Case at Hand, and Even If There Were Such a Right a Good Faith Settlement Cuts Off Such a Right ............................................................................................ 3

    III.b.   Rule 23 Motions Exist Substantively Hand-in-hand with Motions for Determinations of Good Faith Settlements ................................................ 4

    III.c.   There Is No Right to Contribution as to Sherman Act Claims .................... 5

    III.d.   There is No Right to Contribution Under California's Cartwright Act ......... 5

    III.e.   There is No Right to Contribution Under the Oregon Unlawful Trade Practices Act ........................................................................................... 5

    III.f.   Good Faith Settlements Cut Off Any Right to Contribution Under California Law ........................................................................................................ 6

    III.g.   The Settlement Is More Favorable to Plaintiffs Than the Other Settlements Obtained In the Case at Hand and Other Settlements that Have Passed Rule 23 Muster ....................................................................................... 7

    III.h.   The Lack of Merit or Unlikelihood of Plaintiffs Prevailing Is Also Reasonably Considered In Favor of Approving a Good Faith Settlement ...................... 8

    III.i.   The Settlement Lacks Any Indicia of Collusion ....................................... 12

IV.     CONCLUSION ................................................................................................... 12

**TABLE OF AUTHORITIES**

***Federal Cases***

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 553 (2007) ............................................................................................9

*Cement Mfrs. Protective Assn. v. United States*
268 U.S. 588 (1925) ...................................................................................................9

*Fenerjian v. Nong Shim Co.*
No. 13-CV-04115-WHO, 2015 WL 13021316 (N.D. Cal. Nov. 10, 2015)......................5

*Federal Sav. and Loan Ins. Corp. v. Butler*
904 F.2d 505, 511 (9th Cir. 1990) ...........................................................................3, 4

*Fisher Bros., Inc. v. Mueller Brass Co.*
630 F.Supp. 493, 499 (E.D. Pa.1985) .........................................................................8

*Four In One Co. v. S.K. Foods, L.P.*
No. 2:08-CV-3017 KJM EFB, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014) .........................8

*Franklin v. Kaypro Corp.*
884 F.2d 1222, 1232 (9th Cir. 1989) ..........................................................................4

*Gibson v. Cendyn Group, LLC*
148 F.4th 1069 (9th Cir. 2025) ...............................................................................9, 10

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935, 947 (9th Cir. 2011) .............................................................................12

*In re Optical Disk Drive Antitrust Litig.*
No. 10-MD-02143-RS, 2017 WL 6503743 (N.D. Cal. Dec. 18, 2017)........................10

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.,*
No. CIV. 86-3538KN(GX), 1989 WL 73211 (C.D. Cal. Mar. 9, 1989)..........................4

*Kirkorian v. Borelli*
695 F.Supp. 446 (N.D. Cal. 1988) ..............................................................................4

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*
185 F.3d 957 (9th Cir. 1999)......................................................................................5

*Pecover v. Electronics Arts Inc.*
633 F. Supp. 2d 976 (N.D. Cal. 2009) ........................................................................5

*Redwood Theatres, Inc. v. Festival Enterprises, Inc.*
908 F.2d 477, 481 (9th Cir. 1990) ..............................................................................5

*Texas Industries, Inc. v. Radcliff Materials, Inc.*
451 U.S. 630 (1981)...................................................................................................5

*Todd v. Exxon Corp.*
275 F.3d 191 (2d Cir. 2001) .......................................................................................9

*United States v. Citizens & Southern National Bank*
422 U.S. 86 (1975) ....................................................................................................9

*United States v. United States Gypsum Co.*
438 U.S. 422 (1978) ..................................................................................................9

*Woodard v. Labrada*
No. EDCV 16-00189, 2019 WL 4509301 (C.D. Cal. Apr. 23, 2019) ..............................4

***State Cases***

*Chen v. Berenjian*
33 Cal.App.5th 811 (2019) .......................................................................................11

*City of Grand Terrace v. Superior Court*
192 Cal.App.3d 1251 (1987).................................................................................7, 8

*County of Los Angeles v. Guerrero*
209 Cal.App.3d 1149 (1989) ...................................................................................11

