David J. Aveni (SBN 251197)
  david.aveni@wilsonelser.com
John R. Danos (SBN 210964)
  john.danos@wilsonelser.com
Colin V. Quinlan (SBN 332225)
  colin.quinlan@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
  **EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:    (213) 443-5100

Attorneys for Defendant Da Yang Seafood Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Brand LITTLE, et al.,<br><br>                     Plaintiffs,<br><br>          vs.<br><br>PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,<br><br>                     Defendants. | Case No. 3:23-cv-01098-AGT<br><br>**DEFENDANTS DA YANG SEAFOOD INC. AND GREAT OCEAN SEAFOOD INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SIXTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        September 4, 2026<br>Time:        10:00 a.m.<br>Location: 450 Golden Gate Avenue<br>                Courtroom A, 15th Floor<br><br>Judge Alex G. Tse<br><br>[Filed concurrently with Declaration of John Danos and Proposed Order] |

339631359v.2

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on September 4, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard by the United States District Court for the Northern District of California, in Courtroom A on the 15th Floor of the Phillip Burton Federal Building, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Alex G. Tse, Defendant Da Yang Seafood Inc. will, and hereby does, move the Court for an order dismissing the Sixth Amended Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of John Danos, the Proposed Order, the pleadings and papers on file in this action, and upon such other matters presented to the Court at the time of hearing.

**RELIEF SOUGHT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Da Yang Seafood Inc. seeks dismissal with prejudice of each claim asserted against it in the Sixth Amended Class Action Complaint, Dkt. No. 746.

**TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF ISSUES TO BE DECIDED ..........................................................................6

II.  STATEMENT OF FACTS ...............................................................................................................6

    A.  The Court's Prior Order Dismissing The TAC As To Da Yang ...................................6

    B.  The Sixth Amended Complaint As To Da Yang...........................................................7

III.  ARGUMENT ..................................................................................................................................14

    A.  Plaintiffs Fail To Plausibly Allege That Da Yang Entered Into The Alleged Agreement ...............................................................................................................................15

        1.  Exchanging Pricing Data Is Not *Per Se* Illegal.................................................16

        2.  Matching Market Prices Is Not Price Fixing ................................................17

        3.  There Are No Plausibly Alleged Facts That Da Yang Agreed To Price Caps Or To Match Pacific Seafood's Prices..........................................................18

    B.  Plaintiffs' Other Claims Fall Together with the Sherman Act Claim.........................18

    C.  Plaintiffs Should Not Be Granted Further Leave to Amend the Complaint ..............19

IV.  CONCLUSION................................................................................................................................19

DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT

339631359v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................7, 14, 16, 17

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ..................................................................19

*In re Cal. Bail Bond Antitrust Litig.*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ..................................................................14

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ..............................................................................15, 18

*In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*,
906 F. 2d 432 (9th Cir. 1990) ..............................................................................7, 17

*County of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) ................................................................................14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ..................................................................................15

*Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig. v. Samsung Elecs. Co.*,
28 F.4th 42 (9th Cir. 2022) .....................................................................................14

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042, 1047 (9th Cir. 2008) ......................................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..................................................................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 U.S. Dist. LEXIS 7516 ...................................................................................15

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ................................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008)..............................................................14, 15

339631359v.2

*Toscano v. PGA*,
  258 F.3d 978 (9th Cir. 2001) ...............................................................15

*Zucco Partners, LLC, v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...............................................................19

**California Cases**

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ...............................................................14

**Federal Statutes**

28 U.S.C.
  § 2201...............................................................................................15

Declaratory Judgment Act...................................................................15

Sherman Act..............................................................................7, 16, 18

Sherman Act
  § 1..............................................................................................14, 15

**Other Authorities**

Rule 12(b)(6)..............................................................................12, 14

DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT
339631359v.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs fail to plausibly allege facts showing that Defendant Da Yang Seafood Inc. entered into a price-fixing conspiracy.

2.    Whether Plaintiffs fail to plausibly allege state law and declaratory relief claims against Defendant Da Yang Seafood Inc.

3.    Whether the Court should dismiss the claims alleged by Plaintiffs against Defendants Da Yang Seafood Inc. with prejudice.

