Michael S. Myers (SBN 305011)
  myersm@ballardspahr.com
Christopher M. Wyant (pro hac vice)
  wyantc@ballardspahr.com
Jessica M. Rizzo (pro hac vice)
  rizzoj@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, California 90067
Telephone:     (424) 204-4400

Attorneys for Defendant Great Ocean Seafood Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Brand LITTLE, et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,<br><br>                    Defendants. | Case No. 3:23-cv-01098-AGT<br><br>**DEFENDANT GREAT OCEAN SEAFOOD INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SIXTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        September 4, 2026<br>Time:        10:00 a.m.<br>Location: 450 Golden Gate Avenue<br>                 Courtroom A, 15th Floor<br><br>Judge Alex G. Tse<br><br>[Filed concurrently with Proposed Order] |

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on September 4, at 10:00 a.m. or as soon thereafter as the matter may be heard by the United States District Court for the Northern District of California, in Courtroom A on the 15th Floor of the Phillip Burton Federal Building, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Alex G. Tse, Defendant Great Ocean Seafood Inc. will, and hereby does, move the Court for an order dismissing the Sixth Amended Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the pleadings and papers on file in this action, and upon such other matters presented to the Court at the time of hearing.

**RELIEF SOUGHT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Great Ocean Seafood Inc. seeks dismissal with prejudice of each claim asserted against it in the Sixth Amended Class Action Complaint, Dkt. No. 746.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs fail to plausibly allege that Defendants Great Ocean and Da Yang may be held liable for one another's conduct under the alter ego doctrine.

2.    Whether Plaintiffs fail to plausibly allege that Defendants Great Ocean and Da Yang may be held liable for one another's conduct under the single business enterprise doctrine.

3.    Whether Plaintiffs fail to plausibly allege that Defendant Great Ocean Seafood Inc. entered into a price-fixing conspiracy.

4.    Whether the Court should dismiss the claims alleged by Plaintiffs against Defendant Great Ocean Seafood Inc. with prejudice.

### II.    STATEMENT OF FACTS

On September 2, 2025 Plaintiffs filed a Third Amended Class Action Complaint ("3AC"), which named Great Ocean Seafood Inc. ("Great Ocean") and Da Yang Seafood Inc. ("Da Yang") as Defendants for the first time. The 3AC alleged that Great Ocean and Da Yang entered into a horizontal price-fixing agreement with other Defendants to artificially suppress the prices paid by seafood buyers to commercial crabbers for crab. Da Yang and Great Ocean moved to dismiss the 3AC. Dkt. 483. Plaintiffs subsequently amended the 3AC twice. Dkts. 529, 596. Because the Fourth Amended Complaint and Fifth Amended Complaint ("5AC") did not materially alter the allegations against Da Yang and Great Ocean, the Court deemed Da Yang and Great Ocean's motion to dismiss the 3AC applicable to the then-operative 5AC. Dkt. 600 at 1 n.1.

As the Court recognized in dismissing Plaintiffs' claims against Da Yang and Great Ocean, the 3AC improperly conflated Da Yang (a Washington corporation) and Great Ocean (an Oregon corporation), defining the term "Da Yang" as including both entities. Dkt. 600 at 4-5; 3AC ¶ 123. According to the 3AC, "Da Yang" directly purchased approximately 2.5% of the crab landed in the Pacific Northwest area during the 2023/24 season, buying crab ex vessel in Astoria, Oregon; Brookings, Oregon; Garibaldi, Oregon; and Newport, Oregon. 3AC ¶¶ 125, 152. The 3AC did not allege that Great Ocean ever purchased any landed crab.

In the 3AC, Plaintiffs alleged that "Da Yang" "share[d] information and coordinate[d] their price offers in order to minimize the extent to which ex vessel prices rise as the season goes on." 3AC ¶ 247. Plaintiffs provided a number of purported examples of such communications (3AC ¶¶ 237-39, 272, 283-88, 289, 290-91, 293-94), all of which the Court found fell short of supporting the claim that either Da Yang or Great Ocean participated in a price-fixing conspiracy. Dkt. 600 at 4-5.

