# EXHIBIT 33

K&L GATES

June 9, 2026

J. Timothy Hobbs
Partner
Tim.Hobbs@klgates.com

T + 615.514.1811

Stuart G. Gross, Esq.
Gross Klein PC
The Embarcadero, Pier 9, Suite 100
San Francisco, CA 94111

**Re:** ***Little, et al. v. Pacific Seafood Procurement, LLC, et al.*** **(Case No. 3:23-cv-01098-AG) –** ***Mandujano, Vargas, Delgado, Heater, Current Cell Phone Data Preservation Measures***

Dear Stu:

We write in response to your May 14, 2026 letter concerning certain current and former Bornstein employees and related preservation questions.

As an initial matter, Bornstein takes its preservation and discovery obligations seriously and has implemented reasonable and appropriate measures to preserve, collect, and produce responsive, non-privileged materials within its possession, custody, and control. To the extent additional responsive, non-privileged information is identified, Bornstein will continue to collect and produce such materials consistent with its discovery obligations.

At the outset, several of the questions in your May 14 letter seek disclosure of information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privilege. Plaintiffs' inquiries regarding Bornstein's preservation and collection efforts necessarily implicate counsel's strategic decisions concerning custodian selection, data sources, collection protocols, timing, prioritization, and scope. These subjects reflect counsel's mental impressions, legal analyses, and litigation strategy. The following responses to your questions are subject to and without waiver of any of these objections. Bornstein is responding to your informal questions out of a good faith effort to narrow disputes and avoid needless court intervention and additional discovery.

With respect to the individuals identified in your letter, it is important to clarify the relevant timeline. Both Doug Heater and Juan Delgado left Bornstein prior to the commencement of this action against Bornstein on August 21, 2024. Mr. Heater was employed by Bornstein from approximately 1980 until his retirement in May 2021, over three years prior to commencement of this action. Most recently, he served as a sales/buyer in the Astoria office, where his responsibilities included product procurement and sales. Mr. Delgado's employment with Bornstein ended on March 4, 2022, also years before commencement of this action against Bornstein. He most recently served as Director of Operations in the Astoria office, where his responsibilities included overseeing effective operating procedures across the company. His duties included reviewing company documents to make inferences about factors like communication, product compliance, productivity and Finances, working with the HR department to implement hiring procedures and communicating with upper management to improve company operations. As previously explained, following Mr. Delgado's departure, his company-issued cell phone and associated telephone number were reassigned in the ordinary course of business, consistent with Bornstein's usual practices.

Notwithstanding the timing of their departures, Bornstein has conferred with its IT vendor and understands that certain emails and files associated with both Mr. Heater and Mr. Delgado exist and are subject to Bornstein's litigation hold and thus have been preserved. To the extent responsive, non-privileged materials for these individuals remain within Bornstein's possession, custody, or control, Bornstein will produce them.

With respect to Marco Vargas, as reflected in his subpoena responses, Mr. Vargas was employed by Bornstein from May 17, 2012 until February 13, 2025, first as a Plant Manager of APS and most recently as General Manager of Bornstein's Oregon operations from approximately October 9, 2022 until his departure. As General Manager his responsibilities included leading and optimizing overall plant operations, including production, maintenance, engineering, and supply chain functions. His role focused on driving efficiency, reliability, and quality while ensuring safe operations, meeting performance targets, and delivering strong customer outcomes. Bornstein understands that Mr. Vargas performed a factory reset on his company-issued device before he returned it to Bornstein in connection with his resignation. Bornstein's assessment revealed that no recoverable data from Mr. Vargas remains on that device. Nevertheless, other materials related to Mr. Vargas (e.g., email account and custodial files) are preserved and will be produced, to the extent they are responsive and non-privileged.

Mr. Vargas's device, moreover, is not the only source of his text messages or other communications. Bornstein has already produced text message strings from other custodians that include messages sent to and from Mr. Vargas. Plaintiffs will also receive additional responsive communications involving Mr. Vargas from other custodial sources, including from other agreed-upon Bornstein custodians and possibly from other parties as well.

Further, as previously explained, Mr. Vargas did not possess authority to establish or determine pricing. Bornstein has already agreed to produce, and has begun producing, responsive, non-privileged materials from employees who had actual pricing and decision-making authority. To

the extent Mr. Vargas was involved in discussions about pricing, his communications will be reflected in productions from other Bornstein custodians who had pricing authority.

As to Moises Mandujano, Bornstein confirms that he has received a litigation hold notice and has been instructed to preserve potentially relevant information, including text messages. Bornstein is preserving information within its possession, custody, and control relating to Mr. Mandujano. Consistent with his role as a dock worker, and as previously explained, Mr. Mandujano was not issued a company laptop or computer.

Respectfully,

*/s/ J. Timothy Hobbs*