Stuart G. Gross (SBN 251019)
Jan W. A. Jorritsma (SBN 326772)
Travis H. A. Smith (SBN 331305)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
(415) 671-4628

*Attorneys for Plaintiffs and the Proposed Classes*
[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **BRAND LITTLE, ROBIN BURNS, AND CHERRY FISHERIES INC.,** Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PACIFIC SEAFOOD PROCUREMENT, LLC,** et al.,<br><br>Defendants. | Case No. 3:23-cv-01098-AGT<br><br>**PLAINTIFFS' RESPONSE TO ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS [DKT. 806]**<br><br>Date:      ----<br>Time:      ----<br>Judge:     Honorable Alex G. Tse<br>Courtroom: A, 15th Floor |

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## **TABLE OF CONTENTS**

I.   PRELIMINARY ESTIMATE OF THE TOTAL VALUE OF PLAINTIFFS' CLAIMS
     AGAINST ALL DEFENDANTS........................................................................................ 1

II.  THE RATIO BETWEEN THE TOTAL AMOUNT RECOVERABLE FROM ALL
     DEFENDANTS AND THE AMOUNT RECOVERED FROM THE SETTLING PARTIES
     IS REASONABLE .......................................................................................................... 3

     A.  THE RATIOS OF THE SETTLEMENT AMOUNTS TO THE DAMAGES
         ATTRIBUTABLE TO THE SETTLING DEFENDANTS REPRESENT EXTREMELY
         STRONG RECOVERIES ......................................................................................... 3

     B.  THE RELATIVE EXPOSURE, RESOURCES, AND MARKET SHARE OF THE
         SETTLING DEFENDANTS AND OTHER PARTIES ALSO WEIGH STRONGLY IN
         FAVOR OF THE REASONABLENESS OF THE AMOUNT RECOVERED FROM
         THE SETTLING PARTIES........................................................................................ 5

     C.  THE TIMING OF THE SETTLEMENTS, BOTH WITH REGARD TO THE STATE OF
         THE LITIGATION AND THE SPECIFIC CIRCUMSTANCES OF THE SETTLING
         DEFENDANTS, SUPPORTS THEIR REASONABLENESS............................................ 6

III. CONCLUSION ............................................................................................................. 9

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

## CASES

*Flintkote Co. v. Lysfjord*, 246 F.2d 368 (9th Cir. 1957) ......................................................5

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)......................................................6

*In re Auto Parts Antitrust Litig.*, No. 12-2311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) ......................................................................................................8

*In re Auto Parts Antitrust Litig.*, No. 12-2311, 2016 WL 9459355 (E.D. Mich. Nov. 29, 2016) ....................................................................................................8

*In re Auto Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ......................................................................................................8

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) ...................................................9

*In re California Pizza Kitchen Data Breach Litigation*, 129 F.4th 667 (9th Cir. 2025) ........................................................................................................7

*In re Cattle and Beef Antitrust Litig.*, MDL No. 22-3031, Dkt. 1439 (D. Minn. Aug. 18, 2025) ......................................................................................................8

*In re Cattle and Beef Antitrust Litig.*, No. 0:22-md-03031-JRT, (D. Minn. May 27, 2026) ......................................................................................................4

*In re Lithium Ion Batteries Antitrust Litigation*, 2020 WL 726455 ...........................................4

*In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ..................................................................................4

*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS, Dkt. 2133 (N.D. Cal. Dec. 19, 2016) ...........................................................................4, 6

*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS, Dkt. 2889 (N.D. Cal. Feb. 21, 2019)..........................................................................4

*In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670-DMS-MDD, Dkt. 2734 (S.D. Cal. Jan. 26, 2022) ...........................................................................8

*In re TransPacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 (N.D. Cal. May 26, 2015) ..................................................................................8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 1683640 (N.D. Cal. Apr. 17, 2024) ...........................................................................7

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)............................................................7

PLAINTIFFS' RESPONSE TO COURT'S ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS [DKT. 806]; Case No. 3:23-cv-01098-AGT

ii

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (1997) ................................................................5

