W. Scott Cameron, State Bar No. 229828
Josiah M. Prendergast, State Bar No. 292840
Carly M. Moran, State Bar No. 333661
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: 916.558.6000
Facsimile: 916.446.1611
Email: SCameron@weintraub.com
JPrendergast@weintraub.com
CMoran@weintraub.com

*Attorneys for Defendants*
*California Shellfish Company, Inc. and*
*Robert Bugatto Enterprises*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BRAND LITTLE, and ROBIN BURNS, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PACIFIC SEAFOOD PROCUREMENT, LLC; et al.,

Defendants.

Case No.: 3:23-cv-01098-AGT

**DEFENDANT CALIFORNIA SHELLFISH COMPANY, INC. DBA HALLMARK'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

Date: August 28, 2026
Time: 10:00 a.m.
Judge: The Honorable Alex G. Tse
Courtroom: A, 15th Floor

**weintraub tobin** chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

TABLE OF CONTENTS

I. INTRODUCTION ........ 4
II. PERTINENT FACTUAL HISTORY ........ 5
III. LEGAL STANDARD ........ 6
IV. LEGAL ARGUMENT ........ 7
A. Hallmark Had No Duty, And No Legal Right, To Preserve Or Collect Text Messages On Its Employees' Personal Cell Phones ........ 7
1. Rule 37(e) Applies Only To ESI Within A Party's Possession, Custody, Or Control ........ 7
2. Crystal Adams Left Hallmark And Traded In Her Personal Cell Phone Before Any Duty Of Preservation Attached To Hallmark ........ 11
B. Plaintiffs Have Failed To Show That Any Of The Text Messages At Issue Were "Lost," Or "Cannot Be Restored Or Replaced Through Additional Discovery" ........ 13
C. Plaintiffs Failed To Establish Prejudice Or That Hallmark Acted With The Intent To Deprive ........ 17
1. Plaintiffs Cannot Establish Prejudice ........ 18
2. Plaintiffs Cannot Establish The Specific Intent Required To Support A Mandatory Adverse Inference ........ 19
V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiona v. United States*,
938 F.2d 158 (9th Cir. 1991) ....................9

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) ....................8, 13

*Compass Bank v. Morris Cerullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015)....................8

*Gregory v. State of Montana*,
118 F.4th 1069 (9th Cir. 2024) ....................21

*Jones v. Riot Hosp. Grp., LLC*,
95 F.4th 730 (9th Cir. 2024) ....................8, 21

*Est. of Bosco ex rel. Kozar v. Cnty. of Sonoma*,
640 F. Supp. 3d 915 (N.D. Cal. 2022) ....................8, 14

*Krishnan v. Cambia Health Sols., Inc.*,
No. 2:20-CV-574-RAJ, 2021 WL 3129940 (W.D. Wash. July 23, 2021)....................9, 10

*OmniGen Research v. Yongqiang Wang*,
321 F.R.D. 367 (D. Or. 2017)....................8

*Paisley Park Enterprises, Inc. v. Boxill*,
330 F.R.D. 226 (D. Minn. 2019)....................15, 16, 17, 18

*In re Pork Antitrust Litigation*,
No. 18-CV-1776 (JRT/HB) 2022 WL 972401 (D. Minn. Mar. 31, 2022) ....................10, 11

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022)....................15, 16, 17, 18

*U.S. v. Intl. Union of Petroleum and Indus. Workers, AFL-CIO*,
870 F.2d 1450 (9th Cir. 1989) ....................9

**Other Authorities**

Rule 37(e).................... *passim*

Rule 45 ....................13, 15

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

## I. INTRODUCTION

Plaintiffs' omnibus Motion seeks one of Rule 37's most severe sanctions: a mandatory adverse-inference instruction requiring the jury to presume that certain evidence was unfavorable to California Shellfish Company, Inc., dba Hallmark ("Hallmark"). However, as discussed herein, Plaintiffs' extraordinary request rests on remarkably little. Plaintiffs' spoliation theory ultimately concerns the personal cell phones of two former employees, devices Hallmark did not issue, did not pay for, did not possess, and had no ownership interest in or legal right to search, image, collect, or preserve. One of those employees, Crystal Adams, left Hallmark in October 2023 and later traded in her personal phone, more than a year before Plaintiffs first named Hallmark as a defendant. The other, Michael Ryder, remains available to Plaintiffs today. Hallmark provided Plaintiffs with Mr. Ryder's contact information, including the only address in its possession, yet Plaintiffs have never served, or as far as Hallmark knows, even attempted to serve, Mr. Ryder with a subpoena seeking the very messages they now contend are "lost" and unavailable.

Those facts do not establish spoliation, much less justify a mandatory adverse inference. To reach the result Plaintiffs seek, this court would have to assume that relevant evidence existed on these personal devices, assume that the evidence was lost, attribute that supposed loss to Hallmark despite Hallmark never possessing or controlling the devices, and then infer that Hallmark acted with the specific purpose of depriving Plaintiffs of the evidence. Rule 37(e) does not permit sanctions based on a series of unsupported assumptions. And it certainly does not permit the jury to be instructed that it "must assume" unidentified evidence was harmful to Hallmark where Plaintiffs have not even established that the alleged evidence was relevant or lost, much less that Hallmark caused its loss.

