BRIAN A. E. SMITH (SBN #188147)
bsmith@bartkolaw.com
JOSEPH J. FRARESSO (SBN #289228)
jfraresso@bartkolaw.com
BARTKO LLP
1100 Sansome Street
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Christopher J. Kayser, (OSB #984244, appearing *pro hac vice*)
cjkayser@lvklaw.com
Elizabeth E. Parker, (OSB #242424, *appearing pro hac vice*)
eparker@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison St, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

Attorneys for Defendant *OCEAN GOLD SEAFOODS, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAND LITTLE and ROBIN BURNS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC SEAFOOD PROCUREMENT, LLC; et al.,<br><br>Defendants. | Case No. C 3:23-cv-01098-AGT<br><br>**OCEAN GOLD SEAFOODS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**<br><br>Hearing Date: September 18, 2026<br>Time: 10:00 a.m.<br>Judge: Honorable Alex G. Tse<br>Courtroom: A, 15th Floor |

Ocean Gold is not the subject of Plaintiffs' spoliation motion and defers to the Defendants who are to address the underlying allegations, but writes separately to join in the opposition because the relief requested is inconsistent with, and wholly unsupported by, the case evidence to date, and because granting an adverse inference could severely prejudice Ocean Gold.

Plaintiffs seek an adverse inference that lost or deleted texts on the personal phones of four Defendants' employees amount to "affirmative evidence of price coordination and pricing agreements between Buyers that the missing text messages would provide." Dkt. 785 at 29. But that inference would be inconsistent with all other document discovery and deposition testimony the case has produced thus far.

Ocean Gold has obtained the personal cell phones of nine employees and produced over 13,000 texts (and counting) responsive to Plaintiffs' document request. Declaration of Christopher J. Kayser ("Kayser Decl.") at 2 ¶ 3. These text messages span more than a decade. Even if other Defendants have lost or deleted text messages with Ocean Gold, Ocean Gold's production more than adequately remedies those omissions. Indeed, in the more than 13,000 text messages produced over a ten-year period, there is not a single reference to a coast-wide price-fixing agreement, the parties who would be a part of the purported agreement, any discussion of enforcement of such an agreement, or Ocean Gold's participation in it.

Moreover, the deposition testimony from Plaintiffs' own witnesses refutes the central premise of their price-fixing allegation: that opening season prices are the same coast-wide because of price fixing. The opposite is, in fact, true. That much is clear from the testimony of Patrick Davis, a crab fisherman Plaintiffs identified in their initial disclosures as knowledgeable about "ex vessel sales and/or purchases of Dungeness crab" and the "[e]x [v]essel Dungeness crab market .

. .” Dkt. 646-4 at 17. According to Mr. Davis, opening season prices are often the same coast-wide because that is exactly what fishermen want:

> Q: And do the fishermen want a common price, at least the opening season base price that you discussed, among all the processors?
>
> A: Yes, that's what they want if the -- you know, we're looking for -- I don't even know. Just for the sake of argument, throw out, say if it's $3, usually the coast is pretty united on trying to get that.
>
> ***
>
> Q: And what are guys generally trying to achieve? Just a coast-wide price?
>
> A: Yeah, a coast-wide price or a decent starting price somewhere.

Kayser Decl. at 3 ¶ 7, Ex. A, Dep. of Patrick Davis (“Davis Dep.”) at 75:14-23, 76:14-17. Mr. Davis acknowledged that even if he personally was offered a higher price, he would not go because “it’s all or nothing.” *Id.* at 75:24-76:3.

Other fishermen are in alignment with Mr. Davis on how the market functions. John Atkinson, another crab fisherman, likewise testified that the goal of fishermen associations is to arrive at a common price from all the crab buyers. Kayser Decl. at 3 ¶ 8, Ex. B, Dep. of John Atkinson at 103:9-19. Crab fisherman John Tarantino testified that the fishermen associations in different ports collaborate with the goal of ensuring that everybody is getting the same price. *Id.* at 3 ¶ 9, Ex. C, Dep. of John Tarantino at 77:20-78:10.

Mr. Davis’s explanation of how fishermen collaborate to achieve a common coast-wide opening season price is consistent with the experience of Mark Rydman, who fished for Dungeness crab for three decades before becoming Ocean Gold’s president and ex-vessel price negotiator. He

testified that in his experience fishing for and selling Dungeness crab, "fishermen are looking for a single opening price they can all agree they can go fishing for" and that they "often will have coast-wide calls where this is discussed." Dkt. 678, Declaration of Mark Rydman at 3 ¶ 5. This practice continued after Mr. Rydman stopped fishing and became Ocean Gold's president and price negotiator: "I've actually had instances where fishermen told me a price they were willing to go fishing for, I agreed to that price, but then they refused to go fishing because other fishermen in other ports hadn't gotten the same price yet." *Id.* at 4 ¶ 9.

An adverse inference that is unsupported by any case discovery and that contradicts the deposition testimony of Plaintiffs' own witnesses should accordingly not be granted. The potential prejudice to Ocean Gold from such an inference, even if limited to other Defendants, could be severe. To be clear—this is a case where Plaintiffs have claimed they have *direct* evidence of a vast coast-wide price-fixing agreement among more than two dozen Defendants but have not yet produced anything of the sort. And discovery plaintiffs have produced in the case further confirms the absence of any direct evidence. Instead, Plaintiffs rely exclusively on inference and innuendo from a patchwork of text messages and call logs as the foundation for their proof.

As a result, if jurors are instructed that they may draw an inference against certain Defendants that is consistent with direct evidence of a conspiracy, it could fundamentally alter the nature of Plaintiffs' burden against the remaining, non-spoliating Defendants in a way no limiting instruction could cure. Further, it is premature to fully address the question of the prejudice and unfairness to Ocean Gold that an inference might cause in the context of Fed. R. Evid. 403. *See In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 863 (C.D. Ill. 2003) (noting that, in order to guarantee a fair trial, an adverse inference based on invocation of the Fifth

Amendment privilege by one defendant in a price-fixing case would be inadmissible against other defendants); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2015 U.S. Dist. LEXIS 101474, at *48 (N.D. Ga. Aug. 3, 2015) ("introduction of spoliation evidence at trial would be profoundly unfair" to the non-spoliating defendant in a case alleging a price-fixing conspiracy); *In re High Fructose Corn Syrup Litig.*, 361 F.3d 439, 441 (7th Cir. 2004) (empaneling separate juries to cure prejudice resulting from an adverse inference against some, but not all, defendants). If the Court denies Plaintiffs' motion on its own merits—which Ocean Gold believes it should—the question of separate prejudice to Ocean Gold would be moot.

For all of these reasons, Plaintiffs' motion should be denied to the extent it is seeking an adverse inference that would unfairly prejudice Ocean Gold.

Dated: August 19, 2026

LARKINS VACURA KAYSER LLP

s/ Christopher J. Kayser
Christopher J. Kayser, (OSB #984244, *appearing pro hac vice*)
Elizabeth E. Parker, (OSB #242424, appearing *pro hac vice*)

BARTKO LLP

Brian A. E. Smith, SNB #188147
bsmith@bartkolaw.com
Joseph J. Fraresso, SNB # 289228
jfraresso@bartkolaw.com

Attorneys for Defendants Ocean Gold Seafoods Inc.