**K&L GATES LLP**
J. Timothy Hobbs, Jr. (*pro hac vice*)
501 Commerce Street, Ste. 1500
Nashville, Tennessee 37203
Telephone: (615) 780-6700
Tim.Hobbs@klgates.com

Henry J. Brockway (*pro hac vice*)
925 Fourth Avenue, Ste. 2900
Seattle, Washington 98104
Telephone: (206) 623-7580
Henry.Brockway@klgates.com

**K&L GATES LLP**
Victoria S. Pereira Duarte (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Victoria.Duarte@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Michael.Stortz@klgates.com

*Attorneys for Defendants Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

BRAND LITTLE, ROBIN BURNS, and CHERRY FISHERIES INC., Individsually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

PACIFIC SEAFOOD PROCUREMENT, LLC; PACIFIC SEAFOOD PROCESSING, LLC; PACIFIC SEAFOOD FLEET, LLC; PACIFIC SEAFOOD DISTRIBUTION, LLC; PACIFIC SEAFOOD USA, LLC; DULCICH, INC.; PACIFIC SEAFOOD – EUREKA, LLC; PACIFIC SEAFOOD – CHARLESTON, LLC; PACIFIC SEAFOOD – WARRENTON, LLC; PACIFIC SEAFOOD – NEWPORT, LLC; PACIFIC SEAFOOD – BROOKINGS, LLC; PACIFIC SEAFOOD – WESTPORT, LLC; PACIFIC SURIMI – NEWPORT LLC; BLUE RIVER SEAFOOD, INC.; SAFE COAST SEAFOODS, LLC; SAFE COAST SEAFOODS WASHINGTON, LLC; OCEAN GOLD SEAFOODS, INC.; NOR-CAL SEAFOOD, INC.; KEVIN LEE; AMERICAN SEAFOOD EXP, INC.; CALIFORNIA SHELLFISH COMPANY, INC.; ROBERT BUGATTO ENTERPRISES, INC.; ALASKA ICE SEAFOODS, INC.; LONG FISHERIES,

Case No. 3:23-cv-01098-AGT

**BORNSTEIN'S OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION FOR AN ADVERSE INFERENCE AS A SANCTION AGAINST CERTAIN DEFENDANTS FOR SPOLIATION OF EVIDENCE**

Judge: Honorable Alex G. Tse

INC.; CAITO FISHERIES, INC.; CAITO FISHERIES, LLC; SOUTHWIND FOODS, LLC; FISHERMEN'S CATCH, INC.; GLOBAL QUALITY FOODS, INC.; GLOBAL QUALITY SEAFOOD LLC; OCEAN KING FISH INC.; BORNSTEIN SEAFOODS, INC.; ASTORIA PACIFIC SEAFOODS, LLC; DA YANG SEAFOOD INC.; GREAT OCEAN SEAFOOD INC.; PACIFIC DREAM SEAFOOD, INC.; JOHN CAITO, JOSEPH CAITO, JAMES CAITO, JEANETTE CAITO and DOES 37-60,

Defendants.

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
  A. Bornstein Was Added as a Defendant in August 2024, and Promptly Identified Mr. Vargas as a Potential Source of Responsive Information ..... 3
  B. Mr. Vargas Reset His Company-Issued Phone Upon Departure for Personal Reasons Unrelated to This Litigation, Without Bornstein's Knowledge ..... 3
  C. The Vargas Subpoena Correspondence Shows Plaintiffs' Delay, Not Bornstein's Concealment ..... 4
  D. Bornstein and Other Defendants Have Produced Substantial Text Messages Involving Mr. Vargas ..... 6
  E. Discovery Remains Ongoing and Plaintiffs Have Not Yet Pursued the Ordinary Tools Available to Them ..... 7
III. LEGAL STANDARD ..... 7
IV. ARGUMENT ..... 9
  A. Plaintiffs' Motion Is Premature and Should Be Denied. ..... 9
    1. Plaintiffs must first pursue ordinary discovery concerning Bornstein's preservation and collection efforts ..... 10
    2. An adverse-inference jury instruction is a trial remedy and is particularly inappropriate at this stage. ..... 11
  B. Plaintiffs Cannot Establish That Any Relevant Information Is "Lost." ..... 12
  C. Bornstein Took Reasonable Steps to Preserve Relevant Information. ..... 14
  D. Plaintiffs Cannot Establish the Intent Required for an Adverse Inference Against Bornstein. ..... 16
    1. Mr. Vargas's independent conduct cannot establish Bornstein's Rule 37(e)(2) intent. ..... 16
    2. Plaintiffs' authorities do not support imputing Mr. Vargas's conduct to Bornstein. ..... 18
    3. Bornstein's assertion of privilege does not support Plaintiffs' "concealment" theory. ..... 19
  E. Plaintiffs Cannot Show Prejudice as to Bornstein. ..... 20
  F. Any Residual Concern Should Be Addressed, If at All, Under Rule 37(e)(1), Not by an Adverse-Inference Instruction. ..... 23
V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurso v. Iynfra-Red Servs., Inc.*,
169 F. Supp. 3d 612 (E.D. Pa. 2016) ........ 16

*Agne v. Papa John's Int'l, Inc.*,
No. C10-1139-JCC, 2012 WL 12882905 (W.D. Wash. Sept. 12, 2012) ........ 10

*Al Otro Lado, Inc. v. Nielsen*,
328 F.R.D. 408 (S.D. Cal. 2018) ........ 8, 14

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........ 8, 14

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-CV-08787-AMO (TSH), 2024 WL 4008759 (N.D. Cal. Aug. 30, 2024) ..... 8, 9, 12, 16

*Cohen v. Trump*,
No. 13-CV-2519-GPC (WVG), 2015 WL 3617124 (S.D. Cal. June 9, 2015) ........ 10, 19

*Cramton v. Grabbagreen Franchising LLC*,
No. CV-17-04663-PHX-DWL, 2019 WL 7048773 (D. Ariz. Dec. 23, 2019) ........ 17

*Doe LS 340 v. Uber Techs., Inc.*,
710 F. Supp. 3d 794 (N.D. Cal. 2024) ........ 10, 19

*In re eBay Seller Antitrust Litig.*,
No. C 07-01882 JF (RS), 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) ........ 19

*Edifecs, Inc. v. Welltok, Inc.*,
No. C18-1086JLR, 2019 WL 5862771 (W.D. Wash. Nov. 8, 2019) ........ 17

*Gilliard v. Wal-Mart Stores, Inc.*,
No. 2:07-CV-00245-KJD-GWF, 2008 WL 11449244 (D. Nev. Jan. 16, 2008) ........ 10

*Graham v. Honeywell Int'l Inc.*
No. 3:23-CV-04865-RFL (KAW), 2025 WL 2899512 (N.D. Cal. Oct. 10, 2025) ........ 17

*Gregory v. Montana*,
118 F.4th 1069 (9th Cir. 2024) ........ *passim*

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ........ 2, 7, 8, 15

*Laub v. Horbaczewski*,
No. CV 17-6210-JAK (KSX), 2020 WL 7978227 (C.D. Cal. Nov. 17, 2020)............ 9, 13, 16

*Lee v. County of Los Angeles*,
No. 2:23-CV-06875-GW-MAA, 2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)................... 18

