UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAND LITTLE, et al.,<br>Plaintiffs,<br>v.<br>PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,<br>Defendants. | Case No. 23-cv-01098-AGT<br>**ORDER ON MOTION FOR PRELIMINARY APPROVAL**<br>Re: Dkt. No. 740 |

Plaintiffs have settled with several smaller Defendants and non-parties who together had 5.27% market share during the class period. Dkt. 816-1, Gross Supp. Decl. ¶¶ 2, 4. The settlements will create a $2.25 million fund, which Class Counsel will use to cover costs, but not attorneys' fees, as Plaintiffs continue litigating against the non-settling Defendants. The settlements have "no obvious deficiencies," *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016) (quoting another source), so the Court preliminarily approves them.

* * *

Plaintiffs have settled with the following Defendants:

- Pacific Dream Seafoods, Inc.;
- Caito Fisheries, Inc.; and
- James Caito, Jeanette Caito, John Caito, and Joseph Caito (together with

Caito Fisheries, Inc., the "Caito Defendants").

Plaintiffs have also settled with non-parties Fisherman's Choice LLC and Gerard Wetle, Jr. (together, "Fisherman's Choice"). *See* Dkt. 740-2, -3, -4 (settlement agreements). Fisherman's Choice is the entity identified as Unnamed Co-Conspirator #2 in the complaint. *See* Dkt. 799 at 22; Dkt. 808, Sixth Amended Compl. ¶¶ 12, 200–03.

In exchange for a release of claims, Pacific Dream will contribute $1 million to the settlement fund, the Caito Defendants will contribute $1.25 million, and Fisherman's Choice (a company with only 0.14% market share, Gross Decl. ¶ 37) will cooperate with Plaintiffs as Plaintiffs litigate against the non-settling Defendants. Dkt. 799-1, Gross Decl. ¶¶ 65, 69, 73. Fisherman's Choice's cooperation will include conferring with Class Counsel about persons and events relevant to the case, helping Class Counsel prepare for taking witness testimony, and discussing with Class Counsel the Dungeness crab industry. *Id.* ¶¶ 73–75.

Using an "underpayment estimation model," which "compares ex vessel prices paid for Dungeness crab in Puget Sound against prices paid in the Pacific NW Area," Plaintiffs estimate the following non-trebled damages attributable to the settling parties: $5.97 million (Pacific Dream), $7.52 million (Caito Defendants), and $368,200 (Fisherman's Choice).[1] Dkt. 816 at 5, 7 n.1, 8. Using those estimates, Pacific Dream's $1 million settlement represents a 16.75% recovery, the Caito Defendants' $1.25 million settlement reflects a 16.61% recovery, and Fisherman's Choice's non-monetary settlement amounts to a 0.0% recovery.

Settlements reflect compromise. It is thus "well-settled law that a proposed

[1] For present purposes, Plaintiffs have adequately explained their "underpayment estimation model." As the Court previously explained, "Plaintiffs needn't disclose in detail how they arrived at their [damages] estimate, but they should provide the Court with some reasoning." Dkt. 806 at 2. Plaintiffs have done so. *See* Dkt. 816 at 5–7 (discussing preliminary damages model and estimating total non-trebled damages across all Defendants of $263 million).

settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available . . . at trial." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *5 (N.D. Cal. Dec. 17, 2015) (quoting another source). When plaintiffs are still pursuing claims against non-settling defendants, non-monetary cooperation agreements can also "confer[] real and substantial benefits upon the Class." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 304 (E.D. Pa. 2012).

Several years into this price-fixing case, Plaintiffs still need to clear many hurdles to prevail, and liability is vigorously contested. Against this backdrop, and with litigation costs piling up, Plaintiffs made a sensible decision to settle for one-sixth of the estimated non-trebled recovery with Pacific Dream and the Caito Defendants and to execute a robust cooperation agreement with non-party Fisherman's Choice with the intention of using these results to pursue a much larger recovery from the non-settling Defendants.

Plaintiffs' strategy of using the settlement proceeds "to advance the pursuit of recoveries from the Remaining Defendants" may ultimately "provide [a] substantial benefit to Settlement Class members." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2024 WL 1683640, at *5 (N.D. Cal. Apr. 17, 2024). The settlements also preserve Plaintiffs' right to litigate against the non-settling Defendants for the full amount of Plaintiffs' damages based on joint and several liability. Plaintiffs aren't giving much up.

Also, Plaintiffs have identified a collectability risk, as Caito Fisheries, Inc., has ceased operations and might not have enough money to pay a larger judgment. Gross Decl. ¶¶ 30–32. Obtaining a recovery now eliminates that risk.

There is no evidence of collusive negotiations, the settlements fall within the range of possible approval and don't grant preferential treatment to class representatives or

segments of the class, *Volkswagen*, 2016 WL 6091259, at *10, and the short- and long-form notices (dkt. 740-8, -9) and proposed methods of providing notice satisfy Rule 23(c)(2)(B). The Court preliminarily approves the settlements and issues the following orders.

* * *

1. The First Round Settlement Class is conditionally certified.

2. The Court appoints Stuart Gross as Lead Counsel and Matthew Ruan and Matthew Weiler, together with Mr. Gross, as Settlement Class Counsel.

3. The Court approves the proposed notice plan. Plaintiffs must provide First Round Settlement Class Members with notice of the settlements by September 23, 2026.

4. The Court appoints Simpluris, Inc., as Settlement Administrator.

5. First Round Settlement Class Members must submit their intent to participate forms, objections, and requests for exclusion by November 23, 2026.

6. Settlement Class Counsel must move for final approval by November 6, 2026. Oppositions, if any, must be filed by November 20, 2026. Replies, if any, must be filed by December 4, 2026.

7. The Court will hold a fairness hearing to finally determine whether the settlement is fair, reasonable, and adequate on December 18, 2026, at 10:00 a.m. in Courtroom A, 450 Golden Gate Avenue, San Francisco, California. Class Members who wish to address the Court at the fairness hearing must submit an intent to appear by December 11, 2026.

**IT IS SO ORDERED.**

Dated: August 24, 2026

Alex G. Tse
United States Magistrate Judge