UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAND LITTLE, et al.,<br>Plaintiffs,<br>v.<br>PACIFIC SEAFOOD PROCUREMENT, LLC, et al.,<br>Defendants. | Case No. 23-cv-01098-AGT<br>**ORDER ON DA YANG SEAFOOD INC.'S MOTION TO DISMISS SIXTH AMENDED COMPLAINT**<br>Re: Dkt. No. 779 |

Earlier this year, the Court held that although Plaintiffs had stated a Sherman Act § 1 claim against almost every Defendant, they hadn't stated a § 1 claim against Da Yang Seafood, Inc. Plaintiffs had relied on approximately ten text messages involving Da Yang, alleging that the messages showed that Da Yang had conspired with other Defendants to fix ex vessel Dungeness crab prices. The messages suggested "a tacit agreement to exchange pricing data," the Court found, but they didn't plausibly state a § 1 claim on their own. Dkt. 600 at 2. This was because "agreements to exchange pricing data do not themselves constitute a *per se* violation of the Sherman Act." *Id.* (quoting *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 n.13 (9th Cir. 1990)).

In the operative sixth amended complaint, Plaintiffs now describe approximately forty text messages, and some follow-up phone calls, in which Da Yang and other ex vessel crab buyers exchanged pricing information. *See* Sixth Am. Compl. ¶¶ 509–85, 600–16.

Plaintiffs also rely on landing records, which documented the prices that Da Yang and other crab buyers offered fishermen after these conversations. *See, e.g.*, *id.* ¶¶ 559, 562, 565, 567.

Together, these allegations fill in the former gap. They plausibly support the conclusion that Da Yang not only exchanged pricing data with other Defendants, but that this exchange was part of "an express or tacit agreement to fix or stabilize prices." *Petroleum Prods*, 906 F.2d at 447 n.13. *See, e.g.*, Sixth Am. Compl. ¶¶ 510–12 (alleging that after a call and texts about prices, Da Yang and two other Defendants "brought themselves into perfect alignment, all three paying $2.50 for crab that would be cooked and $3.00 for crab that would [be] sold live, with the exception of one transaction . . . for $2.60"); ¶¶ 561–62 (alleging that "in the three days following" Da Yang and another Defendant's texts about pricing, "almost all purchases were at the $3.25/lbs. agreed-upon price, including 396 defendant transactions"); ¶¶ 600–01 (alleging that on the same day that Da Yang and another Defendant texted about pricing, Da Yang and seven other Defendants "all moved to prices near or at $4.00 per pound"). An agreement to fix or stabilize prices constitutes price fixing and violates Sherman Act § 1. *See Petroleum Prods*, 906 F.2d at 446–47 & n.13.

Da Yang contends that it only matched market prices, a form of conscious parallelism that isn't itself unlawful. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553–54 (2007). A full factual record may support Da Yang's contention, but that remains to be seen. At the pleading stage, the Court must view the pleaded text messages, phone calls, landing records, and other allegations in "the light most favorable to the plaintiff." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (quoting another source). When that is done, the allegations support more than market price matching. Da Yang didn't simply observe the prices that other crab purchasers were offering fishermen and then match those

prices. Da Yang and other Defendants shared pricing information in secret and then adjusted the prices they offered crabbers based on those exchanges. "[E]xchanging secret price information for the purpose of price stabilization" violates Sherman Act § 1 claim. *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1360 (9th Cir. 1976).[1]

For one text message conversation, at ¶¶ 600–01 in the complaint, Da Yang has asked the Court to consider other messages for context. *See* 779-1, Danos Decl., Ex. 1. Even if the Court does so, incorporating by reference the other messages based on the theory that Plaintiffs cannot "select[] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), the other messages, which were sent two days after the messages at ¶¶ 600–01, do not refute Plaintiffs' allegations. Deposition testimony from the message participants may provide missing context and bolster Da Yang's interpretation, but such evidence must come after a motion to dismiss.

The Court denies Da Yang's motion to dismiss. Da Yang must answer the sixth amended complaint by October 12, 2026.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Alex G. Tse
United States Magistrate Judge

[1] The same allegations also support Plaintiffs' state-law and declaratory relief claims, which "mirror the § 1 claim." Dkt. 242 at 8.