*North County Contractor's Assn. v. Touchstone Ins. Services*
27 Cal.App.4th 1085 (1994) ................................................................................................8
*Schmid v. Superior Court*
205 Cal.App.3d 1244 (1988) ............................................................................................11
*Shin v. Sunriver Preparatory School, Inc.*
111 P.3d 762 (Or. Ct. App. 2005) .......................................................................................6
*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*
38 Cal.3d 488 (1985)..........................................................................................................6

**Federal Rules of Civil Procedure**
Rule 12..........................................................................................................................1, 10
Rule 23 ...................................................................................................... 1, 4, 7, 8, 11, 12

**State Statutes**
Cal. Civ. Code § 3439.04 ..................................................................................................11
Cal. Code Civ. Proc. § 875................................................................................................5
Cal. Code Civ. Proc. § 877 ...................................................................................... 3, 6, 11
Cal. Code Civ. Proc. § 877.6............................................................................. 3, 4, 6, 7, 11
Or. Rev. Stat. § 646.715, subd. (2) ....................................................................................6

CAITO INC. DEFENDANTS' MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT AND
BAR ORDER

- iv -   3:23-CV-01098-AGT

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 31, 2026, at 10:00 AM, or as soon thereafter as this matter may be heard in Courtroom A, 15th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Caito Fisheries, Inc., John Caito, James Caito, Joseph Caito, and Jeanette Caito (collectively "Caito Inc. Defendants") will and hereby do move this Court for an order of determination of good faith settlement and for a bar order as set forth herein and in the contemporaneously lodged proposed order. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Colin W. Morrow, the Declaration of Joseph Caito, any exhibits attached thereto, the Court's files and records in this matter, and such other further matters as the Court may consider.

## STATEMENT OF REQUESTED RELIEF

Defendants Caito Fisheries, Inc., John Caito, James Caito, Joseph Caito, and Jeanette Caito (collectively "Caito Inc. Defendants"), respectfully pray that the Court enter an order of determination of good faith settlement and for a bar order barring any claims of contribution, equitable comparative contribution, or partial or comparative equitable indemnity, based on comparative negligence or comparative fault by any co-defendants in the present action that could have been brought in the present action.

## STATEMENT OF ISSUE TO BE DECIDED

Should a bar order issue barring any claims of contribution, equitable comparative contribution, or partial or comparative equitable indemnity, based on comparative negligence or comparative fault by any co-defendants in the present action that could have been brought in the present action based upon (i) this Court's inherent power to issue such an order; (ii) the lack of any right to contribution under any federal antitrust law, applicable California law, and applicable Oregon law; and (iii) the right of a settling co-defendant to obtain such relief even where contribution might be allowed where a settlement is made in good faith?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Caito Fisheries, Inc., Joseph Caito, James Caito, Jeanette Caito, and John Caito (collectively, "Caito Inc. Defendants") have reached a putative settlement with the class-action Plaintiffs in this action subject to confirmation under Rule 23. In light of both the commonality of Rule 23 proceedings and good faith settlement determination proceedings—as well as generally applicable bars to contribution in antitrust actions—a determination of good faith is properly entered by this Court at this time.

Such a motion is properly granted because (as detailed below) the co-defendants have no right to contribution under the applicable antitrust laws, because the settlement is a good faith settlement within the ballpark of a reasonable compromise, and because the settlement is the product of arm's length negotiations before a Federal Magistrate Judge and bears no indicia of collusion or side-dealing. Even if there were any hypothetical right to contribution, a finding that a settlement is in good faith cuts off any such hypothetical right.

## II. BACKGROUND

### II.a. Plaintiffs' Allegations & Procedural History

This case began life essentially as a monopsony claim against Pacific Seafood and its related entities and affiliates. Dkt. 1. Thereafter, this Court granted a motion to dismiss under Rule 12(b)(6) with leave to amend. Dkt. 59. In amending, Plaintiffs threw in the towel on their initial monopsony theory. Instead, Plaintiffs advanced a completely revised theory of the case in which the abandoned Pacific Seafood monopsony claim was replaced by a supposed horizontal price fixing conspiracy. Dkt. 78. In addition to a Sherman Act Section One claim, the first amended complaint also added a pendent California Cartwright Act claim. Dkt. 78. It was only under this completely revised theory that Caito Fisheries, Inc. was first brought into the case around August 20, 2024. Dkt. 78. This Court denied an omnibus motion to dismiss the first amended complaint—to which Caito Fisheries, Inc. joined without supplemental briefing—around January 17, 2025.