## II.    STATEMENT OF FACTS

On February 6, 2026, the Court entered its Order on Motions to Dismiss and to Stay Discovery ("Dismissal Order"), which dismissed the claims alleged in Plaintiffs' Third Amended Complaint[1] ("TAC") as to defendants Da Yang Seafood Inc. ("Da Yang") and Great Ocean Seafood Inc. ("Great Ocean") but granted Plaintiffs leave to amend.  (Dismissal Order, Dkt. #600 p. 6.)  On June 29, 2026, Plaintiffs filed their Sixth Amended Class Action Complaint ("SAC"), which re-alleges claims as to defendants Da Yang and Great Ocean.  As with the TAC, the SAC alleges that Da Yang and Great Ocean entered into a horizontal price-fixing agreement with other Defendants.  Yet, despite adding allegations as to Da Yang, the new allegations are of the same nature and character as the allegations in the TAC that the Court already held to be insufficient.

### A.    The Court's Prior Order Dismissing The TAC As To Da Yang

In its order dismissing the TAC as to Da Yang, the Court held that the "allegations in the [TAC] don't plausibly support that Da Yang and Great Ocean joined the conspiracy…" (Dismissal Order, Dkt. #600 p. 1.)  In reaching this conclusion, the Court found that Plaintiffs' claims against Da Yang relied on two types of communications with other buyers.  First, Plaintiffs pointed to communications between Da Yang and other buyers sharing pricing information.  The Court held that the "messages do indicate a tacit agreement to exchange pricing data, but

---

[1] As the Court noted, the operative complaint had been amended twice after Da Yang filed its motion as to the TAC, but the allegations as to Da Yang had not changed in the Fifth Amended Complaint.  (Dismissal Order, Dkt. #600 p1 n. 1.)  For the sake of clarity, Da Yang refers to its first motion to dismiss as applying to the TAC since that is how it was originally styled.

6
DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT

339631359v.2

'agreements to exchange pricing data do not themselves constitute a *per se* violation of the Sherman Act.' *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 906 F. 2d 432, 447 n. 13 (9th Cir. 1990)." (*Id*. p. 2.)

Second, the Court analyzed the communications that Plaintiffs argued demonstrate that Da Yang agreed to match prices with other buyers. Rather than an agreement to match prices of other buyers, the Court merely found Da Yang to be matching market prices. (Dismissal Order, Dkt. #600 p. 3.) As the Court held: "Matching market prices isn't price fixing. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007) ('[C]onscious parallelism, a common reaction of firms in a concentrated market that recognize their … interdependence with respect to price and output decisions is not in itself unlawful.') (citation modified)." (*Id*.)

Plaintiffs also attempted to incorporate by reference prior arguments that there is circumstantial evidence of price fixing such as supposed "suspicious changes in buying patterns" and "a tacit refusal by buyers to set opening prices until Pacific Seafood did." (*See* Dismissal Order, Dkt. #600 p. 3-4.) However, as the Court pointed out, it "resolved the prior motion to dismiss [as to other Defendants] without evaluating Plaintiffs' circumstantial allegations of price fixing." (*Id*. p. 4 n. 3.) Rather, "[a]s to almost all Defendants who had moved to dismiss, the Court held that Plaintiffs had plausibly alleged direct evidence of price fixing, including allegations that Defendants had agreed to price ceilings and to matching Pacific Seafood's prices." (*Id*.) As the Court found, "Da Yang isn't linked to any of this conduct." (*Id*. p. 4.)

Quite simply, Plaintiffs had not "pleaded facts supporting that Da Yang joined a price-fixing conspiracy." (Dismissal Order, Dkt. #600 p. 4.) Because all of Plaintiffs' claims, including its state law claims, were "predicated on the same allegations of an agreement to restrain trade," all of the claims failed as a matter of law. (*Id*.)