On June 29, 2026 Plaintiffs filed a Sixth Amended Complaint ("6AC"), in which Plaintiffs acknowledge that Great Ocean and Da Yang are distinct companies operating at distinct levels of the supply chain, with Da Yang purchasing crab directly from crabbers, and Great Ocean buying crab from Da Yang and reselling it. 6AC ¶ 143. But Plaintiffs nevertheless continue to impermissibly conflate the two companies, again collectively referring to Great Ocean and Da Yang as "Da Yang." 6AC ¶ 149. Plaintiffs supplement the 3AC's rejected allegations with a number of purported examples of Da Yang's Chang Lee sending and receiving messages in furtherance of the alleged conspiracy. 6AC ¶¶ 521-538, 554-56, 558, 560-61, 563-64, 566, 568, 579-80, 584, 600, 610-11. Plaintiffs also add to the 6AC the following purported examples of Great Ocean employee Kyle Horgan participating in alleged "price fixing" conversations on behalf of "Da Yang," with added emphasis in bold indicating the few quotations actually attributed to Mr. Horgan below:[1]

- 6AC ¶ 546: Early in the morning of December 12, Fathom's Nick Mareno texted Da Yang's Kyle Horgan to complain about a call that he had received from Lilli Gustafson of the nondefendant buyer Living Pacific, regarding the opening price that Fathom intended to offer. Fathom's Mareno then related a conversation between him and Geoff Molfino of Living Pacific that appears to have also occurred after the commission meeting. Mareno states: "I told Geoff earlier it was way to immature to post a $▓▓ price. I told him without a cook offer and before Quinault I wouldnt post and price above ▓▓. She [Ms. Gustafson] took that as Im offerin

---

[1] Pursuant to Plaintiffs' pending Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (Dkt. 746), Great Ocean has redacted material designated confidential by other parties. Great Ocean takes no position as to whether the content of these allegations in the 6AC should remain under seal.

■■■."

- 6AC ¶ 547. He then described efforts that Ms. Gustafson engaged in to convince Mr. Mareno to also offer an opening price of $■■■, accusing him of "being manipulated and buying into the big guys narrative."

- 6AC ¶ 548. The next day, December 13, 2023, Mr. Mareno shared with Da Yang's Horgan the announcement that he had just sent to the crabbers fishing for Fathom, in which he told them that Fathom intended to offer an opening price of $■■■ for crab for the live market, but not offering a price for crab destined for the cooked or processed market.

- 6AC ¶ 549. Da Yang's Horgan responded, **"Very well said. I'm still drafting what I'm going to say to my fleet,"** by which he meant the crabbers fishing for Da Yang.

- 6AC ¶ 550 For the remainder of the text string, they discussed the other price offers that other buyers had made. Fathom's [sic] Horgan indicated that had that he believed that that Bornstein, which is a processor and so buys crab for cooking, had offered price lower than Pacific Seafood. Fathom's Mareno, corrected him, indicating that Bornstein was offering $■■■ and that the information came from Mike Shirley at Bornstein. He further indicates that this is the same price being offered by Pacific Seafood, stating, "My whole cook customer disappeared after Pacific came out at ■■■."

- 6AC ¶ 604 On December 18, 2024, Da Yang's Kyle Horgan messaged Cody Mills of Fathom asking: **"Meeting go okay today?"** Mr. Mills responded: "Yeah sorry didn't get back to you today. We are scrambling. Pds fucked up and lost their two biggest boats to Hallmark so they panic and raised the price to $■■■." Mr. Horgan replied: **"$■■■ for live?"** Mr. Mills then said: "Looks like that was a mistake. Tenshi is telling their boats they aren't buying over $■■■ and when at that china market is break even at best. Nothing going cooked." Mr. Horgan replied: **"Copy copy. Wow[.] Insane stuff."** Later that same day, Mr. Mills wrote again to Mr. Horgan: "Nick [Mareno of Fathom] is sticking to the ■■■ for now. Pds called and said they fucked up and let his emotions get the best o[f] him to raise the price." Mr. Horgan responded: **"Oh wow. Big to say that."** Mr. Mills later added: "I think Newport might go to $■ for live tonight. Will see. Safecoast paid one boat $■ today. We paid $■■■ today for live." Mr. Horgan then agreed