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) .....................................................................8

*Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128 (N.D. Cal. 2011) .........................5

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth), § 21.651 ...........................................................................5

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

Plaintiffs submit the following response to the Court's August 3, 2026 Order re: Motion for Preliminary Approval (Dkt. 806). The Order, in relevant part, stated:

> Plaintiffs must publicly file a supplemental submission in which they estimate the value of their claims. Plaintiffs needn't disclose in detail how they arrived at their estimate, but they should provide the Court with some reasoning. Plaintiffs should also provide the Court with an explanation for why the ratio of the amount recovered in settlement to the amount that could have been obtained at trial is reasonable.

## I.     <u>**Preliminary Estimate of the Total Value of Plaintiffs' Claims Against All Defendants**</u>

Plaintiffs' preliminary estimate of the total value of Plaintiffs' claims against all Defendants is $263 million, before trebling, for a class period that begins in January 2016 and continues through the date of final approval, and includes all crabbers that sold Dungeness crab ex vessel to any buyer during this period in California, Oregon, coastal Washington, which excludes Puget Sound (collectively, the "Pacific NW Area").

These numbers were reached using an underpayment estimation model that compares ex vessel prices paid for Dungeness crab in Puget Sound against prices paid in the Pacific NW Area, employing a widely accepted methodology known amongst econometricians as a "difference-in-differences" method. A "difference in differences" method compares the difference between the price of the impacted products and the price of a benchmark product during the conspiracy period and the difference between the prices of those products before or after the conspiracy period. This analysis does not focus on the difference in those prices alone, but focuses on the way those differences change over time. As represented in the graph below, this analysis shows that, after being roughly in alignment for years, the extent of the difference between ex vessel prices in these two regions started to diverge at the beginning of the class period in 2016.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111



Average Inflation-Adjusted Price for Ex-Vessel Dungeness Crab -
Pacific NW vs. Puget Sound

Source: Fish Ticket Data from California, Oregon, Washington States' Departments of Fish and Wildlife;
CPI Series Federal Reserve Bank of St. Louis

This divergence reflects the conspiracy's operation in the Pacific NW Area, and the amount of the divergence provides a reliable basis for the conspiracy's effect on ex vessel prices in the Pacific NW Area. Dungeness crab is fundamentally a fungible product. Thus, the direct evidence of price-fixing amongst major buyers of Dungeness crab in the coastal Pacific NW Area ex vessel market strongly suggests that this price-fixing was the cause of the observed divergence in prices. This conclusion is further supported by several factors that insulate Puget Sound from the impacts of the conspiracy, including a large number of tribal nation market participants and Defendants' accordingly reduced market power.

Even assuming there are distinctions in the market between Dungeness crab from Puget Sound and Dungeness crab from the Pacific NW Area, any such distinctions appear to have existed both before and during the class period. For example, to the extent that Puget Sound's proximity to Seattle is a meaningful distinction in the market, that proximity has not changed. Thus, any such distinction does not explain the "difference in differences" on which Plaintiffs' preliminary damages analysis is based, and so cannot explain why, over time, the difference

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' RESPONSE TO COURT'S ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENTS [DKT. 806]; Case No. 3:23-cv-01098-AGT

2

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

between the ex vessel price paid for Dungeness crab caught in Puget Sound and that paid in the Pacific NW Area increased in both an absolute and relative sense.

Using this "difference in difference" methodology, an average underpayment for the class period of $0.55/lb was calculated. Multiplying this average underpayment by the total catch volume of Dungeness crab in the Pacific NW Area for each year yields a yearly total underpayment amount, which, in turn, results in total damages for all years in the class period of approximately $263 million, before trebling.