As demonstrated below, Plaintiffs cannot satisfy Rule 37(e)'s threshold requirements as to Hallmark. They cannot establish that Hallmark had possession, custody, or control over the ESI at issue; that Hallmark lost any ESI; that any alleged loss resulted from Hallmark's failure to take reasonable preservation steps; or that the information cannot be restored or replaced through additional discovery that Plaintiffs have simply not pursued. Nor can Plaintiffs show prejudice, particularly where neither Mr. Ryder nor Ms. Adams had authority to set, negotiate, or approve

Hallmark's pricing decisions. Most importantly, there is no evidence that Hallmark destroyed, deleted, concealed, or directed anyone to destroy anything, much less that it acted with the specific intent to deprive Plaintiffs of evidence required by Rule 37(e)(2). The record does not support spoliation, prejudice, or intent. Plaintiffs' Motion against Hallmark should therefore be denied in its entirety.

## II. PERTINENT FACTUAL HISTORY

Gene Bugatto is the owner of California Shellfish Company, Inc., dba Hallmark ("Hallmark"). (Declaration of Gene Bugatto ("Bugatto Decl."), ¶ 1). Mr. Bugatto is the sole individual at Hallmark with authority to set the prices Hallmark will pay for Dungeness crab ex vessel. (Bugatto Decl. ¶ 2; Declaration of Scott Adams ("Adams Decl."), ¶ 2). Scott Adams serves as Hallmark's principal representative in the Oregon ex vessel Dungeness crab market, but even Mr. Adams has no authority to set, negotiate, or approve pricing. (Adams Decl. ¶ 2). Rather, Mr. Bugatto and Mr. Adams confer by telephone regarding market conditions; Mr. Bugatto alone decides what Hallmark will pay, communicates that decision to Mr. Adams, and Mr. Adams in turn relays the price to employes to relay to crab buyers. (Bugatto Decl. ¶ 3; Adams Decl. ¶ 3).

Hallmark's dock-level employees have *no* power or authority to negotiate prices, set prices, or commit Hallmark to purchase or sell crab at any particular price. (Bugatto Decl. ¶ 4; Adams Decl. ¶ 4). At most, dock employees may communicate to fishermen the price Hallmark has already decided to pay. If a fisherman requests a higher price, dock employees cannot agree to it; the request must be relayed to Mr. Adams, who conveys it to Mr. Bugatto for decision. (Adams Decl. ¶ 4). In short, dock employees functioned solely as messengers of Mr. Bugatto's pricing decisions, having no involvement in formulating, influencing, or approving those decisions.

Crystal Adams is a former Hallmark employee who served as assistant plant dock manager for Port Orford, Oregon. (Adams Decl. ¶ 5). Ms. Adams is also Scott Adams' daughter. (Adams Dec. ¶ 5). Ms. Adams left Hallmark in October 2023 to become Executive Director of the Oregon Dungeness Crab Commission, a position she holds to this day. (Adams Decl. ¶ 5). At the time of her departure, Hallmark was not a party to this action and had no reason to anticipate it would be named, much less to anticipate what allegations might be leveled against it. Plaintiffs did not join Hallmark



weintraub tobin chediak coleman grodin law corporation

until they filed the Amended Complaint on November 25, 2024 (Dkt. 218), which was over a year after Ms. Adams's employment ended. Separately, in late 2023, Ms. Adams changed her personal cell phone carrier and traded in her then-existing phone in the ordinary course. She did not back up or transfer her data, including any text messages, to her new device. (Bugatto Decl. ¶ 7; Declaration of W. Scott Cameron ("Cameron Decl."), ¶ 2).

Michael Ryder is a former Hallmark employee who served as Port Manager for the Port of Brookings, Oregon. Mr. Ryder's employment was terminated by Hallmark on April 24, 2025. (Bugatto Decl. ¶ 5). Like every Hallmark employee other than Mr. Bugatto, Mr. Ryder never had authority to negotiate or set pricing; any request for a price increase at the dock had to be run through Mr. Bugatto. (Bugatto Decl. ¶ 5; Adams Decl. ¶ 6). Hallmark has provided Plaintiffs with the only address it has for Mr. Ryder. It is common for Hallmark to have only a PO Box as an address for employees in rural areas of Oregon, like Mr. Ryder, and to not have a residence address for them. (Bugatto Dec. ¶ 6). Moreover, Plaintiffs have Mr. Ryder's cell phone number and can easily contact him regarding service of a subpoena. We understand that Plaintiffs have never personally subpoenaed Mr. Ryder for his text messages. (Cameron Decl. ¶ 6).

At no time has Hallmark provided its employees with company-owned cell phones. Hallmark has never maintained a formal cell phone policy, has never asked employees to use their personal cell phones for business purposes, has never reimbursed employees for personal cell phone use, even if they used their personal cell phones for business purposes, and has never had the ability to access, image, or wipe data from its employees' personal devices. (Bugatto Decl. ¶ 9). To the extent any Hallmark employee ever sent a business-related text message, it was on a device Hallmark neither owns nor controls.

## III. <u>LEGAL STANDARD</u>

Rule 37(e) authorizes curative measures only where each of four threshold requirements are satisfied: (1) electronically stored information "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI was "lost"; (3) the loss occurred "because a party failed to take reasonable steps to preserve it"; and (4) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Courts in this District apply the same four-part framework and

weintraub tobin chediak coleman grodin law corporation

recognize that spoliation may be found only where "(1) the information qualifies as ESI; (2) the ESI is lost and cannot be restored or replaced; (3) the ESI should have been preserved in the anticipation or conduct of litigation; and (4) the responding party failed to take reasonable steps to preserve the ESI." *Est. of Bosco ex rel. Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 924 (N.D. Cal. 2022). Unless each threshold element is established, Rule 37(e) provides no basis for relief.