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006)........................................................................................ 18

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
328 F.R.D. 543 (N.D. Cal. 2018)........................................................................ *passim*

*Pac. Steel Grp. v. CMC Fabricators, Inc.*,
No. 3:22-CV-00892-L-JLB, 2026 WL 1363157 (S.D. Cal. May 15, 2026).......................... 18

*Reinsdorf v. Skechers U.S.A., Inc.*,
296 F.R.D. 604 (C.D. Cal. 2013) ........................................................................ 13, 20

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022) ............................................................................ 18

*Taylor v. AFS Techs., Inc.*,
No. CV-09-2567-PHX-DGC, 2010 WL 3283570 (D. Ariz. Aug. 18, 2010).......................... 10

*Thomas v. Cricket Wireless, LLC*,
No. 19-CV-07270-WHA (AGT), 2020 WL 7344742 (N.D. Cal. Dec. 14, 2020)........ 1, 10, 19

*Welter v. Hurt*,
No. 2:23-CV-02627-SPG, 2025 WL 1843263 (C.D. Cal. Apr. 1, 2025)............................... 18

*Yela Fiduciary Servs., LLC for Est. of Sund v. Benton Cnty.*,
No. 6:20-CV-01925-MK, 2022 WL 17666400 (D. Or. Dec. 14, 2022) ................................ 17

**Other Authorities**

Fed. R. Civ. P. 37(e)(1)................................................................................................. 2

Rule 30(b)(6)......................................................................................................... *passim*

Rule 37(e)............................................................................................................. *passim*

Rule 37(e)(1) ........................................................................................................ *passim*

Rule 37(e)(2) ........................................................................................................ *passim*

Rule 45 ..................................................................................................................... 5

# I. INTRODUCTION

Defendants Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC (collectively, "Bornstein") respectfully submit this opposition to Plaintiffs' Omnibus Motion for an Adverse Inference. ECF No. 785. The Court should deny Plaintiffs' motion for an adverse inference against Bornstein because it is both premature and meritless. It is premature because discovery remains ongoing, documents continue to be produced, trial is more than two years away, and Plaintiffs have not yet taken either Bornstein's Rule 30(b)(6) deposition or the deposition of Marco Vargas. The motion therefore runs directly counter to this Court's established "deposition-first approach," under which a spoliation motion is not ripe until the relevant depositions have been taken. *See Thomas v. Cricket Wireless, LLC*, No. 19-CV-07270-WHA (AGT), 2020 WL 7344742, at *3 (N.D. Cal. Dec. 14, 2020).

The motion also fails on the merits. Plaintiffs have not shown that any relevant evidence is irretrievably lost, much less that Bornstein acted with the intent to deprive Plaintiffs of evidence because of its value to the litigation. Plaintiffs therefore cannot satisfy the requirements of Rule 37(e).

As to Bornstein, Plaintiffs' motion rests entirely on the conduct of a single custodian, Marco Vargas, a former employee who left Bornstein on February 13, 2025. Mr. Vargas served as General Manager of Bornstein's Oregon operations for approximately two years before his departure, but he did not have authority to establish or determine pricing. Declaration of Marco Vargas ("Vargas Decl.") ¶ 11. As Mr. Vargas explains in the accompanying declaration, he independently performed a factory reset of his phone before returning it to Bornstein because the phone contained personal information that he did not want to leave with his former employer. Vargas Decl. ¶¶ 5–6. Bornstein did not instruct Mr. Vargas to reset his phone. Vargas Decl. ¶ 7; Declaration of Paige Johnson ("Johnson Decl.") ¶ 8. To the contrary, Bornstein instructed him to preserve evidence on the phone. Vargas Decl. ¶ 4. These facts provide no basis for the extraordinary remedy Plaintiffs seek.

**First**, Plaintiffs cannot establish that any relevant information was "lost." "[I]nformation is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 552 (N.D. Cal. 2018).

Here, hundreds of text messages involving Mr. Vargas have already been produced by Bornstein, and additional productions are forthcoming. It remains entirely possible that, notwithstanding the reset of Mr. Vargas's phone, many or all of the text messages relevant to this litigation will be produced from other custodians, including by Bornstein, other Defendants, and non-parties. It is premature to conclude otherwise with discovery ongoing.

**Second**, Plaintiffs cannot establish the requisite intent. Mr. Vargas expressly declares that he did not reset his phone to deprive Plaintiffs of evidence for use in this litigation, and Plaintiffs offer no evidence to the contrary. Further, Rule 37(e)(2) requires a showing that the *responding party*, not a former employee, "acted with the intent to deprive" another party of the information's use in the litigation and that "negligence or even gross negligence" by the party is insufficient. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Plaintiffs have identified no evidence that Bornstein acted with the requisite intent.

**Third**, Plaintiffs cannot establish prejudice. Mr. Vargas lacked authority to establish or determine Bornstein's pricing, and his pricing-related communications are reflected in productions from other Bornstein custodians who did possess that authority. To the extent Plaintiffs believe any information remains outstanding, any purported gap can be explored and addressed through the deposition of Mr. Vargas, Bornstein's Rule 30(b)(6) deposition, and the parties' ongoing productions. An adverse inference is neither necessary nor warranted.

**Fourth**, Plaintiffs' requested remedy is inappropriate. Rule 37(e)(1) authorizes only "measures no greater than necessary to cure the prejudice," and a measure imposed under Rule 37(e)(1) may not have the effect of a Rule 37(e)(2) sanction absent the requisite finding of specific intent. Fed. R. Civ. P. 37(e)(1); *Gregory v. Montana*, 118 F.4th 1069, 1079 (9th Cir. 2024). Plaintiffs cannot circumvent Rule 37(e)(2)'s intent requirement by seeking an adverse inference under Rule 37(e)(1).

For all these reasons, and for the reasons explained further below, Plaintiffs' motion for an adverse inference against Bornstein should be denied.

## II. FACTUAL BACKGROUND

Plaintiffs' recitation of the facts concerning Bornstein is incomplete and misleading. The record instead shows that Bornstein acted proactively and cooperatively in preserving and producing potentially relevant information, while Plaintiffs themselves delayed pursuing discovery concerning Mr. Vargas. Bornstein promptly identified Mr. Vargas as a potential source of responsive information, issued a litigation hold containing express preservation instructions, and produced communications from Mr. Vargas and other relevant custodians. Against that backdrop, Plaintiffs' attempt to characterize Mr. Vargas's independent decision to reset his company-issued phone as spoliation by Bornstein is unsupported by the record.

### A. Bornstein Was Added as a Defendant in August 2024, and Promptly Identified Mr. Vargas as a Potential Source of Responsive Information

Plaintiffs named Bornstein as a Defendant in their First Amended Complaint on August 21, 2024. ECF No. 218. Two days earlier, while Bornstein was still responding to Plaintiffs' third-party subpoena from a prior iteration of Plaintiffs' complaint asserting primarily monopolization claims against Pacific Seafood, Bornstein's then-counsel identified Mr. Vargas as one of the custodians whose account was a source of documents responsive to the subpoena. Declaration of Stuart Gross ("Gross Decl.") Ex. 32 at 2.[1] Thus, even before Plaintiffs named Bornstein as a Defendant in their reformulated complaint, Bornstein had identified Mr. Vargas as a potential source of information that could be relevant to the litigation.