Dkt. 242.

Joseph Caito, James Caito, Jeanette Caito, and John Caito were first added by means of a fifth amended complaint, filed around February 3, 2026. Dkt. 596. The fifth amended complaint added theories of fraudulent conveyance as to the individual Caito defendants. Dkt. 596. The fifth amended complaint also added a pendent Oregon Unlawful Trade Practices Act Claim. Dkt. 596.

## II.b. History of Arm's Length Negotiations

Caito Fisheries, Inc. and Plaintiffs stipulated for a referral to an early settlement conference around October 1, 2025. Dkt. 429. This Court entered an order in conformity therewith around October 16, 2025. Dkt. 444. Respective counsel attended an initial scheduling conference with the Honorable Joseph C. Spero around November 6, 2025. Dkt. 477. Respective counsel subsequently exchanged various settlement correspondence and conducted a second pre-settlement conference Zoom conference with Judge Spero around January 6, 2026. Dkt. 560. The parties attended a full-day in-person settlement conference with Judge Spero on January 15, 2026. Dkt. 578. The case did not settle during the pendency of that all day in-person settlement conference, but the parties continued to engage in ongoing settlement discussions both with and without the assistance of Judge Spero including further Zoom proceedings on January 22, 2026. Dkt. 584. Thereafter, the parties placed an agreement in principle on the record around January 28, 2026. Dkt. 592. Thereafter, the parties engaged in substantial further back and forth negotiations—including further conferencing with Judge Spero—about reducing the agreement in principle to a written settlement agreement, until finally executing a written settlement agreement around April 23, 2026. Dkt. 641; Colin Morrow Dec., ¶¶ 4 & 5.

While the Caito Inc. Defendants vigorously deny the allegations of this meritless lawsuit, they made a strictly pragmatic determination, driven by the profound non-recoupable expenses of federal antitrust litigation and the years of prolonged uncertainty that such lawsuits entail, to settle this case.

**II.c. The Caito Defendants Have Provided Substantial Materials in Discovery**

The Caito Inc. Defendants have diligently complied with their discovery obligations, including without limitation, conducting forensic scanning of all four Caito individual mobile devices, producing approximately 31,736 pages of text messages, emails, and various electronic files including contact lists. Colin Morrow Dec., ¶ 7. The Caito Inc. Defendants have also diligently responded to interrogatories and requests for production. Colin Morrow Dec., ¶ 7.

## III. APPLICABLE LAW & ARGUMENT

### III.a. There Is No Right to Contribution or Equitable Indemnity in the Case at Hand, and Even If There Were Such a Right a Good Faith Settlement Cuts Off Such a Right

The legal principles applicable to this motion run in two parallel veins. In one vein, there is no right to contribution among co-defendants in relation to Sherman Act Section One claims, nor is there a right to contribution under the related pendent state causes of action. In the second vein, under California Law, even if there were such a hypothetical right to contribution, California Code of Civil Procedure section 877 provides that a prejudgment settlement "shall discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Code Civ. Proc. § 877, subd. (b). California Code of Civil Procedure section 877.6 provides that a settling party may seek a determination of good faith settlement by a court of competent jurisdiction, and that "[a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Code Civ. Proc § 877.6, subds. (a)(2) and (c). This is a substantive, and not just procedural, law. "It is the substantive provisions of California law that are applicable (in this case section 877)." *Federal Sav. and Loan Ins. Corp. v. Butler,* 904 F.2d 505, 511 (9th Cir. 1990); *see also id.* at fn. 6 (noting a substantive element to Code Civ. Proc § 877.6).

These two veins are discussed below. It should also be noted that as to the second vein that there is a close relationship between the Court's consideration of the Plaintiffs' pending motion for preliminary approval under Rule 23 and the evaluation of good faith under applicable California law.