**B.     The Sixth Amended Complaint As To Da Yang**

As the Court is well aware, Plaintiffs allege that "Defendants, led by Pacific Seafood, … created a pricing cartel that has artificially fixed, depressed, and controlled the ex vessel price paid to crabbers in the Pacific NW Area…" (SAC ¶ 8.) Plaintiffs allege that Defendants entered into an agreement to accomplish this goal with five material points: (a) allowing Pacific Seafood to set

339631359v.2

the price that all Defendants would pay at the start of each crabbing season; (b) delaying the crab season in certain years to when demand would be lower, setting lower starting price points for the rest of the season; (c) coordinating the prices they pay throughout the season to keep prices artificially low; (d) policing compliance by each other and other buyers with the artificially low prices they set; and (e) not purchasing crab directly from crabbers in ports where a Defendant does not have a presence; instead only purchasing crab in that port from another Defendant (what Plaintiffs call "out the backdoor" purchases).  (*Id*.)

Plaintiffs' Sixth Amended Complaint does not contain any factual allegations that Da Yang participated in a scheme to delay the opening of any crab season, that Da Yang policed compliance with artificially low prices with respect to other buyers, or that Da Yang engaged in "out the backdoor" sales or purchases.  Presumably, Plaintiffs will respond that they provide factual allegations that Da Yang was coordinating prices with other buyers during the season and of one instance in which Da Yang was discussing season opening prices.  Although there, Plaintiffs admit Da Yang did not actually pay the supposedly agreed price or even buy crab at the start of that season.   On these points, the Sixth Amended Complaint merely expands on Plaintiffs' earlier, insufficient allegations that, at most, Da Yang shared pricing information with other buyers and changed its prices based on changes in the market price.  To be sure, Plaintiffs adorn the factual allegations with rhetorical flourishes that assume the conspiracy they are factually attempting to allege, but the underlying factual allegations do not support the rhetoric.  To illustrate this, the following is an unadorned recitation of the Sixth Amended Complaint's factual allegations as to Da Yang, using Plaintiffs' section headings.

Da Yang Is a Frequent Participant in the Remarkably Numerous Calls that Occur Amongst Cartel Member (SAC ¶¶ 505-508)

In Section IV.A of the SAC (¶¶ 505-508), Plaintiffs list the number of alleged phone calls between employees of buyers with employees of other buyers.  Plaintiffs do not identify the subject matter of these phone calls, whether they were personal or business, whether they were in or out of crab season, or if they had anything to do with Dungeness crab purchasing, pricing, or at all.

DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT

339631359v.2

Da Yang and Safe Coast (February 2023) (SAC ¶¶ 510-514)

After alleging that Da Yang and "cartel members" frequently participate in text messages "that have the purpose and effect of fixing the prices paid to crabbers in the Pacific Northwest Area for Dungeness crab" (SAC ¶ 509), Plaintiffs present a number of sections titled by buyers and dates that often offer texts between a Da Yang employee and an employee of another buyer with an alleged result or import that is a non-sequitur.

In the first such section, there is an internal text message at Safe Coast that "Da Yang heard we raised the price and Dana [Ferguson] called to confirm." (SAC ¶ 510) (bracketed addition in SAC). After this phone call, Da Yang *raised* its price for live crab by over 20%. (*Id*. ¶¶ 511, 512.) Based on Plaintiffs' remaining allegations in this section, Da Yang's price was the *highest* at this time amongst Defendants. (*See id*. ¶ 513.)

Da Yang and Safe Coast (March 2023) (SAC ¶¶ 515-520)

This section again starts with an internal Safe Coast email indicating that boats keep telling it that Da Yang is paying a higher price for live crab. (SAC ¶ 515.) Plaintiffs then allege that there was a phone call between Da Yang and Safe Coast "to coordinate prices." (SAC ¶ 516.) But based on Plaintiff's own allegations Da Yang and Safe Coast did not do so. After the phone call, Safe Coast kept its prices "consistent" with what it was already paying, which was more than Da Yang. (*Id*.) There was roughly a 25% price difference between the buyers. (*Id*.)