GREAT OCEAN'S MOTION TO DISMISS TAC – 3:23-cv-01098-AGT

to the same price: **"I will pay $4.75 to cook at this point. But I don't want that getting out."** And even later that same day, Mr. Mills and Mr. Horgan exchanged more messages with Mr. Mills stating that it "[s]ounds like California opening first week January hopefully" and Mr. Horgan adding **"people are assuming pac [Pacific Seafood] and Southwind are going to get all the Cali crab"** and **"[t]he only thing that would cause the price to drop is living coming to a screeching hault [sic]."** The two erstwhile competitors also discussed when they thought Astoria would open and what pricing should be for sections versus live Dungeness crab.

The 6AC's only other new allegations regarding Great Ocean boil down to atmospherics and innuendo. Plaintiffs allege that Mr. Horgan attended a 2023 meeting of crabbers and buyers organized by the Oregon Department of Agriculture, correctly noting that Oregon law immunizes buyers from antitrust liability for discussing prices at this meeting. 6AC ¶ 540. Plaintiffs further observe that this immunity "explicitly does not extend to discussions between buyers before and after the meeting, with post meeting letters specifically admonishes [sic] buyer representatives to not engage in such communications. *Id.* Immediately after this observation, Plaintiffs add: "On December 10, 2023, Mr. Horgan confirmed to Fathom's Nick Mareno that he would **"be at price negotiations today,"** and that he was **"[d]riving there now[,]"** as though there was something incriminating about this communication taking place before the meeting itself. *Id.* ¶ 541. It is not clear what Plaintiffs believe this message shows, but it obviously contains no discussion of pricing whatsoever.

Plaintiffs also add to the 6AC descriptions of a series of early 2024 text message conversations between Mr. Horgan and Mr. Moreno and between Mr. Horgan and Pacific Seafood's John Moody. 6AC ¶¶ 590-598. In these exchanges, Mr. Horgan shares with Mr. Moreno a Facebook group post by Confidential Fish Buyer Informant #1, who has been complaining online about someone interfering with his access to the hoists he needs to unload and purchase crab, and Mr. Moody uses profanity to express frustration with Confidential Fish Buyer Informant #1. Though Mr. Horgan is on the receiving end of this venting, there is no allegation that Great Ocean or Da Yang was ever involved in blocking access to hoists in order to further the alleged price-fixing conspiracy, or indeed for any other reason.

None of these allegations relate to Great Ocean's alleged participation in any alleged crab buying conspiracy because Plaintiffs *still* do not allege that Great Ocean ever bought crab from any crabber.

## III.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 698 (internal quotations omitted). "Applying this standard is a context-specific task that requires drawing on judicial experience and common sense." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (internal quotations omitted). This is especially true in antitrust cases. "Given the unusually high cost of discovery in antitrust cases, the limited success of judicial supervision in checking discovery abuse, and the threat that discovery expense will push cost-conscious defendants to settle even anemic cases, the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (cleaned up, citing *Twombly*, 550 U.S. at 544 and *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)).

### B.   Plaintiffs Fail To Plausibly Allege That Great Ocean May Be Held Liable for Da Yang's Conduct

#### 1.   Great Ocean Is Not Da Yang's Alter Ego (Or Vice Versa)

Plaintiffs allege that Great Ocean may be held liable for Da Yang's conduct because "Da Yang Seafood and Great Ocean Seafood are alter egos of one another." 6AC ¶ 147. Alter ego liability is an extraordinary remedy that "has been most commonly used to impose personal liability on corporate officers for fraud committed by the corporation[,]" a dynamic not present

here. *Orvold v. Kotelevskiy*, 30 Wash. App. 2d 1008 (2024). To hold Great Ocean liable for actions taken by Da Yang, Plaintiffs would need to plausibly allege facts demonstrating that this is one of those rare cases that calls for the corporate veil to be pierced. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . .").[2] Two separate, essential conditions must be met for a court to pierce the corporate veil. *See Dickens v. Alliance Analytical Labs., LLC*, 127 Wash. App. 433, 440, 111 P.3d 889 (2005). "First, the corporate form must be intentionally used to violate or evade a duty." *Id.* (internal quotations omitted). "Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." *Id.* at 441. A court may pierce the corporate veil under an alter ego theory only when "the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist." *Grayson v. Nordic Const. Co.*, 92 Wash. 2d 548, 553, 599 P.2d 1271, 1273-74 (1979) (internal quotations omitted).