## II.    The Ratio Between the Total Amount Recoverable from All Defendants and the Amount Recovered from the Settling Parties Is Reasonable

A number of factors make reasonable the ratio between the total amount recoverable from all Defendants at trial and the amount recovered from the Settling Defendants. In particular, the key metric for weighing the reasonableness of partial settlements in cases like this—the ratio of the settlement amounts to the damages attributable to a settling party—demonstrates that the First Round Settlements represent recoveries for Plaintiffs and the First Round Settlement Class that well exceed settlements that Courts in other cases have described as "exceptional." Furthermore, the non-settling Defendants remain exposed to virtually all of the trebled damages that Plaintiffs seek and have the resources to satisfy a judgment in that amount; and, in addition, other factors related to the timing of these settlements and the financial condition of the Settling Defendants further bolster the reasonableness of the settlement amounts.

### A.    The Ratios of the Settlement Amounts to the Damages Attributable to the Settling Defendants Represent Extremely Strong Recoveries

Caito Inc.'s share of the ex vessel Dungeness crab market in the Pacific NW Area (based on catch records from the 2015/16 season through the 2024/25 season) is 2.86%, while Pacific Dream's market share is 2.27%.[1] Declaration of Stuart G. Gross in Support of Plaintiffs' Response re Preliminary Approval Motion ("Gross Dec."), ¶ 2. Thus, as shown in the table below, the settlement with Caito Inc. represents approximately 16.61% of the non-trebled

---

[1] Non-defendant Fisherman's Choice's absolute market share is 0.14%, meaning that any damages attributable to its commerce would total $368,200. Gross Dec., ¶ 4.

damages attributable to it, while the settlement with Pacific Dream represents approximately 16.75% of the non-trebled damages attributable to it. *Id*., ¶ 3.[2]

| | Settlement Amount | Percentage of Damages Attributable to Defendant | Amount of Damages Attributable to Defendant | Settlement Amount as Percentage of Attributable Damages |
|---|---|---|---|---|
| Caito, Inc. | $1,250,000 | 2.86% | $7,521,800 | 16.61% |
| Pacific Dream | $1,000,000 | 2.27% | $5,970,100 | 16.75% |

This compares very favorably with partial early settlements approved in other multi-defendant price-fixing cases. *See*, *e.g.*, *In re Cattle and Beef Antitrust Litig.*, No. 0:22-md-03031-JRT, (D. Minn. May 27, 2026) Dkt. 1597 (approving settlements of 8% and 8.6% of two defendants' respective attributable damages); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS, Dkt. 2133 (N.D. Cal. Dec. 19, 2016) (approving partial settlements representing approximately 10% and 12% of damages respectively attributable to certain settling defendants); *id.*, Dkt. 2889 (N.D. Cal. Feb. 21, 2019) (approving partial settlement representing approximately 12% of damages attributable to a different set of settling defendants). Under these circumstances, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023). If Plaintiffs were to enter settlements in this range for all subsequent Defendants, the ultimate settlement amount for the entire case would fall comfortably within the range that district courts routinely approve. *See*, *e.g.*, *In re Lithium Ion Batteries Antitrust Litigation*, 2020 WL 7264559, at *20 (granting final approval of the settlement representing 11.7% of damages and describing the result for the class as "excellent"). *See also Lazy Oil Co. v.*

[2] As Plaintiffs' preliminary estimated total damages is based on all crab purchased ex vessel in the Pacific NW Area by *any* buyer—Defendant or non-defendant—and the Proposed First Round Settlement Class includes all crabbers who sold crab ex vessel to *any* buyer—Defendant or non-defendant—it is appropriate to use absolute market share numbers (rather than relative) when calculating damages attributable to each of the settling buyers.

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

PLAINTIFFS' RESPONSE TO COURT'S ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS [DKT. 806]; Case No. 3:23-cv-01098-AGT

4

*Witco Corp.*, 95 F. Supp. 2d 290, 319 (1997) (approving a settlement amounting to 5.35% of the estimated damages).