To prevail on the instant motion against Hallmark, Plaintiffs must prove by a preponderance of evidence that sanctionable spoliation conduct occurred. *See e.g. OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1053 (S.D. Cal. 2015). Moreover, the particular remedy Plaintiffs seek here, a mandatory adverse-inference instruction, requires substantially more. That severe sanction is reserved for the rare case in which the court finds that the party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *Jones v. Riot Hosp. Grp., LLC*, 95 F.4th 730, 735 (9th Cir. 2024). While Rule 37(e) does not define "intent," "in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Id.* Thus, a mandatory adverse inference cannot rest on speculation, negligence, or even a failure to preserve alone; rather, it requires proof of purposeful conduct undertaken to deprive an adversary of evidence.

## IV. LEGAL ARGUMENT

### A. Hallmark Had No Duty, And No Legal Right, To Preserve Or Collect Text Messages On Its Employees' Personal Cell Phones

#### 1. Rule 37(e) Applies Only To ESI Within A Party's Possession, Custody, Or Control

Rule 37(e) is addressed to ESI a party "should have . . . preserved" and that was "lost because a party failed to take reasonable steps to preserve it." Necessarily, however, Rule 37(e) applies only to ESI within a party's possession, custody or control. A party cannot "fail" to preserve what it does not control or what it has no legal right to obtain. In the Ninth Circuit, "[c]ontrol is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (holding that control requires a legal right to obtain records on demand, not merely theoretical access to them). And, the burden rests with the party seeking production to establish that such control

weintraub tobin chediak coleman grodin law corporation

exists. *U.S. v. Intl. Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

The Ninth Circuit has long instructed that a party "should only be penalized for destroying documents if it was wrong to do so," which "requires, at a minimum, some notice that the documents are potentially relevant." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). Consistent with that principle, the Advisory Committee for Rule 37(e) has confirmed that the Rule "does not call for perfection" and requires only "reasonable steps", an inquiry that necessarily takes account of what a party lawfully could, and could not, preserve. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Plaintiff's Motion fails at this threshold because Hallmark has never possessed or controlled its employees' personal cell phone devices or the text messages stored on them. It is undisputed that Hallmark has never issued company-owned cell phones to its employees, has never maintained a policy governing employees' personal cell phone use, has never reimbursed employees for personal cell phone service, has never possessed the technical ability or legal authority to access, image, or wipe an employee's personal device, and has never asserted ownership of, or has had any right to access, its employees' personal text messages. (Bugatto Decl. ¶ 9). To the extent any Hallmark employee communicated about work by text message, the employee did so using a device that the employee personally owned and personally paid for. Hallmark therefore cannot be sanctioned for failing to preserve or collect information that it neither possessed nor had any legal right to obtain.

*Krishnan v. Cambia Health Sols., Inc.*, No. 2:20-CV-574-RAJ, 2021 WL 3129940 (W.D. Wash. July 23, 2021), is instructive to this point. There, in denying a motion to compel employee text messages, the *Krishnan* court considered three circumstances bearing on control: whether the employer issued the devices; whether the devices were routinely used for business purposes; and whether the employer had a legal right to obtain communications from the devices. The *Krishnan* court concluded that plaintiffs had not met their burden to prove control even though there was evidence that employees had exchanged text messages concerning work-related matters on their personal devices. *Id*. The personal cell phones had not been issued by the employer, and the plaintiff failed to establish that the devices were "routinely used for business purposes or to what extent." *Id*.

weintraub tobin chediak coleman grodin law corporation

The court also examined whether the employer had a "legal right" to obtain the communications under its employee handbook. Although the handbook permitted inspection of "employer's devices," it conferred no right to inspect employees' personal devices. *Id*. The court therefore found insufficient evidence of control and denied the motion to compel the employee text messages. *Id*.

As applied here, each factor weighs even more strongly in Hallmark's favor. Hallmark issued no devices; Plaintiffs, who bear the burden on this motion, have identified no evidence that Hallmark employees routinely used personal phones for company business; and Hallmark possessed no contractual, policy-based, or legal right to access employees' personal devices or the contents stored on them. Indeed, the employer in *Krishnan* at least maintained a handbook expressly reserving certain inspection rights, yet the court still found no control because those rights did not extend to employees' personal devices. *Id*. Hallmark has no comparable policy at all. If control was absent there, it is even more plainly absent here.

A district court within the Eighth Circuit reached a similar holding in *In re Pork Antitrust Litigation*, No. 18-CV-1776 (JRT/HB) 2022 WL 972401 (D. Minn. Mar. 31, 2022). In *In re Pork,* the plaintiffs alleged that the defendants had engaged in unlawful price fixing in the pork market and sought discovery in support of those allegations. In that collection of class action cases, plaintiffs sought text messages sent and received by several of defendant Hormel's key employees on their personally owned cell phones. Plaintiffs argued that Hormel knew or should have known that its custodians were conducting substantive work-related business by text message and therefore was obligated to image those phones and preserve cloud backups at the outset of the litigation. *Id*. at *3.