After being named as a Defendant in this case, Bornstein issued a litigation hold, including to Mr. Vargas, in September 2024. Vargas Decl. ¶ 4. The hold expressly instructed custodians to preserve potentially relevant documents and communications, including text messages and emails on company-issued devices. *Id*.

### B. Mr. Vargas Reset His Company-Issued Phone Upon Departure for Personal Reasons Unrelated to This Litigation, Without Bornstein's Knowledge

[1] "Gross Decl." refers to the Declaration of Stuart G. Gross submitted by Plaintiffs in support of their Omnibus Motion for an Adverse Inference. Mr. Gross is Plaintiffs' counsel. Citations to "Gross Decl. Ex. __" throughout this Opposition are to exhibits attached to Plaintiffs' own submission; unless otherwise noted, Bornstein cites those exhibits to demonstrate that Plaintiffs' own record does not support the relief they seek.

After starting employment as a Night Shift Supervisor at Bornstein's Astoria plant in May 2012, Mr. Vargas served as General Manager of Bornstein's Oregon operations from approximately October 9, 2022, until his departure from the company on February 13, 2025. Vargas Decl. ¶ 1. His role in any pricing-related discussions was correspondingly limited. Critically, Mr. Vargas did not have authority to establish or determine Bornstein's prices. Vargas Decl. ¶ 11. That authority rested with Colin Bornstein, owner and Chief Executive Officer, and Andrew Bornstein, owner and Executive Vice President. Hobbs Decl. ¶ 12, Ex. I at 2–3. Bornstein has designated and produced documents from both individuals, as well as from several other custodians, and it continues to produce further documents from its custodians, including Colin and Andrew Bornstein. *Id.*

During his employment, Mr. Vargas used his company-issued phone for both business and personal purposes. *Id.* ¶ 5. Before returning the phone to Bornstein at his separation, Mr. Vargas independently performed a factory reset of the device for personal reasons. *Id.* ¶ 6. He did so on his own initiative, without any direction from Bornstein and without any intent to interfere with this litigation. *Id.* ¶¶ 7–8. Plaintiffs offer no evidence to the contrary.

Bornstein did not direct Mr. Vargas to reset his phone and was unaware he had done so when Mr. Vargas returned the device. Vargas Decl. ¶¶ 7, 10; Johnson Decl. ¶ 10. To the contrary, Bornstein had instructed Mr. Vargas to preserve potentially relevant evidence, including documents and communications on his company-issued phone. Vargas Decl. ¶ 4. The undisputed record does not support Plaintiffs' assertion that Bornstein caused, directed, or knowingly permitted the destruction of evidence. It shows instead that Mr. Vargas independently reset a device for personal reasons, contrary to the preservation instructions he had received from Bornstein.

### C. <u>The Vargas Subpoena Correspondence Shows Plaintiffs' Delay, Not Bornstein's Concealment</u>

The Vargas subpoena correspondence shows Bornstein responding promptly at each step while Plaintiffs first served a subpoena that they later overlooked, re-served it without acknowledging the earlier service, and then delayed for nearly two months before erroneously accusing Bornstein of non-response:

The Vargas subpoena chronology, drawn from the parties' correspondence, is as follows:

• **November 21, 2025.** Plaintiffs' counsel for the first time asked Bornstein to add Mr. Vargas as a custodian and, if he was no longer employed by Bornstein, whether Bornstein would accept service of a subpoena on his behalf. Hobbs Decl. ¶ 4, Ex. A.

• **December 9, 2025.** Bornstein responded that Mr. Vargas had indeed left the company, had no pricing authority, and was not an appropriate custodian, and—notwithstanding that position—agreed to accept service of a Rule 45 subpoena on his behalf. Hobbs Decl. ¶ 5, Ex. B.

• **December 15, 2025.** Plaintiffs served, by email on all Defendants, a Notice of Service of Subpoena that attached the Vargas subpoena itself. Hobbs Decl. ¶ 6, Ex. C.

• **January 21, 2026.** Not having appreciated that the December 15, 2025 notice included the subpoena to Mr. Vargas, Bornstein's counsel emailed Plaintiffs to note that a subpoena had not yet been served. Plaintiffs re-served the subpoena that same day, by email to Bornstein's counsel, this time bearing a January 21, 2026 issuance date and a February 20, 2026 compliance date; Plaintiffs' transmittal referenced Bornstein's "December 9, 2025 agreement to accept service" and did not acknowledge or address the earlier December 15, 2025 notice. Hobbs Decl. ¶ 7, Ex. D.[2]

• **February 18, 2026.** Mr. Vargas served timely objections and responses to the non-party subpoena, two days before the February 20, 2026 compliance date (and within an extension Plaintiffs' counsel had granted, but which Mr. Vargas did not need). Vargas Decl. ¶ 14; Hobbs Decl. ¶ 8, Ex. E. His responses confirmed that his last day at Bornstein was on or around February 13, 2025 and that he no longer had his company-issued phone. *Id.*

• **April 14, 2026.** Nearly two months later, having taken no further action on the subpoena, Plaintiffs sent Bornstein a letter asserting that Bornstein had failed to respond and

[2] Plaintiffs' contrary suggestion that Bornstein "insisted on formal service" (Mot. at 10 & fn. 2) is incorrect. Bornstein at no point withdrew its December 9, 2025 agreement to accept service, and Plaintiffs' January 21, 2026 transmittal expressly relied on that agreement. Hobbs Decl. ¶ 7, Ex. D. Consistent with the agreement, Plaintiffs served the Vargas subpoena by email on Bornstein's counsel; Mr. Vargas confirms that he "received a copy of Plaintiffs' subpoena from Bornstein's counsel via email" and "did not receive Plaintiffs' subpoena from a process server or through any other method of service." Vargas Decl. ¶ 14.

threatening to move to compel. Bornstein's counsel responded by email the same day, correcting the record and pointing Plaintiffs to Mr. Vargas's objections and responses served on February 18, 2026. Hobbs Decl. ¶ 9, Ex. F.

- **May 1, 2026.** Responding to Plaintiffs' April 14, 2026 letter, Bornstein disclosed that Mr. Vargas's company-issued device had been reset prior to its return to Bornstein at his departure and that, as a result, no text messages from that device were available to be produced. Hobbs Decl. ¶ 10, Ex. G.
- **May 14, 2026.** Plaintiffs sent a follow-up letter raising broader preservation concerns as to Mr. Vargas and other current and former Bornstein employees and posing a series of questions about Bornstein's preservation and collection efforts. Gross Decl. Ex. 33 at 2.
- **May 28 and June 8, 2026.** Bornstein's counsel confirmed that a substantive response was in progress and awaiting client approval. Hobbs Decl. ¶ 11, Ex. H.
- **June 9, 2026.** Bornstein responded in writing to Plaintiffs' May 14 letter, addressing Plaintiffs' preservation concerns, confirming that Mr. Vargas's device had been reset, explaining that his email account and other custodial files remained preserved and were being collected for production of responsive materials, identifying alternative sources of Vargas-related communications, and reiterating that Mr. Vargas lacked authority to establish or determine pricing. Hobbs Decl. ¶ 12, Ex. I.
- **July 16, 2026.** Plaintiffs filed the pending spoliation motion.