### III.b. Rule 23 Motions Exist Substantively Hand-in-hand with Motions for Determinations of Good Faith Settlements

"[N]othing is to prevent the district court from granting a motion for an early determination of the good faith question. In fact, it makes eminent good sense to do so." *Federal Sav. and Loan Ins. Corp., supra,* 904 F.2d at 511.

"Many courts have commented on the similarity between a Rule 23 hearing and hearing pursuant to section 877.6." *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1232 (9th Cir. 1989). In examining applicable factors identified below, Courts have recognized that "[m]any of these factors are the same as those which were examined in determining whether to approve a settlement under Rule 23." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.,* No. CIV. 86-3538KN(GX), 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989). "There is obviously some overlap between this 'good faith' test and the basic fairness test outlined under Federal Rule of Civil Procedure 23(e)." *Kirkorian v. Borelli*, 695 F.Supp. 446, 454 (N.D. Cal. 1988).

A "Court need not engage in an additional, separate fairness analysis regarding California's 'good faith settlement' provision pursuant to California Code of Civil Procedure § 877.6" apart from its Rule 23(e) analysis. *Woodard v. Labrada,* No. EDCV 16-00189, 2019 WL 4509301, at *13 (C.D. Cal. Apr. 23, 2019).

If anything, a court should probably be more vigilant under a Rule 23 analysis than under a motion for good faith settlement because the other defendants are active participants in the action and given notice of the good faith settlement determination motion, while class participants are generally ignorant of motions for preliminary approval under Rule 23.

\\

### III.c. There Is No Right to Contribution as to Sherman Act Claims

There is no right to contribution among co-defendants in a Sherman Act Section One claim. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639 (1981). "Nothing in these statutes refers to contribution, and if such a right exists it must be by implication." *Ibid.* Nevertheless, "Congress neither expressly nor implicitly intended to create a right to contribution." *Id.* at 640. Even as to federal common law, "contribution does not implicate 'uniquely federal interests' of the kind that oblige courts to formulate federal common law." *Id. at 642.*

### III.d. There is No Right to Contribution Under California's Cartwright Act

Generally, Code of Civil Procedure section 875, subdivision (d) expressly carves out that there is no right to contribution among intentional tortfeasors. "There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person." Code Civ. Proc. § 875, subdivision (d).

More particularly, "'the Sherman Act and Cartwright Act are to be interpreted in harmony with one another.'" *Fenerjian v. Nong Shim Co.,* No. 13-CV-04115-WHO, 2015 WL 13021316, at *3 (N.D. Cal. Nov. 10, 2015), quoting *Pecover v. Electronics Arts Inc.,* 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009). "'The federal and California antitrust laws have identical objectives and are harmonious with each other.'" *Fenerjian, 2015 WL 13021316, at *3.*, quoting *Redwood Theatres, Inc. v. Festival Enterprises, Inc.*, 908 F.2d 477, 481 (9th Cir. 1990). Consistent with this, "both the Sherman Act and the Cartwright Act . . . do not provide for contribution." *Fenerjian, 2015 WL 13021316, at *3.*

### III.e. There is No Right to Contribution Under the Oregon Unlawful Trade Practices Act

Similarly, "Oregon antitrust statutes are almost identical to the federal antitrust statutes." *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 963 (9th Cir. 1999). "Oregon courts look to federal antitrust decisions for 'persuasive' guidance in interpreting the state antitrust laws." *Id.* at 963. As a matter of statute, "[t]he decisions of federal courts in construction of federal law relating to the

same subject shall be persuasive authority in the construction of" Oregon's antitrust laws. Or. Rev. Stat. § 646.715, subd. (2). Moreover, under Oregon law, "intentional misconduct is not 'fault' subject to apportionment within the meaning of" Oregon's apportionment statutes. *Shin v. Sunriver Preparatory School, Inc.,* 111 P.3d 762 (Or. Ct. App. 2005).

### III.f. Good Faith Settlements Cut Off Any Right to Contribution Under California Law

Code of Civil Procedure section 877 gives "courts occasion to review settlements between a plaintiff and one of several tortfeasors to determine whether they prejudiced the interests of a nonsettling tortfeasor." *Tech-Bilt, Inc. v. Woodward-Clyde & Associates,* 38 Cal.3d 488, 495 (1985).