Da Yang and Pacific Dream (April, 2023) (SAC ¶¶ 521-524)

Plaintiffs allege that, on April 10, 2023, Chang Lee of Da Yang asked Dana Ferguson of Pacific Dream to confirm the live price in Winchester Bay. (SAC ¶ 521.) Ferguson responded with the price he thought was being paid in Garibaldi and the price being paid "here." (*Id*.) A day later, Da Yang was allegedly paying the higher price between the two. (*Id*.) A week later, Mr. Lee asked Mr. Ferguson if the price had increased to one of two prices, Mr. Ferguson responded with the higher price, and Da Yang *raised* its price to the higher price. (*Id*. ¶ 523.) Plaintiffs then allege that Da Yang maintained this price throughout the rest of the month, *the top of the price range* any of the other Defendants were paying. (*Id*. ¶ 524.) Of course, a few paragraphs later,

339631359v.2

Plaintiffs concede that Da Yang actually raised its price even more (by over 15%) less than a week later, which remained at the top of the price range amongst Defendants. (*Id*. ¶ 530.)

Da Yang and Living Pacific (April 2023) (SAC ¶¶ 525-530)

On April 13, Chang Lee of Da Yang texted Geoff Molino of Living Pacific because he had heard that another buyer had raised its price. (*Id*. ¶ 527.) Mr. Molfino allegedly responded that he had heard a couple of buyers in Westport had raised prices as Mr. Lee had heard, and that the prices in Newport and Winchester were a bit lower. (*Id*.) Mr. Lee then indicated that Da Yang would have to raise its price to the following day, higher than Pacific Dream (another buyer) and consistent with the market in Newport and Winchester – a 15% increase over a few days prior. (*Id*.)

Plaintiffs attempt to make much of the allegation that Mr. Lee commented, "[n]ot much crab for us." (SAC ¶ 528) (alteration in SAC). While that statement is ambiguous at best, Plaintiffs take it to mean that there should have been some unspecified higher price that Da Yang was paying, but the only factual allegations provided affirm that Da Yang moved to the top of the market set by allegedly comparable buyers. Plaintiffs allege that other comparable buyers further raised prices later in April, and Da Yang, again, ***increased*** to the top end of the market. (*Id*. ¶¶ 529, 530.)

Da Yang and Pacific Dream, Safe Coast, and Living Pacific (December 2023 & January 2024) (SAC ¶¶ 531-535)

Plaintiffs allege that in December 2023, Da Yang's Chang Lee messaged other buyers about prices, receiving a range of responses. (*See* SAC ¶¶ 531, 532.) Plaintiffs then allege that a number of Defendants paid the same price at the start of the season (purportedly representing an agreed upon "price cap"), but that Da Yang was not one of them. (*See id*. ¶ 533.)

Da Yang and Safe Coast, Pacific Dream, and Living Pacific (December 2023) (SAC ¶¶ 536-538)

Plaintiffs alleged that in late December 2023, Da Yang reached out to three other buyers to confirm that prices were rising, and those buyers confirmed that various buyers had in fact raised

339631359v.2

prices. (SAC ¶¶ 536-537.) Da Yang then raised its live price even higher than those confirmed prices in January 2024. (*Id.* ¶ 538.)

Da Yang and Fathom (December 2023) (SAC ¶¶ 539-552)

Plaintiffs allege that Kyle Horgan of Great Ocean[2] attended the Oregon Department of Agriculture meeting of crabbers and buyers on December 10 and 11, 2023. (SAC ¶ 539.) The buyers at the meeting made an offer that the crabbers rejected. (*Id.* ¶ 544.) Nick Moreno at Fathom then texted Mr. Horgan that Fathom offered its fleet a higher price. (*Id.* ¶ 548.) Mr. Horgan simply responded that he was still drafting what he was going to say to his fleet. (*Id.* ¶ 549.) When the season opened on December 16, some of the Defendants, but not Da Yang, paid prices consistent with what Fathom offered. Da Yang did not start buying crab until weeks later – in January. (*Id.* ¶¶ 551, 552.)