To assess whether the alter ego theory applies, courts look to, *inter alia*, whether corporate records were not kept, formalities supporting the existence of separate entities disregarded, or funds comingled. *See id.* at 1274; *In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 302 n.2, 308 P.3d 615, 625 (2013); *Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc.*, 61

---

[2] When a case is brought in federal court in California against a Washington corporation, Washington's veil-piercing law applies. *See Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128-29 (N.D. Cal. 2011). But Plaintiffs have failed to allege that piercing the corporate veil is warranted under California law either. Under California law, "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000). For the corporate veil to be pierced on an alter ego theory, "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id.* at 538. Factors considered in assessing whether one corporation is the alter ago of another include the commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, the use of the same offices and employees, the use of one company as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, and lack of segregation of corporate records. *Id.* at 538-39. Plaintiffs have not alleged that any of these factors are present in this case.

Wash. App. 395, 401, 811 P.2d 221, 224 (1991). Plaintiffs have not alleged that Great Ocean and Da Yang failed to keep separate corporate records, disregarded corporate formalities, or comingled funds. Nor have they alleged any form of fraud or effort to mislead the Plaintiff crabbers into believing Da Yang and Great Ocean were one in the same.

Instead, Plaintiffs point to a degree of overlap between Great Ocean and Da Yang's ownership, employees, and facilities. They cite the website of Lung Soon Ocean Group, Great Ocean and Da Yang's shared corporate parent, claiming that Great Ocean and Da Yang are there presented together "under a single combined logo bearing the name "Great Ocean Da Yang Seafoods LTD." 6AC ¶ 137. But the website shows no such thing. It shows the two companies identified as performing two different functions, offering "Trading *and* Logistics Solutions" (emphasis added), with the names of each company rendered in distinct typefaces in distinct colors, the better to emphasize their separate corporate identities. *Id.* at ¶ 137 n.1. If Great Ocean were really Da Yang's alter ego, one would expect to see Da Yang playing a public-facing role with Great Ocean operating in the shadows under a bland, anonymous name like 123 Corp. or Clark Kent, or vice versa. That is not the case here, where both companies prominently advertise their symbiotic, but distinct, business operations.

Plaintiffs also cite annual reports filed with the Oregon Secretary of State showing that Chih Yuan Wang serves as President of both Great Ocean and Da Yang, but these same documents give the Court ample reason to conclude that these two entities are distinct. 6AC ¶ 138 n.2. The annual reports show that Great Ocean is an Oregon corporation formed under Oregon law, while Da Yang is a Washington Corporation formed under Washington law. *Id.* They also show that the two companies are engaged in different business activities, have separate names, separate registry numbers, different secretaries and registered agents, and corporate registration dates separated by over a decade. *Id.*

Plaintiffs identify one Great Ocean employee, Mr. Horgan, who allegedly "acts on behalf of" both Great Ocean and Da Yang. *Id.* ¶ 142. Plaintiffs base this assertion on the fact that Mr. Horgan has used a Da Yang domain email address and has identified himself in certain unspecified communications as "Domestic Sales Manager at Da Yang Seafoods." *Id.* ¶¶ 142, 144.

But Plaintiffs do not allege that Mr. Horgan used this Da Yang email address to engage in pricing conversations, nor that Mr. Horgan was acting in his capacity as a Great Ocean employee when occasionally and separately acting for Da Yang. And even if Mr. Horgan was employed by both Da Yang and Great Ocean, the presence of a single shared employee, without more, does not justify piercing the corporate veil. *See Richardson v. Callahan*, 35 Wash. App. 2d 1009 at *6 (2025).