### B.    The Relative Exposure, Resources, and Market Share of the Settling Defendants and Other Parties also Weigh Strongly in Favor of the Reasonableness of the Amount Recovered from the Settling Parties

When evaluating a partial settlement with certain defendants (while others remain in the litigation), "[t]he adequacy of the settlement depends in part on the relative exposure and resources of other parties." Manual for Complex Litigation (Fourth), § 21.651. Both of these factors weigh heavily in favor of the reasonableness of the First Round Settlements.

First, the First Round Settlements do not meaningfully affect the exposure of the non-settling Defendants in this action. Defendants' liability here is joint and several (*Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1136 (N.D. Cal. 2011)), and non-settling Defendants are only entitled to an offset against awarded damages *after trebling* (*Flintkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957)). Thus, the amounts recovered from the Settling Defendants do <u>not</u> reduce the total amount recoverable by Plaintiffs and the putative class; the total damages entitlement of Plaintiffs and the putative class is unchanged by the First Round Settlements, which represent, in essence, a first installment payment of such damages. Using Plaintiffs' preliminary damages estimate discussed above, prior to the First Round Settlements, all of the Defendants faced an approximate post-trebling exposure of $789 million; after the First Round Settlements, the non-settling Defendants face an approximate post-trebling exposure of $786.75 million, i.e. $2.25 million less. (The ultimate amount that Plaintiffs, the First Round Settlement Class, and any other classes ultimately stand to recover from *all Defendants*, including the Settling Defendants, however, remains unchanged at $789 million.)

Second, the remaining Defendants collectively have resources that dwarf those of the Settling Buyers, and the First Round Settlements do not in any way impair the Plaintiffs' and the class's ability to reach settlements with or collect judgments from those Defendants. For example, Pacific Seafood *alone* likely has sufficient resources to satisfy a $786.75 million verdict. While Pacific Seafood—which is a private company owned 100% by Frank Dulcich—no longer releases annual revenue numbers, the last time it did (fourteen years ago and before numerous major

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

expansions), Pacific Seafood was doing ***$1 billion in annual revenue***. Gross Dec., ¶ 6. Based on its acquisitions and other expansions that have happened since that time, its current annual revenue is likely in the range of $2.6-2.8 billion. *Id*., ¶¶ 7-11. While in many cases even less information is available with regard to the other Defendants than with regard to Pacific Seafood, Southwind, for example, says that it does $600 million in annual revenue. *Id*., ¶ 18. In addition, Ocean Gold (in which Pacific Seafood's owner Frank Dulcich holds a 49% interest), Bornstein, and Hallmark all have very substantial resources that can be used to satisfy a judgment in this case. Gross Dec., ¶¶ 19-37. These Defendants, along with all of the other non-settling Defendants, have (based on catch records from the 2015/16 season through the 2024/25 season) a collective total market share of 55.75% and a market share relative to all Defendants of 91.41%. *Id*., ¶ 38. The resources of the remaining Defendants to satisfy a judgment or pay a settlement therefore weighs strongly in favor of preliminary approval of the First Round Settlements. *Accord In re Optical Disk Drive Products A/T Litigation,* No. 10-md-2143 RS, Dkt. 2133 (N.D. Cal. Dec. 19, 2016) at 7 (finding that "[t]he litigation will continue against defendants responsible for approximately fifty percent of the commerce at issue [is a] factor strongly weighing in favor of granting final approval.").

C. **The Timing of the Settlements, Both with Regard to the State of the Litigation and the Specific Circumstances of the Settling Defendants, Supports Their Reasonableness**

The fact that the First Round Settlements were reached early in the litigation additionally supports their approval for two separate reasons.

The first is that settlements reached early in the litigation are good for plaintiffs because they avoid the costs and risks associated with litigation. As the Ninth Circuit has instructed:

> Settlement is attractive to parties because it reduces litigation costs. Therefore, plaintiffs are willing to settle for less than they might receive if a claim were fully litigated. Courts are instructed to allow this discounting when determining whether a partial settlement was entered in good faith. Plaintiffs are willing to forego this money, and courts correctly approve the discount.