Ultimately, the court rejected that theory, finding that defendant Hormel did not control text messages stored on its employees' personally owned phones, even where the messages themselves concerned company business. *Id*. at *4-5. Critically, the court reached that conclusion despite facts demonstrating a far closer relationship between Hormel and its employees' personal devices than exists here. Hormel maintained a "Bring Your Own Device" policy permitting employees to use their personal phones for business purposes, reimbursed employees for mobile device service, and possessed the ability to remotely wipe data from the phones. *Id*. at *2, 6. Even so, the court concluded that Hormel's ability to wipe data did not confer the ability to access, inspect, copy, or image the

weintraub tobin chediak coleman grodin
law corporation

employees' text messages. *Id*. at *6. It therefore held that Hormel lacked the legal right to access its employees' private cell phone text messages. *Id*. at *5-6. (adopting the position of the Sedona Conference, which "has taken the position that an employer does not legally control personal text messages despite a BYOD policy when the policy does not assert employer ownership over the texts and the employer cannot legally demand access to the texts. The Sedona Conference, Commentary on BYOD: Principles and Guidance for Developing Policies and Meeting Discovery Obligations, 19 Sedona Conf. J. 495, 531 (2018)").

Here, Hallmark's connection to its employees' personal devices is materially more attenuated than the devices at issue in *In re Pork*. Unlike defendant Hormel, Hallmark has no formal policy governing employee cell phone use, does not reimburse employees for cellular service or usage, and has no ability to remotely wipe employees' phones. Nor has Hallmark ever claimed ownership of or control over the text messages stored on those devices. If Hormel lacked control despite its BYOD policy, reimbursement practices, and limited technical authority over employees' phones, the case for control here is weaker still. Hallmark lacks both the legal right and the practical ability to obtain its employees' personal text messages on demand. That distinction is dispositive. Because Rule 37(e) imposes preservation obligations only as to information within a party's possession, custody, or control, Hallmark had no duty to preserve text messages residing solely on employees' personally owned devices. Plaintiffs therefore cannot establish the threshold proposition on which their spoliation theory depends: that Hallmark "lost" ESI it was obligated to preserve.

For the same reason, Plaintiffs cannot show that Hallmark failed to take "reasonable steps" to preserve the text messages at issue. Just three months after Hallmark was named as a defendant, its counsel took affirmative steps to ensure the preservation of potentially relevant information. On or about February 4, 2025, Hallmark's counsel prepared a written preservation notice advising Hallmark employees of their obligation to preserve potentially relevant evidence, and Hallmark distributed that notice to its employees. (Cameron Decl. ¶ 3). These actions reflect Hallmark's good-faith effort to preserve potentially relevant ESI once it became a party to this litigation and was apprised of the allegations against it.

Nor can Plaintiffs point to the fact that Hallmark did collect cell phone data, including text

weintraub tobin chediak coleman grodin
law corporation

messages, from certain employees as demonstrating the right to collect. Indeed, the collection was done through voluntary cooperation of the employees after counsel explained to the employees that if they did not agree to Hallmark collecting the data, the employees would be subject to subpoena from Plaintiffs and would be forced to respond to the subpoena individually. (Cameron Dec. ¶ 4). Hallmark voluntarily assumed the expense and burden of collecting, reviewing, and producing the cell phone data only to spare the employees from shouldering that expense and burden themselves. (*Id.*). Significantly, Hallmark did *not* collect the employees' cell phone data because it had a right or obligation to do so; Hallmark only did so as an accommodation to the employees.

In sum, Rule 37(e) does not require a party to inspect property that it does not own, confer access that it has no authority to provide, or collect private information that it has no legal right to obtain. Hallmark could not preserve what it did not possess and could not lawfully control. Accordingly, because Hallmark had neither possession, custody, nor control over its employees' personal text messages, Rule 37(e)'s preservation obligation never attached to those materials in the first place. Plaintiffs' spoliation theory therefore fails at the threshold.

weintraub tobin chediak coleman grodin
law corporation

2. Crystal Adams Left Hallmark And Traded In Her Personal Cell Phone Before Any Duty Of Preservation Attached To Hallmark

Plaintiffs' spoliation theory against Hallmark as to the text messages of ex-employee Crystal Adams fails for a separate and independent reason: any alleged loss of Ms. Adams' text messages occurred before Hallmark had any preservation obligation that could support sanctions under Rule 37(e). Critically, Rule 37(e) "does not apply to information lost before a preservation duty arises." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. That principle forecloses Plaintiffs' claim here.

Ms. Adams left Hallmark in October 2023 to become Executive Director of the Oregon Dungeness Crab Commission. (Adams Decl. ¶ 5). At the time of her departure, Hallmark was not a party to this litigation. Plaintiffs did not name Hallmark as a defendant until November 25, 2024, more than a year later. Dkt. 218. By the time Ms. Adams changed cellular carriers and traded in her personal cell phone, she was no longer a Hallmark employee. Hallmark had neither a relationship to the device nor any authority to dictate what Ms. Adams could or could not do with her personal

property. Her decision to replace her own phone was an ordinary act undertaken in her individual capacity, and was not an act of Hallmark, directed by Hallmark, or within Hallmark's ability to prevent. Rule 37(e) cannot transform the independent conduct of a former employee concerning her own personal property into an act of spoliation by Hallmark.