In short, Plaintiffs' own record, including their two months of inaction after receiving Mr. Vargas's objections and responses, followed by a letter falsely claiming nonresponse, belies the narrative of concealment by Bornstein that they now seek to advance.

### D. Bornstein and Other Defendants Have Produced Substantial Text Messages Involving Mr. Vargas

Plaintiffs' own motion confirms that text messages involving Mr. Vargas are not all "lost." Bornstein has already produced hundreds of text messages involving Mr. Vargas that were preserved and collected from the devices of other Bornstein custodians and expects to make

additional productions containing additional text messages involving Mr. Vargas. Hobbs Decl. ¶ 13. Other Defendants have likewise produced additional text messages involving Mr. Vargas. *Id.* ¶ 14. Thus, even assuming that the reset of Mr. Vargas's phone rendered some information unavailable from his device, Plaintiffs already possess a substantial body of his text messages from other sources. Discovery is ongoing and the deadline for substantial completion of document production has not yet passed. Bornstein therefore anticipates that additional text messages involving Mr. Vargas will be identified and produced from Bornstein and other Defendants and non-parties as discovery continues.

The existing record accordingly forecloses any premature conclusion that relevant text messages have been irretrievably lost. To the contrary, the productions to date demonstrate that Mr. Vargas's communications are available from multiple sources and that Plaintiffs continue to receive potentially relevant information through ordinary discovery.

### E. Discovery Remains Ongoing and Plaintiffs Have Not Yet Pursued the Ordinary Tools Available to Them

Discovery in this case remains wide open. Fact discovery is ongoing, class certification remains unresolved, expert discovery has not begun, and trial is more than two years away. ECF No. 701. Plaintiffs have not taken a single party deposition. *Id.* at 8.

Moreover, Plaintiffs have not pursued the ordinary discovery tools that would permit them to determine what, if anything, remains outstanding from Mr. Vargas's device. As to Bornstein, Plaintiffs have not yet deposed Mr. Vargas, nor have they taken Bornstein's Rule 30(b)(6) deposition to inquire about preservation, collection, document-retention, IT policies, employee offboarding procedures, or any other topic bearing on the collection or preservation of Mr. Vargas's information.

## III. LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure provides the exclusive framework for sanctions based on the loss of electronically stored information ("ESI") and forecloses reliance on a court's inherent authority. *Gregory*, 118 F.4th at 1079; Fed. R. Civ. P. 37(e) advisory committee's

note to 2015 amendment. The rule imposes three threshold requirements: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) it was lost because a *party* failed to take reasonable steps to preserve it; and (3) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *Jones*, 95 F.4th at 735. Each of these threshold requirements must be met before a court may consider sanctions under Rule 37(e).

Even where those threshold requirements are met, Rule 37(e) distinguishes sharply between measures designed to cure prejudice and the more severe sanctions authorized by Rule 37(e)(2). Under Rule 37(e)(1), a court may impose "measures no greater than necessary to cure the prejudice" only "upon finding prejudice." Fed. R. Civ. P. 37(e)(1). By contrast, an adverse-inference instruction is available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "Negligence or even gross negligence" is insufficient. *Jones*, 95 F.4th at 735. The Ninth Circuit defines the requisite intent as "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Id.*; *see also Gregory*, 118 F.4th at 1080 (explaining that mere "recklessness" does not satisfy Rule 37(e)(2)).

The Rule's heightened intent requirement was deliberate. The 2015 amendment "rejects cases such as *Residential Funding* … that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Thus, a showing that evidence was lost, or even that a party failed to take reasonable preservation measures, does not by itself justify an adverse inference. The movant must establish the responding party's specific intent to deprive.

The threshold requirement that information be "lost" is likewise substantive, not technical. ESI is not "lost" for purposes of Rule 37(e) if it remains available from another source. *Oracle*, 328 F.R.D. at 552 (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018)); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-AMO (TSH), 2024 WL 4008759, at *1–2 (N.D. Cal. Aug. 30, 2024). The Advisory Committee likewise explains that "loss from one source may often be harmless when substitute information can be found elsewhere."

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Accordingly, where potentially relevant information remains available from other custodians or sources—or may yet be obtained through additional discovery—the Rule 37(e) inquiry cannot be satisfied merely by pointing to the loss of one copy or source.

Nor does Rule 37(e) demand perfection in preservation. The obligation is one of reasonableness and proportionality under the circumstances, not an absolute duty to preserve every conceivable piece of information. *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416-17 (S.D. Cal. 2018); *see also Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). The question is whether the responding party took reasonable steps to preserve information that should have been preserved, not whether its preservation efforts were flawless in hindsight.

Finally, Rule 37(e)(2)'s intent requirement focuses on the conduct of the responding party. The acts of a third party cannot simply be attributed to a defendant absent the requisite agency or control relationship. Courts have imputed third-party conduct where "the destroying party is an agent of the defendant" and the party "exercises control and authority over its third-party agent." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KSX), 2020 WL 7978227, at *20 (C.D. Cal. Nov. 17, 2020); *Blockchain Innovation*, 2024 WL 4008759, at *5. Even in such circumstances, the movant "still bear[s] the burden of establishing" the relevance of the allegedly lost information. *Laub*, 2020 WL 7978227, at *20.

## IV. ARGUMENT

### A. Plaintiffs' Motion Is Premature and Should Be Denied.

Plaintiffs prematurely ask the Court to impose a trial-stage remedy in the middle of discovery—more than two years before trial—without first pursuing the ordinary discovery necessary to determine whether any evidence is actually missing, what Bornstein did to preserve and collect it, or whether Plaintiffs have suffered any prejudice. That is backwards. Plaintiffs have not taken a single party deposition or noticed a Rule 30(b)(6) deposition concerning preservation. They have not deposed Mr. Vargas either. Yet they ask the Court to decide now whether Bornstein should be subject to an adverse inference at trial based on an evidentiary record that discovery is

still developing.

The Court should decline to do so. Plaintiffs' motion is premature under the ordinary discovery process and particularly inappropriate given that the alleged spoliation concerns a single former employee whose communications are continuing to be collected and produced from other sources.

*1. Plaintiffs must first pursue ordinary discovery concerning Bornstein's preservation and collection efforts.*

Courts routinely require a party seeking spoliation sanctions to first use ordinary discovery—including a Rule 30(b)(6) deposition—to determine what preservation and collection efforts were undertaken and whether any relevant information is actually missing. In *Thomas v. Cricket Wireless, LLC*, for example, the court directed the plaintiffs to "get answers about [defendant's] document preservation efforts at the upcoming Rule 30(b)(6) deposition" and expressly "decline[d] to deviate from the Rule 30(b)(6) deposition-first approach." 2020 WL 7344742, at *2–3.