"[T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." *Id.* at 499. "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Ibid.* "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Ibid.*

"The party asserting the lack of good faith, *who has the burden of proof on that issue* . . . , should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6." *Id.* at 499–500 (emphasis added).

"[W]hen no one objects, the barebones motion which sets forth the ground of

good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." *City of Grand Terrace v. Superior Court* 192 Cal.App.3d 1251, 1261 (1987).

"If the good faith settlement is contested, section 877.6, subdivision (d), sets forth a workable ground rule for the hearing by placing the burden of proving the lack of good faith on the contesting party. Once there is a showing made by the settlor of the settlement, the burden of proof on the issue of good faith shifts to the non-settlor who asserts that the settlement was not made in good faith." *Ibid*. "If contested, declarations by the non-settlor should be filed which in many cases could require the moving party to file responsive counterdeclarations to negate the lack of good faith asserted by the non-settling contesting party." *Id* at 1262.

**III.g. The Settlement Is More Favorable to Plaintiffs Than the Other Settlements Obtained In the Case at Hand and Other Settlements that Have Passed Rule 23 Muster**

As Plaintiffs' concurrent Rule 23 motion points out, "Caito purchased a total of 11,066,883 pounds of crab between the 2015-2016 . . . . [And,] Caito Inc. paid approximately $34,250,797 for this crab." Dkt. 740, 7:25-8:3. These numbers are matters of public record because transactions between crabbers and processors (such as Caito Fisheries, Inc.) are reported as a matter of public record by what are termed "fish tickets." Dkt. 740-1, ¶ 28. The Caito Inc. Defendants "have agreed to pay $1.25 million within 30 days of the Court's granting the Final Approval Motion to resolve the claims of the First Round Settlement Class." Dkt. 740, 8:24-25. Utilizing the numbers above, the Caito Inc. Defendants are paying 3.65% of Caito Fisheries, Inc.'s gross purchases of Dungeness crab during the time period relevant to the allegations. Viewing the numbers above through a different lens, the Caito Inc. Defendants are paying roughly $112.95 for every thousand pounds of Dungeness crab they purchased during the time period relevant to the allegations.

By comparison, Pacific Dream has agreed to pay $1,000,000, while having purchased "10,838,044 pounds" of Dungeness crab for "$47,160,467." Dkt. 740, 7:15-

16. Pacific Dream is only paying 2.12% of their gross purchases of Dungeness crab during the time period relevant to the allegations. Pacific Dream is only paying roughly $92.27 for every thousand pounds of Dungeness crab they purchased during the time period relevant to the allegations. The Caito Inc. Defendants are plainly paying a premium settlement vis-à-vis a contemporaneously settling co-defendant.

In the broader context of Rule 23 motions, courts have routinely approved far less favorable settlements. As Plaintiffs point out in their contemporaneous Rule 23 moving papers, courts have approved settlements of one-percent or less of a company's U.S. commerce. Dkt. 740, 13:23-28, citing *Four In One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFB, 2014 WL 28808, at *9 (E.D. Cal. Jan. 2, 2014) (settlement amounting to 1% of defendants' U.S. sales of tomatoes during the class period "compares favorably with antitrust class action settlements ultimately approved by other courts"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F.Supp. 493, 499 (E.D. Pa.1985) (approving antitrust class action settlement that "represented approximately .2% of sales of $240 million during 1979–82.)

### III.h. The Lack of Merit or Unlikelihood of Plaintiffs Prevailing Is Also Reasonably Considered In Favor of Approving a Good Faith Settlement

In determining good faith, a "judge should make an educated guess whether the settlement approximates the settling defendant's apportionment of liability and is not grossly disproportionate to the settlor's fair share of anticipated damages." *North County Contractor's Assn. v. Touchstone Ins. Services,* 27 Cal.App.4th 1085, 1090 (1994). Nevertheless, a "[r]easonable range does not limit a good faith settlement to the settling defendant's theoretical proportionate or fair share; and bad faith is thus not established by a showing that the settling defendant paid less than his or her theoretical proportionate or fair share." *City of Grand Terrace, supra,* 192 Cal.App.3d at 1260 (1987) (internal quotation marks and citation omitted). Implicit in any consideration of anticipated damages is the question of the merits of an action, or the settlement beneficiary's likelihood of prevailing at trial.