Da Yang, Safe Coast Pacific Dream, Fathom, Living Pacific, and South Bend (January & February 2024) (SAC ¶¶ 554-585)

In this lengthy section, Plaintiffs allege a number of communications between Da Yang and other Defendants and amongst other Defendants about prices. Plaintiffs characterize these communications as "coordinating" prices as part of a price-fixing cartel (*see* SAC ¶¶ 577, 579), but that is clearly not what was happening based on the alleged communications. To the contrary, the communications are about the market price rising – ports or buyers raising their prices – necessitating that others also raise their price to meet the market. For example, in the February 1, 2024 communications, the participants discuss that the price had risen. (SAC ¶ 560.) Brock Orton of South Bend states that South Bend wanted to keep its price lower, but then later confirms that he was also hearing that the market price had increased. (*Id.*) Against its stated wishes, South Bend ***raised*** its price due to market pressure. (*Id.* ¶ 561.)

---

[2] In the Sixth Amended Complaint, Plaintiffs alleged that Da Yang and Great Ocean are alter egos and, thus, treat communications coming from Great Ocean's Kyle Horgan as communications by Da Yang. Great Ocean has concurrently filed a motion to dismiss, arguing that Plaintiffs alter ego allegations are insufficient. Da Yang joins in those arguments, but their resolution is not determinative of this Motion. Even if Kyle Horgan's communications could be attributable to Da Yang, they still would be insufficient to state a claim against Da Yang.

339631359v.2

Consistent with these communications, where buyers are discussing rising market prices (not coordinating lower prices), Da Yang's Chang Lee is asked point blank if he is "going to 3.75 for cook?" to which he responds, "I'm not really sure. … ***If the market price 3.75, then will match***." (SAC ¶ 575 [emphasis added].)

At another point, Plaintiffs allege that Mr. Lee was texting with Mr. Orton about cooked prices rising. (SAC ¶ 584.)   In the exchange, Mr. Lee states that Pacific Seafood in Warrenton is offering a lower price but would raise its price because it had "No other choice." (*Id*.)  These communications are not buyers "coordinating" to suppress prices; these communications are buyers *raising* prices due to the market – and Da Yang expressly states in its communications that it will raise prices to match "the market price."

Da Yang and Fathom (January 2024) & Da Yang and Pacific Seafood (May 2024) (SAC ¶¶ 586, 599)

This section presents the most perplexing set of allegations as to Da Yang.  Plaintiffs allege that, in response to Facebook group messages in which people repeatedly say things like "the war is real" and refer to a "criminal agenda," Kyle Horgan of Great Ocean reached out to people from Fathom and Pacific Seafood (the apparent targets of these messages) to generally express sympathy (with Mr. Moody of Pacific Seafood responding with, admittedly, rather colorful language). (SAC ¶¶ 590 – 598.)

Da Yang and Pacific Dream (March 2024) (SAC ¶¶ 600-601)

In one of the only instances of a price *decrease*, Chang Lee of Da Yang reaches out to Pacific Dream to confirm its live price on March 6, 2024. (SAC ¶ 600.)  The response was that the price had decreased. (*Id*. ¶ 601.)  Plaintiffs then very carefully allege that this supposed "agreement to reduce prices is reflected in the landings records" of Da Yang. (*Id*.)

Plaintiffs phrase it that way – as opposed to saying Da Yang dropped its price – for a reason.  As other texts at that time reveal, Da Yang was offloading boats for Pacific Dream and loading the crab into Pacific Dream's trucks.  Declaration of John Danos (Danos Decl.) Ex. 1[3] at

---

[3] In deciding a Rule 12(b)(6) motion, courts may rely on documents outside of the pleading that are incorporated by reference in the pleading.  This doctrine "prevents plaintiffs from selecting

DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT

339631359v.2

Da Yang 002651-002653 (3/8/24 portion of text string between J. Mark and C. Lee discussing Da Yang offloading boats for Pacific Dream). Because Da Yang was taking possession of the crab from the crabber, it had to fill out the fish ticket, which includes the price paid. *Id*. at Da Yang 002652 (3/8/24 portion of text string between J. Mark and C. Lee discussing Pacific Dream price to put on Da Yang's fish ticket[4]). Thus, Pacific Dream was not conspiring with Da Yang to reduce prices; it was letting Da Yang know the price for the fish ticket with respect to the crab that Da Yang was offloading for Pacific Dream. *See id*.