### 2.    Great Ocean and Da Yang Are Not a Single Business Enterprise

Plaintiffs attempt to plead alter ego liability as an alternative to the "single business enterprise" liability they claim applies to Great Ocean and Da Yang because the two companies allegedly "operate and hold themselves out as a single, integrated business enterprise." 6AC ¶ 136. Neither Washington nor Oregon recognizes the single business enterprise doctrine. This lack of recognition dooms at the outset Plaintiffs' ability to proceed under a single business enterprise theory, as the single business enterprise theory is a species of alter ego liability, which must be analyzed under the law of the defendant corporation's state.[3] *See Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 512, 121 Cal. Rptr. 3d 118, 138 (2010) (describing the single-enterprise rule as a type of alter ego liability); *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1109, 159 Cal. Rptr. 3d 469, 481 (2013) (referring to "the single enterprise theory of alter ego analysis"). But even if the Court chooses to apply California law, Plaintiffs' claims still fail.

Under California law, one sister company may be found liable for another's conduct under the single business enterprise doctrine only when the court determines that "though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *City of Dana Point v. New Method Wellness, Inc.*, 39 Cal. App. 5th 985, 990, 252 Cal. Rptr. 3d 541, 545 (2019)

---

[3] *Wehlage v. EmpRes Healthcare Inc.* held that Washington has "a strong interest in controlling the liability of business entities formed under its laws," and that even if California has an interest in preventing companies from escaping liability through an unwarranted corporate shield, that interest is mitigated through the application of Washington's alter ego laws. 821 F. Supp. 2d 1122, 1130 (N.D. Cal. 2011). Because Oregon also recognizes the alter ego doctrine, the same principle can be applied to business entities formed under the laws of Oregon. *See Salem Tent & Awning Co. v. Schmidt*, 79 Or. App. 475, 481, 719 P.2d 899, 903 (1986).

(citing *Las Palmas Associates v. Las Palmas Center Associates* 235 Cal. App. 3d 1220, 1249-50, 1 Cal. Rptr. 2d 301, 318 (1991)). The doctrine applies only where one corporation "is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation." *Id.* at 991. Plaintiffs have alleged nothing of the kind.

Under California law, the doctrines of piercing the corporate veil on an alter ego theory and single business enterprise liability are treated very similarly. *See Toho-Towa Co.* 159 Cal. Rptr. 3d at 480 ("In California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise."). Some courts even refer to the doctrines interchangeably. *See Cam-Carson, LLC v. Carson Reclamation Auth.*, 82 Cal. App. 5th 535, 549, 298 Cal. Rptr. 3d 482, 491 (2022). Each doctrine provides for a remedy recognized as "extreme." *Sonora Diamond Corp.*, 99 Cal. Rptr. 2d at 836; *see also Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454, 460 (1998) ("Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result."). Factors courts consider in determining whether the single business enterprise doctrine applies are similar to those deemed relevant to an alter ego analysis. They include, *inter alia*, the commingling of funds and assets of the two entities, the treatment by an individual of the assets of the corporation as his own, the failure to obtain authority to issue stock, the holding out by an individual that he is personally liable for the debts of the corporation, and the failure to adequately capitalize a corporation. *See Greenspan*, 121 Cal. Rptr. 3d 118, 139 (2010). Plaintiffs have not alleged that any of these factors are present here.

Largely for the reasons they have failed to plausibly allege alter ego liability, Plaintiffs have failed to plausibly allege single business enterprise liability.

**C.    Plaintiffs Fail to Plausibly Allege that Great Ocean Agreed to Fix Prices**

Plaintiffs' anemic antitrust allegations against Great Ocean must be dismissed. A complaint alleging violations of Section 1 of the Sherman Act must allege "sufficient factual matter, taken as true, to plausibly suggest that an illegal agreement was made." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig. v. Samsung Elecs. Co.*, 28

F.4th 42, 46 (9th Cir. 2022). "[M]ere allegations of parallel conduct—even consciously parallel conduct—are insufficient to state a claim under § 1." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015). "Plaintiffs must plead 'something more,' 'some further factual enhancement,' a 'further circumstance pointing toward a meeting of the minds' of the alleged conspirators." *Id.* (quoting *Twombly*, 550 U.S. at 557, 560).