*Franklin v. Kaypro Corp*., 884 F.2d 1222, 1230 (9th Cir. 1989) (internal citations omitted). Settlements secure a certain benefit for the class while eliminating the costs, delay, and contingencies necessarily attendant to the remaining stages of litigation. *See Lane v. Facebook,*

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

*Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (identifying "the risk, expense, complexity, and likely duration of further litigation" as relevant to settlement approval). While Plaintiffs are confident that they will ultimately prevail in this litigation based on the evidence developed to date, substantial procedural steps remain—including completion of discovery, class certification, summary judgment, trial, and any appeal—and success at each stage must still be obtained rather than assumed. The value of eliminating those contingencies is particularly significant for an early settlement; rather than incur the additional expense necessary to obtain a judgment against the Settling Buyers before securing any recovery from them, the First Round Settlements convert Plaintiffs' claims against those parties into immediate and certain consideration, which Plaintiffs will use to pursue additional and larger recoveries from the remaining defendants.

For each of the Settling Defendants, the First Round Settlements were reached before exchange of expert reports and expert depositions, class certification, motions for summary judgment, and trial. Indeed, in the case of Pacific Dream, the settlement was reached almost simultaneously with it being named as a defendant, meaning that Plaintiffs did not have to engage in significant litigation against Pacific Dream. This weighs in favor of approval of this settlement. *See In re California Pizza Kitchen Data Breach Litigation*, 129 F.4th 667, 678 (9th Cir. 2025) ("An early settlement may often be beneficial for the class, as it reduces attorneys' fees, preserves value for the class, and offers immediate compensation for injured class members," even where there is the possibility that "plaintiffs' counsel could have obtained a better deal if they had litigated the case further.").

Second, because these settlements come early in the litigation, the proceeds from them will "provide funds needed to pursue the litigation," as well as "reduce the scope of discovery or trial, aid the parties in obtaining evidence, and facilitate later settlements on other issues and with other parties." Manual for Complex Litigation (Fourth) § 13.21. Courts accordingly recognize the additional value that an early partial settlement can provide to the continuing prosecution of claims against non-settling defendants. *See, e.g., In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 1683640, at *5 (N.D. Cal. Apr. 17, 2024) (approving allocation of the entire $3.4 million in settlement consideration to "be used to pay costs and expenses

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

incurred in the ongoing litigation against the Remaining Defendants," and finding that this "provide[s] substantial benefit to Settlement Class members, as the proceeds of the Settlement will be used to advance the pursuit of recoveries from the Remaining Defendants."); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670-DMS-MDD, Dkt. 2734, at 2–4, 12–13 (S.D. Cal. Jan. 26, 2022) (preliminarily approving "ice breaker" antitrust settlement reached at an "early and crucial stage" where settlement proceeds were available for litigation expenses and settling defendants' cooperation could provide "substantial benefit" in pursuing non-settling defendants); *In re Cattle and Beef Antitrust Litig.*, MDL No. 22-3031, Dkt. 1439 at ¶ 21 (D. Minn. Aug. 18, 2025) (granting $3.5 million to fund future litigation expenses); *Newby v. Enron Corp.*, 394 F.3d 296, 305–06 (5th Cir. 2004) (affirming 37.5% set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018) (approving request to set aside $3,455,423.97 for use in future litigation); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015) (approving request to set aside $2,947,395 for use in future litigation); *In re TransPacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 (N.D. Cal. May 26, 2015), Dkt. 1009 (granting $3,000,000 "for future expenses"). All of those benefits weigh independently in favor of approval here: the First Round Settlements not only secure substantial consideration from the Settling Buyers, they also provide Plaintiffs with resources and information that strengthen their ability to pursue the substantially larger claims remaining against the non-settling Defendants.