Plaintiffs attempt to avoid that conclusion by asserting that Hallmark's preservation duty arose on May 31, 2023, when Hallmark, then a non-party, received a Rule 45 subpoena. Mot. at 14. However, that argument conflates notice of potential litigation with control over the information that is allegedly lost. Whatever obligations the subpoena imposed on Hallmark at that time could only extend to information within Hallmark's possession, custody, or control. *In re Citric Acid Litig.*, 191 F.3d at 1107. As demonstrated above, Hallmark never possessed or controlled Ms. Adams' personal cell phone or the text messages stored on it. That was true when the subpoena issued, when Ms. Adams left the company, and when she later traded in her phone. A subpoena does not manufacture a legal right of access that does not otherwise exist, nor can a preservation request expand a non-party's obligations to encompass information over which it has no possession, custody, or control.

Plaintiffs likewise cannot establish that Hallmark should have anticipated that the contents of Ms. Adams' *personal* phone would later become relevant to claims asserted against it. At the relevant time, Hallmark was not a party to this action, no claims had been asserted against it, and Plaintiffs' lawsuit was directed at an entirely different group of defendants. Moreover, the issues at stake in the litigation at the time are far different, and much narrower, than the issues at stake once Hallmark was actually named in the Amended Complaint and served with it. Before Hallmark was ever sued, or even knew what allegations Plaintiffs might eventually assert against it, there was no basis to conclude that the contents of a dock-level employee's personally owned phone were potentially relevant to future claims against Hallmark. This is especially so in light of the fact that Hallmark's dock-level employees have *no* power or authority to negotiate prices, set prices, or commit Hallmark to purchase or sell crab at any particular price. (Bugatto Decl. ¶ 4; Adams Decl. ¶ 4). At most, dock employees may communicate to fishermen the price Hallmark has already decided to pay. If a fisherman requests a higher price, dock employees cannot agree to it; the request must be relayed to Mr. Adams, who conveys it to Mr. Bugatto for decision. (Adams Decl. ¶ 4). In short, dock employees

weintraub tobin chediak coleman grodin
law corporation

functioned solely as messengers of Mr. Bugatto's pricing decisions, having no involvement in formulating, influencing, or approving those decisions. Plaintiffs cannot retroactively impose a preservation duty based on allegations asserted more than a year after Ms. Adams left the company.

The Court's stay order does not change that analysis. The order merely permitted Plaintiffs to "request" that third parties preserve information. Dkt. 38 at 1. A request to preserve information is not a grant of legal authority over another person's private property. It could not transform Hallmark into the custodian of its employees' personal devices, confer upon Hallmark a right to search or image those devices, or require Hallmark to preserve information it had no legal right to access in the first instance.

The relevant timeline and the complete absence of control by Hallmark are therefore fatal to Plaintiffs' Motion. Ms. Adams' phone was never within Hallmark's possession, custody, or control; she disposed of the device in her personal capacity after leaving Hallmark; and Hallmark was not named as a defendant until more than a year after her employment ended. Rule 37(e) does not permit sanctions against Hallmark for failing to preserve information that Hallmark neither had a duty nor the legal ability to preserve. Plaintiffs' spoliation claim as to Ms. Adams' cell phone therefore fails as a matter of law.

weintraub tobin chediak coleman grodin law corporation

### B. <u>Plaintiffs Have Failed To Show That Any Of The Text Messages At Issue Were "Lost," Or "Cannot Be Restored Or Replaced Through Additional Discovery"</u>

Even assuming, *arguendo,* that Hallmark had a legal duty to preserve and collect the text messages of Mr. Ryder and Ms. Adams—which Hallmark denies—Plaintiffs' Motion still fails. Rule 37(e) requires proof not only that ESI be "lost", but also that it "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *see Bosco*, 640 F. Supp. 3d at 924. Plaintiffs have established neither.

As to Mr. Ryder, Plaintiffs have not identified evidence that a single text message was deleted, destroyed, or otherwise lost. Mr. Ryder left Hallmark in April 2025 with his personally owned phone. If that device contains relevant messages, nothing in the record suggests those messages are no longer precisely where they have always been: on Mr. Ryder's personal device. Plaintiffs' assertion of spoliation therefore rests entirely on speculation, which Plaintiffs could readily eliminate by seeking

discovery from Mr. Ryder himself through a Rule 45 subpoena. Yet, Plaintiffs' have not done this.

Plaintiffs possess Mr. Ryder's cell phone number, and Hallmark provided the only address it has for him, a P.O. Box, as is common for Hallmark employees in rural Oregon, for whom Hallmark often has no residence address at all. (Bugatto Decl. ¶ 6; Cameron Decl. ¶ 5). Yet Plaintiffs have never attempted to serve Mr. Ryder with a subpoena and, so far as Hallmark is aware, have never even used the telephone number already in their possession to contact him regarding service. Plaintiffs' sole explanation is that service is "impracticable" because Hallmark provided a P.O. Box. Mot. at 9. But Plaintiffs cite no authority for that proposition, and their own conduct demonstrates otherwise. For example, when Bornstein directed Plaintiffs to subpoena its former employee Marco Vargas, Plaintiffs located him and "duly served" the subpoena. Mot. at 9-10; Gross Dec., Ex. 36. Serving a subpoena to an address already provided or placing a telephone call to a number that Plaintiffs already possess is hardly an extraordinary undertaking. It is precisely the type of "additional discovery" Rule 37(e) requires a movant to pursue before asking a court to presume that evidence is irretrievably lost.

Moreover, Plaintiffs' reliance on *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226 (D. Minn. 2019) ("Paisley Park"), and *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 506-07 (C.D. Cal. 2022) ("RG Abrams"), is misplaced. Both cases involved named defendants who personally controlled the devices at issue, destroyed those devices after litigation and preservation obligations had attached, and left the opposing parties without any meaningful avenue to recover the lost communications. None of those circumstances is present here.