That approach makes particular sense where, as here, the alleged spoliation turns on questions about preservation, collection, and the availability of information from other sources. A Rule 30(b)(6) deposition allows a party to understand what another party's employees "are doing with respect to collecting and preserving ESI," including "the facts of what [the defendant's] document retention and collection policies are." *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (quoting *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007)); accord *Cohen v. Trump*, No. 13-CV-2519-GPC (WVG), 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015). Courts have therefore recognized that a sanctions motion is "premature prior to the Rule 30(b)(6) deposition of Defendant." *Gilliard v. Wal-Mart Stores, Inc.*, No. 2:07-CV-00245-KJD-GWF, 2008 WL 11449244, at *4 (D. Nev. Jan. 16, 2008).

Courts within this Circuit have applied the same principle. In *Agne v. Papa John's Int'l, Inc.*, the court denied a spoliation motion as premature because it was "filed prior to the completion

of relevant discovery" and declined to impose sanctions "in the absence of a fully developed factual record." No. C10-1139-JCC, 2012 WL 12882905, at *3 (W.D. Wash. Sept. 12, 2012). Similarly, in *Taylor v. AFS Techs., Inc.*, the court held a spoliation-sanctions motion "premature" because discovery was not complete and it "cannot reasonably address prejudice at this stage," directing that any spoliation argument be raised later on summary judgment or by motion in limine. No. CV-09-2567-PHX-DGC, 2010 WL 3283570, at *4 (D. Ariz. Aug. 18, 2010).

Plaintiffs have done none of this. They have not taken Bornstein's Rule 30(b)(6) deposition on preservation, collection, retention, employee offboarding, or any related subject. Nor have they deposed Mr. Vargas about the circumstances of the phone reset, the communications on his device, or the availability of those communications from other sources. Instead, Plaintiffs ask the Court to resolve disputed and still-developing factual questions through a sanctions motion before they have even taken the depositions most directly relevant to those questions.

The Court should not permit that end-run around ordinary discovery. Plaintiffs should first obtain the information necessary to determine whether any relevant ESI is actually unavailable and, if so, what happened to it. Until then, there is no sound basis for concluding that Bornstein spoliated evidence or that any purported loss cannot be addressed through additional discovery.

*2. An adverse-inference jury instruction is a trial remedy and is particularly inappropriate at this stage.*

Plaintiffs' requested relief is also premature because an adverse inference under Rule 37(e)(2) is, at bottom, a *trial remedy*. It asks the Court to instruct the eventual factfinder that it may draw an adverse inference from the alleged loss of evidence. Yet Plaintiffs seek that remedy before fact discovery is complete, before Mr. Vargas or Bornstein has been deposed, before class certification has been resolved, and more than two years before trial. ECF No. 701.

There is no reason for the Court to freeze the evidentiary record now and decide what inference a jury should receive at trial based on facts that remain subject to discovery. The record may materially change as Plaintiffs take depositions, Bornstein and other Defendants complete their productions, and the parties develop the factual record. Indeed, Plaintiffs' own theory depends on

assumptions about what was on Mr. Vargas's phone and whether those materials remain available elsewhere—questions that ordinary discovery has yet to resolve.

Granting an adverse inference now would therefore be both unnecessary and premature. It risks converting an undeveloped discovery dispute into a fixed trial ruling before the Court knows what evidence will ultimately be available or what prejudice, if any, Plaintiffs will suffer. Rule 37(e) does not require that result.

The appropriate course is to deny Plaintiffs' motion. At minimum, the Court should deny it without prejudice to renewal, if appropriate, after Plaintiffs have completed the ordinary discovery directly relevant to their allegations, including Mr. Vargas's deposition and Bornstein's Rule 30(b)(6) deposition, and after fact discovery is complete. Until then, Plaintiffs cannot establish that any relevant information is irretrievably lost, that Bornstein failed to take reasonable preservation measures, or that an adverse inference will be warranted at trial.

**B. <u>Plaintiffs Cannot Establish That Any Relevant Information Is "Lost."</u>**

Plaintiffs cannot satisfy Rule 37(e)'s threshold requirement because they cannot show that any relevant ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Information is not "lost" within the meaning of the Rule where it remains retrievable from another source, including other custodians. *Oracle*, 328 F.R.D. at 552 (quoting *Steves & Sons*, 327 F.R.D. at 107); *accord Blockchain Innovation*, 2024 WL 4008759, at *1–2. The Advisory Committee makes the point expressly: "loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

That is precisely the situation here. Plaintiffs cannot establish that text messages involving Mr. Vargas are irretrievably lost. Bornstein has already produced hundreds of text messages on which Mr. Vargas is a participant, collected from the preserved devices of other Bornstein custodians, with additional productions forthcoming. Those custodians include Mike Shirley, whose ESI is fully preserved and who attended the December 2023 opening-price meeting alongside Mr. Vargas (6AC ¶ 264), as well as Colin and Andrew Bornstein, whose ESI is likewise

fully preserved and who are the only individuals at Bornstein with authority to determine and set prices. Hobbs Decl. ¶ 12, Ex. I at 2–3. Any pricing-related communications Mr. Vargas may have had with crabbers or buyers therefore necessarily would have been subject to, and required approval from, Colin or Andrew Bornstein. Plaintiffs therefore have access to communications and information involving Mr. Vargas from multiple preserved sources.

Nor are Bornstein's productions the only source of Vargas-related communications. Mr. Vargas is identified on Plaintiffs' Buyer Contact List, and all Defendants have agreed to produce all text messages between its custodians and individuals identified on Plaintiffs' contact lists without withholding any text messages based on relevance. To the extent any text messages involving Mr. Vargas exist on the devices of other parties' custodians, those messages will be produced. In fact, other Defendants, including Safe Coast, Pacific Seafood, Hallmark, Ocean Gold, Caito, Ocean King, and Da Yang custodians, have already produced text messages involving or discussing Mr. Vargas. ECF No. 701, Exhibit C; 6AC ¶¶ 560, 573–577. These productions are not merely cumulative; they are precisely the kind of "substitute information" that the Advisory Committee recognizes can eliminate any purported loss from a single source.

Plaintiffs' contrary theory rests on pure speculation. They apparently assume that Mr. Vargas *must* have exchanged additional, uniquely damaging texts with individuals whose own preservation efforts Plaintiffs challenge. But Plaintiffs identify no evidence that such messages existed, much less that they contained unique information unavailable from other sources. Mr. Vargas himself attests that he does not recall having conversations with those individuals. Vargas Decl. ¶ 13. Courts reject spoliation claims resting on this sort of conjecture. In *Laub v. Horbaczewski*, for example, the court declined to impose sanctions where the movant "merely speculate[d]" that lost messages "would be relevant" with "no suggestion that those messages exist." 2020 WL 7978227, at *20. Likewise, "[s]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) (quoting *Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007)).

Plaintiffs therefore cannot establish the critical third element of Rule 37(e), that the information they seek "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). To the contrary, discovery has already produced numerous Vargas-related communications, additional productions are forthcoming, and Plaintiffs have yet to depose Mr. Vargas or Bornstein's Rule 30(b)(6) witness. On this record, the premise that relevant information has been irretrievably lost is not a finding—it is speculation.

**C. <u>Bornstein Took Reasonable Steps to Preserve Relevant Information.</u>**

Plaintiffs likewise cannot establish that Bornstein failed to take reasonable steps to preserve potentially relevant ESI. Rule 37(e) does not require perfection. The Advisory Committee expressly recognizes that "perfection in preserving all relevant electronically stored information is often impossible." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The applicable standard is "reasonableness" and "proportionality" under the circumstances. *Al Otro Lado*, 328 F.R.D. at 416-17.