As reflected in the most recent case management statement, as of yet, Plaintiffs have not identified an express agreement to fix prices, which is contrastable from price dissemination that would need to be evaluated under a rule of reason analysis and/or in light of the need for so-called plus factors. Dkt. 742, 12:2-14, 13:9-24. The most recent joint case management statement makes clear that Plaintiffs have yet to present a clear theory of if there was ever any agreement to fix prices, or if they are just proceeding on limited allegations of pricing dissemination. Dkt. 742, 12:2-14, 13:9-24.

As to these latter limited allegations of price dissemination, the "exchange of information is not illegal *per se." Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir. 2001). "[T]he dissemination of price information is not itself a per se violation of the Sherman Act." *United States v. Citizens & Southern National Bank*, 422 U.S. 86, 113 (1975). "The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed, such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." *United States v. United States Gypsum Co.,* 438 U.S. 422, 441 n. 16 (1978). "A number of factors including most prominently the structure of the industry involved and the nature of the information exchanged are generally considered in divining the procompetitive or anticompetitive effects of this type of interseller communication." *Ibid*. "[I]nformation exchange is not always anticompetitive and can enhance competition by making competitors more sensitive to each other's price changes, enhancing rivalry among them." *Todd*, *supra*, 275 F.3d at 214. "In *Cement Mfrs. Protective Assn. v. United States*, 268 U.S. 588 (1925), the Court held exempt from Sherman Act § 1 liability an exchange of price information among competitors because the exchange of information was necessary to protect the cement manufacturers from fraudulent behavior by contractors." *United States Gypsum Co., supra,* 438 U.S. at 448. As the Ninth Circuit recently articulated in *Gibson v. Cendyn Group, LLC,* 148 F.4th 1069 (9th Cir. 2025), "unreasonable restraints must be 'effected by a contract, combination, or conspiracy.'" *Id.* at 1079-1080, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). There,

the shared use of a common pricing algorithm was not an agreement, but mere parallel conduct:

> Competitors engage in what antitrust law calls "parallel conduct" when they make the same independent business decisions as each other. . . . But allegations of parallel conduct, "such as competitors adopting similar policies around the same time in response to similar market conditions," are "insufficient to state a claim" under Section 1. . . . And even consciously parallel conduct—i.e., similar conduct resulting from "observation of [one's] competitors' decisions" and "the pressures of an interdependent market"—does not violate Section 1.

(*Gibson*, *supra*, 148 F.4th at 1083 (internal citation omitted).)

Here, Plaintiffs' own operative complaint makes clear that any rule of reason analysis—or search for plus factors—will clearly fail Plaintiffs. Plaintiffs repeatedly highlight that there are low barriers to entry with various descriptions such as those of nimble "white van" buyers, Dkt. 596, ¶¶ 182-184, and the defendants not requiring the large capital expenditures for things like the million-dollar boats and hundreds of thousands of dollars of gear that are required of crabbers. Dkt. 596, ¶ 5. *Cf. In re Optical Disk Drive Antitrust Litig.,* No. 10-MD-02143-RS, 2017 WL 6503743, at *4 (N.D. Cal. Dec. 18, 2017) ("Generally speaking, the possibility of anticompetitive collusive practices is most realistic in concentrated industries.") (Citation and internal quotation marks omitted.) This is not a concentrated market that can be controlled by any of the defendants—let alone a small defendant like Caito Fisheries, Inc.—and low barriers to entry mean that any hypothetical efforts at anticompetitive effects can quickly be snuffed out by new entrepreneurial entrants.

The Court should also take notice that Plaintiffs' star witness—Ozzy Gregorio of Triple G Seafood—has been so uncooperative as to threaten to shoot a process server who was merely serving a subpoena. Dkt. 360-14.