This is indicative of Plaintiffs' allegations. Plaintiffs take a phrase from a text like "Let's work together" (*see* SAC ¶ 610) and assume it means a price-fixing conspiracy. However, in reality and in context, it could mean any number of things, including a successful working relationship providing offloading services to another buyer, which increases the number of buyers and, thus, competition in a port. *See* Danos Decl. Ex. 2 at Da Yang 002805 (3/21/24 J. Mark text to C. Lee, "You have been awesome to work with this year Chang. Thank you so much.")

<u>Da Yang and Fathom (December 2024/January 2025) (SAC ¶¶ 602-616)</u>

In this final and rather lengthy section, Plaintiffs focus on texts between Kyle Horgan of Great Ocean and Cody Mills of Fathom. The texts seem to be centered around the impact of Hallmark offering a significantly higher price. (SAC ¶ 602.) Another buyer "lost two of their biggest boats to Hallmark," panicked, and then raised their price to get closer to the large jump in price of Hallmark. (*Id*. ¶ 604.) Plaintiffs allege that Da Yang was already paying this higher price at the time of this text (*id*. ¶ 613), and Da Yang's prices continued to rise rapidly over the next month, increasing by another 33%. (*Id*. ¶¶ 614 – 616.) Plaintiffs allege that, during this period, Fathom's price increases lagged those of Da Yang by two or three days. (*Id*.) Again, far from

---

only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). That is exactly what Plaintiffs are doing here. They are selectively quoting texts out of strings between individuals, omitting the texts between those individuals that refute the interpretations Plaintiffs allege.

[4] The specific price discussed is redacted in the exhibit out of an abundance of caution as it reflects the pricing information of another entity. The specific price is not relevant to Da Yang's argument as the point is simply that Pacific Dream was telling Da Yang its price for Da Yang to include on the fish ticket.

DA YANG'S MOTION TO DISMISS SAC - 23-cv-01098-AGT

339631359v.2

coordination to suppress prices, these allegations show a market's prices rising rapidly from the apparent impact of a couple of other buyers.

## III.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Regarding claims under Section 1 of the Sherman Act, a complaint must allege "sufficient factual matter, taken as true, to plausibly suggest that an illegal agreement was made."  *Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig. v. Samsung Elecs. Co.*, 28 F.4th 42, 46 (9th Cir. 2022).  "[M]ere allegations of parallel conduct—even consciously parallel conduct—are insufficient to state a claim under § 1."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015).  "Plaintiffs must plead 'something more,' 'some further factual enhancement,' a 'further circumstance pointing toward a meeting of the minds' of the alleged conspirators."  *Id.* (quoting *Twombly*, 550 U.S. at 557, 560).

Even when plaintiffs allege sufficient factual matters to plead the existence of an antitrust conspiracy among *some* defendants, that is not enough to plead a claim against *all* defendants; rather, "a complaint alleging an antitrust conspiracy 'must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'"  *In re Cal. Bail Bond Antitrust Litig.,* 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)).

Plaintiffs' tag-along state law antitrust claims are subject to the same scrutiny and often rise or fall together.  *See County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1160 (9th Cir. 2001).  Likewise, state law unfair competition claims will fall together with antitrust claims where "the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers."  *Chavez v. Whirlpool Corp.,* 93 Cal. App. 4th 363, 375 (2001).  As the Court held in its Dismissal Order, "[t]his shortcoming [failing to plead facts supporting that Da Yang joined a

14

price-fixing conspiracy] is fatal to all of Plaintiffs' claims against Da Yang, all of which are predicated on the same allegations of an agreement to restrain trade." (Dismissal Order, Dkt. #600 p. 4.)

There is no freestanding claim for declaratory relief under 28 U.S.C. § 2201, as "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