Plaintiffs' only new factual allegations pertaining to *Great Ocean's participation* (separate from Da Yang) in a price-fixing conspiracy appear in the six paragraphs quoted above in their entirety. These allegations concerning Great Ocean employee Mr. Horgan are no more plausible than those the Court rejected in its February 6, 2026 Order, in which the Court observed that "Plaintiffs read into the [text] messages more than is in them." Dkt. 600 at 2. The same holds true here. At no point does Mr. Horgan pledge to match prices offered by any crab buyer—nor could he plausibly do so on behalf of Great Ocean, as Great Ocean is not alleged to purchase crab from crabbers. At no point does Mr. Horgan agree to adopt Pacific Seafood's opening price—only Plaintiffs use the word "agree" to describe what Mr. Horgan means when he tells Fathom employee Cody Mills, "I will pay $4.75 to cook at this point." 6AC ¶ 604. This statement follows Mr. Mills telling Mr. Horgan that "Pacific [Seafood] offered $4.25 and boats said no. […] Boats want $4.75[,]" with Mr. Horgan responding, "First they were fine with 4.25 then 4.50 and now 4.75." 6AC ¶ 603. Plaintiffs do not allege that Mr. Horgan subsequently offered or paid $4.75 per pound for crab.

This is not a plausible allegation of an "agreement" to fix prices. As the Court rightly noted in dismissing Plaintiffs' 5AC, even where messages can be read as indicating a tacit agreement to exchange pricing data, "agreements to exchange pricing data do not themselves constitute a *per se* violation of the Sherman Act." Dkt. 600 at 2 (quoting *In re Coordinated Pretrial Proc. In Petroleum Prods. Antitrust Litig.*, 906 F. 2d 432, 447 n.13 (9th Cir. 1990). Critically, Mr. Horgan's statement that he would be willing to pay $4.75 per pound for crab represents an *increase* from previously contemplated offers, a willingness to offer *more* in order to compete with other buyers, in other words, the opposite of an agreement to keep prices artificially low. These exchanges show healthy competition at work in a market where crabbers wield

considerable negotiating power.

Plaintiffs have failed to plausibly allege that Great Ocean agreed to fix prices for crab. Accordingly, their Sherman Act claim should be dismissed. Because Plaintiffs' Sherman Act and state law claims are predicated on the same alleged conduct, Plaintiffs' state law claims must fall with their Sherman Act claim.

**D.     Plaintiffs' Claims Against Great Ocean Should Be Dismissed With Prejudice**

Plaintiffs have now had *six* opportunities to amend their complaint. The 6AC was drafted with the benefit of discovery taken from Great Ocean and Da Yang, as well as from other Defendants. If there was a case to be made against Great Ocean, Plaintiffs would have made it by now. It is appropriate to deny leave to amend a complaint where "further amendment would be futile." *Rutenburg v. Twitter, Inc.*, No. 21-16074, 2022 WL 1568360, at *2 (9th Cir. May 18, 2022) (internal quotations omitted). Because granting Plaintiffs leave to amend a seventh time would be futile, their 6AC should be dismissed with prejudice as to its claims against Great Ocean.

## IV.     CONCLUSION

For the foregoing reasons, Great Ocean respectfully requests that the Court dismiss the 6AC's claims against it with prejudice.

Dated: July 20, 2026                                    Respectfully submitted,

BALLARD SPAHR LLP

By:     */s/ Christopher M. Wyant*
Michael S. Myers
Christopher M. Wyant (pro hac vice)
Jessica M. Rizzo (pro hac vice)

Attorneys for Defendant
Great Ocean Seafood Inc.

## LOCAL RULE 5-1(i) ATTESTATION

I attest that each of the other signatories concur in the filing of this document

GREAT OCEAN'S MOTION TO DISMISS TAC – 3:23-cv-01098-AGT

By:    */s/ Christopher M. Wyant*
Christopher M. Wyant

GREAT OCEAN'S MOTION TO DISMISS TAC – 3:23-cv-01098-AGT