Moreover, while Plaintiffs are limited in what they can reveal given the settlement conference privilege, there are substantial collectability challenges that confirm the reasonableness of settlement amounts. Caito Inc. has ceased operations, and Plaintiffs have reason to believe that the proceeds from the sale of its assets were paid to its owners, the Caito Siblings. Declaration of Stuart G. Gross in Support of Plaintiffs' Motion for Preliminary Approval (Dkt. 740-1, ¶¶ 30-31.] Given the fact that it has ceased operations and is not generating additional

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

revenue, Caito, Inc. does not appear to have assets sufficient to support a large judgment, while the homestead exemption and other factors would likely make it difficult for Plaintiffs to recover significant damages from the Caito Siblings. *Id*. Protracted litigation would further reduce the funds available to satisfy a judgment, and, while this is true in all cases, it is particularly true here. Because Caito Inc. is not operating and the Caito Siblings are elderly, there is a finite corpus of funds available to satisfy any judgment, which, moreover, would likely be subject to a substantial indemnification claim by Southwind. *Id*., ¶¶ 32-33. Thus, if Plaintiffs were to hold out and attempt to secure a greater recovery from Caito at trial or via a future settlement, they very well could end up getting substantially less or nothing, even if successful against it.

Plaintiffs are even more constrained in what they can say with regard to Pacific Dream because the documents and materials that were provided to Plaintiffs in the context of the Settlement Conference held before Magistrate Judge Joseph Spero are privileged and cannot be disclosed. In that context, counsel for Plaintiffs was presented with information sufficient to persuade counsel that Pacific Dream did not have resources that would allow for a substantially larger recovery and that continued litigation could, in fact, hurt the First Round Settlement Class's chances of recovering a reasonable amount from Pacific Dream and the company's continued viability as a buyer in the market. *Id*., ¶ 39. Thus, once again, it was in the best interests of Plaintiffs and the class to settle with Pacific Dream at this early stage rather than insist on protracted litigation. *Accord generally In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 180 (5th Cir. 1979) (affirming approval of a partial settlement on the ground that continued litigation could have resulted in the settling defendant going out of business, resulting in harm to the class).

## III.    CONCLUSION

For the foregoing reasons, as well as those laid out in the Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully submit that the First Round Settlements should be preliminarily approved.

Dated: August 11, 2026                    Respectfully submitted,


By:                                       */s/ Stuart G. Gross*
                                          Stuart G. Gross (SBN 251019)
                                          Jan W. A. Jorritsma (SBN 326772)
                                          Travis H.A. Smith (SBN 331305)
                                          **GROSS KLEIN PC**
                                          The Embarcadero
                                          Pier 9, Suite 100
                                          San Francisco, CA 94111
                                          (415) 671-4628
                                          *sgross@grosskleinlaw.com*
                                          *tsmith@grosskleinlaw.com*
                                          *rmiddlemiss@grosskleinlaw.com*

                                          Matthew W. Ruan (SBN 264409)
                                          *Samantha Gupta (admitted pro hac vice)*
                                          **JUSTICE JAGHER LONDON & MILLEN
                                          LLC**
                                          100 Tri-State International, Suite 128
                                          Lincolnshire, IL 60069
                                          (224) 632-4500
                                          *mruan@fklmlaw.com*
                                          *sgupta@fklmlaw.com*

                                          Matthew S. Weiler (SBN 236052)
                                          Raymond S. Levine (SBN 348030)
                                          **SCHNEIDER WALLACE COTTRELL
                                          KONECKY, LLP**
                                          2000 Powell Street, Suite 1400
                                          Emeryville, CA 94608
                                          (415) 421-7100
                                          mweiler@schneiderwallace.com
                                          *rlevine@schneiderwallace.com*

                                          Todd R. Gregorian (SBN 236096)
                                          Jonathan G. Tamimi (SBN 305493)
                                          **FENWICK & WEST LLP**
                                          One Front Street, Floor 33
                                          San Francisco, CA 94111
                                          (415) 875-2300
                                          *tgregorian@fenwick.com*
                                          *jtamimi@fenwick.com*

                                          *Counsel for Plaintiffs and the Proposed Classes*

PLAINTIFFS' RESPONSE TO COURT'S ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENTS [DKT. 806]; Case No. 3:23-cv-01098-AGT                                        10