In *Paisley Park,* the plaintiff, Prince Estate, sued Rogue Music Alliance ("RMA"), Deliverance, LLC, and their two principals, David Staley ("Staley") and Gabriel Wilson ("Wilson"), for releasing previously unpublished Prince recordings without authorization. 330 F.R.D. 226, 229-230 (D. Minn. 2019). Before the recordings were released, Staley sent an email expressly acknowledging the imminency of litigation. *Id.* at 230, 232–233. During discovery, a third-party production revealed that Wilson had exchanged relevant text messages, prompting Plaintiffs to move to compel production of messages exchanged by Staley and Wilson with each other and third parties. *Id*. at 231. The court ordered production of the responsive messages. *Id*.



weintraub tobin chediak coleman grodin law corporation

Despite those circumstances, Staley and Wilson had never disabled the auto-delete functions on their phones and both wiped and discarded their devices. *Id*. at 231–234. Staley discarded his phone after RMA and Deliverance had been sued, while Wilson discarded a replacement phone after suit had been filed, discovery had been served, the parties had agreed to ESI-preservation protocols, the court had ordered preservation, and Plaintiffs had specifically raised the missing text messages. *Id*. at 233–234, 237. Because both principals destroyed their devices, communications exchanged solely between them were lost from both ends, and the destruction also prevented Plaintiffs from identifying unknown third parties who might possess other responsive communications. *Id*. at 235–236. On those facts, the court found that the defendants acted with the intent to deprive Plaintiffs of the evidence within the meaning of Rule 37(e)(2). *Id*. at 236–237.

*RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461 (C.D. Cal. 2022) is similarly unavailing to Plaintiffs. There, several named defendants traded in their personal phones only months after being served with the lawsuit, without first backing up or imaging the devices. *Id.* at 501, 505–506. Another defendant, Abrams, traded in his phone after Plaintiffs had specifically requested his text messages, the court had twice ordered their production, and Plaintiffs had noticed an inspection of the devices that Defendants failed to attend. *Id*. at 501, 506. Defendants then failed to disclose the trade-ins until months later, after violating multiple discovery orders and after discovery had closed. *Id*. at 502, 507, 509. The court found the messages lost and irreplaceable based on Defendants' sworn admissions that the phones had been traded in and, as to two defendants, confirmation from their carriers that the messages could not be recovered. *Id*. at 506. Only on that record did the court conclude that subpoenaing the carriers would be futile. *Id*. at 506–507. The court further found intent to deprive based on the timing of the trade-ins, Defendants' legal sophistication, their failure to take preservation measures, and their efforts to conceal the destruction despite multiple court orders. *Id*. at 508–509. Importantly, the court emphasized that each defendant unquestionably controlled his or her own device, the decision to trade it in, and the decision not to preserve its contents beforehand. *Id*. at 509.

The facts here are materially different from both cases. Most fundamentally, *Paisley Park* and *RG Abrams* involved named defendants who themselves owned and controlled the devices at issue

weintraub tobin chediak coleman grodin
law corporation

and personally decided to destroy or relinquish them while subject to preservation obligations. Plaintiffs here seek to sanction Hallmark for ESI allegedly residing on personal devices belonging to two former dock-level employees who had no authority to set, negotiate, or agree to the prices at issue. Hallmark never owned, issued, paid for, possessed, or had any legal right to access or image those devices. That distinction is significant because *Paisley Park* itself recognized that the preservation inquiry must be viewed "from the perspective of the party with control of the evidence." 330 F.R.D. at 232. In both *Paisley Park* and *RG Abrams*, control rested with the very parties sanctioned. Here, control rested with Ms. Adams and Mr. Ryder, not Hallmark.

The timing and circumstances present here likewise bears no resemblance to either case. Here, Ms. Adams traded in her personal phone in the ordinary course of changing cellular carriers and before Hallmark was ever named as a defendant. There is no evidence that she intentionally wiped the phone, traded it in to avoid discovery, or was ordered by Hallmark to do those things. In fact, there is no evidence that the text messages allegedly on Ms. Adam's phone have even been permanently destroyed. To Hallmark's understanding, Plaintiffs have not sought those messages from Ms. Adam's prior cellular provider, as the plaintiff in *RG Abrams* had.

Similarly, as to Mr. Ryder, Plaintiffs have not established that any ESI was lost at all. There is no evidence that Mr. Ryder wiped or discarded of his phone, much less that any relevant messages are unavailable. Unlike *RG Abrams*, there is no evidence that Mr. Ryder's device is gone, no carrier has confirmed that its contents are unrecoverable, and no other evidence otherwise exists establishing that text messages have been lost. Plaintiffs have Mr. Ryder's telephone number and mailing address, yet they have never attempted to serve him with a subpoena seeking the very messages they claim are unavailable.

Nor is Mr. Ryder's device the only potential source of those communications. Text messages necessarily involve another participant, and Plaintiffs' own Motion demonstrates that responsive communications can be recovered from the other side of the exchange. Every text message involving Mr. Ryder as cited in Plaintiffs' Motion was obtained from a counterparty through Nor-Cal's production of Kevin Lee's text messages. Plaintiffs have thus already demonstrated their ability to obtain buyer and crabber communications from other parties to this litigation. The same is true of

weintraub tobin chediak coleman grodin
law corporation

Ms. Adams: any messages she exchanged with crabbers may remain on those crabbers' devices.