Bornstein's preservation efforts satisfy that standard. Bornstein's obligations at the time of Plaintiffs' third-party subpoena were those of a subpoena recipient, not those of a named defendant. Plaintiffs conflate the two. Bornstein's response to the subpoena—including its identification of Mr. Vargas as one of the custodians whose account was a source of documents responsive to the subpoena—cannot be recharacterized after the fact as an admission of a broader preservation duty that Bornstein had no reason to anticipate. Gross Decl. Ex. 32 at 2, 14–15. Once Bornstein was named as a Defendant, it implemented reasonable and appropriate measures to preserve, collect, and produce responsive, non-privileged materials within its possession, custody, and control. Bornstein issued a litigation-hold instruction to certain individuals, including Mr. Vargas, in or around September 2024 directing them to preserve documents and communications, including text messages and emails on company-issued devices. Vargas Decl. ¶ 4. Mr. Vargas's Bornstein email account, Teams account, OneDrive, and other custodial files remain preserved, and responsive, non-privileged materials will be produced. Hobbs Decl. ¶ 12, Ex. I.

Plaintiffs nevertheless attempt to fault Bornstein for not anticipating litigation against it as

early as May 31, 2023, before Bornstein was named as a Defendant. That argument improperly treats the preservation obligation as a hindsight exercise. The duty to preserve arises when litigation is reasonably foreseeable and extends to information that the party "knows or reasonably should know is relevant." *Oracle*, 328 F.R.D. at 550; *Apple*, 881 F. Supp. 2d at 1136. The relevant inquiry is therefore what Bornstein reasonably should have understood at the time, not what Plaintiffs, with the benefit of subsequent discovery, now contend Bornstein should have anticipated.

The circumstances in May 2023 did not reasonably put Bornstein on notice that it would become a defendant in this litigation. Plaintiffs' original complaint principally asserted a monopolization theory against Pacific Seafood. *See* ECF No. 1. Its only reference to price fixing was a generalized Section 1 claim concerning unspecified "other buyers" of Dungeness crab. *See id*. at 50 (Third Cause of Action). Nothing in that pleading identified Bornstein as a Defendant or specifically alleged that Bornstein had engaged in unlawful pricing conduct. And Bornstein consistently maintains that it has not engaged in any such unlawful conduct. *See* ECF No. 645-15 ¶ 3. There was accordingly no reasonable basis for Bornstein to anticipate that it would later be brought into a case centered on alleged monopolization by an unrelated entity.

The timing matters. Even in *Oracle*, this District declined to impose sanctions based on information lost before the relevant preservation obligation arose. *See* 328 F.R.D. at 552. Plaintiffs cannot manufacture a preservation violation by retroactively moving the trigger date to a point when Bornstein had no reasonable basis to anticipate that its own conduct would become the subject of litigation.

More importantly, once Bornstein was on notice, it acted. Bornstein issued a litigation hold, identified the very custodian Plaintiffs now place at the center of their motion, instructed custodians to preserve potentially relevant information on mobile devices, and continued to collect and produce responsive information. The fact that Mr. Vargas later, and independently, reset his company-issued phone for personal reasons does not transform Bornstein's reasonable preservation efforts into a violation of Rule 37(e).

In short, Plaintiffs' theory depends on hindsight rather than the governing reasonableness

standard. Bornstein was not required to predict the future, preserve every conceivable copy of every communication, or achieve perfect preservation. It was required to take reasonable steps once litigation was reasonably foreseeable. The record shows that it did so.

### D. Plaintiffs Cannot Establish the Intent Required for an Adverse Inference Against Bornstein.

Rule 37(e)(2) imposes a deliberately demanding standard: Plaintiffs must prove that Bornstein itself "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *Jones*, 95 F.4th at 735. Plaintiffs cannot satisfy that standard. They do not contend, and certainly offer no evidence, that Bornstein directed, authorized, or even knew in advance that Mr. Vargas would reset his phone. Their entire theory of intent rests entirely on the independent act of a departing employee who used his company-issued phone for both business and personal purposes.

That is not enough. Rule 37(e)(2) requires proof of Bornstein's own specific intent to deprive Plaintiffs of evidence. Plaintiffs cannot establish that intent by imputing to Bornstein an employee's unauthorized personal conduct, particularly where Bornstein had expressly instructed Mr. Vargas to preserve potentially relevant information.

#### *1. Mr. Vargas's independent conduct cannot establish Bornstein's Rule 37(e)(2) intent.*

The Rule 37(e)(2) inquiry focuses on the conduct and intent of the responding party. A third party's conduct may be imputed to a defendant only where the requisite agency and control relationship exists, i.e., where "the destroying party is an agent of the defendant" and the defendant "exercises control and authority" over its third-party agent. *Laub, 2020 WL 7978227, at *18–19; Blockchain Innovation*, 2024 WL 4008759, at *5; *see also Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 618–19 (E.D. Pa. 2016) (denying Rule 37(e)(2) sanctions against employer based on departed employee's apparent post-termination deletion of emails where movant offered no evidence that the employee was responsible, that the evidence was unavailable elsewhere, or that he acted with intent to deprive). Even where imputation is appropriate, the movant "still bear[s] the

burden of establishing" that the allegedly lost information was relevant. *Laub*, 2020 WL 7978227, at *20. *Departed* non-parties acting on their own do not qualify for imputation at all. *Blockchain Innovation*, 2024 WL 4008759, at *5.

Here, there is no basis to attribute Mr. Vargas's personal decision to Bornstein. Mr. Vargas did not reset his phone at Bornstein's direction, pursuant to any Bornstein policy, or in furtherance of any Bornstein objective. Vargas Decl. ¶¶ 5–8; Johnson Decl. ¶¶ 7–8. He reset the device on his own initiative, before returning it at the end of his employment, because he had used the device for personal as well as business purposes and wanted to remove his personal and family information from the device. Vargas Decl. ¶¶ 5–6. Mr. Vargas further attests that he did not understand Bornstein's litigation-hold instruction to prohibit him from removing his personal information from a device he was returning to his employer. *Id.* ¶ 9. Most importantly, Mr. Vargas expressly attests that he did not reset the phone with any intent to deprive Plaintiffs of evidence for use in this litigation. *Id.* ¶ 8. And Bornstein did not know he had done so until after the device was returned. Johnson Decl. ¶ 10; Vargas Decl. ¶ 10. Courts confronting closely analogous facts have refused to impute an employee's unilateral device wipe to the employer. In *Edifecs, Inc. v. Welltok, Inc.*, the court held that imputation requires a showing that the employee acted "to protect [the employer], as opposed to protecting themselves," and refused to impute former employees' deletion of text messages from their personal phones to the employer where the movant—even after deposing the employees—offered no such evidence. No. C18-1086JLR, 2019 WL 5862771, at *5–6 (W.D. Wash. Nov. 8, 2019). Plaintiffs' showing here is materially weaker.