There is also a lack of merit as to naming the individual Caito siblings. The individual naming has not been tested by Rule 12 motion as of yet because their obligation to respond to the complaint has been adjourned. Dkt. 623. At a minimum, the

operative complaint fails to allege a supposed fraudulent conveyance under California law. The operative complaint lacks either badges of actual fraud or the elements of constructive fraud, as are required under the applicable pendent state law claim. *See generally, Chen v. Berenjian, 33 Cal.App.5th 811, 817 (2019);* Civil Code § 3439.04. After all, the operative complaint alleges that Caito Fisheries, Inc. landed its last Dungeness crab on May 8, 2023, which was almost a year and a half prior to Caito Fisheries, Inc. even being given notice of being added to this action around August 20, 2024. Dkt. 596, ¶ 97.

At a minimum, this settlement was entered both prior to class certification and prior to any motions for summary judgment, such that any likelihood of prevailing remains fundamentally untested and unseasoned. Both the above considerations and the lack of trial by fire in litigation mean that any settlement must be viewed with a significant eye toward the discounts of uncertainty that must be applied in favor of the Caito Inc. Defendants being willing to resolve this matter—and against any guarantees of Plaintiffs seeing a dime of actual damages following a trial if the matter is litigated.

Moreover, Plaintiffs raise further concerns about collectability or a lack of assets in their concurrent Rule 23 motion. Dkt. 740, 15:13-17. Similarly, the Caito Inc. Defendants lack applicable insurance. Joseph Caito Dec., ¶ 4; Colin Morrow Dec., ¶ 3. Although Plaintiffs do not expressly claim that any discount has benefitted the Caito Inc. Defendants based upon doubts about collection, a bird in the hand is certainly worth more than two in the bush. Collectability can be considered in evaluating good faith. In *Schmid v. Superior Court,* 205 Cal.App.3d 1244 (1988), the California Court of Appeal held "a settlement of a personal injury lawsuit is in 'good faith,' for purposes of sections 877 and 877.6 of the Code of Civil Procedure, where a defendant pays the plaintiff the limit of the defendant's insurance policy and has no other assets, even though the amount paid in settlement is far less than the likely amount of a judgment against the defendant were the case to go to trial." (*Id.* at 1245–1246.) Similarly, in *County of Los Angeles v. Guerrero*, 209 Cal.App.3d 1149 (1989), a $30,000 settlement—even though

well below probable proportionate liability for their damages in excess of one million dollars—was in good faith due to a lack of other assets. *Id.* at 1156 & 1158.

### III.i. The Settlement Lacks Any Indicia of Collusion

Additionally, the settlement lacks any indicia of collusion. At the outset, it is clear that the experienced Honorable Joseph C. Spero was substantially involved in the settlement negotiations. He presided over not just a full day of in-person negotiations, but several Zoom sessions between counsel. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive"). Counsel Colin Morrow, as well as defendant Joseph Caito, both declare under penalty of perjury that there was no collusion. Joseph Caito Dec., ¶¶ 5 & 6; Colin Morrow Dec., ¶¶ 5 & 6.

Applying the factors outlined in *In re Bluetooth Headset Prods. Liab. Litig.*, there are no suggestions of collusion. These factors are addressed by experienced and aggressive class action counsel for Plaintiffs in their contemporaneous Rule 23 motion. Dkt. 740, 11:17-21, 14:7-14; *see also* Dkt. 740-1, ¶¶ 39 & 91-96.

### IV. CONCLUSION

Based upon the above, Caito Fisheries, Inc., Joseph Caito, James Caito, Jeanette Caito, and John Caito respectfully pray for a good faith determination under California law and that this Court enter an order of determination of good faith settlement and for a bar order barring any claims of contribution, equitable comparative contribution, or partial or comparative equitable indemnity, based on comparative negligence or comparative fault by any co-defendants in the present action that could have been brought in the present action.

\\

\\

\\

\\

Respectfully submitted,

DATED: June 24, 2026

Colin W. Morrow, Bar No. 285024
cmorrow@vmm-law.com

*Attorney for defendants*
*CAITO FISHERIES, INC., JOHN CAITO,*
*JAMES CAITO, JEANETTE CAITO,*
*& JOSEPH CAITO*