A.    **Plaintiffs Fail To Plausibly Allege That Da Yang Entered Into The Alleged Agreement**

"Pleading an antitrust conspiracy further 'requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.' For purposes of Section 1 of the Sherman Act, an unlawful agreement consists of a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 7516, at *65 (quoting *Toscano v. PGA*, 258 F.3d 978, 983 (9th Cir. 2001)). Thus, federal courts uniformly require well-pleaded allegations of material fact regarding each defendant's conscious decision to join a conspiracy, without giving any credit to "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* at *64 (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)) (internal quotation marks omitted). The pled factual matter must be sufficient to show that *each* defendant challenging the complaint joined the conspiracy. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, 2014 U.S. Dist. LEXIS 7516, at *79 (N.D. Cal. Jan. 21, 2014) (ruling that more than boilerplate assertions are required to allege that "each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it" (quoting *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)) (internal quotation marks omitted)); *id.* at *80 n.13 (rejecting implication that, once the existence of a conspiracy is established, only a slight connection is required to establish a particular defendant's participation); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (explaining that a complaint must allege "'enough factual matter (taken as true) to suggest that an agreement was made'" because

339631359v.2

"discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case" (quoting *Twombly*, 550 U.S. at 556)).

As discussed, Plaintiffs allege a price-fixing agreement between Defendants with five components: (a) allowing Pacific Seafood to set the opening price for each season at artificially low levels; (b) delaying the opening of some seasons to wait until there is lower consumer demand to justify lower starting prices; (c) coordinating prices throughout the season; (d) policing compliance by other buyers with respect to the fixed prices; and (e) keeping the number of buyers in any given port artificially low through "out the backdoor sales." (SAC ¶ 8.) As is plainly clear from the summary of Plaintiffs' allegations as to Da Yang, Plaintiffs do not even attempt to allege that Da Yang engaged in three of the five components of the supposed agreement. There are no allegations that Da Yang played a role in delaying the opening of any season. There are no allegations that Da Yang took any steps to bully or "police" other buyers into "compliance." And, there are no allegations regarding Da Yang and "out the backdoor sales."

At most, Plaintiffs only attempt to allege that Da Yang was involved in opening prices and supposedly "coordinating" prices throughout the season. As to opening prices, the one section of allegations against Da Yang only involves some texts discussing what opening prices might be; the allegations do not involve an agreement to allow Pacific Seafood to set the opening price. (SAC ¶¶ 548, 549.) In fact, as Plaintiffs concede, Da Yang did not even pay the supposed agreed upon opening price. Rather, Da Yang did not purchase crab at the season opening and did not begin to do so until weeks later. (SAC ¶ 552.)

That only leaves the "coordinating" in season prices component of the supposed price-fixing agreement. On this issue, the Court already made its ruling. Plaintiffs' allegations that Da Yang discussed prices with other buyers and then matched market prices are insufficient to state a claim for illegal price-fixing. (Dismissal Order, Dkt. #600 pp. 2-4.)

### 1.     Exchanging Pricing Data Is Not *Per Se* Illegal

As the Court previously ruled, buyers exchanging pricing data – even if such indicates a tacit agreement to do so – does not "constitute a *per se* violation of the Sherman Act." (Dismissal

339631359v.2

Order, Dkt. #600, p. 2, quoting *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 n.13 (9th Cir. 1990)).  Plaintiffs adding additional allegations about text messages discussing prices does not change that fact.  To the contrary, Plaintiffs' added allegations only further demonstrate that there was no agreement to illegally fix prices.  Instead, Da Yang was simply attempting to keep up with the market as its prices rose.

As demonstrated above, in virtually every single instance where Plaintiffs allege Da Yang discussed prices with other buyers, it is because Da Yang or the other buyer had heard prices had risen, and they were trying to confirm that fact prior to raising their prices to match the new, higher market price.  Although Plaintiffs fail to offer the texts between Da Yang (or other buyers) and crabbers, it is clear where Da Yang and other buyers were hearing about others offering higher prices – from the crabbers.  (SAC ¶ 515; Safe Coast text "Boats kept telling me" Da Yang is paying a higher price.)  The texts often start with a phrase along the lines of "I just heard" followed by someone offering a higher price.  (*See, e.g.*, SAC ¶¶ 527, 536, 537, 554, 560, 564, 568, 571, 608.)  The texts are trying to confirm what was heard about a higher price *already* being offered.  (*See id*.)