These facts are precisely what distinguishes this case from *Paisley Park* and *RG Abrams*. Rule 37(e) does not permit Plaintiffs to choose to forego available methods of discovery, assume that potentially responsive ESI is gone, and then characterize that untested assumption as "spoliation" by Hallmark. Because Plaintiffs have not established that the challenged communications were actually lost, much less that they "cannot be restored or replaced through additional discovery," Rule 37(e) does not apply and their Motion should be denied.

### C. <u>Plaintiffs Failed To Establish Prejudice Or That Hallmark Acted With The Intent To Deprive</u>

Even if Plaintiffs could satisfy Rule 37(e)'s threshold requirements—and they cannot—the Rule sharply limits the remedies available. Rule 37(e) authorizes sanctions only after a court finds that ESI that should have been preserved was lost because a party failed to take reasonable steps to preserve it and that the information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). From there, the Rule establishes two distinct levels of relief, each requiring an additional showing that Plaintiffs cannot make here.

Under Rule 37(e)(1), where the loss of ESI causes prejudice, a court may impose only those measures "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The substantially more severe measures authorized by Rule 37(e)(2), including the mandatory adverse-inference instruction Plaintiffs seek, require a finding that the party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Plaintiffs can establish neither prejudice nor intent.

First, Plaintiffs cannot establish any cognizable prejudice because the two individuals whose personal phones are at issue had no authority to make, negotiate, or approve the pricing decisions central to Plaintiffs' claims, and Plaintiffs remain free to obtain discovery directly from those individuals and from counterparties to any relevant communications. And even if Plaintiffs could identify some measure of prejudice, Rule 37(e)(1) would authorize only a proportionate curative measure, not the mandatory adverse inference Plaintiffs request.

Second, Plaintiffs cannot establish the predicate finding required by Rule 37(e)(2): that

weintraub tobin chediak coleman grodin
law corporation

Hallmark acted with the intent to deprive Plaintiffs of evidence. The record contains no evidence that Hallmark intentionally deleted, destroyed, concealed, or directed any of its employees to destroy anything. Without evidence of an intent to deprive, the extraordinary sanction that Plaintiffs seek against Hallmark is unavailable. Because Plaintiffs cannot establish either prejudice sufficient to support relief under Rule 37(e)(1) or the intent required by Rule 37(e)(2), their request for sanctions fails.

1. Plaintiffs Cannot Establish Prejudice

Even if Plaintiffs could satisfy Rule 37(e)'s threshold requirements, relief under subdivision (e)(1) still requires a showing of "prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e). That prerequisite is lacking here. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Here, the allegedly missing communications are neither uniquely important to Plaintiffs' claims nor unavailable from other sources.

First, neither Mr. Ryder nor Ms. Adams had any authority to set, negotiate, or agree to the ex vessel prices at issue. That authority rests exclusively with Hallmark's owner, Gene Bugatto. (Bugatto Decl. ¶ 2; Adams Decl. ¶ 2-3). Mr. Bugatto determines the price Hallmark will pay and communicates that decision to Scott Adams, who then relays it to Hallmark's dock personnel. (*Id.*). Mr. Ryder and Ms. Adams could communicate Hallmark's established price to fishermen, but they could not change that price, negotiate a different price, or bind Hallmark to one. Any request for a higher price had to be elevated through Mr. Adams to Mr. Bugatto for decision. (Bugatto Decl. ¶¶ 2-4; Adams Decl. ¶¶ 3-4).

That allocation of authority significantly undermines Plaintiffs' claim of prejudice. Plaintiffs contend that the missing communications would show an "agreement between Defendants that they move their prices in concert." Mot. at 16. But Mr. Ryder and Ms. Adams were not Hallmark's pricing decisionmakers and had no authority to enter into any pricing agreement on Hallmark's behalf. At most, communications involving them could reflect or relay pricing decisions made by others. They therefore are not the type of unique evidence without which Plaintiffs cannot prove their theory. To

weintraub tobin chediak coleman grodin law corporation

the extent such communications reflected Hallmark's prices, the timing of price changes, or information conveyed to fishermen, that same information is available through available discovery of the individuals who actually made the pricing decisions, Hallmark's business records, and counterparties to the communications.

Second, Plaintiffs have not shown that any loss of evidence has even occurred or otherwise cannot be mitigated through additional discovery. Plaintiffs remain fully able to subpoena Mr. Ryder and Ms. Adams, including Ms. Adam's prior cellular carrier. Moreover, Plaintiffs can pursue discovery through the counterparties to any communications they believe are relevant. Indeed, Plaintiffs already possess the other side of the communications involving Mr. Ryder, which they admit in their Motion they have already obtained through Nor-Cal's production of Kevin Lee's text messages. This is not a case in which relevant evidence has disappeared from every available source. Nor may Plaintiffs manufacture prejudice by leaving obvious discovery avenues unexplored and then asserting that the resulting gap is incurable.

Ultimately, Plaintiffs cannot carry their burden to show prejudice. The communications at issue involve individuals who had no authority over Hallmark's pricing decisions, rendering any alleged loss of minimal probative value. And because Plaintiffs may obtain the same or substantially equivalent information through other witnesses, documents, and discovery mechanisms, there is no meaningful deprivation of evidence. Absent a concrete showing that relevant information has been lost and cannot be replaced, Rule 37(e)(1) affords no relief. Plaintiffs' sanctions request should therefore be denied.