An employee's unilateral decision to remove personal information on a company-issued device does not establish that the employer "acted with the intent to deprive" a litigation adversary of evidence. Courts have declined to impose Rule 37(e)(2) sanctions in materially similar circumstances. In *Cramton v. Grabbagreen Franchising LLC*, a departing employee "arranged to have her company-issued computer and cell phone 'wiped' before returning them," yet the court refused to "infer malicious intent from the loss of a handful of likely-irrelevant bits of ESI in a case where a massive amount of ESI has been produced." No. CV-17-04663-PHX-DWL, 2019 WL

7048773, at *9–10 (D. Ariz. Dec. 23, 2019). Likewise, in *Yela Fiduciary Servs., LLC for Est. of Sund v. Benton Cnty.*, a departing employee's phone was "wiped… clean," but the court found "no evidence that anyone destroyed evidence with the intent to deprive Plaintiffs of the use of that information in the litigation." No. 6:20-CV-01925-MK, 2022 WL 17666400, at *8 (D. Or. Dec. 14, 2022). And in *Graham v. Honeywell Int'l Inc.*, this District declined to impose an adverse-inference where a departing employee's company-issued laptop and cellphone "were lost" through employer mishandling, reasoning that although the conduct "may constitute gross negligence, there is not enough evidence to show or reasonably to infer that the data was purposefully destroyed." No. 3:23-CV-04865-RFL (KAW), 2025 WL 2899512, at *3 (N.D. Cal. Oct. 10, 2025).

The facts here are stronger still. Bornstein did not mishandle Mr. Vargas's devices, direct anyone to wipe them, or knowingly permit the destruction of relevant information. Mr. Vargas independently reset his phone for personal reasons, contrary to Bornstein's preservation instruction. Plaintiffs cannot convert that unilateral act into Bornstein's intentional destruction of evidence.

*2. Plaintiffs' authorities do not support imputing Mr. Vargas's conduct to Bornstein.*

The cases Plaintiffs invoke involve materially different facts, most notably, affirmative conduct by the defendant itself or an established employer policy or practice resulting in the destruction of ESI.

• *Welter v. Hurt*, No. 2:23-CV-02627-SPG (MARx), 2025 WL 1843263 (C.D. Cal. Apr. 1, 2025), involved the automatic deletion of a Google Workspace account after the employer stopped paying for the service, conduct attributable directly to the party responsible for preservation.

• *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006), involved an employee who deleted files and wrote over data with the employer's knowledge. *Leon* predates the 2015 amendment to Rule 37(e), which expressly rejected imposing adverse-inference sanctions based on negligence or gross negligence.

• *Lee v. County of Los Angeles*, No. 2:23-CV-06875-GW-MAA, 2025 WL 2505484, at *8 (C.D. Cal. Aug. 29, 2025), involved an employer that upgraded employees' cellular devices without

preserving data.

• *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 508–09 (C.D. Cal. 2022), involved phones that were traded in after litigation began, with the disposal coordinated *by the defendants themselves*, then concealed for months.

• *Pac. Steel Grp. v. CMC Fabricators, Inc.*, No. 3:22-CV-00892-L-JLB, 2026 WL 1363157 (S.D. Cal. May 15, 2026), plaintiffs' closest authority, involved a company with a "standard practice" of "wip[ing] and recycl[ing]" departing employees' devices. The court's finding turned on the defendants themselves "ha[ving] control over the returned cellphones and laptops of departing employees" and "*actively* wip[ing] *them and* remov[ing] *the data*." *Id*.

Nothing comparable occurred here. Bornstein had no written policy, standard practice, or directive requiring, requesting, or authorizing the wiping, resetting, or reformatting of company-issued mobile devices returned by departing employees. Johnson Decl. ¶ 7. Bornstein did not direct Mr. Vargas to reset his phone and did not know that he had done so. Vargas Decl. ¶ 7; Johnson Decl. ¶¶ 8, 10. Plaintiffs therefore cannot bootstrap an employee's unilateral act into the specific intent of the employer required by Rule 37(e)(2).

*3. Bornstein's assertion of privilege does not support Plaintiffs' "concealment" theory.*

Plaintiffs assert that Bornstein "concealed" the fact that Mr. Vargas reset his phone by declining, on privilege grounds, to describe its preservation efforts in correspondence. Litigation-hold notices and related attorney communications are generally protected by the attorney-client privilege and/or work-product doctrine. The underlying, nonprivileged facts concerning the timing and scope of preservation efforts, as well as the steps taken to collect ESI, may be explored through ordinary discovery. *See Cohen*, 2015 WL 3617124, at *7; *Thomas*, 2020 WL 7344742, at *3; *Doe LS 340*, 710 F. Supp. 3d at 802; *In re eBay*, 2007 WL 2852364, at *2.

Plaintiffs did not pursue that discovery. They cannot now transform Bornstein's proper assertion of privilege into evidence of a bad-faith effort to conceal evidence. Nor is there any factual basis for a concealment theory. As detailed above, Bornstein disclosed the phone reset promptly

once Plaintiffs raised it: on May 1, 2026, in response to Plaintiffs' April 14, 2026 letter, and again on June 9, 2026 in response to Plaintiffs' broader preservation inquiry. Bornstein addressed Plaintiffs' concerns, described the status of recoverable data, and identified alternative sources from which communications involving Mr. Vargas had been or would be produced. Hobbs Decl. ¶ 10, Ex. G; Hobbs Decl. ¶ 12, Ex. I.

There is no concealment here. There is an employee who independently reset a device, a company that had instructed him to preserve information, and a company that disclosed the reset. That record cannot support the specific-intent finding required by Rule 37(e)(2).

**E. <u>Plaintiffs Cannot Show Prejudice as to Bornstein.</u>**

Plaintiffs cannot establish prejudice for the additional reason that they have not identified any Bornstein-specific evidentiary gap caused by Mr. Vargas's phone reset. Even under Rule 37(e)(1), plaintiffs must show that the alleged loss "impairs their case." *Reinsdorf*, 296 F.R.D. at 627–28. They cannot make this showing based on the record before the Court.

Indeed, the text messages involving Mr. Vargas that Plaintiffs themselves provided with their motion *undermine their case*. The text messages show that Bornstein independently sets its prices, that Bornstein did not have agreements with other buyers, that Bornstein received pricing information *from crabbers* concerning what other buyers were paying and considered whether and how to respond to market conditions, and that crabber associations demanded particular prices from, and rejected price moves by, other buyers. *See* Exs. 40 and 41 to Gross Decl. Those communications are not evidence of a coordinated pricing scheme. They are evidence of Bornstein responding to market information and independently making its own pricing decisions. Mr. Vargas confirms as much: he attests that to his knowledge, Bornstein independently determined the price it would pay for Dungeness crab and that he is not aware of any agreement, understanding, or arrangement involving Bornstein or its employees to fix, coordinate, or otherwise agree upon crab prices. Vargas Decl. ¶ 12.

Further, Plaintiffs' characterization of the excerpts they attach to their motion is misleading and rests on unsupported assumptions. For example, Plaintiffs apparently infer from a Bornstein

text stating, "Marco heard that hallmark pulled their offer back" (Gross Decl. Ex. 40), that Mr. Vargas must have communicated with Hallmark custodians whose preservation efforts Plaintiffs also challenge. But the text string implies otherwise; the first text says that "Fishermen saying we are matching Hallmark $3.00," suggesting that fishermen—not Hallmark—are the information source. Plaintiffs' contention that the message necessarily reflects a communication with a Hallmark custodian is pure speculation that conflicts with the context.