What is conspicuously absent from Plaintiffs' allegations and these text messages is any agreement by Da Yang to coordinate with other buyers to fix future prices at lower levels.  Rumors of higher prices in the market are confirmed, and then Da Yang raises its prices to meet the market.  Logically, these are not the types of communications and resulting price increases one would expect if Da Yang were engaged in a price-fixing conspiracy.  Rather than trying to confirm price increases, one would expect the buyers to be communicating to thwart any increase.  Rather than matching price increases, one would expect the buyers to be consistently and stubbornly holding prices below those increases.  Neither is present here as to Da Yang.

**2.    Matching Market Prices Is Not Price Fixing**

This raises the Court's second reason to dismiss the prior claims against Da Yang.  "Matching market prices isn't price fixing."  (Dismissal Order Dkt. #600, p. 3.)  Even "conscious parallelism, a common reaction of firms in a concentrated market that recognize their … interdependence with respect to price and output decisions is not in itself unlawful."  *Twombly*,

339631359v.2

550 US at 553-54.  When asked point blank whether Da Yang would offer a specific price, Chang Lee of Da Yang responded, "If the market price 3.75, then will match."  (SAC ¶ 575.)  All of Plaintiffs' allegations as to Da Yang are consistent with this response.  As Da Yang learned of and confirmed that the market price increased, it increased its prices to match.  Plaintiffs repeatedly concede that Da Yang would move its prices to the top of the market range.  (SAC ¶¶ 513, 530, 538, 613-616.)

As discussed above, in the one instance where Plaintiffs seek to allege that Da Yang reached an agreement with another buyer to *lower* prices, that was not actually what happened. (SAC ¶¶ 600-601.)  Instead, Da Yang provided offloading services for Pacific Dream, and Pacific Dream would confirm the price in order for Da Yang to fill out the fish ticket.  (*See* Danos Decl. Exs. 1, 2.)

**3.     There Are No Plausibly Alleged Facts That Da Yang Agreed To Price Caps Or To Match Pacific Seafood's Prices**

As the Court previously stated, the reason that it denied other Defendants' motion to dismiss is because "Plaintiffs had plausibly alleged direct evidence of price fixing, including allegations that Defendants had agreed to price ceilings and to matching Pacific Seafood's prices. (Dismissal Order, Dkt. #600 p. 4 n. 3.)  Here, there are no such allegations as to Da Yang. Nowhere in the Sixth Amended Complaint do Plaintiffs plausibly allege that Da Yang agreed to match Pacific Seafood's prices.  Furthermore, the Sixth Amended Complaint dispels any notion that Da Yang agreed to price ceilings.  To the contrary, time and time again, the Sixth Amended Complaint alleges that as market prices increased, Da Yang increased its prices accordingly. There are absolutely no allegations that plausibly support an assertion that Da Yang had agreed to cap its prices and refused to increase prices as the market price rose.

**B.     Plaintiffs' Other Claims Fall Together with the Sherman Act Claim**

Plaintiffs' Sherman Act and state-law claims are based on same alleged conduct and the same alleged harm, and therefore all of Plaintiffs' claims should fall together.  (Dismissal Order, Dkt. #600 p. 4.)  Additionally, because all of Plaintiffs' other claims fail, they have no claim for declaratory relief.  *Netflix*, 52 F.4th at 878.

339631359v.2

**C.    Plaintiffs Should Not Be Granted Further Leave to Amend the Complaint**

Plaintiffs are on their *sixth* amended complaint.  They have dedicated approximately twenty pages of their pleading to allegations about Da Yang.  This is undoubtedly the best case that Plaintiffs can make as to Da Yang.  "Where 'the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.'"  *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (alteration in *Zucco*) (some internal quotation marks omitted) (quoting *Zucco Partners, LLC, v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)); *see also Zucco*, 552 F.3d at 1007 ("[T]he district court did not err when it dismissed the SAC with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting.")  At this point, the Court should conclude that Plaintiffs simply cannot state a cognizable claim against Da Yang, and any further amendment would be futile.

## IV.    CONCLUSION

For the foregoing reasons, Da Yang respectfully request that the Court dismiss all claims pleaded against each of them in the Sixth Amended Complaint with prejudice.

Dated: July 20, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:    /s/ *John Danos*
David J. Aveni
John R. Danos
Colin V. Quinlan

Attorneys for Defendant
Da Yang Seafood Inc.