2. <u>Plaintiffs Cannot Establish The Specific Intent Required To Support A Mandatory Adverse Inference</u>

Plaintiffs' request for a mandatory adverse-inference instruction fails for a separate and more fundamental reason: there is no evidence that Hallmark acted with the specific intent to deprive Plaintiffs of evidence. Rule 37(e)(2) permits such a severe sanction "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The Ninth Circuit has described this as a "demanding specific-intent standard," requiring "willful destruction of evidence with the purpose of avoiding its discovery by an adverse party."

weintraub tobin chediak coleman grodin law corporation

*Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024); *Jones*, 95 F.4th at 735. Negligence, including even gross negligence or recklessness, is not enough. *Gregory*, 118 F.4th at 1080; *Jones*, 95 F.4th at 735; Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

That demanding standard requires proof that Hallmark acted with the specific intent to deprive Plaintiffs of relevant information by directing Ms. Adams or Mr. Ryder to dispose of their phones for the "purpose of hiding adverse evidence". *Gregory*, 118 F.4th at 1080 (internal citations omitted). Plaintiffs offer no such evidence because none exists. Indeed, Plaintiffs cannot identify a single act by Hallmark to destroy, delete, alter, or otherwise render unavailable any ESI. Hallmark did not wipe or discard a device, delete text messages, modify an auto-delete setting, instruct anyone else to do so, or attempt to conceal the alleged loss of information. (Bugatto Dec. ¶ 10). Nor do Plaintiffs point to any evidence suggesting that Hallmark encouraged, authorized, or acquiesced in the destruction of relevant data.

The record demonstrates precisely the opposite. Shortly after Hallmark was named as a defendant, its counsel took affirmative steps to ensure the preservation of potentially relevant information. On or about February 4, 2025, Hallmark's counsel prepared a written preservation notice advising Hallmark employees of their obligation to preserve potentially relevant evidence, and Hallmark distributed that notice to its employees. (Cameron Decl. ¶ 3). Far from supporting an inference of intent to deprive, these actions reflect Hallmark's good-faith effort to preserve potentially relevant ESI once it became a party to this litigation and was apprised of the allegations against it.

As to Ms. Adams, the disposition of her personal phone occurred before Hallmark was ever named as a defendant. By that time, Ms. Adams had left Hallmark, changed cellular carriers and, in doing so, traded in her personal device. Hallmark did not own the phone, did not possess it, and had no ability to control what Ms. Adams did with her personal property after her employment ended. There is likewise no evidence that Hallmark directed her to trade in the phone, knew she intended to do so, or took any action whatsoever that caused information on the device to become unavailable. Whatever Plaintiffs may contend Hallmark should have done differently, Ms. Adams' independent disposition of her personal phone cannot establish that Hallmark acted for the "purpose of hiding adverse evidence." *Gregory*, 118 F.4th at 1080. The circumstances concerning Mr. Ryder are even

weintraub tobin chediak coleman grodin
law corporation

less supportive of an intent finding. There is no evidence that Mr. Ryder destroyed his phone or any messages on it at all after leaving Hallmark in April 2025.

Hallmark's subsequent conduct further defeats any inference of intent. When Plaintiffs raised the issue, Hallmark did not conceal what had occurred or obstruct Plaintiffs' efforts to investigate it. Hallmark disclosed the relevant facts during the parties' June 28, 2026 meet and confer and provided Plaintiffs with the last known physical address that it possessed for Mr. Ryder. (Cameron Decl. ¶ 5). Plaintiffs therefore know the identity and whereabouts of the individual who owns the device and have the means to seek the alleged ESI directly from him. It would be illogical to infer that Hallmark intended to deprive Plaintiffs of evidence while simultaneously identifying the individual who possessed the allegedly relevant device and providing Plaintiffs with the information necessary to seek that evidence directly from him.

These facts fall far short of establishing the specific intent required by Rule 37(e)(2). Given that Plaintiffs have failed to present any evidence that Hallmark intentionally concealed, destroyed or directed the destruction of any ESI, Plaintiffs are not entitled to the extraordinary sanction of a mandatory adverse-inference instruction.

## V. <u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiffs cannot satisfy any of Rule 37(e)'s required elements as to Hallmark. The record establishes neither that Hallmark had possession, custody, or control of the ESI at issue, nor that Hallmark lost any relevant information. Plaintiffs likewise cannot show that any alleged loss resulted from Hallmark's failure to take reasonable preservation measures or that the information cannot be restored or obtained through additional discovery avenues that Plaintiffs have not pursued. Nor have Plaintiffs demonstrated any resulting prejudice, particularly given that neither Mr. Ryder nor Ms. Adams possessed authority to set, negotiate, or approve Hallmark's pricing decisions. Most critically, there is no evidence that Hallmark destroyed, deleted, concealed, or directed the destruction of any information, let alone that it acted with the specific intent to deprive Plaintiffs of evidence as required for relief under Rule 37(e)(2). The evidentiary record simply does not support a finding of spoliation, prejudice, or intent. Accordingly, Plaintiffs' Motion against Hallmark should be denied in its entirety.

weintraub tobin chediak coleman grodin
law corporation

Dated: August 19, 2026

**weintraub tobin** chediak coleman grodin
law corporation

By: /s/ W. Scott Cameron
W. Scott Cameron

*Attorneys for Defendants*
*California Shellfish Company, Inc. and*
*Robert Bugatto Enterprises*

**weintraub tobin** chediak coleman grodin
law corporation