Plaintiffs make a similar misrepresentation with their characterization of "Jon Pacific" in another Bornstein text (Gross Decl. Ex. 41). "Jon Pacific" was not a Pacific Seafood employee. He was a crabber associated with the fishing vessel ("F/V") Pacific—a fact Plaintiffs themselves know because the same phone number for John from the F/V Pacific appears on Plaintiffs' own Crabber Contact List. Plaintiffs therefore incorrectly characterize this communication as evidence of a missing communication with a Pacific Seafood custodian.

These mischaracterizations of text messages—like many others Plaintiffs have peddled throughout this litigation—underscore the baseless nature of Plaintiffs' claims and their efforts to infer the existence of uniquely relevant communications from Mr. Vargas's phone. Plaintiffs' own exhibits thus confirm that they lack any evidentiary basis to support an adverse inference against Bornstein.

For the reasons discussed above, Plaintiffs cannot show that the alleged reset caused any cognizable prejudice:

1. *Communications involving Mr. Vargas are not lost.* Mr. Vargas lacked authority to set or determine Bornstein's prices. Vargas Decl. ¶ 11. His Bornstein email account, Teams account, OneDrive, and other custodial files remain preserved and responsive, non-privileged materials are being produced. Bornstein has already produced hundreds of text messages in which Mr. Vargas is a participant from other Bornstein custodians' devices, and additional communications will be produced by Bornstein and likely will be produced by other Defendants and non-parties. Plaintiffs cannot credibly characterize Vargas-related communications as all "lost" while sitting on numerous already-produced texts involving Mr. Vargas and where additional text

messages involving Mr. Vargas that have yet to be produced.

2. *Plaintiffs have not deposed the witness whose phone is at issue.* Mr. Vargas has not yet been deposed. Plaintiffs therefore have not asked him what communications he recalls having, what information he possessed, or whether any purported gap in the documentary record can be addressed through his testimony. *See* Section IV.A above.

3. *Party and non-party productions remain ongoing.* Rolling productions from Defendants and non-parties remain underway and may contain additional communications involving or discussing Mr. Vargas. Plaintiffs therefore cannot establish, at this stage, that any purported gap is permanent or incapable of being remedied through ordinary discovery.

4. *Any prejudice must be established as to Bornstein—not aggregated across defendants.* Plaintiffs' motion improperly treats the four accused Defendants as a single spoliating unit and invokes their combined alleged 32.2% market share for the 2023/24 season. 6AC ¶ 64. Plaintiffs allege that Bornstein had a 6.6% share of that market. *Id.* Rule 37(e)(1) requires a showing that the loss impairs plaintiffs' ability to prove their claims against *this* defendant on *this* record, not a showing pooled across unrelated defendants' unrelated custodians. Plaintiffs identify no category of Bornstein-specific evidence that is unavailable solely because Mr. Vargas reset his phone.

The absence of prejudice is particularly clear given the nature of Mr. Vargas's role. He was not one of the individuals authorized to determine or set Bornstein's prices; Colin and Andrew Bornstein were. Vargas Decl. ¶ 11; Hobbs Decl. ¶ 12, Ex. I at 2–3. Bornstein has designated and is producing responsive, non-privileged materials from Colin and Andrew Bornstein. *Id*. Their ESI is fully preserved. Any pricing proposal or decision within Bornstein necessarily would have been subject to their authority and approval. Plaintiffs therefore cannot plausibly contend that the loss of information from Mr. Vargas's personal device deprived them of the core evidence concerning Bornstein's pricing decisions.

### F. Any Residual Concern Should Be Addressed, If at All, Under Rule 37(e)(1), Not by an Adverse-Inference Instruction.

Even if the Court identifies some residual concern, Rule 37(e) does not permit Plaintiffs to leap from that concern to an adverse-inference instruction. Rule 37(e)(1) authorizes only "measures no greater than necessary to cure the prejudice," and such a measure may not have the *effect* of a Rule 37(e)(2) sanction absent a specific-intent finding that Plaintiffs cannot establish here. Fed. R. Civ. P. 37(e)(1); *Gregory*, 118 F.4th at 1079-80.

On this record, no curative measure is necessary. Plaintiffs have numerous Vargas-related communications; additional communications remain preserved and subject to production; party and non-party productions are continuing; and Plaintiffs have yet to take the depositions most directly relevant to their allegations. The appropriate response to any residual uncertainty is therefore discovery in the normal course—not a jury instruction. At minimum, if the Court concludes that further factual development is warranted, it should direct Plaintiffs to pursue the discovery they have not yet undertaken, including Mr. Vargas's deposition and Bornstein's Rule 30(b)(6) deposition. Only if that discovery demonstrates a specific, non-speculative evidentiary gap, and only if Plaintiffs can establish actual prejudice attributable to Bornstein, would a Rule 37(e)(1) inquiry become appropriate. And even then, any measure must be the narrowest one necessary to cure the particular prejudice shown. The need for restraint is especially pronounced in this multi-defendant conspiracy case. An adverse inference based on one defendant's custodian risks spilling over into the claims against other defendants who neither caused nor participated in the alleged loss. That risk underscores why any Rule 37(e)(1) remedy, if warranted, must be carefully tailored to the actual prejudice demonstrated.

Plaintiffs' fallback request for a conditional CACI No. 204 instruction fails for the same reason. Whatever label Plaintiffs place on the requested instruction, an instruction permitting the jury to draw an adverse inference from the alleged destruction of ESI is the functional equivalent of the Rule 37(e)(2) remedy. Plaintiffs therefore cannot obtain indirectly under Rule 37(e)(1) what they cannot obtain directly under Rule 37(e)(2). Without a finding that Bornstein acted with the

requisite intent to deprive, a conditional adverse-inference instruction is unavailable. *See Gregory*, 118 F.4th at 1079–80. Plaintiffs' motion thus fails at every level: they cannot establish that relevant information is irretrievably lost, they cannot establish that Bornstein failed to take reasonable preservation measures, they cannot establish Bornstein's specific intent to deprive, and they cannot identify Bornstein-specific prejudice. The Court should deny the motion in its entirety.

## V. CONCLUSION

For the foregoing reasons, Bornstein respectfully requests that the Court deny Plaintiffs' Omnibus Motion for an Adverse Inference as to Bornstein.

Dated: August 19, 2026

Respectfully submitted,

By: */s/ J. Timothy Hobbs*

J. Timothy Hobbs (*pro hac vice*)
**K&L GATES LLP**
501 Commerce Street, Ste. 1500
Nashville, Tennessee 37203
Telephone: (615) 780-6700
Tim.Hobbs@klgates.com

Michael J. Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Michael.Stortz@klgates.com

Victoria S. Pereira Duarte (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Victoria.Duarte@klgates.com

Henry J. Brockway (*pro hac vice*)
925 Fourth Avenue, Ste. 2900
Seattle, Washington 98104
Telephone: (206) 623-7580
Henry.Brockway@klgates.com

*Attorneys for Defendants Bornstein Seafoods, Inc. and Astoria Pacific Seafoods, LLC*